**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

**AMANDA CIMILLO, as**
**Personal Representative of the**
**Estate of RANDALL JORDAN-APARO,**
**Deceased and MINOR CHILD APARO**
**The Natural Child of Randall Jordan-Aparo**
**By and Through Her Mother and Natural Guardian**
**Amanda Cimillo,**

      Plaintiffs,

**vs.**　　　　　　　　　　　　　　　**CASE NO. 4:16-cv-00584-RH-CAS**

**DIANE ANDREWS, ROLLIN AUSTIN,**
**MITCHELL BROWN, PATRICK BURCH,**
**MOHAMMAD SALMAN CHOUDHARY, M.D.,**
**A. JONES (aka LUCY FRANKLIN), SENIOR L.P.N,**
**CHAD EVANS GILLIKIN,**
**AMY GOODWIN, SENIOR L.P.N,**
**MARTHA GREENE, SENIOR L.P.N,**
**JAMES I. HAMM, KEVIN ALLEN HAMPTON,**
**PAMELA T. HOUSHOLDER, SENIOR R.N.,**
**JOSHUA MARTINA, OLA MELISSA RILEY,**
**SENIOR L.P.N, CHRISTOPHER SPANGLER, and**
**the FLORIDA DEPARTMENT OF CORRECTIONS**

      Defendants.

_____/

**FIRST AMENDED COMPLAINT**

      The Plaintiffs, Estate of Randall Jordan-Aparo, Deceased, by and through its Personal

Representative, Amanda Cimillo, and Minor Child Aparo natural minor child of the deceased

Randall Jordan-Aparo, wrongful death beneficiary and individually, hereby sue Diane Andrews,

Rollin Austin,  Mitchell Brown, Patrick Burch, Mohammad Salman Choudhary, M.D., A. Jones

(aka Lucy Franklin). Senior L.P.N., Chad Evans Gillikin, L.P.N, Amy Goodwin, Senior L.P.N,

Martha Greene, Senior L.P.N, James I. Hamm, Kevin Allen Hampton, Pamela T. Housholder, Senior R.N., A.R.N.P., Joshua Martina, Ola Melissa Riley, Senior L.P.N., Christopher Spangler, and the Florida Department of Corrections, by and through their undersigned counsel and allege as follows:

## JURISDICTION AND VENUE

1.      Plaintiffs bring the following claims for (1) direct violations of 42 U.S.C. 1983, (the Eighth Amendment), (2) conspiracy to violate 42 U.S.C. 1983, (3) Wrongful Death by intentional murder (Florida Statute 782.04 and Florida Statute 95.11(10)[1], (4) Wrongful Death Manslaughter (Florida Statute 782.07 and Florida Statute 95.11 (10)) and (5) the Pre-Death Pain and Suffering of the Decedent Randall Jordan-Aparo for which venue lies within the United States District Court for the Northern District of the State of Florida (Tallahassee Division).

2.      Jurisdiction and venue are proper in the Northern District of Florida (Tallahassee Division) in that the acts of misconduct occurred within the Northern District of Florida with such acts causing or concealing the intentional death of the Randall Jordan-Aparo.

3.      This Court has jurisdiction over the claims asserted pursuant to Title 28 U.S.C. §1331 and Title 28 U.S.C. §1367.

4.      The applicable statute of limitations for all claims brought by the Plaintiffs is set forth in Florida Statute 95.11 (10) which provides that the applicable statute of limitation for claims brought under 42 U.S.C. 1983 and Florida Statute 768.16 (The Florida Wrongful Death Act) for intentional torts resulting in death as described in Florida Statutes 782. 04 and 782.07.   Florida Statute 95.11 (10) provides that claims brought by a natural person for any intentional tort resulting in death by murder or the manslaughter of a disabled adult may be commenced at any time.

---

[1] Florida Statute Section 95.11 (10), was enacted prior to the death of Randall Jordan Aparo, and was in effect at the time of his death on September 19, 2010.

## THE PARTIES

### The Estate of Randall Jordan-Aparo and Minor Child Aparo

5.      Plaintiff, Amanda Cimillo, as Personal Representative of the Estate of Randall Jordan-Aparo, brings this action on behalf of the Decedent, Randall Jordan-Aparo (hereinafter "Aparo") for violations of 42 U.S.C. 1983, conspiracy to violate 42 U.S.C. 1983, for the wrongful death of the Decedent, Randall Jordan-Aparo pursuant to Florida Statute 768.16 and for the pre-death pain and suffering of Randall Jordan-Aparo. On February 23, 2010, Randall Jordan-Aparo recognized his paternity of Minor Child Aparo and recognized his responsibility for the support of Minor Child Aparo in CSE Case No.:   1193612489. Minor Child Aparo is a minor child and statutory survivor as defined by Florida Statute 768.18 (1).

6.      Plaintiff Minor Child Aparo, now age twelve (12), is the natural child of Amanda Cimillo and Randall Jordan-Aparo.  Plaintiff Minor Child Aparo was born on February 8, 2004. Minor Child Aparo was six (6) years old at the time of her father, Randall Jordan-Aparo's death. Plaintiff Minor Child Aparo brings these constitutional claims, by and through her mother and natural guardian, Amanda Cimillo directly against the named Defendants[2] and should be considered sui juris for purposes of these claims as indicated below. The Plaintiffs have satisfied all administrative requirements to bring these claims or no administrative filings are required to maintain these claims.

---

[2] Minor Child Aparo brings her constitutional claims individually by and through her natural mother and natural guardian, Amanda Cimillo to the extent that there is confusion in the Eleventh Circuit as to what Plaintiff can recover in regards to Randall Jordan-Aparo's pain and suffering damages which occurred pre-death.  The Florida Wrongful Death Statute provides that, with regards to Minor Child Aparo, Minor Child Aparo can recover pain and suffering damages from the date of her father's death forward.  The Florida Wrongful Death Statute does not provide, within its statutory scheme, for the recovery of Randall Jordan-Aparo's pre-death pain and suffering and by definition would not accrue to his estate in a wrongful death action under Florida Statute 786.16 et al. See Ryan C. Reese, *Student work, Rights Without Remedies; Why Limiting Damages Recoverable By The Decedent Renders The Florida Wrongful Death Act Inconsistent With 42 U.S.C. 1983*, 44 Stetson Law Review 549, 2015.

7.     The Decedent, Randall Jordan-Aparo, was an orphan who was adopted with his brother and primarily resided in Pinellas and Hillsborough counties, Florida with his adopted father.  The Decedent, Randall Jordan-Aparo, natural parents committed joint suicide when Aparo was five years old.

8.     The Decedent, Randall Jordan-Aparo, had a criminal history of non-violent crimes, primarily possession of controlled substances (not with the intent to sell) and credit card fraud.

9.     On or about October 29, 2009, Decedent, Randall Jordan-Aparo, was remanded to the custody of the Florida Department of Corrections (hereinafter "FDOC"), after a plea to multiple counts of credit card fraud.  The sentence imposed by a Circuit Court Judge in Pinellas County, Florida, was one year, seven months, 24 days (599 days) to be served at the Florida Department of Corrections.  The Decedent Aparo was classified as a minimum security prisoner.   With gain time, Randall Jordan-Aparo would have been required to serve approximately 509 days of that sentence at the Florida Department of Corrections.   At the time of Decedent Aparo's murder/manslaughter the Decedent was scheduled to be released approximately ninety (90) days after his death on September 19/20, 2010.  His release date at the time of his death was projected to be January 21, 2011.

10.     The Decedent Randall Jordan-Aparo suffered from a hereditary congenital blood disorder, known as Osler-Weber-Rendu disease.   Osler-Weber-Rendu disease causes anemia, intermittent severe nose bleeds, shortness of breath and pulmonary complications making normal respirations difficult without the use of bronchial dilators.   These pulmonary complications can result in low oxygen saturations. Persons suffering with Osler-Weber-Rendu disease may have a normal life expectancy with a median life expectancy of age 70.  However, this disease is serious, chronic, life threatening and substantially interferes with activities of daily living for persons

4

suffering from such disease. Thus, persons suffering from Osler-Weber-Rendu disease, including Randall Jordan-Aparo should be considered a disabled adult for purposes of Florida Statutes 825.101 (3)[3], 782.07 and 95.11 (10).

