UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


 AMANDA CIMILLO, as
Personal Representative of the
Estate of RANDALL JORDAN-APARO,
Deceased and MINOR CHILD APARO
The Natural Child of Randall Jordan-Aparo
By and Through Her Mother and Natural Guardian
Amanda Cimillo,

        Plaintiffs,


vs.                                            CASE NO. 4:16-cv-00584-RH-CAS

DIANE ANDREWS, ROLLIN AUSTIN,
MITCHELL BROWN, PATRICK BURCH,
MOHAMMAD SALMAN CHOUDHARY, M.D.,
A. JONES (aka LUCY FRANKLIN), SENIOR L.P.N,
CHAD EVANS GILLIKIN,
AMY GOODWIN, SENIOR L.P.N,
MARTHA GREENE, SENIOR L.P.N,
JAMES I. HAMM, KEVIN ALLEN HAMPTON,
PAMELA T. HOUSHOLDER, SENIOR R.N.,
JOSHUA MARTINA, GEORGE MITCHELL,
OLA MELISSA RILEY, SENIOR L.P.N, and
CHRISTOPHER SPANGLER,

        Defendants.
_____/

**PLAINTIFFS' RESPONSE TO DEFENDANTS DIANE ANDREWS AND FLORIDA
DEPARTMENT OF CORRECTIONS' MOTION TO DISMISS PLAINTIFFS'
SECOND AMENDED COMPLAINT**

        Plaintiffs, Estate of Randall Jordan-Aparo, Deceased, by and through its Personal

Representative, Amanda Cimillo, and Minor Child Aparo natural minor child of the deceased

Randall Jordan-Aparo, by and through the undersigned counsel, hereby files this Response to

Defendants Diane Andrews and Florida Department of Corrections' (hereinafter "DOC") Motion

to Dismiss Plaintiffs' Second Amended Complaint (Doc. 79) and states as follows:

### I.    Plaintiffs dismiss Diane Andrews as a defendant in this action.

Diane Andrews has been dismissed from all claims against her in this action, thereby making her Motion to Dismiss and Plaintiffs' Response to her Motion to Dismiss moot.

### II.   Plaintiff Minor Child Aparo has dismissed her ADA and RA Claim against DOC.

Plaintiff Minor Child Aparo (hereinafter "Plaintiff Minor Child") concedes that the Second Amended Complaint does not allege a claim under Title II of the Americans with Disabilities Act (hereinafter "ADA") and the Rehabilitation Act (hereinafter "RA") on behalf of Plaintiff Minor Child Aparo. Plaintiff Minor Child Aparo did not experience discrimination or retaliation by DOC for her association with Randall Jordan-Aparo. Lastly, In Plaintiff's Motion for Leave to File Third Amended Complaint and proposed Third Amended Complaint, the ADA and RA claim filed on behalf of Plaintiff Minor Child has been withdrawn.

### III.  Plaintiff Estate of Randall Jordan Aparo has standing to bring its ADA and RA Claims against Defendant DOC.

Plaintiff Estate of Randall Jordan-Aparo (hereinafter "Plaintiff Estate") has standing to bring claims on behalf of Randall Jordan-Aparo under Title II of the ADA and the RA.

To the extent Defendant DOC contends that Plaintiff Estate lacks standing to bring a claim under the ADA and RA,[1] such argument is meritless and should be disregarded by the Court. Pursuant to 42 U.S.C. § 1983, Count V is purely a federal cause of action for violations of the ADA and RA that is remedial in nature. Thus, a claim under the ADA survives the death of Aparo and Plaintiff Estate has standing, as personal representative of the Estate of Randall Jordan-Aparo,

---

[1] The portion of Defendant's Motion to Dismiss related to standing to bring the ADA and RA claim is unclear as to whom it seeks dismissal for lack of standing. Defendant DOC refers to dismissal of the "Plaintiff/Minor Child" as the party it seeks to dismiss, however, in its closing paragraph, Defendant DOC states "Therefore, the Plaintiff and Minor Child lack standing…" *See See ECF No. 72, pg. 26*. Thus, Plaintiff Estate's response assumes that Defendant DOC also seeks dismissal of Plaintiff Estate's ADA and RA claim.

to maintain the claim. In fact, Defendant DOC has conceded as much in another pending case with the same claim in the Southern District of Florida. See DOC Motion to Dismiss, and Order on Motion to Dismiss, Chapman et al. v. Fla. Dept. of Corr. et al., Case No. 14-23323 (S.D.Fla. Oct. 28, 2016), attached as **Exhibit A and Exhibit B, respectively.**

Count V is a disability-based discrimination claim against the Defendants for violating Title II of the ADA and the RA. Whether a federal law discrimination claim survives the death of the claimant relies on either federal common law or forum state law principles, depending on the circuit. In the Eleventh Circuit, courts have relied on federal common law when determining survival of claims. *See, e.g.*, *U.S. v. NEC Corp.*, 11 F.3d 136, 137 (11th Cir. 1993) (applying federal common law to FCA claim); *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859 (11th Cir. 1986) (applying federal common law to Title VII claim).