11.     Both at the time of the Randall Jordan-Aparo's commitment to the Florida Department of Corrections and upon his death, the medical records in the possession of the Florida Department of Corrections indicated repeatedly that Randall Jordan-Aparo suffered from Osler-Weber-Rendu disease, described as a "bleeding disorder".  In the past Randall Jordan-Aparo had coughed up blood and lab studies done while at the Florida Department of Corrections indicated Aparo suffered from low oxygen saturations. On September 18, 2010, the day prior to his death, Aparo was suffering from severe shortness of breath and tachycardia (EKG machine read) suggestive of a difficulty in breathing. Further, Randal Jordan-Aparo was suffering from severe back pain from at least September 15, 2010 up to and including the time of his death.  Aparo repeatedly begged the nurses and correction officers at Franklin Correctional Institute to be admitted to the hospital from at least September 15, 2010 to the date and time immediately prior to his death.  See Timeline of Events Leading to the Murder/Manslaughter of Randall Jordan-Aparo, *Id*.

### TIMELINE OF EVENTS LEADING TO THE MURDER/MANSLAUGHTER OF RANDALL JORDAN-APARO AND CRIMINAL ACTORS COMPLICIT IN THE DEATH AND COVER-UP OF RANDALL JORDAN-APARO'S DEMISE

12.     **February 19, 2007**. It was well known within the Franklin Correctional Institute that Randall Jordan-Aparo suffered from Osler-Weber-Rendu disease.  Florida Department of Corrections (FDOC) medical records from the date of his confinement indicate Randall Jordan Aparo suffered from Osler-Weber-Rendu disease.

---

[3] A disabled adult means a person eighteen years of age or older and who suffers from one or more physical limitations that restrict a person's ability to perform the activities of daily living.

13.    **2009 incarceration**. When Randall Jordan-Aparo was incarcerated beginning on November 10, 2009, for a certain period of time he was placed at Jefferson Correctional Institution. While at Jefferson CI, prison gangs tried to recruit Randall Jordan-Aparo to work with correctional officers to help sneak contraband, including cell phones, into Jefferson CI. These gangs told Randall Jordan-Aparo that they would hurt his friend if he did not help sneak the contraband into Jefferson CI. Randall Jordan-Aparo and his friend (co-informant) went to the warden of Jefferson CI to inform him of the gang activity involving contraband and correctional officers and asked to be moved to a new prison. The warden requested that Randall Jordan-Aparo and his friend gather proof of the gang network and correctional officers before he would move them to a new prison. After Aparo and his friend obtained information for the warden, Aparo was transferred to Franklin CI.

14.    **June 30, 2010**.  Randall Jordan-Aparo presented with skin telangiectasia's which are dark spots appearing on the fingertips and face which were noted in the medical records of Franklin Correctional Institute. (**Amy Goodwin, Senior L.P.N.**)[4]

15.    **July 21, 2010**. **Time 10:30**.  Randall Jordan-Aparo arrived at the infirmary at Franklin Correctional Institute after an inmate declared emergency.  Jordan-Aparo presented with blood in his mouth, urine and stated that there was blood coming from his penis.  His pulse was charted at 71 bpm which the medical records indicate was his baseline pulse.  The nurse "reviewed the entire medical record" of Randall Jordan-Aparo and came to the conclusion that he was faking and "manipulating".  The nurse threatened Randall Jordan-Aparo and indicated to him that if she can show that there is a "manipulation game" going on she will file a disciplinary report. Randall

---

[4] The medical citations in this Complaint are based in part upon the FDOC medical records as well as sworn statements of inmate witnesses who were in a position to observe Randall Jordan-Aparo on September 18th and 19th, 2010, from across the confinement block.

6

Jordan-Aparo requested to stay in the infirmary confinement area and the nurse replied "absolutely not".   Randall Jordan-Aparo was then transferred back to a confinement cell. (**Amy Goodwin, Senior L.P.N** )

16.     **July 21, 2010. Time 10:30.**  Randall Jordan-Aparo was given a urine dipstick study which produced abnormal results as follow:

        a.      Leukocytes;

        b.      Nitrates;

        c.      PH;

        d.      Blood.

17.     **July 21, 2010. Time 09:35 and 16:51.** Randall Jordan-Aparo was placed on observation status in an infirmary cell, with a note that he was given a seven (7) day supply of Cipro.  There is no clear indication in medical records that he was actually provided Cipro. Randall Jordan-Aparo ultimately transferred back to confinement. (**Pamela Householder, R.N.**); (**Order given by ARNP Lemon**)

18.     **September 15, 2010.**   Randall Jordan-Aparo reported to the infirmary after declaring an inmate medical emergency based upon back and flank pain, with a temperature of 102.4 and sent back to his housing unit.  (**Pamela Housholder, Senior R.N.**)

19.     **September 17, 2010. Time 14:15**. Randall Jordan-Aparo reported to the infirmary after declaring an inmate medical emergency with left flank pain and pulse of 94 bpm (mild tachycardia).   He could not give a urine specimen based upon pain. Aparo was told to drink more water.  Aparo was charted as being disrespectful to the "captain" and nurse for demanding to be taken to the hospital and advising the "captain" and Nurse Goodwin that he was going to sue them. Jordan-Aparo apparently was transferred to a discipline dorm cell unit for showing disrespect

without a doctor's order.   **(Amy Goodwin, Senior L.P.N.)**   This same entry was charted as a late entry on September 18, 2010.

20.     **September 17, 2010.  Time 22:15.** Randall Jordan-Aparo reported to the infirmary after declaring another inmate medical emergency. Aparo's pulse was charted as 120 bpm.  This pulse rate is clearly tachycardic and two standard deviations above his baseline pulse observed previously in the infirmary.  He was transported back to medical infirmary via wheelchair. Corrections Officer Markeith Daniels (hereinafter "C.O. Daniels") transported Randall Jordan-Aparo by wheelchair to the infirmary at least twice late in the evening of September 17, 2010. C.O. Daniels was told by an inmate that Randall Jordan-Aparo was so sick that he had passed out and fallen off the toilet and begged to be taken to the infirmary and then to the hospital. C.O. Daniels, after reporting to his supervisor of Aparo falling off the toilet, again took Randall Jordan-Aparo to the infirmary, waited approximately 20 minutes and then took him back to his cell in the confinement unit. At least one of Jordan-Aparo's visits to the infirmary on September 17th, 2010 was not contained in the infirmary log-in, which was later amended at the direction of Warden Atkins on September 20, 2010, the day after Randall Jordan-Aparo died. C.O. Daniels was later fired on October 24, 2014 (for "insubordination") and has never interviewed by investigators from FDOC, the Florida Department of Law Enforcement (FDLE) or the Federal Bureau of Investigations (FBI) with regards to any Jordan-Aparo investigation. (**Martha Greene, Senior L.P.N.)**

21.     **September 18, 2010. Time 00:10.**  Randall Jordan-Aparo again declared another inmate medical emergency from his confinement cell and was seen at the infirmary. Randall Jordan-Aparo again requested that he go to the hospital. Aparo's condition was such that he was required to be taken by wheelchair to the infirmary. Pulse was reported to be 110 bpm. An EKG

was performed on Randall Jordan-Aparo by a nurse (L.P.N.) who admitted she lacked proper training to administer an EKG interpret the EKG results.  However, Greene advised that "it looked normal to her".   In fact the EKG produced a machine read report that Randall Jordan-Aparo was tachycardic at the time of the EKG test. Tachycardia can result from a shortness of breath. (**Martha Greene, Senior L.P.N**).