Under federal common law, a federal cause of action will survive in favor of the plaintiff's estate unless it is an action for penalties. *See Kilgo*, 789 F.2d at 876 (citing *James v. Home Construction Co. of Mobile*, 621 F.2d 727, 729-30 (5th Cir.1980)). In other words, actions that are remedial in nature will survive rather than abate. In determining whether recovery is remedial or penal, courts commonly apply the *Murphy* test. Three factors must be considered: (1) whether the purpose of the action was to redress individual wrongs or more general wrongs to the public; (2) whether the recovery runs to the individual harmed or to the public; and (3) whether the recovery was wholly disproportionate to the harm suffered. *See Murphy v. Household Fin. Corp.*, 560 F.2d 206, 209 (6th Cir. 1977); *see also U.S. v. NEC Corp.*, 11 F.3d at 137; *Kilgo*, 789 F.2d at 876.

In applying the *Murphy* factors to this case, clearly Plaintiff Estate's claim under the ADA/RA is remedial in nature. As to the first consideration, the primary purpose of the ADA is to eradicate disability-based discrimination. While the Eleventh Circuit has not specifically

addressed survival of ADA claims, the Eighth Circuit has, by applying federal common law, held

that claims under the ADA are remedial and therefore survive the death of the aggrieved individual.

*See Guenther v. Griffin Constr. Co., Inc.*, 846 F.3d 979 (8th Cir. 2017). A cause of action is created

for disabled plaintiffs to allege they were discriminated against because of their disability. *Id.* at

984. Thus, the disabled person is personally being remedied for the unlawfully discriminatory

practices of another, rather than the general public. *See id.*

Further, Plaintiff clearly alleges that Defendant DOC discriminated against Randall Jordan

Aparo, a disabled adult, by abusing and gassing him and then denying him medical treatment prior

to his death. *See ECF No. 72,* ¶¶ 26-42. Plaintiff Estate seeks compensatory relief for such

discrimination and retaliation. *Id. at Count V*. Thus, the second factor is satisfied to overcome a

motion to dismiss. Lastly, the third consideration is met since Plaintiff is seeking relief associated

with loss earning, pain and suffering, and emotional distress caused as a result of Defendant

discriminatory practices, which relief is clearly compensatory and not punitive in nature.  *Id*.

Accordingly, because Plaintiff Estate claim under the ADA/RA constitutes a federal cause

of action that is remedial in nature, Count V survives the death of Randall Jordan Aparo. Therefore,

Plaintiff Estate has standing with regard to Count V and Defendant's motion to dismiss should be

denied.

IV.     **The entire Second Amended Complaint details DOC's violations of the ADA
        and RA with respect to Randall Jordan-Aparo by Defendant DOC, through
        its nursing and security staff.**

While Defendant DOC selectively ignored many allegations made by Plaintiff Estate in

support of its specious argument that Plaintiff Estate failed to allege any discrimination or

retaliation by Defendant DOC, the Second Amended Complaint clearly states a claim under Title

II of the ADA and claim under the RA. Plaintiffs have alleged (1) denial of care, (2) discrimination,

4

and (3) retaliation in support of Count V of their Second Amended Complaint. Additionally, Defendant DOC's argument that the relevant time period for Plaintiff's ADA and RA claim is limited to September 15-19, 2010. This is incorrect.

For the purposes of the motion, Defendant DOC does not challenge that Aparo had a disability, Osler-Weber-Rendu Disease, the only disability alleged by Plaintiffs.

*NURSING STAFF*

Plaintiffs alleged that it was well documented within Defendant DOC that Aparo suffered from Osler-Weber-Rendu Disease. *Id.* at ¶ 12.[2] Plaintiffs allege that Randall Jordan-Aparo presented to the FCI medical unit after declaring a medical emergency for symptoms associated with Osler-Weber-Rendu. *Id.* at ¶ 15. Plaintiffs allege that in response to declaring this medical emergency and presenting/complaining of symptoms directly associated with Osler-Weber-Rendu disease, Aparo was threatened with a disciplinary report.[3] Defendant DOC provided no care or treatment for Aparo's symptoms, and refused to let him heal in the confinement area. *Id.*

From September 15-18, 2010, Aparo declared three inmate medical emergencies. *Id.* ¶ 15-26. Further, Aparo complained of ailments directly correlated with Osler-Weber-Rendu, including severe shortness of breath. *Id.* Aparo's condition was so terrible that his resting heart rate reached and exceeded 120 beats per minute, indicating that he was in tachycardia. *Id.* While Aparo

---

[2] After retaining their experts and receiving additional discovery from Defendant DOC, it has now become clear to Plaintiffs that DOC failed to research Osler-Weber-Rendu in anyway prior to the death of Aparo, despite knowledge of his disease and disability. Further, DOC failed to request Aparo's medical records from his hematologist and specialist for Osler-Weber-Rendu, which Plaintiffs' expert says is also a reckless disregard of treatment to Aparo, especially since no medical staff at FCI had previously treated a patient with Osler-Weber-Rendu. Additionally, subsequent discovery shows that neither the DOC medical records nor the DOC records contain any information concerning the care and treatment of Osler-Weber-Rendu. The DOC records subsequently produced indicate that Aparo never received any medication that would have addressed the bleeding episodes he suffered due to Osler-Weber-Rendu disease. Additionally, subsequent discovery uncovered that Patricia Lemon's threat of a disciplinary was to suggest that Aparo was using his Olser-Weber-Rendu disease to manipulate the system.