22.  **September 18, 2010.   Time 00:20.** The nurse called physician and "orders given". [5]No evidence of orders in the chart.  (**Martha Greene, Senior L.P.N**)

23.  **September 18, 2010.  Time 00:30**.  The nurse attempted to place the IV catheter (lactated ringers) twice without success.  The nurse blamed the failure to place the IV catheter on Randall Jordan-Aparo as not being cooperative.  The nurse advised Dr. Choudhary that she could not place the IV catheter.  (**Martha Greene, Senior L.P.N.**)

24.  **September 18, 2010.  Time 02:20**.  Randall Jordan-Aparo **"Still complaining of breathing problems"**.  Physician not called. (**Martha Greene, Senior L.P.N.**)

25.  **September 18, 2010.  Time 04:00**. (Charted as late entry.)  Randall Jordan-Aparo advised Nurse Jones (aka Franklin) and the Captain that they will be sued for refusing to take him to the hospital.  **Still short of breath**.  Physician not called.  Jordan-Aparo apparently transferred to a disciplinary dorm cell for "disrespecting a nurse"[6].  (**A. Jones aka Lucy Franklin, Senior L.P.N.**)

26.  **September 18, 2010.  Time Unknown.**  The same nurse, Nurse Franklin, who Aparo threatened to sue for failing to take him to the hospital, performed a "Risk Assessment for

---

[5] This order referenced at 00:20 was most likely an order for the administration of an IV to Randall Jordan Aparo containing lactated ringers.  Lactated ringers would normally be administered if dehydration or loss of electrolytes is suspected.  Further it is not clear that any IV was ever attempted to be placed in Randall Jordan Aparo as evidenced by the autopsy of the medical examiner which found no evidence of any treatments administered.

[6] There is a discrepancy in the various evidence as to whether Randall Jordan-Aparo threatened to sue Pamela Housholder on September 17, 2010 and again threatened to sue Nurse Jones aka Franklin on September 18, 2010, hours later.

the Use of Chemical Restraint Agents and Electronic Immobilization Devices" which stated in sum and substance that Randall Jordan-Aparo had "no known medical conditions that would be exacerbated by the use of chemical restraint agents." Clearly this assessment was false based upon Franklin's own charting on September 18, 2010.

27.     **September 19, 2010. Time 11:35**. Colonel Timothy Copeland authorized the use of CNS gas on Randall Jordan-Aparo outside of and inconsistent with FDOC policy.   Then, Warden Diane Andrews, the Warden at Franklin Correctional Institute, filed a false Incident Report averring that the use of force against Randall Jordan-Aparo was in compliance with FDOC regulations and policies.

28.     **September 19, 2010.  Time 11:35 to 12:35.**  Sergeant James Hamm prepared a Report of Force Used indicating that beginning at 11:35 CNS gas was administered to Randall Jordan-Aparo three times and at 12:35 Jordan-Aparo was taken to the infirmary for a Post Use of Force Physical.

29.     **September 19, 2010.  Time 13:15**.  Dr. Mohammad Choudhary, Nurse A. Jones aka Lucy Franklin and Nurse Riley (approximately 45 minutes after the administration of CNS gas), Dr. Mohammad Choudhary charted in an Emergency Room Record after allegedly conducting the 13:15 Inmate/Post Use of Force Exam.  **The 13:15 Emergency Room Report stated that he (Choudhary) and Nurse Riley were unable to obtain a blood pressure reading from Randall Jordan-Aparo by the use of both manual and automatic blood pressure cuffs. It appears that Choudhary and Riley attempted to take another blood pressure from Randall Jordan Aparo again could not produce a blood pressure.**  [7]Neither Choudhary nor Riley called an ambulance to transport Randall Jordan-Aparo to a hospital. Choudhary and Riley instructed

_____

[7] Choudhry and Riley apparently after failing to obtain a blood pressure at 13:15 and again at 13:25 simply returned to the infirmary.

Jordan-Aparo to be sent back to his confinement cell.  The Emergency Room Report is false to the extent that it indicates that Randall Jordan Aparo walked to the infirmary.  Lastly the Emergency Room Report indicates, that post use of force, Aparo was "wheezing" and that there was "motling [sp] noted upper right posterior back."  This mottling may have been from post mortem lividity resulting from Aparo lying on a rubber shower matt hours after his death.  Upon information and belief this lividity pattern is reflected in autopsy photos without explanation.

30.  **September 18 and 19, 2010**.  Certain inmate witnesses provided statements including sworn statements and interviews of events of September 18 and 19, 2010 (none of whom were interviewed by FDOC OIG Investigators until at least 2013, and some inmates were never interviewed at all).  The summary of these statements were as follows:

a.  Randall Jordan-Aparo began to yell through his cell door in the lockdown unit of Franklin Correctional Unit that he was in pain and needed to go to the hospital. Randall Jordan-Aparo's yelling to go to the hospital started on September 18, 2010 and ended on September 19, 2010 when CNS gas was administered to him.

b.  Lieutenant Rollin Austin arrived at the cell of Randall Jordan-Aparo and advised Randall Jordan-Aparo, who was loudly requesting medical assistance, that "you're the son of a bitch I had a problem with in the chow hall, you got a slick-ass mouth and I got something for you"[8]. Upon information and belief Austin had filed a disciplinary report naming Aparo concerning an incident in the cafeteria several days prior to Austin directing Aparo's murder/manslaughter.

c.  Sergeant James Hamm arrived at Randall Jordan-Aparo's cell with multiple canisters of CNS gas where Aparo was sprayed at least three separate times.  CNS gas was

---

[8] Upon information and belief a Disciplinary Report was filed by Rollin Austin concerning inmate Randall Jordan-Aparo regarding several incidents prior to Aparo's death.

administered to Jordan-Aparo in the presence of Lieutenant Rollin Austin, Patrick Burch and others unknown to the Plaintiffs.

     d.    While CNS gas was being administered to Randall Jordan-Aparo, inmates could hear him screaming:

> "I can't take it."
>
> "I can't take the gas."
>
> "I need a nurse."

     e.    In response for Randall Jordan-Aparo's request for assistance, he was told by Rollin Austin and James Hamm to "F___k off".

     f.    After Randall Jordan-Aparo was gassed, he could not stand up; he was dragged to the shower with his toes scraping the floor[9] and laid on the shower floor complaining of chest pain and inability to breathe. While in the shower Aparo received injuries including skin abrasions and an injury to his chin.

31.    **September 19, 2010.**  Nurse Ola Melissa Riley began to make numerous false entries on the medical chart of Randall Jordan-Aparo which were inconsistent with Use of Force Reports.  (**Ola Melissa Riley, Senior L.P.N.**)

32.    **September 19, 2010.  Time 13:15 – 17:30.**  Randall Jordan-Aparo was not checked on by medical staff or institution staff every fifteen (15) minutes as required by FDOC policies and procedures.

33.    **September 19, 2010.   Time 17:30**.  Corrections Officer George Foxworth (hereinafter "C.O. Foxworth") supposedly found Randall Jordan-Aparo lying on the floor of his cell face down at 17:30.  C.O. Foxworth supposedly stated that he advised Randall Jordan-Aparo

---

[9] Aparo's autopsy indicates that there were abrasions on his toes.

to stand up but Aparo supposedly advised C.O. Foxworth with a "thumbs up" that he was on the floor of his cell because it was **"cooler down there"**.

34.     **September 19, 2010.  Time 18:11**.   Randall Jordan-Aparo was found dead in his cell by C.O. Foxworth during a routine 18:00 security check.   No resuscitation efforts were instituted.  C.O. Foxworth supposedly stated that at 18:11 Randall Jordan-Aparo was "blue" and that his arms were "up and stiff" implying that rigor mortis had set in between 17:30 and 18:11, a period of 41 minutes.  Medical research indicates that rigor mortis normally sets in approximately three hours after the death of an otherwise healthy person. If Foxworth in fact noted rigor mortis at 18:11 it was a most likely a result of Aparo dying in the shower as indicated by rubber matt pattern of lividity which upon information and belief was reflected in photos taken by investigators at approximately 23:00 the evening of September 19, 2010.  The FDOC Chronological Record of Health Care for the dates in question indicated that Randall Jordan-Aparo made continual demands to be taken to a hospital because of breathing problems in the days prior to his death.