[3] Subsequent discovery shows that Aparo was in fact disciplined, losing 30 days of gain time from his interaction with Defendant Goodwin.

demanded to be taken to the hospital so that someone could properly treat his condition, and even threatened to sue after DOC told him "no", Defendant DOC charted that he was being disrespectful. *Id*. Aparo again demanded to be taken to the hospital on September 18, 2010, after he passed out, fell off the toilet, and was in constant pain. *Id*. Aparo's condition was worsening, requiring him to have to be transported by wheelchair to the infirmary multiple times on September 17, 2010. *Id*.

Aparo continued complaining of breathing problems into September 19, 2010[4], prior to being gassed and murdered by the Defendants. *Id*. at ¶ 15-32. The Second Amended Complaint also alleges that the Nurse that refused to provide medical care to Aparo, Defendant A. Jones, a.k.a. Lucy Franklin (hereinafter "Franklin/Jones"), after he requested care for Osler-Weber-Rendu disease, also approved the gassing of Aparo, essentially signing his death warrant. *Id*. Additionally, in signing the authorization of use of chemical agent on Aparo, Defendant Franklin/Jones executed a document that stated that she had reviewed the medical records of Aparo, and concluded that Aparo had "no known medical conditions that would be exacerbated by the use of chemical restraints agent." *Id*. at ¶ 26. The Second Amended Complaint alleges that this approval to gas Aparo was false based on Defendant Franklin/Jones's own charting on the same day. *Id*. The medical staff and security staff at FCI displayed a reckless disregard for the care and treatment of Aparo when they permitted Aparo to be gassed, failed to stop the gassing, and carried out the gassing, despite actual knowledge of his Osler-Weber-Rendu disease, and the then-current physical condition he was in. *Id* at ¶ 14-34. The Second Amended Complaint alleges that the gassing was a murder, and that the Defendants, including Defendant DOC, showed a reckless disregard for the care and treatment of Aparo's disability. Further, the Second Amended Complaint

---

[4] Subsequent discover uncovered that as of September 19, 2010, Aparo was only two days from being released from DOC. In other words, Aparo was murdered two days before he was scheduled to be released.

clearly alleges that he was retaliated against after he requested specific treatment for his Osler-Weber-Rendu disease.[5]

The allegations in the Second Amended Complaint suggest that Aparo was also gassed in retaliation for his demanded medical care and threats to sue the staff for completely ignoring his medical complaints while he was in the throes of death.

Moreover, Defendant DOC, through Defendants Choudhary and Riley, failed to provide any medical care and treatment when they were unable to obtain a blood pressure for Aparo after the gassing on two separate occasions. *Id*. at ¶ 29. This is clearly a reckless disregard to the disabled condition of Aparo, which was caused by his Osler-Weber-Rendu disease and the Defendants' gassing.

### *SECURITY STAFF*

As for the security staff, the Defendant security staff gassed Aparo, claiming he was being disruptive when all he was doing was begging for medical attention. *Id*. at ¶ 29-42. Aparo continued to be gassed even while he begged for them to stop and begged for a nurse, waiting for anyone to come and save him. *Id*. Unfortunately, Aparo was "Waiting for Godot."

While Aparo begged for medical attention prior to being gassed, Defendant security staff harassed him, accusing him of having sex with other men in prison, threatening to put gas cans down his mouth if he didn't stop complaining, and threatening force for a "slick-ass mouth." *Id*. ¶ 36-37. The Second Amended Complaint also alleges that Aparo was gassed on September 19, 2010, right after he declared a medical emergency. *Id*. at ¶¶ 30, 42.

With respect to the security staff, the Second Amended Complaint could not be more clear: Aparo was gassed by the Defendants for begging for medical attention. Aparo actually declared

---

[5] Subsequently produced DOC records show that Aparo requested a specific shot or treatment which would have been a treatment to alleviate the Osler-Weber-Rendu symptoms Aparo was suffering from at the time.

an inmate medical emergency and, instead of being transported to the infirmary, he was gassed repeatedly and punitively.

As to both the nursing staff and the security staff, the Second Amended Complaint alleges that Aparo was abused because of his disabilities by DOC's agents and employees at FCI when they gassed him and denied medical treatment for the injuries he suffered due to his disability. *Id*. at ¶ 99. Further, it is alleged that the gassing and denial of medical treatment was in spite of Aparo's disability. *Id*. In fact, the Second Amended Complaint alleges that DOC's agents and employees discriminated against Aparo by specifically abusing him because of his disease and excluding him from treatment programs for Osler-Weber-Rendu disease by subjecting him to discrimination. *Id*. Finally, the Second Amended Complaint alleges that DOC's agents and employees discriminated against Aparo by abusing him specifically when they denied him medical treatment when it was obvious and apparent he was suffering from his disability and DOC's agents and employees continued to gas him and deny him the medical treatment that he so obviously needed at the time.

The facts of the cases cited by Defendant DOC are distinguishable from the facts alleged in the Second Amended Complaint.