35.     On the night of the death of Randall Jordan-Aparo, Diane Andrews, then warden at Franklin Correctional Institute, arrived at the prison and instructed that no interviews be conducted of inmate witnesses including inmates James Hamrick, Joseph Avram and Steven Whitsett.[10] Andrews's statements were heard by various inmates in the confinement unit where Randall Jordan-Aparo died. Andrews's directive that no interviews of inmates be conducted was contrary

---

[10] It's apparently the policy of the Department of Corrections that if an inmate is going to be administered CNS gas that the windows of inmates be covered prior to the administration of CNS gas.  On the day of Randall Jordan-Aparo's death, and prior to the administration of the CNS gas, the windows of the inmates in the detention block were covered. However, there were not sufficient window covers to fully block the view of inmates Avram, Whitsett and Hamrick. Avram, Whitsett and Hamrick could see Randall Jordan-Aparo both before and after the administration of CNS gas and could hear conversations between the corrections officers and senior institution staff.  Sworn statements were taken of inmates Whitsett (at Columbia Correctional Institute on July 21, 2014); Avram (at Sumpter Correctional Institute on July 30, 2014) and Hamrick (at Sumpter Correctional Institute on July 30, 2014) in connection with what they saw and heard on September 18th and 19th, 2010 at Franklin Correctional Institute, concerning the death of Randall Jordan-Aparo.

to FDOC policy. Not interviewing witnesses at the scene of a death would obviously be in violation of FDLE policy, general orders and sound investigative techniques.  Apparently FDOC Inspector General Investigators and FDLE agents at the scene meekly and oddly followed Andrews's directives and conducted no interviews of inmates (ever).

36.     Inmate James Hamrick (hereinafter "Hamrick") testified under oath that he heard James Hamm go to Aparo's cell and told Aparo that he needed to "get his ass up and clean up his cell", "that there was nothing wrong with [Aparo] and if he did not comply they would "have to go another route."  Hamrick testified that the first time any nurse came to Randall Jordan-Aparo's cell on September 19, 2010, it was to pronounce him dead.  Hamrick testified that Lieutenant Rollin Austin came to Aparo's cell before CNS gas was administered to Aparo and said "if you don't get up and comply, I've got something for your ass."   Hamrick testified that when Aparo was removed from his cell after being gassed at least three times, he could not walk to the shower and had to be dragged to the shower. Hamrick was transferred from Franklin Correctional Institute shortly after Aparo's death.

37.     Inmate Joseph Avram (hereinafter "Avram") testified under oath that he had heard Randall Jordan-Aparo ask for medical help numerous times on September 18, 2010.  Avram testified that at one point, on September 18, 2010, after Aparo had repeatedly asked for medical assistance, a corrections officer had gone to Aparo's window and asked Aparo "…what's the matter?  Did your boyfriend f___k you in the ass too hard?"[11]  Avram testified that after the first administration of CNS gas to Aparo on September 19, 2010, Sergeant Joshua Martina told Aparo "to get off the f____king floor before he [Hamm] sticks his gas can down your throat." [12] Avram

---

[11] Aparo was a militant heterosexual.
[12] Upon information and belief the autopsy of the Office of the Medical Examiner noted "**acute** hemorrhage of posterior neck musculature." (emphasis added) Acute hemorrhages could be indicative of strangulation or a gas canister being rammed down the throat of Aparo.

14

testified that after the third administration of CNS gas to Aparo, Avram heard Aparo say "I can't move.  I can't get up.  I need medical help".  Avram testified that either on September 18th or September 19th, 2010, Avram heard Lieutenant Rollin Austin say to Aparo "You're the one with the slick-ass mouth.  I've got something for you."

38.      Avram, on the night of Aparo's death, phoned his sister (a DOC employee, Christina Bullins hereinafter "Bullins") on a recorded line and advised her that he had seen an inmate get killed.  Shortly after Avram spoke to her, Bullins began writing letters to several senior FDOC officials that her brother had witnessed a murder by guards and that he needed to be placed in protective custody.  Those letters were dated November 7, 2010, January 23, 2011, February 23, 2011, February 24, 2011 and March 2, 2011.   Additionally, Bullins called FDOC OIG inspectors on July 20, 2011 and September 26, 2011 concerning her fear that her brother would be retaliated against in connection with his status as a witness to the Aparo killing.  Bullins was ultimately disciplined by Diane Andrews for making these written inquiries.

39.      On October 4, 2010, then warden at Franklin Correctional Institute, Diane Andrews concludes "the application of force [against Aparo] appears to be in compliance with the rules governing the use of force."   On October 7, 2010, the Office of Inspector General for FDOC approved Diane Andrews report, exonerating all FDOC employees concerning the death of Randall Jordan-Aparo.  On May 3, 2011 the Florida Department of Law Enforcement issued its report concluding that Randall Jordan-Aparo's death and his gassing were unrelated.  On July 20, 2012 the Florida Department of Law Enforcement closed the Aparo investigation.

40.      In approximately February 2011, Warden Diane Andrews caused an administrative complaint to be lodged internally at FDOC against Avram's sister (Christina Bullins) concerning her letters to FDOC senior officials and her brother's request for protective custody.  In retaliation

for Avrams statements to his sister, Avram received multiple Disciplinary Reports filed at Franklin Correctional Institute in February 2011.

41.    On March 4, 2011 Avrams sister (Bullins) filed with the Office of the Governor, Chief Inspector Melinda Miguel a whistle blower letter concerning the death of Randall Jordan-Aparo and her brother, Joseph Avrams, fear of retaliation as a result of being a witness to Aparo's death.   On June 7, 2011 Avrams sister's request for whistle blower status was denied.

42.    Inmate Steven Whitsett (hereinafter "Whitsett") testified under oath that he saw Randall Jordan-Aparo get gassed multiple times on September 19, 2010. Whitsett testified that he heard Randall Jordan-Aparo declare that he had a medical emergency Whitsett testified that he heard Rollin Austin say to the corrections officers, who later administered CNS gas to Aparo, that "This is the son of a bitch I had problems with in the chow hall last week.  I got something for you, I got something for you."  Whitsett testified that if a corrections officer indicates to an inmate that "I've got something for you", that you can expect that inmate to be administered CNS gas. Whitsett testified that Aparo was administered large canisters of CNS gas known within the institution as "red devils."  Whitsett testified that at least two full canisters of red devil were administered to Aparo.  Whitsett testified that shortly thereafter Aparo was dragged to the shower with the tips of his toes dragging on the concrete.  Whitsett testified that during the time after Aparo had been gassed that he saw no nurses or doctors go to Randall Jordan-Aparo's cell and assess him until a corrections officer delivering the evening meal discovered Aparo dead.

43.    Upon information and belief, the investigation concerning the death of Randall Jordan-Aparo was completed on or about October 7, 2010 and all FDOC employees were cleared of any wrong-doing.  No inmates were interviewed.[13]

---

[13] On November 20, 2012 a report was generated by the Bureau of State of Investigations under the letterhead of Florida Department of Corrections in connection with administrative investigations finding that:  Pamela Housholder,

44.     On September 13, 2013 the Federal Bureau of Investigations in the Florida Department of Law Enforcement apparently convened a federal grand jury to investigate the death of Randall Jordan-Aparo.  As of the date of the filing of this complaint, six years after Randall Jordan-Aparo's death, no criminal charges have ever been filed in connection with Aparo's death.

45.     On March 14, 2014 Aubrey Land, Investigator with the FDOC Office of the Inspector General, gave a 72 page statement to Melinda Miguel, the Chief Inspector General, concerning the death of Randall Jordan-Aparo and allegations of cover-up regarding prior investigations into Aparo's death.   Four other inspectors with the FDOC Office of the Inspector General, John Ulm, James Padgett, Doug Glisson and David Clark, in the spring of 2014, gave statements to Miguel regarding the cover up of the prior investigations regarding the death of Randall Jordan-Aparo. Melinda Miguel denied Land, Ulm Padgett, Glisson and Clark whistle blower protection.  Land, Ulm, Padgett, Glisson and Clark have not been interviewed (as witnesses) by the FBI concerning the death of Randall Jordan-Aparo.