First, Defendant DOC cites *Owens v. Florida Dept. of Corrections*, a case where the Plaintiff sued DOC for violations of Title II of the ADA, and was denied leave to amend his complaint because his amended complaint did not allege that he was denied or excluded from benefits because of his disability. *See Owens v. Florida Dept. of Corrections*, 602 Fed. Appx. 475, 479 (11th Cir. 2015). The Plaintiff in *Owens* attached documents that showed he received medical services for the purposes of treating his disability. *Id*. Here, it is clear Aparo did not receive any medical services for his disability. Further, in response to Aparo's request for medical services on

September 19, 2010, and self-declared medical emergency because he could not breathe, the security staff gassed him repeatedly after receiving authorization from the medical staff. The Second Amended Complaint further alleges that Aparo declared three medical emergencies between September 15-18, 2010, and received no specific treatment for his disability. The Second Amended Complaint alleges Aparo fell off the toilet and needed to be rolled back to his cell in a wheelchair. The Second Amended Complaint alleges that Aparo begged for medical attention on September 19, 2010, prior to being gassed and killed by DOC employees. This matter is distinguishable from *Owens* because it is clear that DOC staffs' response to Aparo's medical needs and requests due to his disability was objectively insufficient: they failed to provide medical treatment specific to his disability leading up to September 19, 2010, and then refused to provide medical services on September 19, 2010, when he declared a medical emergency and requested care, which specifically led to and ultimately caused Aparo to get gassed at FCI.

The Defendants cite this Court's order in *Ganstine v. Buss*, 2011 WL 6780956 (N.D. Fla. 2011), to support its incorrect conclusion that Aparo received some treatment and only requested to go to the hospital, and therefore he cannot sustain an ADA claim. *See ECF* Doc. 79, p. 28. DOC incorrectly summarizes the allegations in the Second Amended Complaint. The Plaintiffs' allegations suggest that Defendant DOC failed to provide any medical services or treatment specific to Aparo's Osler-Weber-Rendu disease when it was objectively obvious that he needed medical attention for his Osler-Weber-Rendu disease. Further, The Second Amended Complaint alleges that Defendant DOC's staff repeatedly gassed Aparo on September 19, 2010, after he declared a medical emergency and had been begging for a nurse, medical care, and to go to the hospital. While the Plaintiff in *Ganstine* may have only requested to go to the hospital, he did not allege that he was repeatedly gassed and killed for doing so.

The Defendant also cites *Harris v. Prison Health Services*, ____ Fed.Appx.____, 2017 WL 3616341 *7 (11th Cir. August 23, 2017), another case that is easily distinguishable from this matter. In *Harris*, a case that did not involve ADA or RA claims, the plaintiff brought Eighth Amendment claims against a prison health contractor and three staff members of the prison, alleging that they were deliberately indifferent to his disability because they did not give him an x-ray sooner, and that the delay caused him injuries. *Id.* *7-8. However, the x-rays came back normal when they were finally taken three days later. *Id. Harris* is an Eighth Amendment case dealing purely with medical judgment, which Plaintiffs do not allege that the sequence of events leading to Aparo's death were simply a misjudgment of medical advice or a difference in medical opinion. The Second Amended Complaint suggests that Aparo objectively needed medical treatment in the days leading up to his death. The Second Amended Complaint alleges that in response to Aparo's last declaration of medical emergency, instead of being treated at all, especially for his disability, he was gassed to death.

There are virtually no similarities between *Harris* and this matter currently before the Court. Lastly, Defendant DOC cites *Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. Ga. 1985)[6] for the proposition that if you want different treatment, so long as you get any treatment, you cannot allege that the staff was deliberately indifferent to your disability and medical condition. If the principle were this broad, it would allow Defendant DOC to evade ADA liability for treating an epileptic patient with a foot cast and send them back to their cell. The Second Amended Complaint demonstrates that Aparo did not receive any medical services for the treatment of his disability. The testimony and evidence in *Hamm* demonstrates that the plaintiff received care

---

[6] This case was decided on summary judgment.

specifically for his disability. *Id*. at 1575. Here, however, Aparo received no treatment specific to his disability.

V. **Plaintiffs have already filed an unopposed Motion for Leave to File a Third Amended Complaint.**

Through discovery responses and the retention of its expert, Dr. Donald Kern, Plaintiffs have learned additional information that would support the Plaintiff Estate's ADA and RA claim against Defendant DOC. Plaintiffs have conferred with counsel for all Defendants and they do not object to an amendment to allege these additional facts, which Plaintiffs have referenced in the footnotes to this Response. Accordingly, Plaintiffs' have already filed an unopposed Motion for Leave to File a Third Amended Complaint.

The additional facts include: (1) DOC's failure to order any of Aparo's prior medical records concerning his disability, (2) the bias displayed by DOC's nursing staff towards treating Aparo's complaints about his disability, (3) Aparo's request for treatment that was specific to Osler-Weber-Rendu disease for which he was denied, (4) DOC's failure to provide any treatment specific to Aparo's Osler-Weber-Rendu disease, (5) that DOC's medical records are devoid of any information or medical journals concerning the care and treatment of Osler-Weber-Rendu disease, (6) the failure to conduct specialized testing for Osler-Weber-Rendu disease, (7) and DOC's failure to refer Aparo to a hematologist or to receive recommendation for providing appropriate medication. Further, Plaintiffs wish to clarify other allegations regarding the ADA and RA claim, which relate specifically to Defendant DOC's lack of treatment and care of Aparo while he was incarcerated, and specifically in the days leading up to his death.