## MOTIVE FOR THE MURDER OF RANDALL JORDAN-APARO

46.     The Defendants had a motive for murder due to the known facts within DOC, and specifically Jefferson CI and Franklin CI, that Randall Jordan-Aparo was an informant against prison gangs and correctional officers at Jefferson CI. In other words, it was known at least at Jefferson CI and Franklin CI that Randall Jordan-Aparo provided evidence of corrupt correctional officers at Jefferson CI, and was essentially a "snitch."

---

R.N. – failed to safeguard inmate Randall Jordan Aparo; Amy Goodwin, L.P.N.- failed to safeguard inmate Randall Jordan Aparo; Martha J. Green, L.P.N.- failed to safeguard inmate Randall Jordan Aparo; Lucy Franklin, L.P.N. – failed to safeguard inmate Randall Jordan Aparo; Ola Riley, L.P.N. – failed to safeguard inmate Randall Jordan Aparo; Dr. Mohammad Choudhary, M.D. – failed to safeguard inmate Randall Jordan Aparo; and Captain Mitchell Brown – failed to safeguard inmate Randall Jordan Aparo.

47.     On the night before his death, Randall Jordan-Aparo had been calling his co-informant's[14] mother on a monitored telephone line telling her that he kept trying to get put in lockdown because he was in fear for his life due to the guards at Franklin CI knowing that he was an informant against correctional officers at Jefferson CI.

## DEFENDANTS

48.     **Defendant Diane Andrews (hereinafter "Defendant Andrews")** at all material times hereto was the Warden of Franklin Correctional Institute and was the Warden of Franklin Correctional Institute on the date the Plaintiffs allege the constitutional violations were committed against Randall Jordan-Aparo.  Defendant Andrews acted under color of state law and conspired with Defendants to deprive the Plaintiff of a federally protected right.  The acts of Defendant Andrews were done in furtherance of the conspiracy.  Defendant Andrews conspired with Defendant Rollin Austin (hereinafter "Defendant Austin"), Defendant Mitchell Brown (hereinafter "Defendant Brown"), Defendant Patrick Burch (hereinafter "Defendant Burch") , Defendant Mohammad Choudhary (hereinafter "Defendant Choudhary"), Defendant A. Jones aka Lucy Franklin (hereinafter "Defendant Franklin"), Defendant Chad Gillikin (hereinafter "Gillikin"), Defendant Amy Goodwin (hereinafter "Goodwin"), Defendant Martha Greene (hereinafter "Defendant Greene"), Defendant James Hamm (hereinafter "Defendant Hamm"), Defendant Kevin Hampton (hereinafter "Defendant Hampton"), Defendant Pamela T. Housholder (hereinafter "Defendant Housholder"), Defendant Joshua Martina (hereinafter "Defendant Martina", Defendant Ola Melissa Riley (hereinafter "Defendant Riley") and Defendant Chris Spangler (hereinafter "Defendant Spangler"). The purpose of the conspiracy to which Defendant Andrews was a party was to formulate and execute a plot, plan or agreement to conceal the murder

---

[14] The co-informant was sent to another prison.

and or manslaughter of Randall Jordan-Aparo from Florida Department of Law Enforcement investigators and investigators from the FDOC Office of Inspector General and to conceal that the conspirators acted in a manner which failed to safeguard the safety of Randall Jordan-Aparo in violation of the Eighth Amendment.  The specific acts committed by Defendant Andrews in furtherance of the conspiracy included prohibiting investigators from questioning inmate eyewitnesses, finding that the use of force against Randall Jordan-Aparo was in accordance with Florida Department of Corrections Use of Force guidelines and causing an inmate witness's sister to receive a discipline report in connection with the sisters letters to senior FDOC officials concerning the death of Randall Jordan-Aparo and her brothers fear of retaliation as a result of his witnessing the events surrounding the death of Aparo.

49.     **Defendant Austin** at all material times hereto was a Lieutenant employed at Franklin Correctional Institute.  Defendant Austin directly participated in the unlawful murder or manslaughter of Randall Jordan-Aparo by causing and directing the unauthorized and illegal use of CNS gas against Randall Jordan-Aparo on September 19, 2010 in violation of 42 U.S.C. 1983.  Further Defendant Austin conspired with Defendant Andrews, Defendant Brown, Defendant Burch, Defendant Choudhary, Defendant Franklin, Defendant Gillikin, Defendant Goodwin, Defendant Greene, Defendant Hamm, Defendant Hampton, Defendant Housholder, Defendant Martina, Defendant Riley and Defendant Spangler to cause false Incident Reports, Use of Force Reports and provided false sworn statements concerning the death of Randall Jordan-Aparo. The purpose of the conspiracy, to which Defendant Austin was a party, was to formulate and execute a plot, plan or agreement to conceal the murder and or manslaughter of Randall Jordan-Aparo from Florida Department of Law Enforcement investigators and investigators from the FDOC Office of

Inspector General and to conceal that the conspirators acted in a manner which failed to safeguard the safety of Randall Jordan-Aparo in violation of the Eighth Amendment of the Constitution.

50.     **Defendant Burch** at all material times hereto was a Correctional Officer employed at Franklin Correctional Institute.  Defendant Burch directly participated in the unlawful murder or manslaughter of Randall Jordan-Aparo by causing and directing the unauthorized and illegal use of CNS gas against Randall Jordan-Aparo on September 19, 2010 in violation of 42 U.S.C. 1983.  Further Defendant Burch conspired with Defendant Andrews, Defendant Austin, Defendant Brown, Defendant Choudhary, Defendant Franklin, Defendant Gillikin, Defendant Goodwin, Defendant Greene, Defendant Hamm, Defendant Hampton, Defendant Housholder, Defendant Martina, Defendant Riley and Defendant Spangler to cause false Incident Reports, Use of Force Reports and provided false sworn statements concerning the death of Randall Jordan-Aparo. The purpose of the conspiracy, to which Defendant Burch was a party, was to formulate and execute a plot, plan or agreement to conceal the murder and or manslaughter of Randall Jordan-Aparo from Florida Department of Law Enforcement investigators and investigators from the FDOC Office of Inspector General and to conceal that the conspirators acted in a manner which failed to safeguard the safety of Randall Jordan-Aparo in violation of the Eighth Amendment of the Constitution.

51.     **Defendant Brown** at all material times hereto was a Captain employed at Franklin Correctional Institute.  Defendant Brown set in motion the acts of murder and or manslaughter, which lead to the death of Randall Jordan-Aparo by causing Aparo to be placed in confinement directly from the infirmary without a medical directive or physicians order and with the knowledge that Aparo would be subject to an unwritten rule at Franklin Correctional Institute that an inmate who cursed at correctional staff would be subject to CNS gassing.  Further Defendant Brown conspired with Defendant Andrews, Defendant Austin, Defendant Burch, Defendant Choudhary,

Defendant Franklin, Defendant Gillikin, Defendant Goodwin, Defendant Greene, Defendant Hamm, Defendant Hampton, Defendant Housholder, Defendant Martina, Defendant Riley and Defendant  Spangler to cause the preparation of false Incident Reports, Use of Force Reports and provided false sworn statements concerning the death of Randall Jordan-Aparo. The purpose of the conspiracy, to which Defendant Brown was a party, was to formulate and execute a plot, plan or agreement to conceal the murder and or manslaughter of Randall Jordan-Aparo from Florida Department of Law Enforcement investigators and investigators from the FDOC Office of Inspector General and to conceal that the conspirators acted in a manner which failed to safeguard the safety of Randall Jordan-Aparo in violation of the Eighth Amendment of the Constitution.