WHEREFORE, Plaintiffs respectfully request that the Court deny Defendant DOC's Motion to Dismiss. As it relates to Diane Andrews, the Motion to Dismiss is moot as she has been

voluntarily dismissed as a defendant in this action. Further, Plaintiffs have already filed a Motion for Leave to File a Third Amended Complaint, which is unopposed by all Defendants.

Respectfully submitted,

The Law Offices of
STEVEN R. ANDREWS, P.A.
822 Monroe Street
Tallahassee, Florida 32303
Tel:  (850) 681-6416 / Fax: (850) 681-6984

_____*/s/ Ryan J. Andrews*_____
STEVEN R. ANDREWS (FBN 0263680)
BRIAN O. FINNERTY (FBN 0094647)
bfinnerty@andrewslawoffice.com
RYAN J. ANDREWS (FBN 0104703)
ryan@andrewslawoffice.com
service@andrewslawoffice.com
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served by electronic transmission this 5th day of October, 2017, to:

W. Peter Martin, Esq.
Dennis, Jackson, Martin & Fontela, P.A.
1591 Summit Lake Drive, Suite 200
Tallahassee, Florida  32317
peter@djmf-law.com
jmauer@djmf-law.com
jennifer@djmf-law.com
*Atty for FDOC & Andrews*

Jeffrey S. Howell, Esq.
Phipps & Howell
201 South Monroe Street, 4th Floor (32301)
Post Office Box 1351
Tallahassee, Florida  32302
jeff@phipps-howell.com
Margaret@phipps-howell.com
*Atty for Goodwin, Housholder, Jones a/k/a Franklin, Riley & Greene*

Brian C. Keri, Esq.
The Law Offices of Brian C. Keri, PA
3375-H Capital Circle NW, Suite 4
Tallahassee FL 32308
brianckeri@earthlink.net
michellemsmith@earthlink.net
*Atty for Austin, Brown, Burch, Gillikin, Hamm, Hampton, Martina & Spangler*

Thomas Thompson, Esq.
Mallory R. Bennett, Esq.
Thompson, Crawford & Smiley
1300 Thomasville Road
Tallahassee, FL 32303
tom@tcslawfirm.net
mallory@tcslawfirm.net
tcslaw@aol.com
lauren@tcslawfirm.net
*Atty for Choudhary*

/s/  ***Ryan J. Andrews***
RYAN J. ANDREWS

# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**DISABILITY RIGHTS FLORIDA**,

      Plaintiff,

v.

**JULIE JONES, SECRETARY
FLORIDA DEPARTMENT OF
CORRECTIONS**, et. al,

      Defendants.

      Consolidated Action
      **Case No. 1:14-cv-23323-RNS**

**ANDRE CHAPMAN**, as representative
of the Estate of **DARREN RAINEY**, et al.,

      Plaintiff,

v.

**FLORIDA DEPARTMENT OF
CORRECTIONS**, et. al,

      Defendants.

      Consolidated Action
      Case No. 1:14-cv-23323-RNS
      **(Orig. Case No. 1:14-cv-24140-RNS)**

_____/

**DEFENDANT FLORIDA DEPARTMENT OF CORRECTIONS'
MOTION TO DISMISS COUNT ONE AS TO PLAINTIFFS ANDRE CHAPMAN,
RENEE CHAPMAN, DEBORAH JOHNSON, CHNIEAQUA BREELOVE,
AND HAROLD MARR**

COMES NOW Defendant Florida Department of Corrections, through its undersigned

attorney, and files this Motion to Dismiss Count One as to Plaintiffs Renee Chapman, Deborah

Johnson, Chnieaqua Breelove, and Harold Marr, and states the following in support thereof.

1.      This case is brought by Andre Chapman as personal representative of the estate of

Darren Rainey. However, it is also brought by Mr. Chapman on behalf of Darren Rainey's

1



Surviving Relatives, Andre Chapman, Renee Chapman, Deborah Johnson, Chnieaqua Breelove, and Harold Marr.

2.      The only Count in this case that is alleged against Defendant Florida Department of Corrections is based on claims under the Americans with Disabilities Act and the Federal Rehabilitation Act.

3.      Although Andre Chapman has standing as the personal representative of Mr. Rainey's estate, the surviving relatives of Mr. Rainey do not have standing to bring claims under the ADA or the Rehabilitation Act in this case because they do not allege that they were discriminated against under the ADA or the Rehabilitation Act themselves.

WHEREFORE, Defendant Florida Department of Corrections respectfully requests this Honorable Court to enter an order dismissing Count 1 as to the surviving relatives of Mr. Rainey, Andre Chapman, Renee Chapman, Deborah Johnson, Chnieaqua Breelove, and Harold Marr.