52.    **Defendant Choudhary** at all material times hereto was a medical doctor employed at Franklin Correctional Institute.  Defendant Choudhary directly participated in the unlawful murder or manslaughter of Randall Jordan-Aparo by failing to provide medical care to Randall Jordan-Aparo after he had been gassed.  Further Defendant Choudhary failed to call an ambulance to the facility after he determined that Randall Jordan-Aparo did not have a blood pressure, that medical staff could not place an IV and most likely that Aparo was dead at the time of his post use of force medical examination.  Further Defendant Choudhary caused the preparation of false medical records and directed the unauthorized and illegal use of CNS gas against Randall Jordan-Aparo on September 19, 2010 in violation of 42 U.S.C. 1983, by failing to advise Defendant Austin that Aparo suffered from a physical condition causing shortness of breath and that Aparo had been noted to have been short of breath at least four times in the preceding 48 hours.  Further Defendant Choudhary conspired with Defendant Andrews, Defendant Austin, Defendant Brown, Defendant Burch, Defendant Franklin, Defendant Gillikin, Defendant Goodwin, Defendant Greene, Defendant Hamm, Defendant Hampton, Defendant Housholder, Defendant Martina, Defendant

Riley and Defendant Spangler to cause false Incident Reports, Use Of Force Reports and provided false sworn statements concerning the death of Randall Jordan-Aparo. The purpose of the conspiracy to which Defendant Choudhary was a party was to formulate and execute a plot, plan or agreement to conceal the murder and or manslaughter of Randall Jordan-Aparo from Florida Department of Law Enforcement investigators and investigators from the FDOC Office of Inspector General and to conceal that the conspirators acted in a manner which failed to safeguard the safety of Randall Jordan-Aparo in violation of the Eighth Amendment of the Constitution.

53.   **Defendant Franklin** at all material times hereto was a Nurse employed at Franklin Correctional Institute.  Defendant Franklin directly participated in the unlawful murder or manslaughter of Randall Jordan-Aparo by causing and directing the unauthorized and illegal use of CNS gas against Randall Jordan-Aparo on September 19, 2010 in violation of 42 U.S.C. 1983. Defendant Franklin knew that Randall Jordan-Aparo was not in any physical condition on September 19, 2010 but falsely charted that Aparo could be subject to CNS gas after inquiry. Defendant Franklin was aware of the unwritten rule that any inmate who cursed staff would be subject to being gassed.  Further Defendant Franklin conspired with Defendant Andrews, Defendant Austin, Defendant Brown, Defendant Burch, Defendant Choudhary, Defendant Gillikin, Defendant Goodwin, Defendant Greene, Defendant Hamm, Defendant Hampton, Defendant Housholder, Defendant Martina, Defendant Riley and Defendant Spangler to cause false Incident Reports, Use of Force Reports, provided false sworn statements and prepared false medical records concerning the death of Randall Jordan-Aparo. The purpose of the conspiracy to which Defendant Franklin was a party was to formulate and execute a plot, plan or agreement to conceal the murder and or manslaughter of Randall Jordan-Aparo from Florida Department of Law Enforcement investigators and investigators from the FDOC Office of Inspector General and to

conceal that the conspirators acted in a manner which failed to safeguard the safety of Randall Jordan-Aparo in violation of the Eighth Amendment of the Constitution.

54.     **Defendant Gillikin** at all material times hereto was a Sergeant employed at Franklin Correctional Institute.  Defendant Gillikin directly participated in the unlawful murder or manslaughter of Randall Jordan-Aparo by causing and directing the unauthorized and illegal use of CNS gas against Randall Jordan-Aparo on September 19, 2010 in violation of 42 U.S.C. 1983. Defendant Gillikin was aware of the unwritten rule that any inmate who cursed staff would be subject to being gassed.   Further Defendant Gillikin conspired with Defendant Andrews, Defendant Austin, Defendant Brown, Defendant Burch, Defendant Choudhary, Defendant Franklin, Defendant Goodwin, Defendant Greene, Defendant Hamm, Defendant Hampton, Defendant Housholder, Defendant Martina, Defendant Riley and Defendant Spangler to cause false Incident Reports, Use of Force Reports and provided false sworn statements concerning the death of Randall Jordan-Aparo. The purpose of the conspiracy to which Defendant Gillikin was a party was to formulate and execute a plot, plan or agreement to conceal the murder and or manslaughter of Randall Jordan-Aparo from Florida Department of Law Enforcement investigators and investigators from the FDOC Office of Inspector General and to conceal that the conspirators acted in a manner which failed to safeguard the safety of Randall Jordan-Aparo in violation of the Eighth Amendment of the Constitution.

55.     **Defendant Goodwin** at all material times hereto was a Nurse employed at Franklin Correctional Institute.  Defendant Goodwin directly participated in the unlawful murder or manslaughter of Randall Jordan-Aparo by causing and directing the unauthorized and illegal use of CNS gas against Randall Jordan-Aparo on September 19, 2010 in violation of 42 U.S.C. 1983. Defendant Goodwin was aware of the unwritten rule that any inmate who cursed staff would be

subject to being gassed.   Further Defendant Goodwin conspired with Defendant Andrews, Defendant Austin, Defendant Brown, Defendant Burch, Defendant Choudhary, Defendant Franklin, Defendant Gillikin, Defendant Greene, Defendant Hamm, Defendant Hampton, Defendant Housholder, Defendant Martina, , Defendant Riley and Defendant Spangler to cause false Incident Reports, Use of Force Reports and provided false sworn statements concerning the death of Randall Jordan-Aparo. The purpose of the conspiracy to which Defendant Goodwin was a party was to formulate and execute a plot, plan or agreement to conceal the murder and or manslaughter of Randall Jordan-Aparo from Florida Department of Law Enforcement investigators and investigators from the FDOC Office of Inspector General and to conceal that the conspirators acted in a manner which failed to safeguard the safety of Randall Jordan-Aparo in violation of the Eighth Amendment of the Constitution.

56.   **Defendant Greene** at all material times hereto was a Nurse employed at Franklin Correctional Institute.   Defendant Greene directly participated in the unlawful murder or manslaughter of Randall Jordan-Aparo by causing and directing the unauthorized and illegal use of CNS gas against Randall Jordan-Aparo on September 19, 2010 in violation of 42 U.S.C. 1983. Defendant Greene was aware of the unwritten rule that any inmate who cursed staff would be subject to being gassed.  Further Defendant Greene conspired with Defendant Andrews, Defendant Austin, Defendant Brown, Defendant Burch, Defendant Choudhary, Defendant Franklin, Defendant Gillikin, Defendant Goodwin, Defendant Hamm, Defendant Hampton, Defendant Housholder, Defendant Martina, Defendant Riley and Defendant Spangler to cause false medical records, Incident Reports, Use of Force Reports and provided false sworn statements concerning the death of Randall Jordan-Aparo. The purpose of the conspiracy to which Defendant Greene was a party was to formulate and execute a plot, plan or agreement to conceal the murder and or

24

manslaughter of Randall Jordan-Aparo from Florida Department of Law Enforcement investigators and investigators from the FDOC Office of Inspector General and to conceal that the conspirators acted in a manner which failed to safeguard the safety of Randall Jordan-Aparo in violation of the Eighth Amendment of the Constitution.

57.     **Defendant Hamm** at all material times hereto was a Sergeant employed at Franklin Correctional Institute.   Defendant Hamm directly participated in the unlawful murder or manslaughter of Randall Jordan-Aparo by causing and directing the unauthorized and illegal use of CNS gas against Randall Jordan-Aparo on September 19, 2010 in violation of 42 U.S.C. 1983. Defendant Hamm was aware of the unwritten rule that any inmate who cursed staff would be subject to being gassed.     Further Defendant Hamm conspired with Defendant Andrews, Defendant Austin, Defendant Brown, Defendant Burch, Defendant Choudhary, Defendant Franklin, Defendant Gillikin, Defendant Greene, Defendant Goodwin, Defendant Hampton, Defendant Housholder, Defendant Martina, Defendant Riley and Defendant Spangler to cause false Incident Reports, Use of Force Reports and provided false sworn statements concerning the death of Randall Jordan-Aparo. The purpose of the conspiracy to which Defendant Hamm was a party was to formulate and execute a plot, plan or agreement to conceal the murder and or manslaughter of Randall Jordan-Aparo from Florida Department of Law Enforcement investigators and investigators from the FDOC Office of Inspector General and to conceal that the conspirators acted in a manner which failed to safeguard the safety of Randall Jordan-Aparo in violation of the Eighth Amendment of the Constitution.