## <u>MEMORANDUM OF LAW</u>

In order to state a claim under Title II of the ADA or the Rehabilitation Act, the Plaintiff must prove the following: "(1) he or she is a qualified individual with a disability; (2) was denied the full and equal benefit of services, programs, or activities; (3) and that the denial was by a public entity." <u>Schwarz v. The Villages Charter Sch., Inc.</u>, No. 5:12 CV 177 OC 34PRL, 2016 WL 787934, at *12 (M.D. Fla. Feb. 29, 2016) (citation omitted).  In this case, the Second Amended Complaint makes a claim under the ADA on behalf of the estate of the decedent, Mr. Rainey, and on behalf of Mr. Rainey's survivors.  The allegations in the Second Amended Complaint all relate to an incident that allegedly resulted in Mr. Rainey's death.  There are no allegations involving Mr. Rainey's survivors, except for the allegations that they are Mr.

Rainey's survivors. There are no allegations, for example, that Defendant Florida Department of Corrections took any discriminatory actions against any of Mr. Rainey's survivors or that the Defendant Florida Department of Corrections denied any of Mr. Rainey's survivors the full and equal benefits of services, programs, or activities. This failure is fatal to the ADA claims of Mr. Rainey's survivors.

In Popovich v. Cuyahoga County Court of Common Pleas, Domestic Relations Division, 150 App'x 424 (6th Cir. 2005), the Sixth Circuit found that the plaintiff, Lauren Popovich, did not have standing under Title II of the ADA. Plaintiff did not have a disability herself, but her father was hearing impaired. Id. Plaintiff claimed that she was kept away from her father for five years during a custody dispute that was extended because of the court's failure to accommodate her father for the hearings in the custody case. Id. The Sixth Circuit held that because the Plaintiff had not, herself, been denied access to or participation in any of the public services covered by Title II. Id. at 427. "In other words, Lauren Popovich – although allegedly deprived of her father's companionship because of delays in her custody case – has not suffered an 'ADA injury.'" Id. Thus, the Sixth Circuit affirmed the district court's finding that Ms. Popovich did not have standing under Title II or under the Rehabilitation Act. Id. See also Wendrow v. Michigan Dep't of Human Svcs., No.08-14324, 2012 WL 1032691, at *2-3 (E.D. Mich. Mar. 27, 2012), aff'd in part, rev'd in part, and remanded, 534 F. App'x 516 (6th Cir. 2013) (reversed and remanded on other grounds for immunity issues) (finding that although the non-disabled members of a disabled individual may have been injured by the Defendant's conduct, they did not suffer an "ADA injury").

Similarly in the case at bar, the Second Amended Complaint does not allege that the

3

survivors of Mr. Rainey's estate were denied access to or participation in any of the public services covered by Title II or the Rehabilitation Act. Thus, like Lauren Popovich, Mr. Rainey's survivors do not have standing to bring a Title II ADA claim or a claim under the Rehabilitation Act.

Mr. Rainey's survivors may argue that they have associational standing to bring a Title II ADA claim because of their association with Mr. Rainey. However, "to state a valid claim for associational discrimination ... a plaintiff must allege some 'specific, direct, and separate injury' as a result of association with a disabled individual. Glass v. Hillsboro Sch. Dist. 1J, 142 F. Supp. 2d 1286, 1288 (D. Or. 2001) (citations omitted). The court gave an example of when associational standing is proper:

> "[i]f a non-disabled companion is excluded from the theater because of his or her association with a disabled individual (for example, no room in the theater for wheelchairs), then the non-disabled companion suffers direct harm to his or her own independent right to be in the theater because of the association with a disabled person."

Id. at 1291-1292. See also George v. AZ Eagle TT Corp., 961 F. Supp. 2d 971, 974-75 (D. Ariz. 2013) (citing favorably to Glass).

In this case, Mr. Rainey's survivors have failed to allege a "specific, direct, and separate injury" as a result of their association with Mr. Rainey. Thus, Mr. Rainey's survivors fail to state a claim under the ADA or the Rehabilitation Act, and their claims against the Defendant Florida Department of Corrections must be dismissed.

Respectfully submitted this 5th day of July, 2016,

**PAMELA JO BONDI**
**ATTORNEY GENERAL**

/s/ Lisa Kuhlman Tietig
Lisa Kuhlman Tietig
Assistant Attorney General
Florida Bar No.: 0978027
Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399-1050
Telephone: (850) 414-3300
Facsimile: (850) 488-4872
lisa.kuhlman@myfloridalegal.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have filed this Motion electronically via CM/ECF, which

will result in service upon all counsel of record, on this 5th day of July, 2016.

/s/ Lisa Kuhlman Tietig
Lisa Kuhlman Tietig
Assistant Attorney General

5

# Exhibit B

United States District Court
for the
Southern District of Florida

Andre Chapman, representative of )
Estate of Darren Rainey, et al. )
Plaintiffs, )
  )
  )   Consolidated Action Case No. 14-
v. )   23323-Civ-Scola (Orig. Case No. 14-
  )   24140-Civ-Scola)
Florida Department of Corrections, )
Corizon, LLC, Roland Clarke, and )
Cornelius Thompson, and Jerry )
Cummings, Defendants. )

## Omnibus Order on Motions to Dismiss

Darren Rainey, a fifty-year-old mentally-ill inmate, was serving a two-year sentence for a minor drug offense in the Dade Correctional Institution. According to the Second Amended Complaint, in June 2012, guards forced him into a scalding hot shower and confined him there, unattended, for nearly two hours. Upon the guards' return, Rainey was unresponsive, not breathing, and without a pulse. He had burns over ninety-percent of his body and his skin sloughed off when touched. Rainey died as a result of his injuries.