58.     **Defendant Hampton** at all material times hereto was a Corrections Officer employed at Franklin Correctional Institute.  Defendant Hampton was aware of the unwritten rule that any inmate who cursed staff would be subject to being gassed.  Further Defendant Hampton

conspired with Defendant Andrews, Defendant Austin, Defendant Brown, Defendant Burch, Defendant Choudhary, Defendant Franklin, Defendant Gillikin, Defendant Goodwin, Defendant Greene, Defendant Hamm, Defendant Housholder, Defendant Martina, Defendant Riley and Defendant Spangler to cause false Incident Reports, Use of Force Reports and provided false sworn statements concerning the death of Randall Jordan-Aparo. The purpose of the conspiracy to which Defendant Hampton was a party was to formulate and execute a plot, plan or agreement to conceal the murder and or manslaughter of Randall Jordan-Aparo from Florida Department of Law Enforcement investigators and investigators from the FDOC Office of Inspector General and to conceal that the conspirators acted in a manner which failed to safeguard the safety of Randall Jordan-Aparo in violation of the Eighth Amendment of the Constitution.

59.     **Defendant Housholder** at all material times hereto was a Nurse employed at Franklin Correctional Institute.  Defendant Housholder was aware of the unwritten rule that any inmate who cursed staff would be subject to being gassed. Defendant Housholder was aware that Randall Jordan-Aparo was suffering from shortness of breath as early as September 15, 2010. Further Defendant Housholder conspired with Defendant Andrews, Defendant Austin, Defendant Brown, Defendant Burch, Defendant Choudhary, Defendant Franklin, Defendant Gillikin, Defendant Goodwin, Defendant Greene, Defendant Hamm, Defendant Hampton, Defendant Martina, Defendant Riley and Defendant Spangler to cause false Incident Reports, Use of Force Reports and provided false sworn statements concerning the death of Randall Jordan-Aparo. The purpose of the conspiracy to which Defendant Martina was a party was to formulate and execute a plot, plan or agreement to conceal the murder and or manslaughter of Randall Jordan-Aparo from Florida Department of Law Enforcement investigators and investigators from the FDOC Office of

Inspector General and to conceal that the conspirators acted in a manner which failed to safeguard the safety of Randall Jordan-Aparo in violation of the Eighth Amendment of the Constitution.

60. **Defendant Martina** at all material times hereto was a Sergeant employed at Franklin Correctional Institute. Defendant Martina directly participated in the unlawful murder or manslaughter of Randall Jordan-Aparo by causing and directing the unauthorized and illegal use of CNS gas against Randall Jordan-Aparo on September 19, 2010 in violation of 42 U.S.C. 1983. Further Defendant Martina conspired with Defendant Andrews, Defendant Austin, Defendant Brown, Defendant Burch, Defendant Choudhary, Defendant Gillikin, Defendant Goodwin, Defendant Greene, Defendant Hamm, Defendant Hampton, Defendant Housholder, Defendant Martina, Defendant Riley and Defendant Spangler to cause false Incident Reports, Use of Force Reports and provided false sworn statements concerning the death of Randall Jordan-Aparo. The purpose of the conspiracy to which Defendant Martina was a party was to formulate and execute a plot, plan or agreement to conceal the murder and or manslaughter of Randall Jordan-Aparo from Florida Department of Law Enforcement investigators and investigators from the FDOC Office of Inspector General and to conceal that the conspirators acted in a manner which failed to safeguard the safety of Randall Jordan-Aparo in violation of the Eighth Amendment of the Constitution.

61. **Defendant Riley** at all material times hereto was a Nurse employed at Franklin Correctional Institute. Defendant Riley directly participated in the unlawful murder or manslaughter of Randall Jordan-Aparo by causing and directing the unauthorized and illegal use of CNS gas against Randall Jordan-Aparo on September 19, 2010 in violation of 42 U.S.C. 1983. Defendant Riley caused the preparation of false medical records and directed the unauthorized and illegal use of CNS gas against Randall Jordan-Aparo on September 19, 2010 in violation of 42 U.S.C. 1983, by failing to advise Defendant Austin that Aparo suffered from a physical condition

causing shortness of breath and that Aparo had been noted to have been short of breath at least four times in the preceding 48 hours.  Defendant Riley was aware of the unwritten rule that any inmate who cursed staff would be subject to being gassed.    Further Defendant Riley conspired with Defendant Andrews, Defendant Austin, Defendant Brown, Defendant Burch, Defendant Choudhary, Defendant Franklin, Defendant Gillikin, Defendant Goodwin, Defendant Greene, Defendant Hamm, Defendant Hampton, Defendant Housholder, Defendant  Martina, and Defendant  Spangler to cause false medical records, Incident Reports, Use of Force Reports to be prepared and provided false sworn statements concerning the death of Randall Jordan-Aparo. The purpose of the conspiracy to which Defendant Riley was a party was to formulate and execute a plot, plan or agreement to conceal the murder and or manslaughter of Randall Jordan-Aparo from Florida Department of Law Enforcement investigators and investigators from the FDOC Office of Inspector General and to conceal that the conspirators acted in a manner which failed to safeguard the safety of Randall Jordan-Aparo in violation of the Eighth Amendment of the Constitution.

62.  **Defendant Spangler** at all material times hereto was a Corrections Officer employed at Franklin Correctional Institute.  Defendant Spangler directly participated in the unlawful murder or manslaughter of Randall Jordan-Aparo by causing and directing the unauthorized and illegal use of CNS gas against Randall Jordan-Aparo on September 19, 2010 in violation of 42 U.S.C. 1983.  Defendant Spangler was aware of the unwritten rule that any inmate who cursed staff would be subject to being gassed.  Further Defendant Spangler conspired with Defendant Andrews, Defendant Austin, Defendant Brown, Defendant Burch, Defendant Choudhary, Defendant Franklin, Defendant Gillikin, Defendant Goodwin, Defendant Greene, Defendant Hamm, Defendant Hampton, Defendant Housholder, Defendant Martina, and Defendant Riley to cause false Incident Reports, Use of Force Reports and provided false sworn

statements concerning the death of Randall Jordan-Aparo. The purpose of the conspiracy, to which Defendant Spangler was a party, was to formulate and execute a plot, plan or agreement to conceal the murder and or manslaughter of Randall Jordan-Aparo from Florida Department of Law Enforcement investigators and investigators from the FDOC Office of Inspector General and to conceal that the conspirators acted in a manner which failed to safeguard the safety of Randall Jordan-Aparo in violation of the Eighth Amendment of the Constitution.

63.    **Defendant Florida Department of Corrections (FDOC)**. FDOC is an agency of the State of Florida whose headquarters is in Tallahassee, Florida. At all material times hereto, the individual Defendants described above were employees of FDOC and at the relevant times described in this complaint, were not acting within the scope and course of their employment, but were acting under color of state law. FDOC has approximately 20,000 employees and is an agency under the purview of the Executive Office of the Governor. The FDOC and individual Defendants as conspirators enjoyed peculiar power of coercion prior to and after the death of Randall Jordan Aparo because of the force of numbers and other exceptional circumstances[15], and such power of coercion caused constitutional deprivations, cause and cover up Randall Jordan Aparo's death, and delay justice for the Plaintiff. All conditions precedent have been met as to Defendant FDOC in the filing of this action.

### COUNT  I
### WRONGFUL DEATH (FLA. STAT 768.16 et al)

64.    The Plaintiff, The Estate of Randall Jordan-Aparo realleges paragraphs 1 through 47 and paragraphs 49 through 63.

---

[15] The unusual circumstances include ability to delay, deter, undermine, and falsify the records, testimony, and investigation into the death of Randall Jordan-Aparo. In fact, these conspirators caused the investigation of an obvious murder to last for over 6 years in an effort, at least in part, to deprive the Plaintiff of access to the courts.

65. This action is brought pursuant to Fla. Stat 768.16 et al, by the Plaintiff, The Estate of Randall Jordan-Aparo in and on behalf of Minor Child Aparo, the statutory survivor of Randall Jordan-Aparo.