The Plaintiffs, Rainey's estate and various family members, have since lodged a four-count complaint against various defendants. (2d Am. Compl., ECF No. 104.) Count One alleges violations of the Americans with Disabilities Act and the Federal Rehabilitation Act against Defendant Florida Department of Corrections. (*Id.* at ¶¶ 60–73.) Counts Two through Four allege § 1983 claims against, respectively, Defendant Corizon; Defendant guards Roland Clarke and Cornelius Thompson; and Defendant warden Jerry Cummings. (*Id.* at ¶¶ 74–98.) Cummings and FDC have both filed motions to dismiss. (ECF Nos. 124, 125.) For the reasons set forth below, Cummings's motion (**ECF No. 124**) is **denied** and FDC's motion (**ECD No. 125**) is **granted**.

### 1. Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of the Complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an



EXHIBIT
B

unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

Yet, where the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed. *See Twombly*, 550 U.S. at 557. "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

## 2. Cummings's motion to dismiss is denied.

### A. The Complaint is not a shotgun pleading.

Cummings complains that the Estate's Second Amended Complaint is a shotgun pleading because the count against him, Count Four, reincorporates all of the allegations against the other defendants raised in the three preceding counts. Because of this, says Cummings, it is "virtually impossible" for him "to frame any intelligent affirmative defenses or otherwise respond to the allegations against him in a meaningful way." (Cummings's Mot., ECF No. 124, 3.)

The principal problem with shotgun pleadings is that they "fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). Although it is true that each count in this Complaint explicitly

"repeats and realleges" all prior paragraphs "as if fully set forth herein," the Complaint nonetheless clearly states the issues and each count differentiates between the various defendants, specifying distinct support for every separate count. This is not the type of pleading that makes it "exceedingly difficult, if not impossible, to know which allegations pertain to [each] count (according to its label), to separate the wheat from the chaff . . . [thereby] unnecessarily tax[ing] the time and resources of the District Court as well as the Court of Appeals." *Keith v. DeKalb Cty., Georgia*, 749 F.3d 1034, 1045 n. 39 (11th Cir. 2014).

Unlike the complaints in the cases cited to by Cummings, the Complaint here is not "replete with factual allegations that could not possibly be material to that specific count" and that "are buried beneath innumerable pages of rambling irrelevancies." *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001). In reviewing the Complaint in this case, the Court finds that "ascertain[ing] exactly which facts formed the basis of the plaintiffs' federal law claims" is not so daunting a task. *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1296 (11th Cir. 2002) Unlike the *Magluta* and *Strategic* complaints, the pleading here contains distinct allegations as to each defendant for acts that they are each separately responsible for. *See Magluta*, 256 F.3d at 1284. While the better course is certainly for plaintiffs to avoid incorporating each prior paragraph into each successive count, the effect in this case is not so dire as to require repleading.

**B. The Complaint sufficiently pleads a claim for relief against Cummings.**

Cummings complains that the count against him "contains little factual content," presenting "mostly conclusions, labels, and formulaic recitations of the elements of a § 1983 claim and little more." (Mot. at 4–5.) This is a mischaracterization of the Complaint's allegations. The Plaintiffs' factual contentions include:

- Prior to Mr. Rainey's death, . . . Cummings knew about widespread abuse by correctional officers upon inmates with mental illness on the Dade CI mental health inpatient unit. (2d Am. Compl. at ¶ 45, ECF No. 104, 10.);

- In 2011, a psychological counselor at Dade CI reported several instances of physical abuse by correctional officers on inmates in the Dade CI inpatient unit to prison officials at Dade CI, including the warden, Cummings. The counselor indicated that the abuse included officers kicking and beating an inmate while he was restrained. (*Id.* at ¶ 46.);

- Dade CI correctional officials, including supervisors on the inpatient unit and the prison warden, Cummings, had actual knowledge of the widespread abuse of inmates on the inpatient mental health unit by correctional officers, but failed to take any steps to stop the abuse. (*Id.* at ¶ 50.);

- At all times material to this action, the Dade CI inpatient mental health unit had a history of widespread abuse of mentally ill inmates by Dade CI officers. Defendant Cummings knew and/or should have known about the widespread abuse and the necessity for correcting Dade CI officers' conduct, but failed or refused to stop the constitutional deprivations to Dade CI inpatient mental health unit inmates who were being abused by officers. (*Id.* at ¶ 92.)

- The constitutional deprivations that constitute widespread abuse, which were sufficient to put Defendant Cummings on notice of them and the necessity for correcting Dade CI officers' conduct, were inclusive of, but not limited to, numerous occurrences of Dade CI officers depriving inmates of food as punishment or for retaliation against inmates, the use of excessive force against inmates and the 'shower treatment,' which were obvious, flagrant, rampant, and of continued duration, and not merely isolated incidents. (*Id.* at ¶ 93.)