66. Defendants Austin, Brown, Burch, Choudhary, Franklin, Gillikin, Goodwin, Greene, Hamm, Hampton, Housholder, Martina, Riley and Spangler caused the intentional death of the Decedent, Randall Jordan Aparo in violation of Florida Statute 768.16 et al, 782.04, or 782.07.

67. The acts of Defendants Austin, Brown, Burch, Choudhary, Franklin, Gillikin, Goodwin, Greene, Hamm, Hampton, Housholder, Martina, Riley and Spangler were the proximate cause and direct cause of the death of Randall Jordan Aparo.

68. The Plaintiff the Estate of Randall Jordan Aparo seeks all wrongful death damages allowable under Florida Statute 768.21 for itself and for the statutory survivor Minor Child Aparo.

WHEREFORE, the Plaintiff, the Estate of Randall Jordan-Aparo demands judgment against the Defendants listed above in paragraph 66 jointly and severally for compensatory damages, punitive damages, pain and suffering of Minor Child Aparo, lost wages, costs and such other relief as this court deems appropriate.

## COUNT II
### Common Law Civil Conspiracy pursuant to *Margolin v. Morton F. Plant Hosp. Ass'n, Inc.*, 342 So. 2d 1090 (Fla. 2d DCA 1977) see also *Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1542 (11th Cir. 1990).

69. The Plaintiff, The Estate of Randall Jordan Aparo realleges paragraphs 1 through 63 herein.

70. Defendants Andrews, Austin, Brown, Burch, Choudhary, Franklin, Gillikin, Goodwin, Greene, Hamm, Hampton, Housholder, Martina, Riley, Spangler, each acting outside the scope of their employment, and FDOC, acted as conspirators to cause and then conceal the

death of Randall Jordan-Aparo. Thus the underlying tort, which formed the purpose of a conspiracy, is murder or manslaughter.

71.     Alternatively, the Defendants are liable for the tort of civil conspiracy, standing alone, based upon *Margolin v. Morton F. Plant Hosp. Ass'n, Inc.*, 342 So. 2d 1090 (Fla. 2d DCA 1977) and *Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1542 (11th Cir. 1990)[16] based upon the reason of the coercive force of numbers and the exceptional circumstances surrounding the facts of this case which have led to the instant cause of action.

72.     The term of the conspiracy commenced immediately prior to the death of Randall Jordan-Aparo and ended at such time as there was a determination in 2016 that there would be no criminal charges filed over his death.

73.     The conspiracy between the Defendants was a conspiracy to do an unlawful act by unlawful means.

74.     Each Defendant engaged in overt acts in furtherance of the conspiracy as described herein above.

75.     The damage to the Plaintiff is a violation of her constitutional protections under the First Amendment, the Article IV Privileges and Immunities Clause, the Fifth Amendment, the Fourteenth Amendment under the U.S. Constitution, and Article I, Section 21, of the Florida Constitution.

76.     The damage to Randall Jordan-Aparo, as a result of the conspiracy, was his death or murder.

WHEREFORE, the Plaintiff, the Estate of Randall Jordan Aparo demands judgment against the Defendants for compensatory damages, punitive damages, pre-death pain and suffering

---

[16] These cases are essentially anti-trust cases, but also can be applied to other factual situations where coercive conduct and exceptional circumstances involving numerous actors and the largest state agency in Florida.

of Randall Jordan Aparo, attorneys' fees, costs and such other relief as this court deems appropriate.

**COUNT III**
**VIOLATION OF 42 U.S.C. 1983 (EIGHTH AMENDMENT CLAIM)**

77.     The Estate of Randall Jordan Aparo and his daughter, Minor Child Aparo bring this claim for the violation of 42 U.S.C. 1983. The Plaintiffs, The Estate of Randall Jordan Aparo, realleges paragraphs 1 through 47 and paragraphs 49 through 63.

78.     Defendants Austin, Brown, Burch, Choudhary, Franklin, Gillikin, Goodwin, Greene, Franklin, Hamm, Hampton, Martina, Mitchel, Riley and Spangler are sued for violation of 42 USC 1983 (Eighth Amendment Claim) in their individual capacities.

79.     At all material times hereto the Defendants named in paragraph 78 above acted under color of state law and intentionally deprived Randall Jordan Aparo of his rights under the United States Constitution.

80.     Specifically the Plaintiffs allege that the Defendants named in paragraph 78 above, while working in a correctional facility owned and operated by the State of Florida, intentionally violated Randall Jordan Aparo's right as a prisoner to be free from cruel and unusual punishment and to be free from the use of excessive force while being detained as a prisoner.

81.     The force used by the Defendants or caused to be used by the Defendants named in Paragraph 78 above was excessive.  The Defendants acted under the color of state law in the acts committed or caused to be committed by said Defendants caused the Plaintiff injuries.

WHEREFORE, the Plaintiff, the Estate of Randall Jordan-Aparo demands judgment against the Defendants listed above in paragraph 78 for compensatory damages, punitive damages, pre and post death pain and suffering of Randall Jordan Aparo, the post death pain and suffering of Minor Child Aparo, attorney's fees, costs and such other relief as this court deems appropriate.

## COUNT IV
## CONSPIRACY TO VIOLATE 42 U.S.C. 1983

82.     The Plaintiff, The Estate of Randall Jordan Aparo realleges paragraphs 1 through 63 above.

83.     Defendants Andrews, Austin, Brown, Burch, Choudhary, Franklin, Gillikin, Goodwin, Greene, Hamm, Hampton, Household, Martina, Riley, and Spangler, are sued in their individual capacities.

84.     The Defendants listed in paragraph 83 above engaged in a conspiracy involving state action.

85.     The conspiracy involved a deprivation of civil rights and the acts of the Defendants alleged above were done in furtherance of such conspiracy. The conspiracy involved the deprivation and interference with the Plaintiff's right of court access by state agents who intentionally concealed the true facts about the crime committed against Randall Jordan-Aparo to deny the Plaintiff her right access to the courts, in violation of the First Amendment, the Article IV Privileges and Immunities Clause, the Fifth Amendment, the Fourteenth Amendment, and Article I, Section 21, of the Florida Constitution.

86.     Randall Jordan Aparo in fact and in law was a subject of an actual violation of his rights protected by 42 U.S.C. 1983 to the extent such that the actions of the conspirators were undertaken to conceal violations of the Eighth Amendment of the United States Constitution.

87.     The Defendants listed in paragraph 83 above acted in combination to do a criminal act.  The agreement among the Defendant conspirators was in furtherance of the conspiracy. These acts by the Defendant conspirators was in furtherance of the conspiracy.

88.     The time period of the conspiracy alleged herein runs from at least June 1, 2010,[17] to 2016 when it was determined that no criminal charges would be brought.  The object of the conspiracy was to conceal the means and methods of the death of Randall Jordan Aparo and the constitutional violations alleged above.

WHEREFORE, the Plaintiff, the Estate of Randall Jordan Aparo demands judgment against the Defendants listed above in paragraph 83 for compensatory damages, punitive damages, pre and post death pain and suffering of Randall Jordan Aparo, attorney's fees, costs and such other relief as this court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial for all counts alleged above.

DATED this 10th day of February, 2017.

Respectfully submitted,

The Law Offices of
STEVEN R. ANDREWS, P.A.
822 North Monroe Street
Tallahassee, Florida 32303
(850) 681-6416 / FAX: 681-6984

*//s// Steven R. Andrews*
STEVEN R. ANDREWS (FBN 0263680)
service@andrewslawoffice.com
*Attorney for Plaintiff*

---

[17] At or about the time that Randall Jordan-Aparo was known to have been an informant against correctional officers at Jefferson CI.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served by electronic transmission this 10th day of February, 2017, to:

W. Peter Martin
Dennis, Jackson, Martin & Fontela, P.A.
1591 Summit Lake Drive, Suite 200
Tallahassee, Florida  32317
peter@djmf-law.com

/s/  ***Steven R. Andrews***
STEVEN R. ANDREWS