These are not mere "conclusions [that] are simply speculation" or "magic words" as maintained by Cummings. (Mot. at 6, 7.) Instead, these allegations, if accepted as true, articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). These allegations, together with the rest of the Complaint, amount to "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Complaint is not a mere "unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).

Further, Cummings's contentions that "[n]owhere in the Complaint does the Plaintiff allege Cummings knew of the shower, knew of its use, or that anyone reported to him inmates were being abused by being place therein" are unavailing. (Mot. at 5.) Cummings cites no case law to support his apparent claim that a § 1983 supervisor-liability defendant have knowledge of the specific manifestation or form of the abuse ultimately inflicted on a plaintiff. Nor does he cite any support for his position that the Complaint fails because there is "no allegation that Cummings was at DCI on the date and time of the

incident." (Mot. at 5.) As set forth in the Eleventh Circuit's Pattern Jury Instructions, supervisor liability can be established simply by a showing that there was "[a] history of widespread abuse [that] put [the supervisor] on notice of the need to take corrective action and [he] failed to do so." Eleventh Circuit Civil Pattern Jury Instruction 5.8. Contrary to Cummings's submission that the Plaintiffs' allegations "reveal nothing more than isolated incidents at best," the Complaint explicitly asserts: that there was a history of widespread abuse by correctional officers upon inmates with mental illness; that Cummings had knowledge, or should have had knowledge, of the widespread abuse; that at least one psychological counselor at Dade CI reported several instances of abuse by correctional officers on inmates directly to Cummings; and that Cummings failed to act in the face of this knowledge.

Based on the factual allegations directed towards Cummings, the Court finds that Count Four "possess[es] enough heft" to suggest a plausible entitlement to relief. *See Twombly*, 550 U.S. at 557. Cummings appears to conflate *allegations* of facts with the *actual proof* of those facts. The Plaintiffs have sufficiently plead the facts of their case; whether they can establish actual proof of those alleged facts will be determined as this case progresses. Dismissal of the count against Cummings is not warranted at this time.

### C. Cummings is not entitled to qualified immunity.

Cummings contends that Count Four fails to establish that Cummings: was aware of the abuse or that the abuse posed a serious risk of harm; recklessly disregarded the risk; was more than just negligent. (Mot. at 13.) Because of these flaws, argues Cummings, he is entitled to qualified immunity.

The qualified immunity defense is applied in dismissing a complaint at the 12(b)(6) stage where:

> from the face of the complaint, [a court] conclude[s] that (even if a claim is otherwise sufficiently stated) . . . the law supporting the existence of that claim—given the alleged circumstances—was not already clearly established . . . to prohibit what the . . . defendant is alleged to have done . . . before the defendant acted.

*Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1023 (11th Cir. 2001). As set forth in the preceding section, the Court finds that the Plaintiffs' claim is sufficiently pleaded. In support of his defense of qualified immunity, Cummings merely rehashes his arguments regarding the sufficiency of the Complaint. He fails to even allege that, "considering the preexisting case law of this circuit," "no reasonable [government-official defendant] could have concluded that the alleged conditions . . . failed to pose a substantial risk of serious harm." *Id.* at 1034. Further, Cummings's contention that the Complaint fails to allege that

he was deliberately indifferent to a known danger is without merit: the Plaintiffs' allegations assert Cummings's subjective awareness of the substantial risks to inmate safety and Cummings's response, or lack thereof, was patently unreasonable. (Compl. at ¶ 94 ("Cummings condoned, tolerated and through actions or inactions thereby ratified the . . . officers' conduct in abusing the inmates.") *See Marsh*, 268 F.3d at 1029 ("This alleged lack of action is not reasonable under the alleged circumstances."). Ultimately the Court finds that "Plaintiffs adequately allege facts which (if true) show that, at the time of the incident, [Cummings's] acts were not even arguably reasonable in . . . light of the clearly established law." *Id.* at 1034. As such, Cummings is not entitled to qualified immunity.

### 3. Defendant Florida Department of Corrections is entitled to dismissal as to the individual family-member plaintiffs.

Count One of the Complaint states claims against FDC for violations of Title II of the Americans with Disabilities Act and the Federal Rehabilitation Act. However, only Rainey's estate can maintain this claim: Rainey's survivors, under the allegations of this Complaint, do not have standing to bring either a Title II ADA or Rehabilitation Act claim. *See Popovich v. Cuyahoga Cty. Court of Common Pleas, Domestic Relations Div.*, 150 F. App'x 424, 427 (6th Cir. 2005). The Plaintiffs have conceded this point and agree that the Count One claims of Plaintiffs Andre Chapman, Renee Chapman, Deborah Johnson, Chnieaqua Breelove, and Harold Marr, in their individual capacities, are due to be dismissed.

### 4. Conclusion

For the foregoing reasons, Defendant Cummings's motion to dismiss and for qualified immunity (**ECF No. 124**) is **denied**; and Defendant Florida Department of Corrections' motion to dismiss (**ECF No. 125**) is **granted**.

**Done and ordered** in chambers, at Miami, Florida, on October 28, 2016.

Robert N. Scola, Jr.
United States District Judge