# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**AMANDA CIMILLO, as
Personal Representative of the
Estate of RANDALL JORDAN-APARO,
Deceased and MINOR CHILD APARO
The Natural Child of Randall Jordan-Aparo
By and Through Her Mother and Natural Guardian
Amanda Cimillo,**

      Plaintiffs,

**vs.**                              **CASE NO. 4:16-cv-00584-RH-CAS**

**ROLLIN AUSTIN, et al.,**

      Defendants.

_____/

## PLAINTIFFS' MOTION TO COMPEL, MOTION FOR SANCTIONS, AND MOTION FOR ORDER TO SHOW CAUSE

      Plaintiffs, Estate of Randall Jordan-Aparo, Deceased, by and through its Personal Representative, Amanda Cimillo, and Minor Child Aparo natural minor child of the deceased Randall Jordan-Aparo, by and through undersigned counsel, files this Motion to Compel, Motion for Sanctions Pursuant to Rule 37, and Motion for Order to Show Cause, and states:

### Procedural Background

      1.     On October 27, 2017, Plaintiffs filed their Motion to Compel against Defendant DOC. *See* ECF 112.

      2.     At the hearing before this Court on December 1, 2017, concerning Plaintiffs' Motion to Compel, the Court also discussed the Plaintiffs' Motion to Inspect the originals of certain records of Defendant DOC. The Court entered its written Order on December 1, 2017, ordering Defendant DOC as follows: "Originals of requested documents that exist in hard copy

must be made available for inspection upon request at a reasonable time—not necessarily by December 15." *See* ECF 125.

3.      Long overdue at the time was Defendant DOC's response to Plaintiffs' Request for Inspection dated September 20, 2017. *See* Request for Inspection dated September 20, 2017, attached hereto as **Exhibit A**. Plaintiffs did not receive a response, nor did Plaintiffs receive proposed dates to schedule the inspection of the original documents, DOC Bates 00001-00225, which included Randall Jordan-Aparo's medical records, records which are at the heart of the Plaintiffs' claims and the Defendants' defenses. Initially, the only response Plaintiffs received, which was after the due date of Defendant DOC's response, was in response to a follow up by Plaintiffs, inquiring as to when Plaintiffs' counsel could inspect the records, specifically Randall Jordan-Aparo's medical records. Counsel for Defendant DOC simply responded, "I don't have them." *See* email thread attached hereto as **Exhibit B**.

4.      At the Motion to Compel hearing before the Court, the Court instructed Defendant DOC to produce the originals for inspection and reduced it to writing in its order.[1]

5.      Since December 1, 2017, Plaintiffs have requested to inspect Randall Jordan-Aparo's medical records, on several occasions, including January 1, 2018, March 10, 2018, and March 13, 2018. *See* Letter dated January 4, 2018, to DOC Counsel, attached as **Exhibit C**. *See also* Letter dated March 13, 2018, to DOC Counsel, attached hereto as **Exhibit C-1.** Plaintiffs have

---

[1] Plaintiffs did not move to compel this Request for Inspection in its original Motion to Compel filed in October of 2017. However, in an abundance of caution, Plaintiffs moves to compel in this Motion, and moves for sanctions based on subsequent attempts to schedule an inspection due to the multiple irregularities and inexplicable inconsistencies in Randall Jordan-Aparo's medical records. The Request for Inspection of documents was discussed at the December 1, 2017, hearing and, in response, was addressed by the Court in its December 1, 2017, Order.

not been provided any dates to inspect any of the records sought for inspection, DOC Bates 000001-002255 (*See* Exhibit A), which include the medical file of Randall Jordan-Aparo.

6.      After conferring on a Motion for Sanctions in March of 2018, counsel for Defendant DOC stated that Randall Jordan-Aparo's medical records are lost, but DOC would not concede that they were destroyed, further leaving Plaintiffs in limbo on their Request for Inspection.

7.      This request is especially critical because Defendant DOC has been unable or unwilling to provide a certified copy of Randall Jordan-Aparo's medical records, certifying that they are true, accurate, and are the complete copy of Aparo's medical records with Defendant DOC.

**Timeline of Requests made for Randall Jordan-Aparo's Medical Records**

8.      On September 2, 2014, Plaintiffs requested Randall Jordan-Aparo's medical records. *See* attached **Exhibit D**. On September 25, 2014, Defendant DOC, through its counsel in this case, provided Plaintiffs with 217 pages (including a cover letter) of Randall Jordan-Aparo's medical records, purporting to be the complete copy of Aparo's medical records. *See* P. Martin letter dated September 25, 2014, on behalf of DOC, attached as **Exhibit E**. This production was not the complete copy of Randall Jordan-Aparo's medical records, but Plaintiffs would not learn this until late 2017 and 2018.[2] Authenticity of the two following documents became highly relevant based on subsequent production by DOC in this action:

---

[2] Undersigned counsel does not allege or believe that Counsel for DOC was aware at the time that the documents provided and attached to his letter were incomplete and potentially altered. Undersigned counsel is confident Counsel for Defendant DOC provided the records he was provided.

a.    **Emergency Room Record Purporting to describe an Inmate/Post-Use-Of-Force Exam.** *See* attached **Exhibit F.**

b.    **Diagram of Injury, purporting to describe injuries to Randall Jordan-Aparo.** *See* attached **Exhibit G.**

9.    In March, 2017, Plaintiffs requested, through a Request to Produce, a copy of Randall Jordan Aparo's medical records, and other documents related to the DOC and FDLE investigations of Aparo's death. Defendant DOC served its response on June 2, 2017. *See* Response attached as **Exhibit H**, at page 3:

> Request 3.: "Any and all Documents and Communications in the custody and control of DOC that would comprise the complete unredacted medical records maintained DOC for Randal Jordan Aparo within the custody and control of DOC certified complete and accurate by the custodian of records.
>
> Response: See Folder H."

10.    Defendant DOC produced the same identical medical records in on June 2, 2017, as it did on September 25, 2014, purporting to be the complete unredacted copy of Randall Jordan-Aparo's medical records. Again, as Plaintiffs later learned, this was not the complete copy of Randall Jordan-Aparo's medical records with Defendant DOC. Additionally, Defendant DOC again failed to provide a certification that these records were complete and accurate.

11.    In response to a different Request to Produce, Plaintiffs requested the investigative file for Defendant DOC's investigation of the death of Randall Jordan-Aparo. As part of that file, Defendant DOC produced the following three medical records of Randall Jordan-Aparo, which were not previously produced by Defendant DOC and were not contained in Defendant DOC's medical record file for Randall Jordan-Aparo. These records include:

4

a.      Emergency Room Record purporting to describe an Inmate/Post-Use-Of-Force Exam. *See* attached **Exhibit I**.

b.      Diagram of Injury, purporting to describe injuries to Randall Jordan-Aparo. *See* attached **Exhibit J**.

c.       Chronological Record of Health Care, undated and signed by no healthcare provider, purporting to describe the discovery of Randall Jordan-Aparo's dead body. *See* attached **Exhibit K**.

12.     The medical record produced by DOC in response to the 2014 request for medical records, as well as to the 2017 response, *see* Exhibit F, contains additional information, as well as deleted information, rendering it substantially different from the medical record, *see* Exhibit I, contained in the investigative file of Randall Jordan-Aparo's death. *Compare* Exhibit F *with* Exhibit I. For example, after Nurse Pat Lemon signed Exhibit I as the Reviewing Physician, information was either deleted, or she signed a different document.

13.     The medical record produced by DOC in response to the 2014 request for medical records, as well as to the 2017 response, *see* Exhibit G, contains additional information, as well as deleted information, rendering it substantially different from the medical record, *see* Exhibit J, contained in the investigative file of Randall Jordan-Aparo's death. *Compare* Exhibit G *with* Exhibit J. For example, the document that Nurse Pat Lemon signed (Exhibit J) that was not produced to the Plaintiffs in response to the 2014 and 2017 medical record requests and discovery requests, contains deletions of information and medical description of injury of Aparo that were written by Nurse Riley. *See* Exhibit G (deleted "skin intack. ~~Breaths~~").

5

14.     Exhibit K, attached hereto, was never previously provided to the Plaintiffs in the 2014 medical records request, nor was it provided in Randall Jordan-Aparo's medical file produced by Defendant DOC in discovery in this matter.

15.     Exhibits I, J, and K, are unequivocally medical records for Randall Jordan-Aparo, yet were never produced as part of Randall Jordan-Aparo's medical file.

16.     This failure to produce medical records confirms that the medical records file previously produced twice by Defendant DOC is and was not the complete medical file of Randall Jordan-Aparo. Further, the deletions and additions of medical records and entries suggests that the medical records have been altered by Defendant DOC. *See generally supra and ¶¶ 12, 13 herein.*

17.     Defendant DOC's failure to produce Exhibits I, J, and K, to the Plaintiffs necessitated the Request for Inspection at issue in this Motion.

18.     Defendant DOC has now informed Plaintiffs that Randall Jordan-Aparo's medical file is lost, but will not concede that it has been destroyed.

19.     Defendant DOC had a duty to maintain Randall Jordan-Aparo's medical records from at least five years from the last patient contact. *See* § 458.331(1)(m), Florida Statutes. Further, Florida's medical malpractice law requires records to be kept for at least seven years. Thus by law, as of at least September 19, 2017, the original records of Randall Jordan-Aparo should have been preserved. These original records should have been preserved in response to Defendant DOC receiving Plaintiffs' Notice of Claim and Notice of Intent letter dated September 2, 2014. *See* Exhibit D. Further, On September 20, 2016, Plaintiffs filed the instant lawsuit, providing another reason why the medical records of Randall Jordan-Aparo, including the originals, should have been preserved.

**Defendant DOC Provided Medical Records to FDLE on the Night of the Death
of Randall Jordan-Aparo on September 19, 2010, But Omitted Exhibits I and J**

20.     On the night of Aparo's death, FDLE sequestered his medical records dating back to approximately May, 2010.

21.     Defendant DOC omitted Exhibits I and J from the records produced to FDLE.

22.     Defendant DOC clearly never produced Exhibits I and J to FDLE since, in response to a federal subpoena issued by the Plaintiffs for records in FDLE's possession, FDLE did not produce Exhibits I and J to Plaintiffs.

23.     Defendant DOC only produced to FDLE the same copies that were produced to the Plaintiffs in September 2014, and June, 2017. *See* Emergency Room Record produced to FDLE by Defendant DOC on September 19, 2010, attached hereto as **Exhibit L**; *See* Diagram of Injury produced to FDLE by Defendant DOC on September 19, 2010, attached hereto as **Exhibit M**.

**The Medical Examiner Received Records from Defendant DOC Not Produced to Plaintiffs**

24.     Defendant DOC provided Exhibits F and G to Dr. Lisa Flanagan, the Medical Examiner who conducted the autopsy of Randall Jordan-Aparo. *See* Emergency Room Record produced to the Medical Examiner by Defendant DOC, attached hereto as **Exhibit N**; *See* Diagram of Injury produced to the Medical Examiner by Defendant DOC, attached hereto as **Exhibit O**. However, the Medical Examiner never received Exhibits I and J.

25.     Curiously, the Medical Examiner received a copy of Exhibit K from Defendant DOC. *See* attached **Exhibit P**. Again, Plaintiffs never received this document from Defendant DOC as part of Randall Jordan-Aparo's medical file.

26.     Defendant DOC has provided different medical records, some of which may have been altered, to every person or entity that has requested them.

27.     Defendant DOC still has refused to certify that the medical records provided to the Plaintiffs as the complete medical file of Randall Jordan-Aparo is complete, accurate, and authentic.

28.     Defendant DOC has not provided dates for the Plaintiffs to inspect the original medical records of Randall Jordan-Aparo because it cannot find the records.

29.     This failure to produce the original pen and ink records is especially concerning and prejudicial in light of the following:

a.     Defendant DOC has not certified the medical records of Randall Jordan-Aparo has complete, accurate, and authentic.

b.     It is clear different entities and individuals have received different medical records from Defendant DOC, some of which may have been altered.

c.     Defendant DOC continues to maintain that the originals are lost and will not certify that they have been destroyed.

d.     The "losing" or destruction of these medical records would have either violated Florida Statutes on retention of medical records, violated the preservation/litigation hold on Aparo's medical records which Defendant DOC should have initiated on September 2, 2014.

e.     The failure to produce the pen and ink records results in Defendant DOC's inability to explain why some medical records of Randall Jordan-Aparo are not included within his medical file; when they were removed from his medical file, and whether any other medical records are missing from Aparo's medical file and it just hasn't been discovered yet by the Plaintiffs.

8

30.     Thus, Plaintiffs are grossly insecure that they have the complete medical file of Randall Jordan-Aparo, that there are still some medical records which may have existed or do exist, but have still not been produced by Defendant DOC, and that nobody at Defendant DOC has certified that the records produced are the complete medical records file and explain when and why some medical records were no longer maintained in Randall Jordan-Aparo's medical file, which violates Defendant DOC policy as it relates to the maintenance of prisoner medical records.

## The Court Should Grant Plaintiffs' Motion to Compel

Although informally addressed in the Court's December 1, 2017, Order, Plaintiffs requests this Court enter an Order Granting Plaintiffs' Motion to Compel, and award attorney's fees and costs associated with the filing of this Motion.

"A party seeking discovery may move for an order compelling an answer, designation, production or inspection. This motion may be made if . . . a party fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." *See* Fed. R. Civ. P. 37(a)(3)(B)(iv). Here, Plaintiffs served a Request for Inspection Pursuant to Rule 34. *See* Exhibit A. Defendant DOC failed to respond as required by the Rule. As such, Defendant DOC's objections, to the extent it had any, including scope of the request, are waived. Nonetheless, Plaintiffs have explained why the Request for Inspection was made. *See supra*.

"The Court where the action is pending may, on motion, order sanctions if . . . a party, after being properly served with . . . a request for inspection under Rule 24, fails to serves its answers, objections, or written response." *See* Fed. R. Civ. P. 37(d)(1)(a)(ii). Defendant DOC's conduct is especially egregious in the facts of this case. The Court has already had a hearing where

approximately six different Requests for Production were served on Defendant DOC and Defendant DOC did not respond. *See* ECF 112. Here, when Plaintiffs followed up on its Request for Inspection on November 27, 2017, counsel for Defendant DOC simply responded with "I don't have them." *See* Exhibit B.

At the hearing before this Court on December 1, 2017, this matter came up, the Request for Inspection, despite not being included in the Plaintiffs' Motion to Compel. The Court addressed the pending Request for Inspection in its Order, stating "Originals of requested documents that exist in hard copy must be made available for inspection upon request at a reasonable time—not necessarily by December 15." *See* ECF 125, ¶3. One hundred and sixteen days have passed since Defendant DOC was ordered to produce the records for inspection, and Defendant DOC still has not produced any of the records sought to inspect, the pen and ink records, Defendant DOC Bates 00001-002255, which includes the medical file of Randall Jordan-Aparo.

### **Defendant DOC's Affirmative Defenses Should Be Struck In Whole Or In Part**

Plaintiffs have conferred with Defendant DOC on this point, but still has not been provided any dates or times as to when it can inspect these records. Plaintiffs have provided Defendant DOC more than enough time to produce these records for inspection. While Defendant DOC claims to have currently lost the medical records file of Randall Jordan-Aparo,[3] it still will not certify the records as destroyed because its destruction logs apparently do not state that the medical file of Randall Jordan-Aparo was destroyed, leaving this issue in limbo. The inspection of these records, including the medical records of Randall Jordan-Aparo, were not to simply inconvenience

---

[3] Defendant DOC has not asserted that the other approximately 2000 documents requested for inspection have also been lost or destroyed, it simply ignored the Request, even after this Court's Order of December 1, 2017.

Defendant DOC and its counsel. There is a legitimate concern that records are missing, certain records may have been altered, added to, or deleted from at a later date, and that such mishandling or destruction of these records may have occurred after Defendant DOC received Plaintiffs' Notice of Intent and Claim on September 2, 2014, which gave rise to a duty to preserve documents related to the death of Randall Jordan-Aparo, including specifically his medical records, even though Defendant DOC already had a statutory duty to preserve such records. *See supra*.[4] *See also Silhan v. Allstate Insurance Company*, 236 F. Supp. 2d 1303, 1307 (N.D. Fla. 2002).

Defendant DOC has failed to obey the Court's December 1, 2017, Order permitting discovery, an order issued under Rule 37(a). Defendant DOC has failed to produce Randall Jordan-Aparo's medical records, which it claims are lost and will not certify, but it also has failed to provide the other approximately 2000 pages of documents Plaintiffs requested to inspect. Plaintiffs have received no information as to whether these additional approximately 2000 pages of records exist in their original format, specifically the pen and ink records contained therein, where they are located, and when they can be inspected, despite the Court's December 1, 2017, Order.

The single most important evidence in the case are the medical records of Randall Jordan-Aparo. These records were relied on by essentially all experts retained in this case as they relate to Plaintiffs' claims under the 8th Amendment, 42 U.S.C. §1983, the wrongful death claims and the ADA and RA claims. Defendant DOC has acknowledged that not all of the medical records were maintained in Randall Jordan-Aparo's medical file and not all of the records were produced

---

[4] Whether the records have been declared "destroyed" or not by Defendant DOC, it is clear that they are gone. The elements of a spoliation claim are: (1) the existence of a potential civil action; (2) a legal or contractual duty to preserve evidence which is relevant to the potential civil action; (3) destruction of evidence; (4) significant impairment in the ability to prove the lawsuit or rebut defenses; (5) a causal relationship between the evidence destruction and the inability to prove the lawsuit; and (6) damages. *Green Leaf Nursery v. E.L.DuPont De Nemours and Co.*, 341 F.3d 1292, 1308 (11th Cir. 2005).

by Defendant DOC through its counsel in this case on September 25, 2014. Plaintiffs cannot even get a certification that the records produced by Defendant DOC, including the additional records discovered by the Plaintiffs, which are attached hereto, represent the complete and accurate medical file of Randall Jordan-Aparo, despite trying to obtain a certificate of completeness since November 24, 2014. *See* Andrews letter dated November 24, 2014, attached hereto as **Exhibit Q**. Indeed, Defendant DOC cannot represent one way or the other, that Plaintiffs have received every medical record of Randall Jordan-Aparo, including his extremely critical medical records from July 1, 2010, to the date of his death. Plaintiffs didn't even receive the Chronological Record of Health Care purporting to describe the discovery of Randall Jordan-Aparo's dead body until June of 2017, well after this case was filed.

The failure to produce the original pen and ink medical records for inspection, despite this Court's December 1, 2017, Court Order, severely prejudices the Plaintiffs as they cannot investigate to determine which medical records are or are not contained in Aparo's medical file, whether such records were in fact altered, when records may have been removed from the medical file, by whom, and why those records were removed instead of making a copy and leaving an original in the medical records file. This information is relevant to Plaintiffs' claims, but also relevant to Defendant DOC's defenses, including specifically its statute of limitations defenses, Affirmative Defenses Numbers 1 and 5. *See* ECF 126, pp. 18-19.  Plaintiffs first learned that Randall Jordan-Aparo's death may have been suspicious from an article which ran in the Miami Herald in approximately September, 2014. Plaintiffs later received a partial set of Randall Jordan-Aparo's medical records, but not a complete set. Despite attempting to obtain a certificate of completeness from Defendant DOC through its counsel in this case since September 2, 2014,

including a follow-up request on November 24, 2014, Defendant DOC ignored the request for a certificate of completeness just like it has ignored Plaintiffs' Request for Inspection at issue in this Motion and just like it has ignored the Court's December 1, 2017, Order. Thus, Defendant DOC's defense of statute of limitations should be struck, preventing Defendant DOC from being able to assert the defense against the Plaintiffs for Defendant DOC's intentional hampering of Plaintiffs' attempts to obtain all and a complete copy of Randall Jordan-Aparo's medical file, including its failure to produce those medical records and an additional 2000 pages of documents for inspection to the Plaintiffs.

Additionally, the Parties have taken substantial depositions in this matter, including several of the Defendant Nurses and Doctors. Plaintiffs have had to take all of these depositions without a certificate of completeness from Defendant DOC that Plaintiffs have received all of the medical records of Randall Jordan-Aparo. The refusal by Defendant DOC to provide this certificate strongly suggests that there may be additional medical records that have not been produced and which cannot be found by Defendant DOC because they are "lost" but "not destroyed." Plaintiffs can only speculate, but these records are presumably helpful to the Plaintiffs and hurt Defendant DOC, or else they would have been produced already to the Plaintiffs. Plaintiffs have expended substantial fees and costs in preparing and attending these depositions and will likely have to retake many if not all of the depositions once this issue is addressed by this Court and Defendant DOC answers for its conduct.

Additionally, Defendant DOC's other affirmative defenses related to the medical care and condition of Randall Jordan-Aparo, including the following:

> 2. "Section 95.11(10), Florida Statutes, is not applicable to Plaintiff's ADA and Rehab Act claims against FDC on the

13

grounds that Aparo's death was not the result of murder or manslaughter, and also on the grounds that he was not disabled, he did not have a disability, and he was not a "disabled adult" because of his OWR, or for any other reason, at any time during his FDC 2009-2010 incarceration."

3. "Aparo was not disabled, he did not have a disability, and he was not a "disabled adult" based on his OWR or any other medical condition."

4. "Aparo was not a "disabled adult" as that term is defined by statute for purposes of the ADA/Rehab Act, or section 95.11(10), Florida Statutes, or sections 782.04 and 782.07, Florida Statutes (which are cited in section 95.11(10), Florida Statutes)."

6. "At no time during Aparo's FDC incarceration in 2009-2010 (or during his prior incarceration in 2007), was he substantially limited in his ability to perform any major life activities."

7. "Plaintiff's claim against FDC under the ADA/Rehab Act fails on the grounds that during his FDC 2009-2010 incarceration: (i) he never identified himself as having a disability, or being disabled, or claim that he was a "disabled adult" because of his OWR, or for any other reason; (ii) he was never considered or perceived by FDC, by and through its employees, to be disabled, or to have a disability, or that he was a "disabled adult" based on his OWR, or for any other reason, such that FDC would or should have known or learned through the exercise of reasonable care and diligence that he had a history of being disabled, or a "disabled adult, or that he had a disability based on his OWR; and (iii) he never requested accommodations from FDC based on his assertion that he was a disabled person, or a "disabled adult", or that he had a disability based on his OWR, or for any other reason."

8. "FDC, by and through its employees, provided reasonable medical care to Aparo for his OWR, and specifically its symptoms which included: (i) blood labs to monitor his iron level for potential anemia; (ii) giving him iron supplements when blood lab results showed him to be slightly anemic; and (iii) provided medical care for the several episodes of bleeding from

his fingers and the one purported episode for bleeding from his penis."

11. "Aparo's death was not caused, either directly or indirectly, by the negligent or intentional failure to provide medical care to him at any time during his FDC incarceration in 2009-2010, and specifically from September 15-19, 2010 at Franklin CI."

16. "Plaintiff is not entitled to damages based on the alleged acts or omissions of FDC, through its employees, as Aparo died from sudden cardiac arrest caused by bacterial abscesses in his heart and lungs."

18. At no time during Aparo's FDC 2009-2010 incarceration was he ever denied access to medical care or services because of his OWR, or for any other reason."

*See* **ECF 125, pp 18-21.**

Plaintiffs' requested prohibition that Defendant DOC be prohibited from asserting its Affirmative Defenses, 1, 2, 3, 4, 6, 7, 8, 11, 16, and 18, is fair, equitable, and just, based on Defendant DOC's egregious conduct, including failing to respond to Plaintiffs' Request for Inspection, and Defendant DOC's refusal to produce 2255 documents for inspection, despite this Court's December 1, 2017, Order. These Affirmative Defenses relate to a statute of limitations defense and the medical condition and care of Randall Jordan-Aparo, i.e., necessarily involve the medical records of Randall Jordan-Aparo. Although court should impose sanctions no more drastic than those actually required to protect rights of other parties, Rule 37 makes clear that application of sanctions is entrusted to discretion of trial judge, and overly lenient sanctions are to be avoided where inadequate protection of discovery process results. *Diaz v. Southern Drilling Corp.* (5th Cir. Tex. Mar. 2, 1970), 427 F2d 1118, cert. denied, (U.S. 1970), 400 US 878. A less severe sanction would be ineffective, in light of the Court's December 1, 2017, Order, Defendant DOC's failure to provide responses to at least six separate Requests for Production and Interrogatories (*See* ECF

112), DOC's failure to comply with the Court's December 1, 2017, Order, and Defendant DOC's response through its counsel on November 27, 2017, when Plaintiffs followed up on the Request for Inspection and counsel simply replied "I don't have them." *See* Exhibit B. *Aztec Steel Co. v. Florida Steel Corp*. (11th Cir. Fla. Nov. 4, 1982), 691 F2d 480, cert. denied, (U.S. Mar. 21, 1983), 460 US 1040.

Defendant DOC has shown that it will not comply with a Court Order compelling Defendant DOC to produce the requested records for inspection. It is unlikely that even an award of attorney's fees and costs would have resulted in Defendant DOC complying with the Court's Order of December 1, 2017. Thus, this Court must enter a more severe sanction against Defendant DOC to deter this type of conduct in the future of this case and generally in this District. Thus, Plaintiffs request this Court strike all of Defendant DOC's Affirmative Defenses, or, alternatively, strike specifically Affirmative Defenses 1, 2, 3, 4, 6, 7, 8, 11, 16, and 18.

## CERTIFICATION

Pursuant to Local Rule 7(b), and Federal Rule of Civil Procedure Rule 37(d)(1)(B), Plaintiffs certify that they have in good faith conferred or attempted to confer the Defendant DOC in an effort to obtain the responses and inspection without further court action.

## PRAYER FOR RELIEF

Plaintiffs request the following relief from this Court:

a.     Strike all of Defendant DOC's affirmative defenses, or alternatively, specifically Affirmative Defenses 1, 2, 3, 4, 6, 7, 8, 11, 16, and 18.

b.     Order Defendant DOC to pay the Plaintiffs' attorneys' fees and costs associated with the preparing and filing of this Motion, including pursuant to Fed. R. Civ. P. 37(d)(3).

c.     Issue an Order to Show Cause why Defendant DOC should not be held in contempt of court for its willful failure to comply with the Court's December 1, 2017, Court Order.

d.     Issue an Order finding that Defendant DOC no longer has the original medical records of Randall Jordan-Aparo, that Defendant DOC cannot certify that Plaintiffs have received all of Randall Jordan-Aparo's medical records created by Defendant DOC, and that as a result, there is an inference that there are records that the Plaintiffs did not receive that would have helped the Plaintiffs prove their claims and documents which were detrimental to Defendant DOC's defenses that Defendant DOC did not produce.

e.     Alternatively, should the Court decide not to strike all of Defendant DOC's Affirmative Defenses, or strike specifically Affirmative Defenses 1, 2, 3, 4, 6, 7, 8, 11, 16, and 18, Plaintiffs request that this Court enter an order compelling Defendant DOC to permit access to inspect DOC Bates 000001-002255, and award the Plaintiffs their attorneys' fees and costs associated with the preparing and filing of this Motion.

Respectfully submitted,

The Law Offices of
STEVEN R. ANDREWS, P.A.
822 North Monroe Street
Tallahassee, Florida 32303
T: 850‑681‑6416 / F: 850‑681‑6984

*/s/ Ryan J. Andrews*  
STEVEN R. ANDREWS (FBN 0263680)  
BRIAN O. FINNERTY (FBN 0094647)  
brian@andrewslaw.com  
RYAN J. ANDREWS (FBN 0104703)  
ryan@andrewslaw.com  
Service: service@andrewslaw.com  
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served by electronic transmission this 28th day of March, 2018, to:

W. Peter Martin, Esq.  
Dennis, Jackson, Martin & Fontela, P.A.  
1591 Summit Lake Drive, Suite 200  
Tallahassee, Florida  32317  
peter@djmf-law.com  
jmauer@djmf-law.com  
jennifer@djmf-law.com  
*Attorney for FDOC*

Jeffrey S. Howell, Esq.  
Phipps & Howell  
201 South Monroe Street, 4th Floor (32301)  
Post Office Box 1351  
Tallahassee, Florida  32302  
jeff@phipps-howell.com  
Margaret@phipps-howell.com  
*Attorney for Housholder, Jones a/k/a Franklin, Riley & Greene*

Brian C. Keri, Esq.  
The Law Offices of Brian C. Keri, PA  
3375-H Capital Circle NW, Suite 4  
Tallahassee FL 32308  
briankeri@earthlink.net  
michellemsmith@earthlink.net  
*Attorney for Austin, Brown, Burch, Gillikin, Hamm, Hampton, Martina & Spangler*

Thomas Thompson, Esq.  
Mallory R. Bennett, Esq.  
Thompson, Crawford & Smiley  
1300 Thomasville Road  
Tallahassee, FL 32303  
tom@tcslawfirm.net  
mallory@tcslawfirm.net  
tcslaw@aol.com  
mary@tcslawfirm.net  
lauren@tcslawfirm.net  
*Attorney for Choudhary*

/s/  *Ryan J. Andrews*  
RYAN J. ANDREWS

# EXHIBIT A



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**AMANDA CIMILLO, as**
**Personal Representative of the**
**Estate of RANDALL JORDAN-APARO,**
**Deceased and MINOR CHILD APARO**
**The Natural Child of Randall Jordan-Aparo**
**By and Through Her Mother and Natural**
**Guardian Amanda Cimillo,**

      Plaintiffs,

**vs.**                                          **CASE NO. 4:16-cv-00584-RH-CAS**

**DIANE ANDREWS, ROLLIN AUSTIN,**
**MITCHELL BROWN, PATRICK BURCH,**
**A. JONES (aka LUCY FRANKLIN), SENIOR L.P.N,**
**CHAD EVANS GILLIKIN, AMY GOODWIN,**
**SENIOR L.P.N, MARTHA GREENE, SENIOR L.P.N,**
**JAMES HAMM, KEVIN ALLEN HAMPTON,**
**PAMELA T. HOUSHOLDER, SENIOR R.N.,**
**JOSHUA MARTINA, OLA MELISSA RILEY,**
**SENIOR L.P.N, CHRISTOPHER SPANGLER, and**
**the FLORIDA DEPARTMENT OF CORRECTIONS**

      Defendants.

_____/

**PLAINTIFF'S REQUEST FOR INSPECTION TO DEFENDANT FLORIDA**
**DEPARTMENT OF CORRECTIONS DATED SEPTEMBER 20, 2017**

      Plaintiff, Estate of Randall Jordan-Aparo, Deceased, by and through its Personal

Representative, Amanda Cimillo, and Minor Child Aparo the Natural Child of Randall Jordan-

Aparo, by and through the undersigned counsel, and pursuant to Rule 34, Federal Rules of Civil

Procedure, requests for inspection to Defendants, Florida Department of Corrections (DOC) to

produce the original (typed or pen and ink) Documents prepared by DOC in the normal course of

business for inspection of the DOC's and included in the production in Response to Plaintiffs'

First Request to Produce served on June 2, 2017 containing Bates Stamp 00001 through 002255.

1

Such inspection shall occur as required by Rule 34, Federal Rules of Civil Procedure, at a mutually convenient date/time at Florida Department of Corrections, 501 South Calhoun Street, Tallahassee, Florida.

The Law Offices of
STEVEN R. ANDREWS, P.A.
822 Monroe Street
Tallahassee, Florida 32303
Tel:  (850) 681-6416 / Fax: (850) 681-6984

*/s/ Steven R. Andrews*
STEVEN R. ANDREWS (FBN 0263680)
BRIAN O. FINNERTY (FBN 0094647)
bfinnerty@andrewslawoffice.com
RYAN J. ANDREWS (FBN 104703)
ryan@andrewslawoffice.com
service@andrewslawoffice.com
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served by electronic transmission this 20th day of September, 2017, to:

W. Peter Martin
Dennis, Jackson, Martin & Fontela, P.A.
1591 Summit Lake Drive, Suite 200
Tallahassee, Florida  32317
peter@djmf-law.com
jmauer@djmf-law.com
jennifer@djmf-law.com
*Atty for FDOC & Andrews*

Jeffrey S. Howell
Phipps & Howell
201 South Monroe Street, 4th Floor (32301)
Post Office Box 1351
Tallahassee, Florida  32302
jeff@phipps-howell.com
*Atty for Goodwin, Housholder, Jones a/k/a Franklin, Riley & Greene*

Brian C. Keri
The Law Offices of Brian C. Keri, PA
3375-H Capital Circle NW, Suite 4
Tallahassee FL 32308
brianckeri@earthlink.net
michellemsmith@earthlink.net
*Atty for Austin, Brown, Burch, Gillikin, Hamm, Hampton, Martina & Spangler*

/s/ **Steven R. Andrews**
STEVEN R. ANDREWS

# EXHIBIT B

EXHIBIT

B

| | |
|---|---|
| **From:** | Peter Martin |
| **To:** | Steven R. Andrews |
| **Cc:** | Jessica Mauer; Jennifer Kjellerup; Natalie Sheffield; Lisa Swearengin |
| **Subject:** | RE: Aparo - Original medical records. |
| **Date:** | Monday, November 27, 2017 1:56:38 PM |

I don't have them.

*Peter Martin*

Dennis, Jackson, Martin & Fontela, P.A.

1591 Summit Lake Loop, Suite 200

Tallahassee, FL 32317

(850) 422-3345

(850) 422-1325 (fax)

**From:** Steven R. Andrews [mailto:steve@andrewslaw.com]
**Sent:** Monday, November 27, 2017 1:55 PM
**To:** Peter Martin
**Cc:** Jessica Mauer; Jennifer Kjellerup; Natalie Sheffield; Lisa Swearengin
**Subject:** RE: Aparo - Original medical records.

Peter,

Are you saying that DOC doesn't have the "pen and ink" records?



**Steven R. Andrews, Esq.**

The Law Offices of Steven R. Andrews, P.A.
822 North Monroe Street
Tallahassee, FL 32303

Phone:       850.681.6416
Fax:            850.681.6984
Email:        Steve@AndrewsLawOffice.com
E-Service:  Service@AndrewsLawOffice.com
Website:     www.AndrewsLawOffice.com

NOTICE: This message, including all attachments transmitted with it, is for the use of the addressee only. It may contain proprietary, confidential and/or legally privileged information. No confidentiality or privilege is waived or lost by any mistransmission. If you are not the intended recipient, you must not, directly or indirectly, use, disclose, distribute, print or copy any part of this message. If you believe you have received this message in error, please delete it and all copies of it from your system and notify the sender immediately by reply e-mail. Thank you.

**From:** Peter Martin [mailto:Peter@djmf-law.com]

**Sent:** Monday, November 27, 2017 1:25 PM
**To:** Steven R. Andrews <steve@andrewslaw.com>
**Cc:** Jessica Mauer <Jessica@djmf-law.com>; Jennifer Kjellerup <Jennifer@djmf-law.com>
**Subject:** RE: Aparo - Original medical records.

Steve,

As we have discussed previously, we don't have the "original" set of Aparo's medical records – we have the records that FDC provided to us, and which we then produced to you.

However, if you want to send someone to look at the medical records we have – let me know when they will be coming to our office.

Thanks,

*Peter Martin*
Dennis, Jackson, Martin & Fontela, P.A.
1591 Summit Lake Loop, Suite 200
Tallahassee, FL 32317
(850) 422-3345
(850) 422-1325 (fax)

---

**From:** Steven R. Andrews [mailto:steve@andrewslaw.com]
**Sent:** Monday, November 27, 2017 10:30 AM
**To:** Peter Martin
**Cc:** Jessica Mauer; Jennifer Kjellerup
**Subject:** Aparo - Original medical records.

Peter,

I would like to send my assistant over today to review the original medical records before mediation tomorrow. Let me know as soon as possible when she can come over.

### Steven R. Andrews, Esq.

The Law Offices of Steven R. Andrews, P.A.
at The Grove
822 North Monroe Street
Tallahassee, FL 32303

Phone:       850.681.6416
Fax:          850.681.6984
Email:       Steve@AndrewsLaw.com
E-Service:   Service@AndrewsLaw.com
Website:     www.AndrewsLaw.com



NOTICE: This message, including all attachments transmitted with it, is for the use of the addressee only. It may contain proprietary, confidential and/or legally privileged information. No confidentiality or privilege is waived or lost by any mistransmission. If you are not the intended recipient, you must not, directly or indirectly, use, disclose, distribute, print or copy any part of this message. If you believe you have received this message in error, please delete it and all copies of it from your system and notify the sender immediately by reply e-mail. Thank you.

# EXHIBIT C

# *The Law Offices of*
# *Steven R. Andrews, P.A.*
### *Attorneys At Law*



*Steven R. Andrews, Esq.*
*Brian O. Finnerty, Esq.*
*bfinnerty@andrewslawoffice.com*
*Ryan J. Andrews, Esq.*
*ryan@andrewslawoffice.com*
*Natalie A. Sheffield, CP*
*nsheffield@andrewslawoffice.com*
*Court Service*
*service@andrewslawoffice.com*

*822 North Monroe Street*
*Tallahassee, Florida 32303*
*Telephone (850) 681-6416*
*Facsimile (850) 681-6984*

January 4, 2018

W. Peter Martin, Esq.
Dennis, Jackson, Martin & Fontela, P.A.
1591 Summit Lake Drive, Suite 200
Tallahassee, Florida  32317

> Re:   *Estate of Randall Jordan-Aparo vs. Austin, et al.*
>        Case No.: 4:16-cv-00584-RH-CAS
>        Request for Inspection – dated September 20, 2017

Dear Peter:

Per our telephone communication from this morning I want to schedule a date for the inspection of the pen and ink copy of the Department of Correction's medical chart for Randall Jordan-Aparo.  It has been several months since I filed the Request for Inspection and would like to get this completed within in the next couple of weeks.

I have also just filed a Request for Inspection of the shower stall that Randall Jordan-Aparo was taken to after being sprayed with chemical agents on September 19, 2010.  If we could work on getting this scheduled also it would be greatly appreciated.

Please have someone from your office contact my Paralegal Lisa Swearengin to coordinate an agreeable date and time.

Please let me know if you have any questions or concerns.

Sincerely,

*/s/ Steven R. Andrews*

Steven R. Andrews

cc:    All counsel of record.

SRA/las

# EXHIBIT C-1



*The Law Offices of*
**Steven R. Andrews, P.A.**
*Attorneys At Law*

*Steven R. Andrews, Esq.*
*Brian O. Finnerty, Esq.*
*bfinnerty@andrewslawoffice.com*
*Ryan J. Andrews, Esq.*
*ryan@andrewslawoffice.com*
*Natalie A. Sheffield, CP*
*nsheffield@andrewslawoffice.com*
*Court Service*
*service@andrewslawoffice.com*

*822 North Monroe Street*
*Tallahassee, Florida 32303*
*Telephone (850) 681-6416*
*Facsimile (850) 681-6984*

March 13, 2018

W. Peter Martin, Esq.
Dennis, Jackson, Martin & Fontela, P.A.
1591 Summit Lake Drive, Suite 200
Tallahassee, Florida 32317

    Re:   *Estate of Randall Jordan-Aparo vs. Austin, et al.*
            Case No.: 4:16-cv-00584-RH-CAS
            Inspection of Original Pen and Ink Medical Record of Randall Jordan-Aparo
            Conferral pursuant to Local Rule 7(b)

Dear Peter:

        During the deposition of Mrs. Kelley El-Urfali she indicated that Mr. Aparo's original (pen and ink) medical records should be housed at the North West Florida Reception Center. I would like to request that you make arrangements for my Paralegal Lisa Swearengin and myself to come and inspect and photo copy all records within the medical chart for Randall Jordan-Aparo within the next week.

        Please have someone from your office contact my scheduler Robin Humphries to coordinate a date and time that is agreeable to both parties.

        Thank you for your immediate attention to this matter.

                        Sincerely,

                        */s/ Steven R. Andrews*

                        Steven R. Andrews

Enclosures

SRA/las

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

AMANDA CIMILLO, as
Personal Representative of the
Estate of RANDALL JORDAN-APARO,
Deceased and MINOR CHILD APARO
The Natural Child of Randall Jordan-Aparo
By and Through Her Mother and Natural
Guardian Amanda Cimillo,

       Plaintiffs,

vs.                           CASE NO. 4:16-cv-00584-RH-CAS

DIANE ANDREWS, ROLLIN AUSTIN,
MITCHELL BROWN, PATRICK BURCH,
A. JONES (aka LUCY FRANKLIN), SENIOR L.P.N,
CHAD EVANS GILLIKIN, AMY GOODWIN,
SENIOR L.P.N, MARTHA GREENE, SENIOR L.P.N,
JAMES HAMM, KEVIN ALLEN HAMPTON,
PAMELA T. HOUSHOLDER, SENIOR R.N.,
JOSHUA MARTINA, OLA MELISSA RILEY,
SENIOR L.P.N, CHRISTOPHER SPANGLER, and
the FLORIDA DEPARTMENT OF CORRECTIONS

       Defendants.
_____/

**PLAINTIFF'S REQUEST FOR INSPECTION TO DEFENDANT FLORIDA
DEPARTMENT OF CORRECTIONS DATED SEPTEMBER 20, 2017**

Plaintiff, Estate of Randall Jordan-Aparo, Deceased, by and through its Personal

Representative, Amanda Cimillo, and Minor Child Aparo the Natural Child of Randall Jordan-

Aparo, by and through the undersigned counsel, and pursuant to Rule 34, Federal Rules of Civil

Procedure, requests for inspection to Defendants, Florida Department of Corrections (DOC) to

produce the original (typed or pen and ink) Documents prepared by DOC in the normal course of

business for inspection of the DOC's and included in the production in Response to Plaintiffs'

First Request to Produce served on June 2, 2017 containing Bates Stamp 00001 through 002255.

1

Such inspection shall occur as required by Rule 34, Federal Rules of Civil Procedure, at a mutually convenient date/time at Florida Department of Corrections, 501 South Calhoun Street, Tallahassee, Florida.

The Law Offices of
STEVEN R. ANDREWS, P.A.
822 Monroe Street
Tallahassee, Florida 32303
Tel:  (850) 681-6416 / Fax: (850) 681-6984

*/s/ Steven R. Andrews*
STEVEN R. ANDREWS (FBN 0263680)
BRIAN O. FINNERTY (FBN 0094647)
bfinnerty@andrewslawoffice.com
RYAN J. ANDREWS (FBN 104703)
ryan@andrewslawoffice.com
service@andrewslawoffice.com
*Counsel for Plaintiffs*

2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served by electronic transmission this 20th day of September, 2017, to:

W. Peter Martin
Dennis, Jackson, Martin & Fontela, P.A.
1591 Summit Lake Drive, Suite 200
Tallahassee, Florida 32317
peter@djmf-law.com
jmauer@djmf-law.com
jennifer@djmf-law.com
*Atty for FDOC & Andrews*

Brian C. Keri
The Law Offices of Brian C. Keri, PA
3375-H Capital Circle NW, Suite 4
Tallahassee FL 32308
brianckeri@earthlink.net
michellemsmith@earthlink.net
*Atty for Austin, Brown, Burch, Gillikin, Hamm,*
*Hampton, Martina & Spangler*

Jeffrey S. Howell
Phipps & Howell
201 South Monroe Street, 4th Floor (32301)
Post Office Box 1351
Tallahassee, Florida 32302
jeff@phipps-howell.com
*Atty for Goodwin, Housholder, Jones a/k/a*
*Franklin, Riley & Greene*

/s/ *Steven R. Andrews*
STEVEN R. ANDREWS

3

# EXHIBIT D



# The Law Offices of
## Steven R. Andrews, P.A.

*Steven R. Andrews*
*sandrews@andrewslawoffice.com*
*Brian O. Finnerty*
*bfinnerty@andrewslawoffice.com*

*822 North Monroe Street*
*Tallahassee, Florida 32303*
*Telephone (850) 681-6416*
*Facsimile (850) 681-6984*

September 2, 2014

## VIA: U.S. CERTIFIED MAIL & Regular U.S. Mail

Department of Corrections (#7012 1010 0001 3004 7621)
**Attn: Secretary Michael Crews**
501 S. Calhoun Street
Tallahassee, FL  32399-2500

Florida Department of Corrections (#7012 1010 0001 3004 7638)
Reception Medical Center
**Attn: Medical Records**
7765 S. CR 231
P. O. Box 628
Lake Butler, FL 32054-0628

Florida Department of Financial Services (#7012 1010 0001 3004 7614)
Division of Risk Management
**Attn: Legal Notices**
200 East Gaines Street
Tallahassee, FL 32399-0336

Re:     *Notice of Claim, Pursuant to Fla. Stat. § 768.28 and Medical Records Request (Inmate is Deceased and D.C. 4-711B is NOT required to be submitted (see Exhibit A)*

           *Claimant:     The Estate of Randall Jordan-Aparo, by and through Amanda Cimillo, as Intended Personal Representative (see Attached Exhibit B) and Parent and Guardian of         , the natural daughter of Randall Jordan-Aparo (see Attached Exhibit C)*

           *S.S. #:*
           *Date of Birth:*
           *Place of Birth:*

To whom it may concern:

      This letter shall constitute a notice of claim pursuant to Section 768.28, Florida Statutes, on behalf of my client, The Estate of Randall Jordan-Aparo, by and through Amanda M. Cimillo,

as Parent and Natural Guardian of ████████████████████ is the sole beneficiary of the Intestate Estate of Randall Jordan-Aparo. This claim is also a claim for court awarded attorney's fees pursuant to 42, U.S.C., 1983, et seq. This claim shall also include civil remedies for criminal practices, falsification of medical records, obstruction of justice, assault, battery, tort *per se*, homicide, tort *per se* manslaughter. Additionally, this claim shall include a claim for medical malpractice causing death. The facts and circumstances of the death of Randall Jordan-Aparo were intentionally concealed by employees and agents of the Florida Department of Corrections for which the Florida Department of Corrections is directly and vicariously liable.

The facts, events and legal basis for these claims are set forth in *Land et al. v. Michael Crews in his official capacity, et al.*, in U.S.D.C. Case No. 4:14cv-00347-WS-CAS. See the attached **Exhibit D**, First Amended Complaint, filed in support of the claims for your reference.

The individuals to whom this **Notice of Claim** is directed are set forth below. These claims are made in their individual and not official capacities:

1. Diane Andrews;
2. Sergeant James I. Hamm;
3. Michael Crews;
4. Jeffrey Beasley;
5. Duty Warden, Colonel Timothy Copeland;
6. Officer Patrick S. Burch;
7. Lieutenant Roland Austin;
8. Sergeant Chad Evans Gillikin;
9. Kenneth Sumpter;
10. Officer Joshua Martina;
11. Officer C. Spangler;
12. Nurse Ola Melissa "Lisa" Riley, L.P.N.;
13. Nurse Lucy Franklin, L.P.N.;
14. Nurse Martha Jones Greene, L.P.N.
15. Dr. Mohammad Choudhary, M.D.;
16. Dr. Nikorn Arunakal, M.D.
17. Dr. Olugbenga Ogunsanwo, M.D.;
18. Melinda Miguel;
19. Dawn Case;
20. Eddie C. White;
21. Debbie Carter-Arant;
22. Officer James Messer;
23. Officer James Foxworth a/k/a George Edward Foxworth;
24. Assistant Warden, Wilton Ricky Cloud;
25. Sergeant Kevin Hampton;
26. Officer Kenneth Malphurs;
27. Officer Gary McClain;
28. Captain Mitchell Brown;
29. Sergeant Patricia Diane Cicirello;
30. Nurse Patricia Lemon, A.R.N.P.;

31. Nurse Lynda Adair, SRN, Senior Regional Nurse Supervisor;

32. Nurse Pamela Housholder, SRN;

33. Officer C.O. Wallace;

34. Officer Michael Dale Brown;

35. A. Kirkland, A.R.N.P.;

36. Nurse Debra Wright, Health Counselor;

37. Nurse Amy Goodwin, L.P.N.;

38. Mindy Kelley, Health Information Officer;

39. Nurse Sara Greene, R.N.;

40. Nurse L. Hardy, S.L.P.N.;

41. Collean D'Acquisto, R.N., Director of Nursing Services;

42. Officer Kevin Allen Hampton;

43. Officer Christian Hatchcock;

44. Officer Ricky Holley;

45. Officer Elton Moore;

46. Officer David Wallace; and

47. Officer Christopher Spangler.

To those of you named in this letter who are not current employees of the Florida Department of Corrections (retired, fired, forced resignation, etc.) or who are not supervisory employees whose statements would be deemed to bind the Florida Department of Corrections, are free to contact the undersigned to discuss this matter.

This notice should include a claim for attorney fees and awarded costs, which may well exceed the sovereign immunity cap which we assert does not apply to Constitutional violations or civil violations asserting fraud or criminal misconduct.  We would request that the Florida Department of Corrections forward a copy of this letter to all current or former employees listed above and we recommend such employees retain their own counsel based upon the criminal or *quasi* criminal allegations, which will be complained in our complaint.  However, do as you choose.

Based upon witness interviews and other information, I am prepared to certify that this office has conducted a good faith investigation of claims of medical malpractice.  Further, facts concerning the medical care and treatment of Randall Jordan-Aparo were intentionally concealed from the family and certain other law enforcement officers which give rise to an extension to the applicable statutes of limitations.  You may expect this claim to be filed on or before September 18, 2014 in the Federal District Court for the Northern District of Florida.

This claim involves an incident described in the attached.  The Claimants will seek attorney's fees and damages in excess of statutory limits in the event a 1983 claim is filed.

### *Medical Records Request*

Dear Sir/Madam:

This office has been retained to represent the above referenced individual.  Pursuant to Section 766.204, Florida Statutes, please find enclosed a HIPAA Authorization signed by our client(s) authorizing you to release **full and complete copies of all MEDICAL RECORDS, X-RAYS, PHOTOGRAPHS, as outlined on Exhibit "A" attached hereto**, which were generated as a result of our client's medical care while in the custody of the Department of Corrections and, in particular, an inmate at the Franklin Correctional Institute from **September 1, 2010 up and including the date of his death**.  To the extent that the homicide of Randall Jordan-Aparo may be under investigation by various state and federal agencies does not, by matter of Florida law, allow you to withhold medical records from the mother and natural parent of Mr. Aparo's 10 year old child.

Please provide me with copies of all the records requested above and in as reflected on the attached **Exhibit A.**

Pursuant to Florida Statutes §395.025, addressing patient and personnel records of licensed healthcare facilities, which in pertinent part states:

> **"Any licensed facility shall, upon written request, and only after discharge of the patient, furnish, in a timely manner, without delays for legal review, to any person admitted therein for care and treatment or treated thereat, or to any such person's guardian, curator, or personal representative, or in the absence of one of those persons, to the next of kin of a decedent or the parent of a minor, or to anyone designated by such person in writing, a true and correct copy of all patient records, including X rays, and insurance information concerning such person, which records are in the possession of the licensed facility, provided the person requesting such records agrees to pay a charge."**

Because a personal representative has not yet been appointed for the Estate of Randall Jordan-Aparo, his records with your facility should be provided to his surviving daughter, through her mother Amanda Cimillo as she is his next of kin. Since we represent The Estate of Randall Jordan-Aparo for his surviving daughter regarding this matter, and have attached an executed HIPAA authorization allowing for us to collect his records, your facility must forward such records in a timely manner in order to comply with the requirements of the statute.

**These records should be provided to this office within 10 days of the receipt of this request.** Thank you for your assistance in this matter. If you have any questions feel free to call me at the number above.

Sincerely,

*/s/ Steven R. Andrews*

Steven R. Andrews

SRA/ma
Enclosures

EXHIBIT "A"

## AUTHORIZATION FOR RELEASE OF PROTECTED HEALTH INFORMATION
### (PHI)

| -Section A: This section must be completed for all Authorization | | | | | |
|---|---|---|---|---|---|

**Patient Name:**
Randall Jordan-Aparo

**Birth Date:** _____

**Social Security No. (optional):**

**Provider's/Health Plan's Name:**
FLORIDA Department OF CORR

**Recipient's Name:**
Steven R. Andrews

**Provider's/Health Plan's Company Name (if applicable):**

**Recipient's Company Name (if applicable):**
The Law Offices of Steven R. Andrews, P.A.

**Provider's/Health Plan's Address:**

**Address:**
822 North Monroe Street

| City: | State: | Zip: | City: Tallahassee | State: FL | Zip: 32303 |
|---|---|---|---|---|---|

This authorization will expire on the following: (Fill in the date or the event but not both.)
**Date:**      **Event:** Litigation

**Purpose of disclosure:** Florida Statute 766, 42 U.S.C. 1983 and associated criminal statutes

**Description of information to be used or disclosed**

Is this request for psychotherapy notes? ☐ Yes, then this is the only item you may request on this authorization. You must submit another authorization for other items below. ☒ No, then you may check as many items below as you need.

| Description: | Date(s): | Description: | Date(s): | Description: | Date(s): |
|---|---|---|---|---|---|
| ☒ All PHI in Medical Record | | ☒ Medication Sheet(s) | | ☒ Labor/Delivery Sum. | |
| ☒ Admission Form(s) | | ☒ Operative Information | | ☒ OB Nursing Assess | |
| ☒ Dictation Report(s) | | ☒ Special Test/Therapy | | ☒ Postpartum Flow Sheet | |
| ☒ Physician Order(s) | | ☒ Rhythm Strips | | ☒ Itemized Bill | |
| ☒ Intake/Outake | | ☒ Nursing Information | | ☒ UB-92 | |
| ☒ Clinical Test(s) | | ☒ Transfer Forms | | ☒ Other: Entire Record | |
| | | ☒ ER Information | | | |

I acknowledge, and hereby consent to such, that the released information may contain alcohol, drug abuse, psychiatric, HIV testing, HIV results or AIDS information. _____ (Initial)  If not applicable, check here.

I understand that:
1. I may refuse to sign this authorization and that it is strictly voluntary.
2. My treatment, payment, enrollment or eligibility for benefits may not be conditioned on signing this authorization.
3. I may revoke this authorization at any time in writing, but if I do, it will not have any affect on any actions taken prior to receiving the revocation.  Further details may be found in the Notice of Privacy Practices.
4. If the requester or receiver is not a health plan or health care provider, the released information may no longer be protected by federal privacy regulations and may be redisclosed.
5. I understand that I may see and obtain a copy the information described on this form, for a reasonable copy fee, if I ask for it.
6. I get a copy of this form after I sign it.

**Section B: Is the request of PHI for the purpose of marketing?**
If yes, the health plan or health care provider must complete Section B, otherwise skip to Section C.

☐ Yes ☒ No

**Section C: Signatures**

I have read the above and authorize the disclosure of the protected health information as stated.

**Signature of Patient/Plan Member/Guardian/Patient Representative:**

**Date:** 9-1-14

**Print Name of Patient/Patient Representative:**
Amanda M. Cimillo, as intended and/or appointed Personal Representative of the Estate of Randall Jordan-Aparo

**Relationship to Patient:**
Mother of Natural Minor Child of Randall Jordan-Aparo and intended and/or appointed Personal Representative of the Estate of Randall Jordan-Aparo

**EXHIBIT**
A

DEPARTMENT OF CORRECTIONS MEDICAL/HOSPITAL RECORDS OF:
Randall Jordan-Aparo
DATE OF BIRTH ███████ DATE OF DEATH: 09/19/2010
SOCIAL SECURITY NO. ███████████

## CERTIFICATION OF AUTHENTICITY OF RECORDS

I, _____ , am hereby charged

with the responsibility of being the custodian of the records for Florida Department of Corrections.

As such, I acknowledge that "the copies of Randall Jordan-Aparo records," for which this

certification is made, are true and complete reproductions of the original or microfilmed records

which are housed with Florida Department of Corrections.  The original records were made in the

regular course of business at or near the time of the matter recorded.  This certification is given

pursuant to Chapter 395.3025, Florida Statutes (relating to medical records) by the custodian of

records in lieu of the personal appearance of the above named and accordingly has been signed in

the presence of a notary public.


_____

Notary Public Signature of Custodian of Records


_____

Printed Name of Custodian of Records

Commission Expires: _____

Commission Number: _____

3

DEPARTMENT OF CORRECTION MEDICAL RECORDS OF: Randall Jordan-Aparo
DATE OF BIRTH ▓▓▓▓▓▓ – DATE OF DEATH: 09/19/2010
SOCIAL SECURITY NO.: ▓▓▓▓▓▓

| | DOCUMENT | PRODUCED | NO SUCH RECORD EXISTS |
|---|---|---|---|
| 1. | Medical Records | | |
| 2. | All Billing Records | | |
| 3. | Office Notes | | |
| 4. | Reports of Surgical Procedures | | |
| 5. | Charts | | |
| 6. | New Patient Background Forms | | |
| 7. | Nurses' Notes | | |
| 8. | Doctors' Notes and Orders | | |
| 9. | Therapy/Counseling Notes | | |
| 10. | Insurance Claim Forms | | |
| 11. | Insurance Payment Documents | | |
| 12. | Incident or Accident Memoranda or Forms | | |
| 13. | Laboratory Results | | |
| 14. | Diagnostic Test Results | | |
| 15. | Photographs, X-Rays, Images | | |
| 16. | Correspondence | | |
| 17. | Memoranda | | |
| 18. | Emergency Care Documentation | | |
| 19. | Notes or Documentation from any Hospital | | |
| 20. | Patient Account Cards | | |
| 21. | Consultation Reports | | |
| 22. | Prescriptions | | |
| 23. | Pharmaceutical Records | | |
| 24. | Consent Forms | | |
| 25. | Explanation of Procedures Given to Patient | | |

DEPARTMENT OF CORRECTIONS MEDICAL/HOSPITAL RECORDS OF: Randall Jordan-Aparo
DATE OF BIRTH: ███████ - DATE OF DEATH: 09/19/2010
SOCIAL SECURITY NO.: ████████

| | DOCUMENT | PRODUCED | NO SUCH RECORD EXISTS |
|---|---|---|---|
| 26. | Written Instructions to Patient | | |
| 27. | Any Other Written Information Pertaining to the Patient in Question | | |
| 28. | All clinical notes | | |
| 29. | Patient Telephone Messages | | |
| 30. | Prescription records | | |
| 31. | Social Security Disability Application Forms | | |
| 32. | Any/all correspondence from Patient to Physician | | |
| 33. | Toxicology screens for alcohol or drug use | | |

RECORDS CHECK MADE BY: _____

EXHIBIT "B"

Filing # 17743928 Electronically Filed 09/02/2014 02:32:31 PM

IN THE CIRCUIT COURT OF THE
SECOND JUDICIAL CIRCUIT  IN AND
FOR LEON COUNTY, FLORIDA

IN RE:    The Estate of:

RANDALL JORDAN-APARO,

    Deceased.

_____/

CASE NO. _____

PROBATE DIVISION

### PETITION FOR ADMINISTRATION

Petitioner, AMANDA M. CIMILLO, alleges:

1.       Petitioner is the mother of ███████████, the minor child of the

Decedent, RANDALL JORDAN-APARO.  Petitioner, on behalf of her minor child, has an

interest in the above estate as the natural parent and natural guardian of ██████,

██████), the surviving minor child of the Decedent.  Petitioner's address is ██████

██████████ and the name and office address of petitioner's attorney are set

forth at the end of this petition.

2.       Decedent, RANDALL JORDAN-APARO, whose last known address was

1760 Highway 67 North, Carabelle, Florida 32322 and, whose age was 27 years old and

whose social security number is ████████ died on September 20, 2010 in Franklin

County, Florida and on the date of death Decedent's permanent domicile was in care of the

Florida Department of Corrections, 501 South Calhoun Street, Tallahassee, Florida 32399-

2500.

3.       So far as is known, the Decedent had no surviving spouse and the name,

address, relationship and date of birth of his only beneficiary is:

Petition for Administration<br/>
In Re:  Estate of Randall Jordan-Aparo<br/>
Page 1 of 3

EXHIBIT
B

| Name | Address | Relationship | Date of Birth |
|------|---------|--------------|---------------|



4.     Venue of this proceeding is in this county because Decedent was domiciled in this County and the assets, if recovered, are in this County because the Estate will be seeking recovery in a wrongful death, medical malpractice and other legal causes of action that the Estate may have against the Florida Department of Corrections and others.

5.     AMANDA M. CIMILLO, whose address is ▮▮▮▮▮▮▮ and who is qualified under the laws of the State of Florida to serve as personal representative of the Decedent's estate, is entitled to preference in appointment as personal representative because she is the natural parent and guardian of the sole beneficiary of the Decedent.

6.     The nature and approximate value of the assets of this estate which are subject to probate in the State of Florida are unknown because they are tort claims for wrongful death, medical malpractice and other legal causes of action at this time not ascertained.

7.     This estate will not be required to file a Federal and State Tax Return.

8.     After exercise of reasonable diligence, Petitioner is unaware of any unrevoked wills or codicils of the Decedent.

9.     A Certified copy of the Death Certificate will be filed separately.

Under penalties of perjury, I declare that I have read the foregoing, and the facts alleged are true to the best of my knowledge and belief.

Signed this 1st day of September, 2014.

AMANDA M. CIMILLO
Petitioner

STEVEN R. ANDREWS
Florida Bar No. 026380
The Law Offices of
STEVEN R. ANDREWS, P.A.
822 North Monroe Street
Tallahassee, FL 32303
(850) 681-6416
(850) 681-6984 facsimile
sandrews@andrewslawoffice.com

and

WILLIAM E. WHITLOCK, III
Attorney at Law
910 North Duval Street
Tallahassee, FL 32303
(850) 224-5556
(850) 681-0943 facsimile
service@ix.netcom.com

Filing # 17743928 Electronically Filed 09/02/2014 02:32:31 PM

IN THE CIRCUIT COURT OF THE
SECOND JUDICIAL CIRCUIT  IN AND
FOR LEON COUNTY, FLORIDA

IN RE:    The Estate of:                              CASE NO. _____

RANDALL JORDAN-APARO,                    PROBATE DIVISION

      Deceased.
_____/

## OATH OF PERSONAL REPRESENTATIVE, AND
## DESIGNATION AND ACCEPTANCE OF RESIDENT AGENT

**STATE OF FLORIDA**
**COUNTY OF PINELLAS**

I, AMANDA M. CIMILLO, state under oath that:

    1.    I am qualified within the provisions of Sections 733.302, 733.303 and

733.304 of the Florida Probate Code to serve as personal representative of the estate of

RANDALL JORDAN-APARO, deceased.

    2.    I will faithfully administer the estate of the decedent according to law.

    3.    I am a resident of Pinellas County, Florida.

    4.    I hereby designate Steven R. Andrews,  who is a member of The Florida

Bar, who is a resident of Leon County, Florida, whose office address is 822 North

Monroe Street, Tallahassee, Florida 32303 as my agent for the service of process or

notice in any action against me, either in my representative capacity, or personally, if the

personal action accrued in the administration of the estate.



AMANDA M. CIMILLO
Affiant

Sworn to and subscribed to before me by AMANDA M. CIMILLO, Affiant, who is personally known to me or who produced_____ as identification on this /st day of September, 2014.

ELSA D. WHITLOCK
Commission # EE 853305
Expires November 20, 2016
Bonded Thru Troy Fain Insurance 800-385-7019

Notary Public State of Florida
My Commission
Expires: _____

## ACCEPTANCE

I CERTIFY that I am a permanent resident of Leon County, Florida, and my office address is as indicated above. I hereby accept the foregoing designation as Resident Agent.

Signed this / day of September, 2014.

STEVEN R. ANDREWS
Attorney at Law
822 North Monroe Street
Tallahassee, Florida  32303
(850) 681-6416
Florida Bar No.  0263680
sandrews@andrewslawoffice.com

FORMAL ADMINISTRATION
CHECKLIST FOR OPENING ESTATE

PROBATE CASE NUMBER:  2014-CP-____   DATE OF DEATH: September 20, 2010
ESTATE OF:  Randall Jordan-Aparo

ATTORNEY OF RECORD:
Steven R. Andrews, 822 North Monroe Street, Tallahassee, FL 32303
William Whitlock, 910 North Duval Street, Tallahassee, FL 32303

ESTATE:    Testate _____     Intestate ___X___  Ancillary _____

1.     Original WILL Filed?     YES ____     NO _____     Other _____

2.     Death Certificate Filed?     YES _X_     NO _____

3.     Personal Representative- Testate Estate
       Named in Will _____
       Selected by Majority _____          Waivers Attached _____

4.     Personal Representative- Intestate Estate
       Spouse_____
       Selected by Majority _____          Waivers Attached _____
       Heir Nearest in Degree _____      Waivers Attached _____

5.     BOND Approximate Value of Probate Assets $_____
       Waive by Will_____
       Waive by Beneficiaries _____     Waivers Attached _____
       Motion to Waive Bond Filed with Court _____
       Court to consider Bond ____X____
       As Attorney for the Personal Representative, I CERTIFY this 2nd day of September ,
       2014,  that I have personally reviewed the foregoing checklist and it is accurate.

CLERK'S NOTES:                    /s/ *William E. Whitlock, III*
                                  WILLIAM E. WHITLOCK, III
                                  ATTORNEY AT LAW
                                  FLA BAR NO. 0144678
                                  910 N. Duval Street
                                  Tallahassee, Florida  32303
                                  Telephone:  (850) 224-5556

EXHIBIT "C"



**STATE OF FLORIDA**
**DEPARTMENT OF REVENUE**
**CHILD SUPPORT ENFORCEMENT PROGRAM**

To:  RANDALL W JORDAN-APARO
1050 BIG JOE RD
C/O: JEFFERSON CI T37895
MONTICELLO, FL 32344-5188

CSE Case No.: 1193612489

### FINAL ORDER OF PATERNITY

#### Summary

1.  The Florida Department of Revenue, Child Support Enforcement Program (DOR), enters this Final Order of Paternity (Final Order) establishing paternity for the child(ren) named in Paragraph 4 below.

#### Findings of Fact and Conclusions of Law

2.  DOR has jurisdiction over the subject matter of this proceeding pursuant to section 409.256, Florida Statutes, because DOR is providing Title IV-D services on behalf of AMANDA M CIMILLO, the Custodial Parent of the child(ren) and paternity has not previously been established for the children.

  ☒ DOR also has personal jurisdiction over you because you were properly served in Florida with the Notice of Administrative Proceeding to Establish Paternity on 12/11/2009.

  ☐ DOR also has personal jurisdiction over you because you waived service of the Notice of Administrative Proceeding to Establish Paternity by signing a Waiver of Service for Administrative Proceedings on  .

  ☐ Further, you are subject to the jurisdiction of DOR in this proceeding pursuant to ss. 48.193(1)(e) and 88.2011, F.S., because you were properly served with the Notice of Administrative Proceeding to Establish Paternity outside the state of Florida and you

    ☐ resided in this state with the child(ren)

    ☐ resided in this state and provided parental expenses or support for the child(ren)

    ☐ cohabitated with the mother in this state

    ☐ acknowledged paternity of the child(ren) in this state

    ☐ engaged in sexual intercourse in this state which may have resulted in the conception of the child(ren)

  prior to the commencement of this proceeding.

    ☐ submitted to the jurisdiction of this state by consent, by entering a general appearance, or by filing a responsive document having the effect of waiving any contest to personal jurisdiction.

3.  The child(ren) in Paragraph 4 was not born or conceived while the mother was married.



EXHIBIT

4. Based upon genetic testing results that equal or exceed a 99% probability of paternity, which are hereby incorporated by reference and made a part of this Final Order, the Respondent is the legal and biological father of the following child(ren):

| Child Name | Child DOB |
|---|---|
| | |

The other parent of the child(ren) is AMANDA M CIMILLO.

5. AMANDA M CIMILLO, the Custodial Parent, has custody of the child(ren) or the primary residence of the child(ren) is with the Custodial Parent . No custody or visitation rights are being determined by this administrative proceeding.

6. No determination of name change is being made by this administrative proceeding.

7. The Final Order is being entered without a hearing because:

☐ the Respondent consented to this Final Order and waived any further hearing, as shown by the Respondent's signature at the end of this Final Order.

☒ the Respondent did not request an administrative hearing within the time limits contained in the Notice of Rights section of the Proposed Order of Paternity served on the Respondent. Pursuant to ss. 409.256(10)(b), F.S., the Respondent is deemed to have waived the right to request a hearing.

8. Additional Findings

Not applicable.

Based upon the findings of Fact and Conclusions of Law and in accordance with section 409.256, Florida Statutes, it is ORDERED that.

A. RANDALL W JORDAN-APARO is the legal and biological father of:

CS-OP50   CAPS   PRINTED ON 2/23/2010
N. 05/06

**Child Name**                                                   **Child DOB**

███████████████████████████████████████████████████

B. Notification of Changes.  Within seven (7) days the Respondent shall notify DOR in writing at ADMIN PATERNITY PROCESSING , 19361 U.S. HWY 19 N. STE A , CLEARWATER , FL  33764-0000 of any change in name, Social Security number, residential address, mailing address, employer, employment address, telephone numbers, and driver license number.  It will be presumed that the Respondent has received any documents sent by regular U.S. Mail to the most recent mailing address provided.

C.  Additional Provisions
    Not applicable.

Effective Date. This Final Order will be effective immediately and will remain in effect unless vacated on appeal.

DONE and ORDERED this the  23rd  day of  Feb.  , 2010

_____  Signature

Ed Doyle                          Printed Name

Service Center Manager            Title

Authorized Designee for: Ann Coffin
Director, Child Support Enforcement Program
Florida Department of Revenue

CS-OP50   CAPS   PRINTED ON 2/23/2010
N. 05/06

## CERTIFICATE OF RENDITION

I certify that a copy of this Final Order of Paternity has been filed in the official records of the Department of Revenue and served by regular US mail on  the Respondent RANDALL W JORDAN-APARO the Respondents address of Record at 1050 BIG JOE RD, C/O: JEFFERSON CI T37895, MONTICELLO, FL 32344-5188  this the _22nd_ day of _Feb_  , 20_10_.

_____

Janet Theodore
Deputy Agency Clerk

## NOTICE OF RIGHT TO APPEAL

Any party who is adversely affected by this Final Order of Paternity has the right to ask for judicial review (Section 120.68, Florida Statutes).   If you want to request a judicial review, you must complete both of the following steps:

1.  File an original Notice of Appeal within 30 days of the filing date on the order you are appealing as prescribed by the Florida Rules of Appellate Procedure, with the Deputy Agency Clerk of the Department of Revenue at the following address:

> DEPARTMENT OF REVENUE
> CHILD SUPPORT ENFORCEMENT PROGRAM
> ATTENTION: D. A. C.
> P.O. BOX 8030
> TALLAHASSEE, FLORIDA 32314-8030

2.  File a copy of the Notice of Appeal, and pay the required filing fee, to the Clerk of the First  District  Court of Appeal or the Clerk of the District Court of Appeal for the district where you live.

> Filing with either the DOR Deputy Agency Clerk or the Clerk of a District Court of Appeal is effective when the Notice of Appeal is received, not when it was mailed.

EXHIBIT "D"

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE
DIVISION

AUBREY LAND, DAVID CLARK,
DOUG GLISSON, JOHN ULM,
JAMES PADGETT and
CHRISTINA BULLINS,

      Plaintiffs,

vs.                                     CASE NO.: 4:14-cv-00347-WS-CAS

MICHAEL CREWS, in his official
Capacity only, as Secretary of the
Florida Department of Corrections
(injunctive relief only), JEFFERY
BEASLEY and KENNETH
SUMPTER, MELINDA MIGUEL
and DAWN CASE, in their
Individual Capacities,

      Defendants.

_____/

## FIRST AMENDED COMPLAINT

The Plaintiffs, AUBREY LAND, DAVID CLARK, DOUG GLISSON, JOHN ULM,

JAMES PADGETT and CHRISTINA BULLINS (hereinafter collectively described as Plaintiffs

or "LAND", "CLARK", 'GLISSON' , "ULM", "PADGETT" and "BULLINS") by and through

their undersigned counsel, hereby sue the Defendants, MICHAEL CREWS, in his official capacity

as Secretary of the Florida Department of Corrections (hereinafter Defendant "FDOC"); JEFFREY

BEASLEY and KENNETH SUMPTER, in their individual capacities (hereinafter "BEASLEY"

and "SUMPTER"), and MELINDA MIGUEL and DAWN CASE, in their individual capacities

(hereinafter "MIGUEL" and "CASE"), for damages and file this **First Amended Complaint** and

allege:

EXHIBIT
D

## JURISDICTION AND VENUE

1.       This is a Constitutional claim brought under 42 U.S.C. 1983, by and through The

Freedom of Speech Clause of the *First Amendment*. The Court has subject matter jurisdiction.[1]

The acts or omissions which caused the Plaintiffs' injuries occurred primarily within the Second

Judicial Circuit of the State of Florida. Venue lies within the United States District Court for the

Northern District of Florida pursuant to Title 28 U.S.C. §1391. Federal Court jurisdiction is based

on Title 28 U.S.C. §1331.

2.       This 42 U.S.C. 1983 action asserts that the Plaintiffs' *First Amendment* rights have

been violated. That the Plaintiffs have been subjected to retaliation for exercising their *First*

*Amendment* rights by disclosing violations of the *Eighth Amendment* as early as April 2013 and

continuing thereafter, *infra*.

3.       This is also an action for injunctive relief against the Defendant, MICHAEL

CREWS in his official capacity as Secretary of the Florida Department of Corrections (FDOC)

(*Exparte Young, infra*).

4.       The Plaintiffs seek money damages against Defendant, BEASLEY, SUMPTER,

MIGUEL and CASE in their individual capacities.

### DEFENDANT FDOC

5.               Defendant, FDOC, is a State agency whose headquarters are in Tallahassee,

---

[1] This CASE is filed with knowledge of and based upon *Borough of Duryea, Pennsylvania, et al. v. Charles J. Guarnieri*, 131 S. Ct. 2488 (2011) as limited by *Garcetti v. Ceballos*, 547 U.S. 410 (2006), *Connick v. Myers*, 461 U.S. 138 (1983) and *Pickering v. Board of Ed. of Township High School Dist. 205*. These Plaintiffs are entitled to file this claim under U.S.C. 42 1983 and pursuant to The Petition Clause of the *First Amendment* because this dispute between the Parties involves a matter of public concern, i.e., the grossly negligent or intentional death of inmates housed by the Florida Department of Corrections. This action does not merely constitutionalize the Plaintiffs' grievances. Further, this litigation is not objectively baseless, nor does it seek to interfere directly with the normal daily operations of the State Agency Defendants. See attached **Exhibit A (Miami Herald articles and editorial of May and June, 2014)**.

Florida. FDOC is charged with the responsibility of housing inmates sentenced to prison by

2

Florida judges. At this time, FDOC imprisons approximately 100,000 men and women at approximately 70 prisons throughout the State of Florida.

## DEFENDANT JEFFREY BEASLEY

6. Defendant JEFFREY BEASLEY is the FDOC's Inspector General and as such is a decision maker and policymaker whose action may cause a governmental entity to be held liability for custom or policy or alternatively acts as a "rubber stamp" to a subordinate's recommendation. Defendant BEASLEY is tasked with the responsibility of investigating administrative and criminal misconduct by FDOC employees. Defendant BEASLEY is sued in his individual capacity. Defendant BEASLEY is not entitled to the defense of qualified immunity in that Defendant BEASLEY had direct knowledge of prisoner abuse at Franklin Correctional Institute ("FCI") from Plaintiffs, LAND, CLARK, GLISSON, ULM and PADGETT, concerning the physical abuse of inmates through the use of retaliatory use of chemical agents based upon the following time line:

a.     **In April 2013**, BEASLEY was advised that FDOC was conducting an investigation concerning prisoner / guard sexual activity, introduction of contraband into the prison, retaliatory beatings of inmates by prison guards, inmate abuse by prison guards, gang activity and most importantly, the potential death of an inmate at FCI in 2010 ("Kassidy Hill Sex Investigation").

b.     **In May or June 2013**, Defendants, BEASLEY and SUMPTER, were

advised Plaintiffs, PADGETT, LAND, GLISSON and ULM, had begun to receive direct
intelligence that there had been an inmate death as a result of the retaliatory use of chemical agents
on a prisoner at FCI in the fall of 2010. Upon inquiry, Plaintiffs, PADGETT, LAND, GLISSON
and ULM, determined that there had been a prior criminal and administrative investigation of the
death of Randall Jordan Aparo which had been closed in approximately

3

October 2011. At this meeting with Defendant, BEASLEY, the Plaintiffs requested a task force
and additional staffing due to the serious nature of the allegations of abuse of inmates and the
retaliatory application of chemical agents apparently in violation of policy. At this meeting with
Defendant, BEASLEY, it is more likely than not that the Plaintiffs mentioned Randall Jordan
Aparo by name.

      c.    **In September 2013**, Plaintiffs, PADGETT, LAND, and ULM, had a face-
to- face meeting with Defendant, BEASLEY, at the DOC Headquarters wherein these three
Plaintiffs directly advised Defendant, BEASLEY, that, as a result of the Kassidy Hill sex
investigation, the Plaintiffs had begun to uncover evidence that FDOC IG employees, Edward
"Eddie" White and Debra Carter-Arrant, were at least subjects of the investigation of the death of
Randall Jordan Aparo which had spun off from the Kassidy Hill sex investigation. The Plaintiffs
caused the death investigation of Randall Jordan Aparo to be reopened. During the September 2013
meeting at the DOC Headquarters, Defendant BEASLEY was advised that the status of FDOC IG
employees, White and Carter-Arrant, may move from being *persons of interest* in the Aparo death
investigation to *subjects or targets* of the Aparo death investigation based upon clear evidence of
a cover-up. Additionally, Defendant BEASLEY was advised that the Plaintiffs, PADGETT,
LAND, and ULM, had obtained intelligence that other FCI employees including prison guard
employees, Austin, Hampton, Nunez, and Randall Johnson were involved in a coverup of the true

circumstances of the death of Randall Jordan Aparo. Specifically, Plaintiffs, PADGETT, LAND, and ULM, advised Defendant, BEASLEY, that Defendant, Department of Corrections, would be subject to a "black eye" as a result of the misconduct that they were uncovering during their investigation. These protected disclosures above constitute protected disclosures for purposes of the First Amendment and involved matters of substantial public

4

importance. See *David King v. The State of Florida, Department of Environmental Protection*, et al, 650 F. Supp. 2d 1157 (U.S.D.C., ND 2009)[2].

        d.     Up until September or October 2013, none of the Plaintiffs, LAND, PADGETT, GLISSON, or ULM, were provided information or documentation from Defendants FDOC, MIGUEL, CASE, BEASLEY, and SUMPTER, that Plaintiff, Christina BULLINS, a Correctional Probation Supervisor from Fort Lauderdale, Florida, had made multiple WhistleBlower disclosures to the Defendants, FDOC and MIGUEL, concerning the death of Randall Jordan Aparo by the unlawful retaliatory application of chemical nerve agents within close temporal proximity to the death of inmate Aparo which occurred September 19, 2010.  Plaintiff, BULLINS, made her first protected disclosure concerning the death of Aparo beginning as early as October 2010 and continuing through June 2011. The Plaintiffs, LAND, PADGETT, GLISSON, or ULM, were not advised that Plaintiff, BULLINS, also made written disclosures concerning the death of Randall Jordan Aparo to former DOC Secretary, Walter McNeil (November 9, 2010), FDOC Deputy Secretary of Health Services, Dr. Olugbenga Ogunsanwo (January 23, 2011), and Assistant Secretary of FDOC, Russell Hosford (February 28, 2011). Further, none of the Plaintiffs, LAND, PADGETT, GLISSON, or ULM, were made aware of the March 14, 2011, Whistle-Blower

_____

[2] "…there may be many explanations as to why an employee might wait to file *official* complaint against his employer." Plaintiffs filed official complaints with Defendant MIGUEL in early 2014." *infra*

Complaint filed by Plaintiff, BULLINS, with Defendant, MIGUEL which constitutes a protected disclosure of a matter of significant public importance. Defendant, MIGUEL denied Plaintiff, BULLINS, request for Whistle-Blower status in June 2011. Plaintiff, BULLINS, advised those individuals and others that her brother, Joseph Avram, was a witness to the retaliatory application of chemical agents to Aparo. In retaliation for these disclosures, Plaintiff,

5

BULLINS, was the subject of a March 3, 2011 retaliatory incident report submitted to the FDOC Regional Director and to the FDOC Inspector General's Office due to her "baseless allegations" concerning the death of Aparo.

       e.    **In December 2013**, at the Defendant, FDOC's Christmas party, Defendant, BEASLEY, threatened Plaintiffs, LAND, GLISSON, ULM and PADGETT, concerning their Aparo disclosures and that he, Defendant, BEASLEY, would "have their ass for it".

       f.    **In December 2013**, Defendant, BEASLEY, filed or caused to be filed a false and retaliatory IA Complaint against Plaintiffs, LAND, GLISSON, ULM and PADGETT, containing false allegations concerning alleged misconduct by those Plaintiffs during the Kassidy Hill investigation[3]. That Complaint has been investigated and a final report has been submitted to Defendant, MIGUEL, as early as June 5, 2014, but Defendant, MIGUEL, has failed to release the findings of the investigation within the official time period of 180 days since the date of the initial report.

---

[3] Evidence of BEASLEY's retaliatory intent concerning the Kassidy Hill IA Complaint is that BEASLEY assigned FDOC OIG Investigator, Debra Carter-Arrant, the FDOC employee that Plaintiffs, PADGETT, LAND and ULM, had indicated was at least a person of interest in the Aparo death investigation and would possibly become a subject or target of the investigation, to investigate the false internal affairs complaint filed or caused to be filed by Defendant, BEASLEY.

g.       After the Plaintiffs, LAND, GLISSON, ULM and PADGETT, had filed Whistle-Blower complaints with Defendant, MIGUEL, Defendant, BEASLEY, caused additional false and retaliatory internal affairs complaints to be filed against Plaintiffs, LAND and CLARK.

h.       Defendant BEASLEY had knowledge of Plaintiffs, ULM, GLISSON and LAND's Whistle-Blower complaints made to Defendants MIGUEL and CASE, as well as knowledge of the investigative reports outlining findings related to the death of Randall Jordan-

6

Aparo and implicating senior FDOC employees. Defendant BEASLEY was also not entitled to the defense of qualified immunity as a result of direct knowledge of the Aparo homicide. By failing to provide the Plaintiffs, LAND, ULM and GLISSON with Whistle-Blower protection resulting from disclosures made to Defendant, BEASLEY, as well as disclosures to Defendants MIGUEL and CASE, Defendant BEASLEY violated clearly established State and Federal law and did not act in an objectively reasonable manner. See, *Harlow v. Fitzgerald*, 457 I.S. 800 (1982). Thus, Defendant BEASLEY is not entitled to a defense of qualified immunity in that

Defendant BEASLEY, as a result of his prior knowledge of the matters contained within the Whistle-Blower disclosures of Plaintiffs, ULM, GLISSON, and LAND as reflected on **Exhibit B** (Taped Interview). Defendant BEASLEY had actual notice of various violations of the *Eighth Amendment* and violations of various Florida Statutes, Rules and Regulations and criminal laws for which there was a consensus of cases of persuasive authority that the disclosures made by Plaintiffs, LAND, ULM and GLISSON, were such that a reasonable Inspector General could not have denied the Plaintiffs' Whistle-Blower protection.

i.                    Additionally, Defendant BEASLEY is not entitled to the defense of qualified immunity in that Defendant BEASLEY knowingly engaged in retaliatory conduct by filing or causing to be filed false internal affairs complaints in violation of the Plaintiffs' *First Amendment Rights*.  For example, BEASLEY filed or caused to be filed, after the publication of the Miami Herald articles, an internal affairs complaint against Plaintiffs, LAND and CLARK concerning the release of the medical records of inmate Gooden to FDLE without an executed HIPAA.  Defendant BEASLEY has made numerous public statements within the Department to his chain of command that FDLE is entitled to receive records in connection with death investigations without the requirement of a HIPAA release.  Defendant BEASLEY is not entitled to the defense

7

of qualified immunity in that Defendant BEASLEY knowingly engaged in retaliatory conduct in violation of the Plaintiffs' *First Amendment Rights* by virtue of filing the Gooden internal affairs complaint against Plaintiffs, LAND and CLARK.

**DEFENDANT KENNETH SUMPTER**

7. Defendant KENNETH SUMPTER is the FDOC's Deputy Inspector General who is tasked with the responsibility of investigating administrative and criminal misconduct by FDOC employees.  Defendant SUMPTER is sued in his individual capacity.  Defendant BEASLEY "rubber stamps" recommendations made by Defendant SUMPTER. Defendant SUMPTER is not entitled to the defense of qualified immunity in that Defendant SUMPTER had direct knowledge of the matters set forth in the Taped Interview, *(infra),* although not present at the Taped Interview and knowledge of other investigative reports concerning the death of Randall Jordan-Aparo. Defendant SUMPTER had actual knowledge of inmate abuse both as Chief of Investigations and

as Deputy Inspector General. Defendant, SUMPTER, obtained this knowledge as early as May or June 2013. By failing to provide the Plaintiffs with Whistle-Blower protection as a result of the Taped Interview and other interviews given by Plaintiffs, ULM and GLISSON, Defendant SUMPTER violated clearly established State and Federal law and did not act in an objectively reasonable manner. See, *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). Thus, Defendant SUMPTER is not entitled to a defense of qualified immunity in that Defendant SUMPTER, as a result of his prior knowledge of the matters contained within the Taped Interview attached hereto as **Exhibit B** and the Kassidy Hill reports, Defendant SUMPTER had actual notice of various violations of the *Eighth Amendment* and violations of various Florida and criminal laws for which there was a consensus of cases of persuasive authority that the disclosures made in the Taped Interview were such that a reasonable Inspector General could not have denied the Plaintiffs' Whistle-Blower

8

protection. Additionally, Defendant SUMPTER is not entitled to the defense of qualified immunity in that Defendant SUMPTER knowingly engaged in retaliatory conduct in violation of the Plaintiffs' *First Amendment Rights*.

### DEFENDANT MELINDA MIGUEL

8. Defendant MELINDA MIGUEL is the Chief Inspector General of OIG and serves in accordance with Florida Statute §20.055 as the Agency Inspector General for the State of Florida. Defendant MIGUEL reports directly to the Governor, both administratively and functionally. Defendant MIGUEL is a decision maker and policymaker whose action may cause a governmental entity to be held liable for custom or policy or alternatively acts as a "rubber stamp" to a subordinate's recommendation. Further, the Executive Office of the Governor acts as a "rubber stamp" for all decisions made by Defendant MIGUEL. Defendant, MIGUEL, had actual knowledge of the matters related to the death of Randall Jordan Aparo in March 2011 as a result of Plaintiff,

Christina BULLINS' Whistle-Blower complaint which Defendant, MIGUEL, denied in June 2011.

Defendant MIGUEL had additional actual knowledge as of March 2, 2014, of allegations of horrific

inmate abuse leading to inmate deaths as a result of interviews over consecutive days in March

with Plaintiffs, LAND, ULM and GLISSON. (**see LAND's Taped Interview attached as Exhibit**

**B**) made on March 4, 2014, in the Capitol of the State of Florida by Plaintiff LAND, with the

consent of Defendant MIGUEL and Defendant CASE. This interview lasted one hour and 34

minutes and contains virtually the same information provided to Defendant, MIGUEL, provided

by Plaintiffs, ULM and GLISSON. Further, Defendant, MIGUEL, concealed from Plaintiffs,

LAND, ULM and GLISSON, that Plaintiff, BULLINS, had also filed a WhistleBlower complaint

in the spring of 2011 concerning the same issues. By failing to provide the

Plaintiffs with Whistle-Blower protection as a result of Plaintiffs, LAND, ULM and GLISSON,

9

Defendant MIGUEL violated clearly established State and Federal law and did not act in an

objectively reasonable manner. See, *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). Thus, Defendant

MIGUEL is not entitled to a defense of qualified immunity in that Defendant MIGUEL, as a result

of the Plaintiffs' interviews in March 2014 as well as Plaintiff, BULLINS' interview in March

2011, Defendant, MIGUEL had actual notice of various violations of the *Eighth Amendment* and

violations of various Florida and criminal laws for which there was a consensus of cases of

persuasive authority that the disclosures made in Plaintiffs, LAND, ULM, GLISSON and

BULLINS, were such that a reasonable Inspector General could not have denied the Plaintiffs'

Whistle-Blower protection.  In a letter to Plaintiff LAND on March 20, 2014, Defendant OIG, by

and through Defendants MIGUEL and CASE, found that the complaint made by LAND and

memorialized in the Taped Interview did "not demonstrate reasonable cause to suspect that an

employee or agent of an agency or independent contractor has violated any federal, state or local

law, rule or regulation thereby creating and presenting a substantial and specific danger to the public's health, safety or welfare or has committed an act of gross mismanagement, malfeasance, misfeasance, gross waste of public funds, or gross neglect of duty."

## DEFENDANT DAWN CASE

9.     Defendant DAWN CASE is the Assistant Inspector General for the State of Florida and she reports directly to Defendant MIGUEL. Defendant MIGUEL "rubber stamps" CASE's recommendation as a subordinate of Defendant MIGUEL. Defendant CASE was present at and participated in the Taped Interview on March 4, 2014, with Plaintiff LAND and Defendant MIGUEL. By failing to provide the Plaintiffs, LAND, ULM and GLISSON, with Whistle-Blower protection as a result of their March 2014 interviews, Defendant CASE violated clearly established State and Federal law and did not act in an objectively reasonable manner. See, *Harlow v.*

10

*Fitzgerald*, 457 U.S. 800 (1982). Thus, Defendant CASE is not entitled to a defense of qualified immunity because Defendant CASE, as Deputy Chief Inspector General, had actual knowledge of the matters contained in the March 2014 interviews and at least constructive knowledge of the interview by Plaintiff, BULLINS to Defendant, MIGUEL in 2011.   Thus, Defendant CASE had actual notice of various violations of the Plaintiffs' *First Amendment* rights, as well as violations of various Florida laws and criminal laws for which there was a consensus of cases of persuasive authority that the disclosures made in the March 2014 interviews of Plaintiffs, LAND, ULM and GLISSON, as well as the March 2011 interview of Plaintiff, BULLINS, were such that a reasonable Deputy Chief Inspector General could not have denied the Plaintiffs' WhistleBlower protection.

10.     As an additional basis to deny both Defendants MIGUEL and CASE the defense of qualified immunity. Defendants MIGUEL and CASE conducted an investigation of the matters set forth in the March 2014 statements. Such investigation lasted only 14 days. The crimes reported in

the March 2014 interviews by Plaintiff LAND, ULM and GLISSON when coupled with the

Whistle-Blower complaint filed by Plaintiff, BULLINS, filed in March 2011 clearly merited an

investigation in excess of two weeks before making an official determination that the Plaintiffs

were not Whistle-Blowers. Defendants, MIGUEL and CASE had four witnesses who

independently corroborated the cruel and unusual punishment administered to Randall Jordan

Aparo which violated clearly established law, was a matter of public concern and evidence of

violation of Florida Criminal Statutes as well as various rules and regulations.

### PLAINTIFF AUBREY LAND

11.     The Plaintiff, AUBREY LAND, is a Senior Law Enforcement Inspector for the

FDOC, Inspector General's Office and has actual knowledge, both as a private citizen and in his

11

capacity as a Senior Inspector for FDOC, of matters of public concern dealing with the death of

inmates within the Florida Department of Corrections caused by inmate abuse and neglect, in

violation of the *Eighth Amendment*, and various other violations of State and Federal laws. Plaintiff

LAND, on March 4, 2014, gave an all-party consent taped interview to Defendants, MIGUEL and

CASE (Taped Interview, *supra*).

12.     In the spring of 2013, September 2013 and December 2013, Plaintiff, LAND, made

disclosures to Defendant BEASLEY concerning inmate abuse at FCI, *supra.* As a result of such

disclosures, Plaintiff LAND was the subject of a false internal affairs complaint made by or caused

to be made by Defendants BEASLEY and SUMPTER. The Taped Interview given to Defendants,

MIGUEL and CASE, Plaintiff LAND has been the subject of and additional false internal affairs

complaint signed by or at minimum approved by Defendants BEASLEY and SUMPTER and at

least with regard to the second false internal affairs complaint. Such complaint was approved by

Defendant MIGUEL all with knowledge of their falsity[4]. Alternatively, Defendant MIGUEL approved such internal affairs complaint without proper investigation and review. In either event, Defendants BEASLEY and SUMPTER made or caused to be made or continued false internal affairs complaints against Plaintiff LAND in retaliation for Plaintiff LAND's investigation of the death of inmate Randall Jordan-Aparo and his disclosures of FDOC employee misconduct. Additionally, Defendants BEASLEY and SUMPTER caused such false internal affairs investigations to be made or continued knowing that the basis for such investigations were false.

12

13.     Plaintiff LAND is entitled to Whistle-Blower protection as a result of his disclosures made both as a private citizen and an employee within the course and scope of his employment. Despite Plaintiff LAND's request for Whistle-Blower protection from Defendant MIGUEL, such request was denied in retaliation.

14.     These disclosures, as well as all Plaintiffs' disclosures, were matters of great public concern and not merely petty employment grievances. *See footnote 1, supra*. The retaliation was a result of matters of public concern and Plaintiff LAND's free speech interest outweighed Defendant FDOC's internet in promotion efficient public services and his speech played a substantial part in the retaliation taken against him. This retaliation was pretextual and was taken in close temporal proximity following LAND's protected activity beginning in the spring of 2013 through December 2013 with regards to the first false internal affairs complaint.

---

[4] One of the false internal affairs complaints was filed two (2) days after a *Miami Herald* article authored by Julie Brown discussed the death of Shawn Gooden. These internal affairs complaints were filed against Plaintiff LAND and Plaintiff CLARK.

15.    Further, the second false internal affairs complaint occurred in close temporal proximity (three months) to Plaintiff LAND's Whistle-Blower complaint and interview with Defendants, MIGUEL and CASE. See *Kamensky v. Rogelio Dean, et al.* 148 Fed. Appx. 878 (11th Cir. 2005); *Anderson v. Burke County*, 239 F. 3d 1216 (11th Cir. 2001).

### PLAINTIFF DAVID CLARK

16. Plaintiff DAVID CLARK is a District IV Supervisor for District IV investigations involving misconduct by FDOC employees.  Plaintiff CLARK made direct disclosures disclosing violations concerning investigations of inmate deaths including, but not limited to, the death of inmate, Shawn Gooden. Plaintiff CLARK's disclosures were made to Defendants BEASLEY and

13

SUMPTER.  Plaintiff CLARK found no violations concerning the death of inmate Gooden[5]. Plaintiff CLARK made these disclosures to Defendants, BEASLEY and SUMPTER, which were matters of great public concern and not merely petty employment grievances. *See footnotes 1 and 2, supra and infra*. In retaliation to Plaintiff CLARK'S disclosures to Defendants BEASLEY and SUMPTER, Plaintiff CLARK was the subject of a false internal affairs investigation within close temporal proximity to Plaintiff CLARK's disclosures made by Defendants BEASLEY and SUMPTER, as well as in close temporal proximity to Plaintiff CLARK being denied Whistle-Blower status.

---

[5] Plaintiff CLARK was present when disclosures were made concerning the death of inmate Aparo to Defendants BEASLEY and SUMPTER. As the result of Plaintiff's disclosures concerning inmate Gooden, Plaintiff CLARK was the subject of a false internal affairs complaint regarding an alleged HIPAA violation. Plaintiff LAND is also the subject of a false internal affairs investigation concerning alleged HIPAA violations. Both of these complaints were retaliatory in nature and designed to make Plaintiffs CLARK and LAND ineligible for relief under Florida Statute 112.3187.

## PLAINTIFF DOUG GLISSON

17. Plaintiff DOUG GLISSON is a District III Supervisor for District III investigations involving misconduct by FDOC employees. Plaintiff GLISSON made direct disclosures of violations of the *Eighth Amendment* and disclosures disclosing violations of State and Federal civil and criminal statutes in connection with the abuse of inmates including, but not limited to, the death of inmate, Randall Jordan-Aparo. These disclosures were made to Defendants BEASLEY and SUMPTER beginning in May 2013 through December 2013. These disclosures were matters of great public concern and not merely petty employment grievances. *See, Footnote 1, supra.* Plaintiff GLISSON's concerns were also made orally to Defendants MIGUEL and CASE in March 2014 and corroborated the Taped Statement of Plaintiff LAND, made subsequently by LAND to Defendants MIGUEL and CASE. Plaintiff GLISSON's Whistle-Blower Complaint to Defendants BEASLEY, SUMPTER and MIGUEL were also corroborated by as well as the 2011 Whistle-Blower complaint of Plaintiff, BULLINS made to Defendant MIGUEL in March 2011. Plaintiff

14

GLISSON is entitled to Whistle-Blower protection as a result of his disclosures made both as a private citizen and an employee within the course and scope of his employment. In retaliation to such disclosures, Plaintiff GLISSON was made the subject matter of one (1) false internal affairs investigation by Defendants, BEASLEY and SUMPTER in December 2013, as well as being denied Whistle-Blower status protection in connection with his disclosures to Defendant MIGUEL and CASE in March 2013. These disclosures were matters of great public concern and not merely petty employment grievances. *See Footnote 1, supra.* The false internal affairs complaint made

against Plaintiff GLISSON was in close temporal proximity to the protected disclosures made by Plaintiff GLISSON between May 2013 and December 2013.

## PLAINTIFF JOHN ULM

18. Plaintiff JOHN ULM is a Senior Law Enforcement Inspector for the FDOC, Inspector General's Office and has actual knowledge, both as a private citizen and in his capacity as a Senior Inspector for FDOC, of matters of public concern dealing with the death of inmates within the Florida Department of Corrections caused by inmate abuse and neglect, in violation of the *Eighth Amendment*, and various other violations of State and Federal laws. Plaintiff ULM made oral disclosures of matters of great public concern, both as a private citizen and as an employee of Defendant FDOC. Plaintiff ULM first made these disclosures in May 2013 through December 2013 to Defendant BEASLEY. See *King, supra.* In retaliation, Plaintiff ULM has been the subject of two false internal affairs complaints signed by or authorized by Defendants BEASLEY and SUMPTER.[6] Defendants BEASLEY and SUMPTER made or caused to be made false internal affairs complaints against Plaintiff ULM in retaliation for Plaintiff ULM's

15

investigation of the death of inmate Randall Jordan-Aparo. Plaintiff ULM is entitled to Whistle-Blower protection as a result of his disclosures made both as a private citizen and an employee to Defendants BEASLEY, SUMPTER, CASE and MIGUEL within the course and scope of his employment. Plaintiff ULM was denied Whistle-Blower status by Defendant MIGUEL for these disclosures in retaliation for the Aparo death disclosures. These disclosures were matters of great

---

[6] Plaintiffs LAND, GLISSON and ULM, made disclosures both as private citizens and as employees of Defendant FDOC to an inspector general employed by the Florida Fish and Wildlife Conservation Commission concerning various violations of *Eighth Amendment* and violations of state and federal laws, rules and regulations.

public concern and not merely petty employment grievances. *See Footnote 1, supra*. The internal affairs complaint was in close temporal proximity to Plaintiff ULM's protected disclosures.

## PLAINTIFF JAMES PADGETT

19.     Plaintiff, JAMES PADGETT, at all material times hereto, was an Institutional Inspector for the Office the Florida Department of Corrections, Office of the Inspector General. Plaintiff PADGETT has been in law enforcement since 1999 and was hired by Defendant FDOC as Institutional Inspector on December 7, 2012. [7]

20.     Plaintiff PADGETT is an Institutional Inspector for the FDOC, Inspector General's Office and has actual knowledge, both as a private citizen and in his capacity as an Inspector for FDOC, of matters of public concern dealing with the death of inmates within the Florida Department of Corrections caused by inmate abuse and neglect, in violation of the *Eighth Amendment*, and various other violations of State and Federal laws.  Plaintiff PADGETT first made these disclosures to Defendant BEASLEY in the fall of 2013. In particular, Plaintiff PADGETT has knowledge of inmate abuse and neglect in connection with the death of Randall Jordan-Aparo which he disclosed to Defendants BEASLEY and SUMPTER. Plaintiff PADGETT made written and oral disclosures of matters of great public concern, both as a private citizen and as an employee

16

---

[7] Plaintiff PADGETT was first employed by Defendant FDOC as a correctional officer in 1999 before assuming his position as Institutional Inspector. Further, Plaintiff PADGETT was a reserve officer with Suwannee County Sheriff's Office, as well as Wakulla County Sheriff's Office, and a part-time police officer with Lawtey Police Department.

of Defendant FDOC.[8] In retaliation, Plaintiff PADGETT has been the subject of two false internal affairs complaints signed by or authorized by Defendants BEASLEY and SUMPTER.[9] Plaintiff PADGETT, disclosed by written or oral report to his supervisors pursuant to the re-opened Aparo Investigation and by compelled oral disclosure to an FWC OIG Inspector, misconduct concerning matters of public concern. These matters of substantial public concern included the death of inmates within the Florida Department of Corrections caused by inmate abuse and neglect, in violation of the *Eighth Amendment*, and various other violations of State and Federal laws. Additionally, Plaintiff PADGETT, in a compelled statement, disclosed to an FWC OIG Inspector, of misfeasance, malfeasance and violations of criminal laws including obstruction of justice and felony perjury committed by Defendants, FDOC, BEASLEY and SUMPTER. Finally, in a written request for Whistle-Blower status to Defendant MIGUEL, Defendant MIGUEL has violated Florida Statute 112.3189(4) by failing to advise Plaintiffs PADGETT, ULM, LAND and GLISSON within 30 days after receiving their request for Whistle-Blower status that such investigation is unnecessary.

     21.    Defendants BEASLEY and SUMPTER, after Plaintiff PADGETT's oral or written disclosures made by him concerning evidence obtained in the death of an inmate, caused a false and retaliatory false internal affairs complaint to be filed against Plaintiff PADGETT. Further, other Plaintiffs, ULM, GLISSON and LAND, were also subject to the same false and retaliatory internal affairs investigation for their investigation of the death of inmate Randall Jordan-Aparo after such investigation had been previously terminated without findings.

---

[8] The Aparo Investigation has apparently been re-opened from late 2010 to 2011 when FDOC records indicate it had in fact been closed.

[9] The Internal Affairs Complaint Numbers are FDOC OIG No. 14-1102 and CIG INV. No. 13-11250006 have been pending for more than 180 days and now no discipline could be administered. Hence, the only basis for refusing to issue a Final Investigative Report on the above referenced complaints is to avoid public embarrassment to the Defendants.

17

22.     Plaintiff PADGETT is entitled to Whistle-Blower protection as a result of his disclosures made both as a private citizen and an employee to Defendants BEASLEY, and FDOC, and to an FWC Inspector General. Further, Plaintiff PADGETT filed with Defendant MIGUEL, a request for determination of Whistle-blower status, which has been pending for well over 30 days without response. Plaintiff PADGETT was denied Whistle-Blower status for these disclosures to Defendant MIGUEL based upon her failure to respond to Plaintiff PADGETT's request for Whistle-blower status. Defendant MIGUEL's failure to respond to Plaintiff PADGETT's status as a Whistle-Blower was in retaliation to Plaintiff PADGETT's disclosures concerning the Aparo death investigation. These disclosures were matters of great public concern and not merely petty employment grievances and made to his immediate supervisor. *See Footnote 1, supra*. The filing of the internal affairs complaint was in close temporal proximity to the protected disclosures.

### PLAINTIFF CHRISTINA BULLINS

23.     Plaintiff CHRISTINA BULLINS was employed by Defendant FDOC as a correctional Probation Supervisor at the time of her termination. BULLINS had been employed by Defendant FDOC for approximately 13 years and, prior to her complaining to her supervisors about the homicide of Aparo, had not been the subject of any material discipline.

24.     Plaintiff BULLINS had a brother, Joseph Avram, who was incarcerated at Franklin Correctional Institute at the time of Aparo's death on September 19, 2010. Joseph Avram was a witness to the homicide of Aparo and a witness to the abuse of Aparo leading up to Aparo's death.

25.    Joseph Avram, on the night of the death of Aparo, made a phone call to his sister, Kim Donovan, on a recorded line, advising her that he had been a witness to the death of an inmate and that he had concerns about his physical safety.

18

26.    The following day Joseph Avram called Plaintiff BULLINS, his other sister who was a Correctional Probation Supervisor in Miami Gardens, Florida, who advised Plaintiff BULLINS that he, Avram, had witnessed the abuse of an inmate (Aparo) and that Avram was concerned about physical retaliation by prison guards at Franklin Correctional Institute.

27.    On October 21, 2010 and thereafter, Plaintiff BULLINS and her sister Kim Donovan began to send public records requests to the Franklin Correctional Institute regarding encounters her brother Avram had with various prison guards, including a guard who Avram had identified as being involved with the death of Randall Jordan-Aparo.

28.    On or about November 7, 2010 Plaintiff BULLINS and her sister, Kim Donovan, sent a letter to the Secretary of the Florida Department of Corrections, Walter McNeil, that her brother Joseph Avram had witnessed the physical abuse of Aparo citing specifics in the letter which would indicate that Avram was in fact a witness to the physical abuse of Aparo. Plaintiff BULLINS and her sister Kim Donovan mentioned in the letter that her brother Avram was fearful of retaliation while in confinement at Franklin Correctional Institute and expressed concern about the safety of their brother.

29.    On November 9, 2010 Plaintiff BULLINS and her sister Kim Donovan sent another letter to Department Secretary Walter McNeil concerning prison guard retaliation against her brother Joseph Avram.

30.    On or about January 23, 2011 Plaintiff BULLINS, by email, corresponded with the Defendant FDOC Deputy Secretary of Health Services, Olugbenga Ogunsanwo, concerning her

brother Joseph Avram and advising Ogunsanwo that Avram was a witness to an inmate who "was abused and gassed too much which resulted in his death." Plaintiff BULLINS advised Ogunsanwo that other inmates in addition to her brother had expressed fear of retaliation from the application

19

of chemical agents in that guards were referring to Aparo's death when threatening to gas Avram and other inmates at Franklin Correctional Institute.

31.     On or about February 28, 2011 Plaintiff BULLINS sent an email to Russell Hosford, Assistant Secretary of the Department of Corrections, again referring to the death of Aparo and alleging that her brother Joseph Avram was being mistreated by one of the guards who was involved with the Aparo homicide.

32.     On March 3, 2011 Plaintiff BULLINS received a letter from the Warden of Franklin Correctional Institute, Diane Andrews, concerning BULLINS' letter regarding the death of inmate Aparo. W a r d e n Andrews threatened BULLINS by advising BULLINS that the allegations made by BULLINS to Secretary McNeil and others concerning the death of Aparo were "baseless". Warden Andrews knew that BULLINS' allegations were in fact not baseless and her threat to BULLINS was done both in retaliation for BULLINS' disclosures and to intimidate BULLINS from making further disclosures.

33.     In retaliation for Plaintiff BULLINS' letters to Secretary McNeil and others, Andrews had reported BULLINS to the Department of Corrections' Inspector General due to her "baseless" allegations concerning the death of Randall Aparo. This resulted in a MINS [10] investigation being opened against Plaintiff BULLINS in retaliation for her Aparo disclosures. This

---

[10] "MINS" is an acronym for Management Information Notes Summary which within Defendant FDOC is a summary of an incident report critical of an FDOC employee which may result in discipline up to and including termination. Included in a MINS is the actual incident report filed against the FDOC employee which includes the date of the incident, the factual summary, a more detailed description of the incident and, in some cases, the disposition. The MINS constitutes a permanent record. MINS can be filed for general harassment, contraband, battery, improper conduct and other miscellaneous violations.

complaint by Diane Andrews was in close temporal proximity to Plaintiff BULLINS' protected disclosures concerning the death of Aparo.

20

34.     On or about March 14, 2011 after Warden Andrews had filed a complaint opening a MINS investigation on Plaintiff BULLINS filed with the Inspector General's Office of the Governor a complaint which was treated by the Inspector General as a Whistle-blower complaint. Included in the Whistle-Blower allegations were allegations concerning the death of Aparo.  On or about  June  7,  2011  Defendant  MIGUEL  advised  Plaintiff  BULLINS  that  BULLINS  was  not entitled to whistle-blower protection and that BULLINS was entitled to file a complaint with the Florida Commission on Human Relations.

### BULLINS' Aparo Disclosures and 2013 Investigation into the  Death of Randall Jordan-Aparo

35.     Plaintiff BULLINS was the first and only employee of Defendant FDOC to suggest to her superiors that Aparo had been killed as a result of guard abuse until the summer of 2013 when Plaintiffs PADGETT, LAND and ULM began to conduct interviews at Franklin Correctional Institute concerning Aparo's death. Her first disclosure was made to senior FDOC employees in October or November of 2010 and continuing thereafter until June 7, 2011 Plaintiffs PADGETT, LAND and ULM are not notified until the late summer of 2013 that Plaintiff BULLINS had made previous disclosures and that Plaintiff BULLINS and her sister had had conversations with their brother/inmate, Joseph Avram, the day before and the day after the death of Randall Jordan-Aparo.

36.     The initial Defendant FDOC Investigations of the death of Aparo were closed in late 2011 as the result of a cover-up involving the Defendants.

37.     Plaintiff BULLINS' prior disclosures in 2010 and 2011 were not provided to any Defendant FDOC or FDLE investigators who conducted the initial investigation of the Aparo homicide.

21

38.     In the late summer of 2013 Plaintiffs PADGETT, LAND, GLISSON and ULM began to receive information from inmates while conducting an investigation related to Kassidy Hill that Aparo had in fact been the victim of a homicide.

39.     As the Aparo investigation was commencing, Plaintiff BULLINS on August 6, 2013 was sent a Pre-Determination Letter advising BULLINS that she would be terminated on October 24, 2013, if she did not respond.[11]   Because BULLINS did not receive the PreDetermination Letter, she did not respond and was terminated on October 24, 2013.  Prior to August 6, 2013, Plaintiff BULLINS had been on leave pursuant to the Family Medical Leave Act (FMLA). The termination of the Plaintiff BULLINS on October 24, 2013 was pretextual. Her immediate prior performance evaluation from Defendant FDOC, dated March 21, 2013, indicated that Plaintiff BULLINS performed her duties at an exceptional or above exceptional manner.

40.     On November 6, 2013, Plaintiff BULLINS' name, as well as her brother, Joseph Avram's name, was prominently mentioned in a Defendant FDOC investigative report related to the Aparo homicide.

---

[11] Despite numerous requests by BULLINS prior attorneys, a copy of the pre-determination letter has not been provided to BULLING or her prior counsel, nor has a "green card" indicating that she had received the Pre-Determination letter.

41.    As a result of the re-opening of the Aparo death investigation and Plaintiff BULLINS' prior disclosures in 2010 and 2011, BULLINS was notified that she was to be terminated as a Defendant FDOC employee. At the time of her termination Plaintiff BULLINS was advised by her supervisor, Luis Pizarro, that she was terminated because Defendant FDOC

22

Tallahassee was "out to get her" in part because of her prior protected disclosures regarding the Aparo homicide.[12]

42.    Plaintiff BULLINS was in fact terminated on October 24, 2013.

### BULLINS Statements Published on FloridaPublicEmployees.com
### Between January 31, 2012 and May 28, 2013

43.    In addition to Plaintiff, BULLINS disclosures concerning the death of Randall Jordan Aparo, Plaintiff BULLINS was a volunteer political coordinator and lobbyist for the Teamsters Local Union No. 2011 (The Collective Bargaining Unit for all professional and nonprofessional law enforcement officers certified pursuant to Florida Statute 943).  Further,

---

[12] Normally, the time period between Plaintiff BULLINS' protected disclosures regarding the homicide of Aparo, i.e., June 7, 2011 to August 6, 2013, may lack the necessary temporal proximity between the protected disclosures and her termination if her protected blog activity for FloridaPublicEmployees.com is not included in the overall analysis of temporal proximity. The fact that Defendant FDOC concealed from investigator during the initial Aparo 2011 investigation should be taken into account in determining temporal proximity. See *Kamenski* and *Anderson, supra.* However, in this instance, Plaintiff BULLINS alleges that the evidence will show that her prior protected Aparo disclosures became problematic to Defendant FDOC during the summer of 2013 when Plaintiffs, PADGETT, LAND, CLARK and ULM began to reinvestigate the Aparo homicide. Additionally, temporal proximity between BULLINS protected disclosures on **FloridaPublicEmployees.com** coupled with her Aparo disclosures provide the necessary temporal proximity between her protected disclosures and her termination.

BULLINS wrote as a blogger for FloridaPublicEmployees.com articles critical of Defendant FDOC on the following dates:

            a.      January 31, 2012, "In the Words of a State Corrections Officer", attached hereto as **Exhibit C**;

            b.      January 16, 2013, "Smart Justice Alliance (SJA) Gives Presentation to the Senate Criminal Justice Committee" , attached hereto as **Exhibit D**;

            c.      April 10, 2013, "Letter to Sen. Bradley: Vote Yes to Support Equal Raises for FDOC" , attached hereto as **Exhibit E**;

23

            d.      May 28, 2013, "Call to Actions: Governor Scott, I Ask You to "Veto the Turkeys" in State Budget", attached hereto as **Exhibit F**.

    44.     On August 9, 2013, Defendant FDOC sent a predetermination letter to Plaintiff BULLINS to an incorrect address.  Plaintiff BULLINS did not receive the predetermination letter and hence, did not respond to such letter and was terminated on October 24, 2013.

    45.     Plaintiff BULLINS Aparo disclosures as well as her politically protected blog posts resulted in her retaliatory pretextual termination from Defendant FDOC and when looked at

holistically within the confines of the entire record provide temporal proximity and evidence of retaliatory action.

**The Plaintiffs' Disclosures Resulting in Retaliation
were Matters of Great Public Concern
(Aparo Death Investigation)**

46.    Beginning in 2013, Plaintiffs PADGETT, LAND, ULM and GLISSON began to conduct an investigation of a series of complaints concerning garden variety prison guard misconduct at Franklin Correctional Institute (hereinafter the Kassidy Hill Investigation[13]). During the course of the Kassidy Hill investigation, Plaintiffs PADGETT, LAND, ULM and GLISSON began to gather information concerning the death of an inmate in 2010.[14]  That inmate's name was Randall Jordan-Aparo.[15] The Aparo death investigation (2011 Aparo Death Investigation) was conducted by the Florida Department of Corrections (FDOC) and the Florida

Department of Law Enforcement (FDLE) pursuant to a Memorandum of Understanding.  The

Plaintiffs, PADGETT, LAND, ULM and GLISSON began to obtain evidence that inmate Aparo

24

died as a result of force or discipline made either maliciously or sadistically for the very purpose of causing harm by the Department of Corrections' employees in retaliation for Aparo threatening to sue Defendant FDOC for DOC's failure to take Aparo to a hospital for treatment.  This evidence

---

[13] Plaintiffs PADGETT, LAND, ULM and GLISSON were primarily at the Franklin Correctional Institute to investigate allegations that a prison guard had sexual relations with an inmate, as well as other routine investigations including allegations of prisoner abuse not involving death of an inmate. The Kassidy Hill investigation would not be considered a matter of great public concern. *See, Duryea v. Guarnieri, infra.*

[14] The Aparo criminal and admin investigations were initially closed in 2011 and reopened in 2013.

[15] Randall Jordan-Aparo was remitted to the Florida Department of Corrections by a Circuit Court Judge from Hillsborough County to serve a sentence of 18 months. At the time of his death Mr. Aparo was 28 years old.

was obtained from the Kassidy Hill investigation, inmates and video/audio footage shot on the date of Aparo's death.  Despite the fact that Plaintiff BULLINS had made numerous disclosures in 2010 and 2011 concerning the death of Randall Jordan-Aparo.

47.     Based upon the investigation conducted by Plaintiffs PADGETT, LAND, ULM and GLISSON, the Plaintiffs began to believe and to report to Defendants BEASLEY and SUMPTER that Randall Jordan-Aparo was the victim of force or discipline made either maliciously or sadistically for the purpose of causing harm. During the course of the Randall Jordan-Aparo death investigation, Plaintiffs PADGETT, LAND, ULM and GLISSON identified various six to eight FDOC employees who they designated as potential criminal targets of crimes committed to the person of Randall Jordan-Aparo. These employees included senior level officers and medical providers who used or authorized the punitive use of chemical agents against Randall Jordan-Aparo, which ultimately led to or, to a great extent contributed to his death in confinement. Aparo's death occurred approximately five hours after the chemical agents were applied.

48.     The Plaintiffs PADGETT, LAND, ULM and GLISSON reviewed the original 2011 Aparo Death Investigation and determined in 2013, during the Kassidy Hill investigation that, in their opinion, the Aparo Death Investigation completed in 2011, was either (1) intentionally misleading or (2) the Department of Corrections' investigators at the scene in 2010 had been grossly negligent for failing to properly disclose of the obvious facts to an FDLE agent who was on call the date of Aparo's death.  For example, Plaintiff BULLINS and her sister, Kim Donovan's disclosures were not provided to the original Aparo investigative team.

49.     The Department of Corrections' employees determined by Plaintiffs, PADGETT, LAND, ULM and GLISSON to be potential criminal targets of the death of inmate Aparo included

Senior Inspector Eddie White and Senior Inspector Debbie Carter[16], as well as FDOC prison guards, Austin, Hampton, Nunez, and Randall Johnson. Austin, Hampton, and Johnson were placed on paid administrative leave as a result of Plaintiffs PADGETT, LAND, ULM and GLISSON's investigation in 2013.

50.     Plaintiffs PADGETT, LAND, ULM and GLISSON, in reviewing the September, 2011 Aparo Death Investigation, believed in 2013 and reported that the 2011 Aparo Death Investigation was false and misleading, at least in the following ways:

a.      Defendant FDOC had failed to conduct interviews of staff and inmates in violation of policy and training;

b.      The September 2011 Aparo Death Investigation Report of Force Used had been falsified at the direction of Lieutenant Rollin Austin;

c.      That in the September 2011 Aparo Death Investigation that Lieutenant Austin had caused Sergeant James Hamm to sign a Use of Force Report both knew to be false;

d.      That the September 2011 Aparo Death Investigation, that Lieutenant Austin misrepresented to Duty Warden Timothy Copeland certain facts concerning the deportment of Aparo, such misrepresentations causing the Duty Warden to approve the use of chemical agents on inmate Aparo;

e.      That the September 2011 Aparo Death Investigation failed to give appropriate credence to the fact that Randall Jordan-Aparo suffered from a rare lung disease, had

---

[16] Despite being named by Plaintiffs, PADGETT, LAND, ULM and GLISSON, as a person of interest in the Aparo death, Carter was chosen to investigate an internal affairs complaints made by the Department of Corrections' Inspector General's Office in connection with the Inspector General's investigation of Kassidy Hill against the Plaintiffs, PADGETT, LAND, ULM and GLISSON.

been confined for the previous two days prior to the date of his death to the Infirmary, and such investigation failed to mention that the use of chemical agent's against Aparo, while in that condition and that Aparo was not acting in a manner necessitating that level of use of force, and that the use of chemical agents three times would be cruel and unusual punishment in violation of The Eighth Amendment as to Aparo;

f.       That the September 2011 Aparo Death Investigation failed to note that the audio and video tapes of the day that Aparo died indicated that Aparo was in extreme physical danger, his actions did not meet the Florida Department of Corrections' Use of Force Policies and that chemical agents policies of the Department of Corrections in effect at that time were not adhered to;

g.       That the September 2011 Aparo Death Investigation failed to note that pictures of the confinement unit where Aparo was chemically gassed and died five hours later, did not comport to the Use of Force Report or the Incident Reports originally prepared in 2011 by senior DOC employees;

h.       That the September 2011 Aparo Death Investigation failed to determine that DC Procedure Title 33-602.10 (5)(B)(1) regarding the Administration of Chemical Agents on an inmate causing a disturbance in his or her cell, were obviously violated;

i.       The Department of Corrections' Officers on the scene of Aparo's death failed to decontaminate his cell, requiring him to return to a cell contaminated with chemical agents. Photographic evidence existed in the 2011 investigative file showed that Aparo was gassed on his bunk while attempting to breathe, and further that his isolation cell had not been decontaminated after each application of chemical agents and was only decontaminated after his death and after the last administration of chemical agents;

27

j.      That Defendant, FDOC, Procedure Title 33-602.10 (21)(3)(C)(B)

regarding the use of chemical agents indicates that such chemical agents shall only be used after

all other reasonable efforts to control a disruptive inmate have been exhausted.  This did not occur

with regards to the Aparo gassing;

k.      Lieutenant Austin was aware of Aparo's medical condition and failed

to use due care by exposing Aparo to chemical agents and Austin failed in his responsibility to

allow the use of force in these circumstances.  Lieutenant Austin consulted with an L.P.N. regarding

the use of chemical agents. This particular L.P.N. was either so incompetent or so inexperienced

that she could not interpret a machine read EKG later performed on Aparo.  This LPN was not

qualified to give Austin approval to use chemical agents. Lastly, it was this L.P.N. that, on the day

before his death, Aparo had advised he would sue the Department of Corrections for failing to take

him to the hospital. In essence, Aparo was too sick to be a behavioral problem on the day before

and the day of his death as corroborated by the videotape, available in 2011 but disregarded[17];

l.      That the September 2011 Aparo Death Investigation failed to determine that

FDOC Procedure Title 33-602.10 (21)(3)(C)(O)(1) had been violated as a result of the failure to

continuously monitor Aparo for any signs of respiratory distress after the repeated use of chemical

agents;

---

[17] For example, Aparo was required to be taken to his cell prior to the last administration of chemical agents in a wheel chair

m.        **In fact, Aparo immediately after the use of chemical agents was determined to have no blood pressure** and wheezing in his lower left lobe of his lung. Further, Aparo was not immediately returned to the Infirmary despite his failing blood pressure and deteriorating vital signs. Ultimately, Aparo was left to suffocate in his contaminated cell without

28

medical intervention for approximately five hours and his death pose indicated his mouth and nose were lodged in the small gap in the door of his isolation unit, attempting to breathe;

n.        That the September 2011 Aparo Death Investigation failed that FDOC Procedure Title 33-602.10(21)(3)(C)(O)(3)(b)(c) had been violated in that the Department of Corrections' employees, including medical staff, failed to place Aparo under constant observation and if symptoms due to his respiratory distress caused or was exacerbated by the illegal and cruel use of chemical agents. Aparo's symptoms lasted far more than 60 minutes (five hours) and were not reported within Aparo's medical records the day of his death nor brought to the immediate attention of the staff and thus emergent medical assistance was not provided;

o.        Aparo was not monitored or assessed for excessive or persistent coughing depicted on the audio recording done at the prison, nor was Aparo assessed concerning his past medical history of a severe lung related condition. Further, the audio tape made on the day Aparo died, indicates that Aparo was requesting medical assistance, could barely walk from the decontamination shower to his isolation unit and, despite the above, did not receive immediate emergent attention from medical staff which more likely than not, would have saved his life;

p.      Plaintiff BULLINS' Aparo disclosures to Warden Diane Andrews, Former Secretary McNeil, and to Defendant MIGUEL were not provided to the initial Aparo investigative team.

q.      That FDOC Procedure Title 33.208.002 Rules of Conduct requires that all Department of Corrections' employees familiarize themselves with all rules, policies and procures and, in particular, no employee shall willfully negligently treat an inmate in a cruel or inhuman manner;

r.      The treatment of Aparo on the day of his death was occasioned by Aparo, on the day prior to his death, by Aparo telling a health care provider that he was going to sue the

29

Department of Corrections for failing to transfer him to a hospital.  The use of force had no relation to any misconduct by Aparo either on the day before his death or the day of his death, but Aparo was the victim of force or discipline made either maliciously or sadistically for the purpose of causing harm and for retaliation for threatening to bring a lawsuit.

s.      The FDOC Use of Force report relating to the use of chemical agents on Randall Jordan Aparo intentionally omitted that Randall Jordan Aparo had died.

**Direct Disclosure of Aparo Wrongdoing to Jeff BEASLEY (Inspector General for the Department of Corrections) and Ken SUMPTER (Deputy Inspector General)**

51.      Plaintiffs, LAND, ULM and GLISSON, met in October of 2013 after Plaintiffs LAND, ULM and GLISSON had reported their findings regarding the death of Aparo to the Florida Department of Law Enforcement and federal authorities.

52.      At the September 2013 meeting with Jeff BEASLEY and Ken SUMPTER, Plaintiffs were the subject of a false internal affairs complaint regarding the Kassidy Hill investigation in retaliation for Plaintiffs' PADGETT, LAND, ULM and GLISSON disclosures concerning the death of inmate Aparo. These internal affairs complaints were false and without merit and directly in retaliation for the Aparo disclosures. The false and unwarranted Kassidy Hill

internal affairs complaints against Plaintiffs PADGETT, LAND, ULM and GLISSON are still pending.[18]

53.     On February 18, 2014 Plaintiffs CLARK, LAND, ULM, and GLISSON asked for a meeting with the Secretary of the Department Corrections, Mike Crews, where the Plaintiffs again disclosed their Aparo death findings and the fact that the Plaintiffs had determined that

30

employees of the Department of Corrections' Inspector General's Office had been identified by the Plaintiffs as potential targets of criminal activity associated with the September 2010 investigation of the death of Aparo and a cover-up.

54.     Secretary Crews recommended that the Plaintiffs report their findings to Defendants OIG, MIGUEL and CASE, Inspector Generals for the State of Florida as in Crews' opinion their complaints appeared to be a Whistle-Blower issue.

55.     Plaintiffs, LAND, ULM, CLARK and GLISSON in late February or early March 2014 in a written request to Defendant MIGUEL, asked for Whistle-Blower status and were interviewed by Defendants MIGUEL and CASE. A copy of Plaintiff LAND's interview with Defendants MIGUEL and CASE is attached hereto as Exhibit B. Plaintiffs, ULM and GLISSON's interview was not tape recorded but essentially disclosed the same facts as Plaintiff, LAND's tape recorded statement.

---

[18] For example, Defendant BEASLEY in connection with the filing of the internal affairs complaint against Plaintiffs, PADGETT, LAND, ULM and GLISSON intentionally omitted certain documents from the complaint which would have shown that the internal affairs complaint regarding Kassidy Hill was false and in violation of Florida Statute 838.022 (official misconduct).

56.    After a 14 day "investigation" by Defendants MIGUEL and CASE, Plaintiffs LAND, ULM and GLISSON, were denied Whistle-Blower status, despite Plaintiff BULLINS previous request for Whistle-Blower status regarding the same issue in 2011. The denial of Whistle-Blower status was in retaliation for the prior disclosures made by Plaintiffs LAND, ULM and GLISSON to FDLE and federal authorities. The Plaintiffs LAND, ULM and GLISSON are clearly entitled to Whistle-Blower status but was wrongfully denied such status. Plaintiffs ULM and GLISSON also provided un-taped interviews to Defendants OIG, MIGUEL and CASE and were also denied Whistle-Blower status. Plaintiffs LAND, ULM and GLISSON were told to file complaints with the Florida Commission on Human Relations (FCHR) concerning their disclosures.

31

### The Miami Herald Articles Concerning Inmate Deaths of Department of Corrections' Prisoners
#### (A matter of significant public importance)

57.    Serendipitously and without prior knowledge of the Plaintiffs, on May 18, 2014, *The Miami Herald*, (attached hereto as Exhibit A) began to run a series of articles regarding unexplained deaths of inmates confined within the Department of Corrections. Included in these series of articles were stories concerning the unexplained death of Randall Jordan-Aparo, as well as Shawn Gooden.

58.    Shortly after the *Miami Herald* articles, which mentioned the death of inmate Gooden, initially investigated by Plaintiffs LAND and CLARK, LAND and CLARK received false internal affairs complaints initiated by Defendants BEASLEY, SUMPTER and MIGUEL alleging that Plaintiffs LAND and CLARK had violated both HIPAA regulations and Department of

Corrections' policies for providing Shawn Gooden's medical records to FDLE. Both HIPAA, as enacted by the State of Florida and the Department of Corrections' policy, make it absolutely clear that Plaintiffs LAND and CLARK did not violate such policies and procedures.

59.     The Gooden complaints are in retaliation for the Plaintiffs' prior disclosures concerning the death of inmate Randall Jordan-Aparo and in response to the series of *The Miami Herald* articles. These inmate deaths, as well as other inmate deaths described in *The Miami Herald* articles, clearly make the disclosures by the Plaintiffs matters of public concern. When a public employee petitions as a citizen on a matter of public concern, the employee's *First Amendment* interest must be balanced against the countervailing interest of the government in the effective and efficient management of its internal affairs. If that balance favors the public employee, the employee's *First Amendment* claim will be sustained. *See, Duryea v. Guarnieri,*

32

and *Garcetti v. Ceballos, supra*. In this instance, the Plaintiff's disclosures concerning the death of inmates implicate both *The First Amendment*, the *Petition Clause* and *The Eighth Amendment*.

60.     Further, the Plaintiffs need not exhaust any state judicial remedies in order to bring this claim in that the federal remedy is supplementary to the state remedy and the latter need not be sought and refused before the federal remedy is invoked. *See, Monroe v. Pape*, 365 U.S. 167 (1961) and *Patsy v. Board of Regents*, 457 U.S. 496 (1982) and *District Attorney's Office v. Osborne*, 129 S. Ct. 2308, 2321 (2009). Lastly, this litigation does not invoke the Prisoner Litigation Reform Act, which would require an exhaustion of remedies.

**COUNT I**
**PROSPECTIVE INJUNCTIVE RELIEF AGAINST**
**DEFENDANT DEPARTMENT OF CORRECTIONS**
**(Ex-Parte Young, 2009 U.S. 123 (1988))**

61.     The Plaintiffs reallege and reincorporate paragraphs 1 through 28 herein.

62.     Defendant, The Department of Corrections (DOC), as an agency or sub-division of the State of Florida, enjoy sovereign immunity and the Plaintiffs seek only prospective injunctive relief not requiring the payment of funds from the State of Florida's Treasury.

63.     The Plaintiffs have alleged that as a result of the exercise of their rights under *The First Amendment*, they have been subject to ongoing retaliation in the form of false and unwarranted internal affairs complaints which, in all likelihood, will continue unless injunctive relief is granted by this Court.

64.     Due to the temporal proximity of internal affairs complaints asserted against the Plaintiffs immediately after the disclosure of the falsity of the 2011 Aparo Death Investigation during the Kassidy Hill investigation and the publication of *The Miami Herald* articles, the Plaintiffs seek and are entitled to injunctive relief against the sovereign as to future retaliation.


33

**NOW THEREFORE** the Plaintiffs request that this Court enter a permanent injunction enjoining the Defendant Department of Corrections from retaliating against them in connection with any good faith assertions or disclosures of matters of substantial public interest and concern applying the balancing test set forth in *Duryea v. Guarnieri*, and *Garcetti v. Ceballos, supra*. Further, the Plaintiffs request this Court enter an order determining that the Plaintiffs are entitled to prospectively to all Whistle-Blower protection. Plaintiffs also request that to the extent allowable under *Ex-Parte Young*, Plaintiffs be awarded attorneys' fees and costs associated with Count I of this Complaint pursuant to 42 U.S.C. 1988.

## COUNT II
### (Defendants BEASLEY, SUMPTER, MIGUEL and CASE)

65.     Plaintiffs reallege and reincorporate paragraphs 1 through 28 herein.

66.     This is an action pursuant to 42 U.S.C. 1983 by each Plaintiff against Defendants BEASLEY, SUMPTER, MIGUEL and CASE for the violation of the Plaintiff's *First Amendment* rights and rights under the *Petition Clause*

67.     Defendants, BEASLEY, SUMPTER, MIGUEL and CASE have violated the Plaintiffs' constitutional rights by retaliating against the Plaintiffs concerning their disclosure of matters of substantial public concern which are protected by the *First Amendment* and the *Petition Clause*.

68.     The Defendants have caused retaliatory acts (false internal affairs complaints) to be made against the Plaintiffs as the result of the exercise of their Constitutional Rights. The Plaintiffs have suffered injury from such retaliatory acts including, but not limited to:

   a.   Inability to be promoted while under internal affairs investigation;

   b.   Inability to be transferred while under internal affairs investigation;

   c.   Law Enforcement standards frozen upon retirement;

34

   d.   Inability to file a Whistle-Blower claim while employee discipline or disciplinary actions are pending

   e.   Inability to obtain a name-clearing hearing; and

   f.   The placement of defamatory material within their personnel files.

69.     Plaintiffs' request that they receive all compensatory damages allowable pursuant to 42 U.S.C. 1983, costs, attorneys' fees pursuant to 42 U.S.C. 1988 and any other relief to which they are awarded.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a jury trial for all counts alleged above.

DATED this 27th day of August, 2014.

Respectfully submitted,

The Law Offices of STEVEN
R. ANDREWS, P.A.
822 North Monroe Street
Tallahassee, Florida 32303
(850) 681-6416 FAX: 681-6984 *Attorneys
for Plaintiffs*
*//s// Steven R. Andrews*
STEVEN  R.  ANDREWS  (FBN  0263680)
sandrews@andrewslawoffice.com BRIAN O.
FINNERTY         (FBN         0094647)
bfinnerty@andrewslawoffice.com
service@andrewslawoffice.com

35

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing First Amended Complaint has been eserved

this 27th day of August, 2014, to:

Albert J. Bowden, III
Senior Assistant Attorney General
Office of the Attorney General
PL 01, The Capitol
Tallahassee, FL  32399-1050
(850) 414-3716
(850) 488-4872  Fax
Al.Bowden@myfloridalegal.com

_/s/ Steven R. Andrews_
STEVEN R. ANDREWS

36

# EXHIBIT E



EXHIBIT

E

# DENNIS, JACKSON, MARTIN & FONTELA, P.A.

PROFESSIONAL ASSOCIATION
ATTORNEYS AND COUNSELORS AT LAW

1591 SUMMIT LAKE DRIVE, SUITE 200
TALLAHASSEE, FLORIDA 32317
(850) 422-3345
FAX (850) 422-1325

W. Bennett Carter, Jr.
Craig A. Dennis *
Michael R. Fidrych ●
Rogelio J. Fontela
William T. Jackson
William Peter Martin ‡
Maria A. Santoro *
Tiffany Rohan-Williams

‡ Board Certified as a Civil Trial Lawyer
by the Bar
* Certified as a Circuit Mediator by the
Supreme Court of Florida
● Also Admitted in Georgia

Kendra A. Ward
Firm Administrator

Robin B. Campbell
Patricia Starr Eubanks
Nikki W. Garrett, FRP
Jennifer C. Kjellerup, ACP, FRP
Jessica N. Mauer
Hester H. Pennington
Lisa Swearengin
Angela R. Triplett
Legal Assistants

September 25, 2014

Steven Andrews
Law Offices of Steven R. Andrews
822 North Monroe Street
Tallahassee, Florida 32303

Re    *Estate of Randall Jordan-Aparo*
      Response to Presuit Request for Medical Records

Dear Steve,

Enclosed please find the Department of Corrections' medical records for decedent Jordan-Aparo in response to your Notice of Claim letter dated September 2, 2014. Again, the Department appreciates your gracious agreement to extend the time by which these records were to be produced.

Please feel free to contact me if you have any questions regarding the medical records.

Sincerely,

William Peter Martin

Encls.
cc:   Alexandria Williams
      Ray Cochran

# EXHIBIT F

EXHIBIT
**F**

FLORIDA DEPARTMENT OF CORRECTIONS
## EMERGENCY ROOM RECORD

| Check one: | ☒ Inmate/Post-Use-of-Force Exam |
| | ☐ Employee: ☐ Post-Use-of-Force Exam OR ☐ Injury OR ☐ Physical Altercation |
| | ☐ Visitor/Injury |

All inmates must receive a complete assessment following a use of force. This includes a visual inspection of the entire body to identify any sign of injury. This exam shall be performed in the medical unit except under unusual circumstance. Injuries shall be documented on the DC4-708, *Diagram of Injury*. If a physician/CA is not present at the time of the exam, a physician/CA **must** review this form and sign it on the next working day.

Time of occurrence: _approx 1300_     Time of exam: _1315_

Description of occurrence: _Use of Chemical agents_

Inmate showered without soap (if post-use of chemical agent)? ☒ Yes  ☐ Refused  ☐ N/A

Vital Signs:  Temperature _98¹_  Pulse _109_  Respiration _20_  Blood Pressure ___/___

Arrived via: ☒ Ambulatory  ☐ Stretcher  ☐ Wheelchair  ☐ Other: _____

Condition on arrival (check all that apply): ☒ Alert  ☒ Oriented x 4 (person, place, time, situation) ☒ Responding to questions verbally
☐ Other (requires description in assessment summary)
☒ C/O pain? If checked, where? _Back pain "_

Assessment summary:
_C/o Back pain from previous injury. unable to_
_get BP reading with manual + Automatic cuffs_
_Right lower lobe c̅ wheezing. motling Noted upper_
_left posterior Back. Skin intack. Bruising Noted_
_Hx of Osler webber Rendo Syndrome. Lt. top of foot white_
_in color._

Physician notified? ☐ No ☒ Yes  Name: _Dr Choudray, Retake_  Time: _14w_
_BP_

Treatment provided? ☐ No ☒ Yes  If yes, describe: _____

Response to Treatment:
_Refused BP re-check @ 1525. Cooperative during Post use of_
_force assessment. unable to get BP reading._

Disposition:  ☐ Population  ☒ Confinement  ☐ Infirmary  ☐ Hospital  ☐ Rescue  ☐ Other (explain):

Discharge Instructions and Education:
_Notify medical of needs_

Health Care Provider's Signature and Stamp: _M. Riley SP_  [stamp: M. RILEY SP N FRANKLIN CI]  Date/Time: _9/19/10_

Reviewing Physician's Signature and Stamp: _____  Date/Time: _____

| Name _Jordan-Apara, Randall_ | Inmate Distribution: | White—Health Record |
| DC# _T31895_ Race/Sex _W/M_ | | Canary—Inspector General |
| Date of Birth ▓▓▓▓▓ | | Pink—Local Requirements |
| Institution _Franklin CI_ | Employee Distribution: | White—Personnel File |
| | | Canary—Employee Copy |
| | | Pink—DESTROY |

DC4-701C (Revised 10/07)

This form is not to be amended, revised, or altered without approval of the Office of Health Services-Administration

Incorporated by Reference in Rule 33-602.210, F.A.C.

00001

JORDAN-APARO, RANDALL
DOC MED REC - 02

# EXHIBIT G

FLA     DEPARTMENT OF CORRE
OFFICE OF HEALTH SERVICES

# DIAGRAM OF INJURY

EXHIBIT
G



Date of occurrence ___9/19/10___     Time of occurrence ___1315___

☐ No injury identified

Description of injury ___motling Noted on upper posterior___
___back. Skin intack. Breaths ten___

_____

_____

_____

___M. Riley 5142___   M. RILEY
Staff Signature              LPN
                            FRANKLIN CI

Inmate Name ___Jordan-Apara, Randall___
DC# ___T37895___   Race/Sex ___W/M___
Date of Birth ___████████___
Institution ___Franklin Ci___

This form is not to be amended, revised, or altered without approval
of the Deputy Assistant Secretary of Health Services Administration

DC4-708 (Revised 1/05)

# EXHIBIT H



EXHIBIT
**H**

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

**AMANDA CIMILLO,** as
Personal Representative of the
Estate of **RANDALL JORDAN-
APARO,** Deceased and **MINOR
CHILD APARO, the Natural
Child of Randall Jordan-Aparo**
By and Through Her Mother and
Natural Guardian **Amanda Cimillo,**

       Plaintiffs,

vs.                                                  **CASE NO.: 4:16-cv-00584-RH-CAS**

**DIANE ANDREWS, ET AL,**

       Defendants.

_____/

## DEFENDANT DEPARTMENT OF CORRECTIONS'
## RESPONSE TO PLAINTIFF'S FIRST REQUEST TO PRODUCE

       Defendant Department of Corrections ("DOC") responds to Plaintiff's first

request to produce and will produce those documents which exist and are in its

possession as follows:

1.     Any and all Documents and Communications listed in your initial Rule 26

disclosure section 26(a)(1)(A)(ii).

      a.     Any and all documents produced by the Plaintiff.

             Plaintiff has not produced any documents.

      b.     All employee handbooks, policies, procedure, and other similar

documents as were in effect with the Defendant during the relevant time period.

DOC objects to this request on the grounds that it is overbroad, burdensome, and vague.

c.      Decedent's inmate administrative and medical files of DOC.

See Folders H and __ being transmitted separately (applies to all Folders).

d.      Bureau of State Investigations Case Summary, Case Number 10-1 8057.

See Folder A.

e.      The Florida Department of Law Enforcement Investigative Report; Case  Number: TL -37-0003.

See Folder A

f.      DOC Reports of Force Used, Authorizations for Use of Force, Worksheets, Incident Reports, Witness Statements and Chemical Agent Accountability Log.

See Folders A and I.

g.      Relatives/References sheets regarding decedent.

See Folder K.

h.      DOC Death Investigation Case 13-13339.

See Folder A.

i.      DOC Death Investigation Case 13-9886.

See Folder A.

j.      All documents obtained through third party subpoenas.

None.

2.      Any and all Documents and Communications, which reference DOC
Incident Report Numbers as follows:

      a.  113-210-1387;
      b.  113-210-1387A;
      c.  113-210-1387B;
      d.  113-210-1387C;
      e.  113-210-1387D;
      f.  113-210-1387E and;
      g.  113-210-1387F.

    See Folder I.

3.      Any and all Documents and Communication in the custody and control of
DOC that would comprise the complete unredacted medical records maintained
DOC for Randal Jordan Aparo within the custody and control of DOC certified
complete and accurate by the custodian of records.

    See Folder H.

4.      Any and all Documents and Communications in the custody and control of
DOC that would reference or discuss the Medical Records or Medical Condition of
Randal Jordan Aparo, while a DOC inmate.

    See Folder H.

5.      Any and all Documents and Communications in the custody and control of
DOC that would set forth the complete names of every inmate housed in A-Dorm
Housing at Franklin Correctional Institute on September 17, 2010 to September 20,
2010.

    See Folder C.

6.      Any and all Documents and Communications in the custody and control of
DOC which reference or comprise the Internal Movement Log for all inmates who
were housed in B-Dorm housing at Franklin Correctional Institute from September
10, 2010 to September 30, 2010 including their cell numbers.

    See Folder C.

7.     Any and all Documents and Communication in the custody and control of DOC which reference or comprise the any and all Witness Statement Forms signed by inmates, employees of DOC, and outside law enforcement concerning the incident that happened on September 19, 2010 of Randal Jordan Aparo.

See Folders A and L.

8.     Any and all Documents and Communications in the custody and control of DOC which reference any interviews of any inmates, DOC employees, FDLE agents taken during the course of any investigation involving the death of Randal Jordan Aparo including the names of any such persons interviewed and the names any such persons who refused to be interviewed.

See Folders A and L.

9.     Any and all Documents and Communications in the custody and control of DOC which would indicate the name of the Chief of Security at Franklin Correctional Institute on September 19, 2010.

See Folder I.

10.     Any and all Documents and Communications in the custody and control of DOC including all draft Documents, and handwritten notes, recorded statements that would comprise all:

a.     Reports of Persons Using Force against Randal Jordan Aparo while he was an inmate at DOC;

b.     Incident Reports which reference or discuss Randal Jordan-Aparo while he was an inmate at DOC;

c.     Report of Force Used Worksheet, from any employee DOC in connection with any Use of Force on Randal Jordan Aparo while confined in DOC;

d.     Risk Assessment for the Use of Chemical Restraint Agents and Electronic Immobilization Devices which reference or discuss Randal Jordan Aparo while he was an inmate at DOC;

e.      DOC Diagram of Injury Form which mention or discuss Randal Jordan Aparo while he was an inmate at DOC;

f.      DOC Emergency Room Records of Randal Jordan Aparo while he was an inmate at DOC;

g.      DOC Authorization for Use of Force for Randal Jordan Aparo while he was an inmate at DOC;

Regarding 10.a-g:  see Folders A, F, H and I.

h.      Documents and Communications in the custody and control of DOC authored by the following which mention or discuss Randal Jordan Aparo;

     i.      Diane Andrews;
     ii.      Rollin Austin;
     iii.      C. Gillikin;
     iv.      Any institutional inspector;
     v.      Any employee of the Inspector General's Office including Ilsa Hayes;
     vi.      James Hamm;
     vii.      Deputy Warden T. Copeland;
     viii.      Patrick Burch;
     ix.      J. Martina;
     x.      C. Spangler;
     xi.      Markeith Daniels;
     xii.      Sgt. FNU Jackson (Franklin CI);
     xiii.      Custodian of Records for all Chemical Agents at Franklin CI;

DOC objects to Request 10.h(i-xii) on the grounds that it is overbroad and burdensome, and not reasonably calculated to lead to admissible evidence; otherwise see Folders A, C, F, H, I, and J.

11.      Any and all Documents and Communications in the custody and control of DOC that comprise the complete ACISS Investigative Report Logs (33 pages) which mention or discuss Randal Jordan Aparo or any witness or witnesses who provided information in connection with the investigation of Randal Jordan Aparo.

See Folders A, F, I, and L.

12.     Any and all Documents and Communications in the custody and control of DOC that comprise certified copies of the following DOC procedures as of September 19, 2010:

    a.     DC Procedure Title 33-602.10 (5)(B)(1);

    b.     DC Procedure Title 33-602.10 (21)(3)(C)(B);

    c.     DC Procedure Title 33-602.10 (21)(3)(C)(O)(1);

    d.     DC Procedure Title 33-602.10 (21)(3)(C)(O)(3)(b)&(c);

    e.     DC Procedure Title 33-208.002 Rules of Conduct.

These Procedures are as easily available and accessible to Plaintiff as the Defendants, and can be found online from DOC's website.

13.     Any and all Documents and Communications in the custody and control of DOC received from Lisa Flannagan M.D. which relate to Randal Jordan Aparo or the investigation of the death of Randal Jordan Aparo including but not limited to;

    a.     Complaint filed by Lisa Flanagan, M.D. concerning the death of Randal Jordan Aparo;

    b.     Any witness statements of Hantz

    c.     C. Hercule (Medical Executive Director) and Corrections Officer Dave Be Wallace, referenced in BSI Case Summary 10-10857

For 13a-c:  see Folders A and E.

14.     Any and all Documents and Communications in the custody and control of DOC which would indicate the date that all investigative files regarding the death of Randal Jordan Aparo became public records pursuant to Florida Statute 119, and available without exemption.

See Folder A (Activity Reports)

15.     Any and all Documents and Communications in the custody and control of DOC which would indicate the date that a state criminal or federal grand jury investigation commenced concerning the death of Randal Jordan Aparo.

     None.

16.     Any and all Documents and Communications in the custody and control of DOC which would indicate the date that the State of Florida had completed any criminal investigation concerning the death of Randal Jordan Aparo making the records of such investigation open to the public.

     See Folder L.

17.     Any and all Documents and Communications in the custody and control of DOC which would indicate the date that the Federal Bureau Investigation and/or grand jury investigation commenced concerning the death of Randal Jordan Aparo.

     See Folder L.

18.     Any and all Documents and Communications in the custody and control of DOC which would list the date that Randal Jordan Aparo's death was first listed on the Florida Department of Corrections Inmate Mortality website, at http://www.dc.state.fl.us/pub/mortality/year.html?year=2010, as involving an "Opened FBI/FDLE" investigation.

     See Folder M.

19.     Any and all Documents and Communications in the custody and control of DOC which indicate that the death of Randal Jordan Aparo or aspects related thereto, as of the date of this discovery, is still under active investigation by the FBI, FDLE or any state or federal grand jury.

     It is DOC's understanding that there are no ongoing or "active investigation[s] by the FBI, FDLE, or any state or federal grand jury." Therefore, no such documents would exist.

20.     Any and all Documents and Communications in the custody and control of DOC which indicate that the death of Randal Jordan Aparo or aspects related thereto, as of the date of this discovery, is not under active investigation by the

FBI, FDLE or any state or federal grand jury as indicated on the March 15, 2017 version of the DOC Inmate Mortality website.

See response to request 19 above.

21.     Any and all Documents and Communications in the custody and control of DOC which relate to the Memorandum of Understanding (MOU) which relates to the investigation of inmates deaths and which was in effect on September 19, 2010.

See Folder G.

22.     Any and all Documents and Communications in the custody and control of DOC consisting of the rough investigative notes of DOC inspector Eddie White, Debbie Carter, and Jeff Bertera related to their investigation the death of Randall Jordan Aparo, including but not limited to notes taken at a meeting which occurred at Franklin Correctional Institute at 12:10 p.m. on September 20, 2010.

See Folder A.

23.     Any and all Documents and Communications in the custody and control of DOC which consist of research undertaken by DOC during the time that Randal Jordan Aparo was an inmate in the custody of DOC related to Osler Webber-Rendu Syndrome.

See Folder H above.

24.     Any and all Documents and Communications in the custody and control of DOC in the possession of DOC including Documents or Communication housed at Jefferson Correctional Institute, which mention or discuss Randal Jordan Aparo or William R. Aron (DC No. S12757) acting as informants in connection with inmate/correction officer activity involving the joint introduction of contraband into Jefferson Correctional Institute.

None.

25.     Any and all Documents and Communications in the custody and control of DOC which comprise the unredacted and unedited  Fixed Wing videos of the A-Dorm housing on September 17,18,19, and 20, 2010.

DVDs will be copied by a professional copying service and delivered to Plaintiff's counsel at their cost.

26.     Any and all Documents and Communications in the custody and control of DOC which comprise the unredacted and unedited  Hand Held videos of the administration of chemical agents on Randal Jordan Aparo on September 19, 2010.

See response to request #25 above.

27.     Any and all Documents and Communications which in the custody and control of DOC comprise all photographs taken of Randal Jordan Aparo the A-Dorm housing on September 18, 19, & 20, 2010.

None.

28.     Any and all Documents and Communications in the custody and control of DOC which comprise the video surveillance of the basketball court at Franklin Correctional Institute on September 15, 2010.

None.

29.     Any and all Documents and Communications in the custody and control of DOC which comprise the video surveillance of the Franklin Correctional Institute on September 17, 2010 at approximately 1:30 p.m. which would show Randal Jordan Aparo falling to the ground while sitting on the bench.

None.

30.     Any and all Documents and Communications in the custody and control of DOC which reference MINS Report No. 357290 and Administrative Appeal No. 10-6-31361.

See Folder F.

31.     Any and all Documents and Communications in the custody and control of DOC which reference MINS or Incident Report Numbers;

    a.     0000357290;
    b.     0000357029;
    c.     0000356891;

    d.      0000356879;
    e.      0000356871;
    f.      0000356537;
    g.      0000356372;
    h.      0000356325;
    i.      0000356224;
    j.      0000355880;
    k.      0000355583;
    l.      0000355361;
    m.     0000355279;
    n.      0000355233.

See Folder F.

32.    Any and all Documents and Communications in the custody and control of DOC which reference incident number No. 36-4369.

See Folder I.

33.    Any and all Documents and Communications in the custody and control of DOC which set forth the bed assignments for all inmates who, where housed in A-Dorm housing on September 17, 18, 19, and 20, 2010.

See Folder C.

34.    Any and all Documents and Communications in the custody and control of DOC which comprise notes interviews of inmates housed in A-Dorm housing on September 17, 18, 19, and 20, 2010 or other persons including DOC personal or other law enforcement.

See Folder L.

35.    Any and all Documents and Communications in the custody and control of DOC which references or discuss a DOC Correctional Officer referred to a "Big Jit."

None.

36.    Any and all Documents and Communications in the custody and control of DOC which comprise all ACISS data which mention or discuss Randal Jordan Aparo.

See Folder A.

37.    Any and all Documents and Communications in the custody and control of DOC from any current or former DOC employees which indicate that it was their belief that Randal Jordan Aparo was murdered or otherwise injured by corrections officers at Franklin Correctional Institute on September 17, 18, and 19, 2010.

None.

38.    Any and all Documents and Communications in the custody and control of DOC in the nature of interviews conducted by DOC or agents of the Florida Department of Law Enforcement Officers taken from the following persons:

a.    Pamela T. Householder R.N.;
b.    Jashon Mobley;
c.    Leon Sanchez Edwards;
d.    George Edward Foxworth;
e.    Mary Salono;
f.    Lynda Adair;
g.    Lucy Ann Franklin;
h.    Rebecca Padgham;
i.    Brian Fogarty;
j.    Wilton R. Cloud (*aka* Ricky);
k.    Anita Manning;
l.    Lisa Mary Flannagan, M.D.;
m.    James Angel;
n.    Andrew Blare;
o.    Raleigh M. Broadnax;
p.    Clinton Brown;
q.    Walter Cooper;
r.    Erskine L Curry;
s.    Dorian Fuller;
t.    Joshua Griffen;
u.    Gary Cliff McClain;
v.    James D. Hamrick;
w.    Roderick Haygood;

x.      Harold G. Baker;

y.      Jeffrey Highsmith;

z.      Michael Houston;

aa.     Craig Middleton;

bb.     Earl Porter;

cc.     Jonnie Ravon;

dd.     Harry Scott;

ee.     Juan Thomas;

ff.     Ola Melissa Riley;

gg.     Bobby Shiver;

hh.     Christopher Alan Spangler;

ii.     Nikron Arunakal, M.D.;

jj.     Lt. Rollin Suttle Austin;

kk.     Harold G. Baker;

ll.     Patricia Lemon;

mm.     Martha Jones Green;

nn.     Chad Evans Gillikin;

oo.     James I. Hamm;

pp.     Kenneth L. Malphurs;

qq.     Joshua Lee Martina;

rr.     Markeith Daniels;

ss.     Hantz Hercule;

tt.     Dave Wallace;

uu.     Mohamad Choudhry, M.D.;

vv.     Special Agent Michael Devaney;

ww.     Special Agent Michael Kennedy;

xx.     Jeffry Bertera;

yy.     Debbie Arant Carter;

zz.     Special Agent Supervisor Keith Wilmer;

aaa.    Dan Richardson;

bbb.    Amy George;

ccc.    Crime Lab Analyst Auclar;

ddd.    James Messer;

eee.    Joseph Avram;

fff.    Kevin Hampton;

ggg.    Gary McClain;

hhh.    Mitchel Brown;

iii.    Patricia Cicirello;

jjj.    Billy Tomlin;

kkk.    Rebecca Wilkerson;

12

      lll.     Diane Andrews;
      mmm.     Margaret Summers.

See Folders A and L.

39.    Any and all Documents and Communications in the custody or control of DOC, including DOC probation which would indicate the last known names and addresses of:

    a.     Pamela T. Householder R.N.;
    b.     Jashon Mobley;
    c.     Leon Sanchez Edwards;
    d.     George Edward Foxworth;
    e.     Mary Salono;
    f.     Lynda Adair;
    g.     Lucy Ann Franklin;
    h.     Rebecca Padgham;
    i.     Brian Fogarty;
    j.     Wilton R. Cloud (*aka* Ricky);
    k.     Anita Manning;
    l.     Lisa Mary Flannagan, M.D.;
    m.    James Angel;
    n.     Andrew Blare;
    o.     Raleigh M. Broadnax;
    p.     Clinton Brown;
    q.     Walter Cooper;
    r.     Erskine L Curry;
    s.     Dorian Fuller;
    t.     Joshua Griffen;
    u.     Gary Cliff McClain;
    v.     James D. Hamrick;
    w.    Roderick Haygood;
    x.     Harold G. Baker;
    y.     Jeffrey Highsmith;
    z.     Michael Houston;
    aa.    Craig Middleton;
    bb.    Earl Porter;
    cc.    Jonnie Ravon;
    dd.    Harry Scott;
    ee.    Juan Thomas;

ff. Ola Melissa Riley;

gg. Bobby Shiver;

hh. Christopher Alan Spangler;

ii. Nikron Arunakal, M.D.;

jj. Lt. Rollin Austin;

kk. Harold G. Baker;

ll. Patricia Lemon;

mm. Martha Jones Green;

nn. Chad Evans Gillikin;

oo. James I. Hamm;

pp. Kenneth L. Malphurs;

qq. Joshua Lee Martina;

rr. Markeith Daniels;

ss. Hantz Hercule;

tt. Dave Wallace;

uu. Mohamad Choudhry, M.D.;

vv. Special Agent Michael Devaney;

ww. Special Agent Michael Kennedy;

xx. Jeffry Bertera;

yy. Debbie Arant Carter;

zz. Special Agent Supervisor Keith Wilmer;

aaa. Dan Richardson;

bbb. Amy George;

ccc. Crime Lab Analyst Auclar;

ddd. James Messer;

eee. Joseph Avram;

fff. Kevin Hampton;

ggg. Gary McClain;

hhh. Mitchel Brown;

iii. Patricia Cicirello;

jjj. Billy Tomlin;

kkk. Rebecca Wilkerson;

lll. Diane Andrews;

mmm. Margaret Summers;

nnn. Marlin Tomlin;

ooo. Billy Tomlin;

ppp. McKinley Womack;

qqq. Audrey Massey;

rrr. John M. Jackson

DOC objects to this request with regard to current or former DOC employees whose addresses are protected from disclosure by law.

40.     Any and all Documents and Communications in the custody and control of DOC which would indicate the bunk assignments for all inmates assigned to A-Dorm housing at Franklin Correctional Institute on September 17, 18, 19, and 20, 2010.

See Folder C.

41.     Any and all Documents and Communications in the custody and control of DOC reflecting discipline administered to those persons named in Bureau of State Investigation Case Summary Case No. 10-1-8057.

See Folder A.

42.     Any and all Documents and Communications in the custody and control of DOC reflecting Communications from FBI Agent Teresa Gustafson to any person employed by the DOC which mention or discuss Randal Jordan Aparo.

See Folders B and L.

43.     Any and all Documents and Communications in the custody and control of DOC reflecting a meeting which occurred on October 9, 2013 in the custody and control of DOC relating to the death of Randal Jordan Aparo.

DOC objects to this request on the grounds that it is vague and ambiguous; otherwise, see Folders A and L.

44.     Any and all Documents and Communications in the custody and control of DOC in the nature of a 37 page timeline of the fixed wing videos and hand held video in the possession, custody or control of the department of corrections.

See Folder A.

45.     Any and all Documents and Communications in the custody and control of DOC comprising the DOC Inspector General file for Case No. 13-9886 including but not limited to all reports from Margaret Summers.

See Folder A.

15

46.     Any and all Documents and Communications in the custody and control of DOC comprising the report of Margaret Summers, Crime Intelligence Analyst regarding the Summary of Wing Video – Franklin C.I., 19/19/2010, 2nd Shift, 10:55AM – 3:45PM dated May 27, 2014.

        See Folder A.

47.     Any and all Documents and Communications in the custody and control of DOC comprising audio tape recordings of inmate phone calls made between September 19, 2010 and December 31, 2010, which mentioned Randal Jordan Aparo.

        See Folder D.

48.     Any and all Documents and Communications in the custody and control of DOC comprising or mentioning Florida Department of Law Enforcement file No. 20100102282.

        See Folder L.


                    **DENNIS, JACKSON, MARTIN**
                    **& FONTELA, P.A.**


                    By*: /s/ William Peter Martin*
                    Peter@djmf-law.com
                    FL Bar ID No. 0843024
                    1591 Summit Lake Drive, Suite 200
                    Tallahassee, FL 32317
                    (850) 422-3345
                    (850) 422-1325 (Fax)
                    Attorney for DOC and Defendant Andrews

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing has been furnished via electronic mail on this 2nd day of June, 2017, to:

Steven R. Andrews, Esquire
The Law Offices of Steven R. Andrews
822 North Monroe Street
Tallahassee, Florida 32303
steve@andrewslawoffice.com
natalie@andrewslawoffice.com
ryan@andrewslawoffice.com
tewis@andrewslawoffice.com
Attorney for Plaintiff

Jeff Howell, Esquire
Phipps & Howell
P.O. Box 1351
Tallahassee, Florida 32302
jeff@phipps-howell.com
margaret@phipps-howell.com
Attorney for Defendants Franklin, Goodwin, Greene, Housholder and Riley

Brian C. Keri, Esquire
1538 Metro Blvd., #A1
Tallahassee, Florida 32308
brianckeri@earthlink.net
Attorney for Defendants Austin, Burch, Brown, Gillikin, Hamm, Hampton, Martina and Spangler

**DENNIS, JACKSON, MARTIN & FONTELA, P.A.**

By*: William Peter Martin*
Peter@djmf-law.com
FL Bar ID No. 0843024
1591 Summit Lake Drive, Suite 200
Tallahassee, FL 32317
(850) 422-3345
(850) 422-1325 (Fax)
Attorneys for DOC and Defendant Andrews

# EXHIBIT I

**EXHIBIT**
**I**

FLORIDA DEPARTMENT OF CORRECTIONS
**EMERGENCY ROOM RECORD**

Check one:   ☒ Inmate/Post-Use-of-Force Exam
☐ Employee:   ☐ Post-Use-of-Force Exam  OR  ☐ Injury  OR  ☐ Physical Altercation
☐ Visitor/Injury

All inmates must receive a complete assessment following a use of force. This includes a visual inspection of the entire body to identify any sign of injury. This exam shall be performed in the medical unit except under unusual circumstance. Injuries shall be documented on the DC4-708, *Diagram of Injury*. If a physician/CA is not present at the time of the exam, a physician/CA must review this form and sign it on the next working day.

Time of occurrence: _____   Time of exam: _13 15_

Description of occurrence:   use of chemical agents

Inmate showered without soap (if post-use of chemical agent)?  ☒ Yes   ☐ Refused   ☐ N/A

Vital Signs:   Temperature _98¹_   Pulse _109_   Respiration _20_   Blood Pressure _____/____

Arrived via:   ☒ Ambulatory   ☐ Stretcher   ☐ Wheelchair   ☐ Other:_____

Condition on arrival (check all that apply):  ☒ Alert  ☒ Oriented x 4 (person, place, time, situation)  ☐ Responding to questions verbally
☐ Other (requires description in assessment summary)
☒ C/O pain?  If checked, where?   Back pain "

Assessment summary:
C/o Back pain from previous injury. unable to
out BP reading with manual + automatic cuffs
Right lower lobe ē wheesing. mottling Noted upper
left posterior Back. Skin intact. Bruising Noted
Hx of Osler Webber Rendo Syndrome. Lt. top of foot whi
in color.

Physician notified?  ☐ No  ☒ Yes   Name: Dr Choudray, Retake   Time: 14 ıⁿ

Treatment provided?  ☐ No  ☒ Yes   If yes, describe:_____

Response to Treatment:

Disposition:   ☐ Population   ☒ Confinement   ☐ Infirmary   ☐ Hospital   ☐ Rescue   ☐ Other (explain):

Discharge Instructions and Education:
Notify medical of needs

Health Care Provider's Signature and Stamp: M. Riley JPA   Date/Time: 9/19/10

Reviewing Physician's Signature and Stamp: _____   Date/Time: 09/24/10

Name   Jordan-Apara, Randall   Inmate Distribution:   White—Health Record   1535
DC#   T3 895   Race/Sex WM                    Canary—Inspector General
Date of Birth _____                Pink—Local Requirements
Institution   Franklin CI.   Employee Distribution:   White—Personnel File
                                             Canary—Employee Copy
                                             Pink—DESTROY

DC4-701C (Revised 10/07)

This form is not to be amended, revised, or altered without approval of
the Office of Health Services-Administration

Incorporated by Reference in Rule 33-602.210, F.A.C.

A2, 8 of 24

# EXHIBIT J



FLORIDA DEPARTMENT OF CORRECTIONS
OFFICE OF HEALTH SERVICES
DIAGRAM OF INJURY



Date of occurrence  9/19/10      Time of occurrence  1315

☐ No injury identified

Description of injury  motling  Noted  on  upper  posterior
back.

P. LEMON, ARNP
FRANKLIN CI

09/24/10  1535

M. Riley 5/4
Staff Signature        M. RILEY
                       BLPN
                       FRANKLIN CI

Inmate Name  Jordan-Apara, Randall
DC#  137895          Race/Sex  W/M
Date of Birth  [redacted]
Institution  Franklin Ci

This form is not to be amended, revised, or altered without approval
of the Deputy Assistant Secretary of Health Services Administration

DC4-708 (Revised 1/05)

A2, 9 of 24

# EXHIBIT K



EXHIBIT
K

FLORIDA DEPARTMENT OF CORRECTIONS
Chronological Record of Health Care

Allergies: NKDA, Citric acid, Bees

| DATE/TIME | |
|---|---|
| 1/19/10 1820 | Inc (cont) Responded to call from Confinement to assess inmate in cell that he had fallen in cell. |
| 19/10 1830 | Inc (cont) Inmate laying on cell floor face down. Cold to touch. Rolled inmate over, face dark blue in color. Arms stiff, mouth fixed. Had CPR mask teeth closed, unresponsive. No pulse, stiff and difficult to move. |
| 9/10 1840 | Inc (cont) Notified on call CHO & Nurse Supervisor. |
| 10 1847 | Inc (cont) EMT'S called pronounced death |

T37895 TM 09 11/10/2009

JORDAN-APARO, RANDALL

W/M DOB ███████ DD

S- Subjective Data
O- Objective Data
A- Assessment of S and O Data
P- Plan
E-Education

AI, 17 of 17

000557

# EXHIBIT L

**EXHIBIT**

**L**

FLORIDA DEPARTMENT OF CORRECTIONS
**EMERGENCY ROOM RECORD**

Check one:  [X] Inmate/Post-Use-of-Force Exam
[ ] Employee:  [ ] Post-Use-of-Force Exam  OR  [ ] Injury  OR  [ ] Physical Altercation
[ ] Visitor/Injury

All inmates must receive a complete assessment following a use of force. This includes a visual inspection of the entire body to identify any sign of injury. This exam shall be performed in the medical unit except under unusual circumstance. Injuries shall be documented on the DC4-708, *Diagram of Injury*. If a physician/CA is not present at the time of the exam, a physician/CA **must** review this form and sign it on the next working day.

Time of occurrence: _____     Time of exam: _1315_

Description of occurrence:   Use of Chemical agents

Inmate showered without soap (if post-use of chemical agent)?  [X] Yes    [ ] Refused    [ ] N/A

Vital Signs:  Temperature _98¹_   Pulse _109_   Respiration _20_   Blood Pressure ____/____

Arrived via:  [X] Ambulatory    [ ] Stretcher    [ ] Wheelchair    [ ] Other:

Condition on arrival (check all that apply):  [X] Alert  [X] Oriented x 4 (person, place, time, situation)  [X] Responding to questions verbally
[ ] Other (requires description in assessment summary)
[X] C/O pain? If checked, where? _Back pain_

Assessment summary:
C/o Back pain from previous injury. unable to
get BP reading with manual + automatic cuffs
Right lower lobe c wheezing. motling Noted upper
left posterior Back. Skin intack. Bruising Noted
Hx of Osler Webber Rendo Syndrome. Lt. top of foot white
in color.

Physician notified?   [ ] No  [X] Yes   Name: Dr Choudray, Retake   Time: 14w

Treatment provided?   [ ] No  [X] Yes   If yes, describe:

Response to Treatment:

Disposition:   [ ] Population   [X] Confinement   [ ] Infirmary   [ ] Hospital   [ ] Rescue   [ ] Other (explain):

Discharge Instructions and Education:
Notify medical ot needs

Health Care Provider's Signature and Stamp: M. Riley   Date/Time: 9/19/10

Reviewing Physician's Signature and Stamp: _____   Date/Time: _____

Name   Jordan-Apara, Randall        Inmate Distribution:       White—Health Record
DC#   T31895   Race/Sex b/M                                     Canary—Inspector General
Date of Birth  ▇▇▇▇▇▇▇                                          Pink—Local Requirements
Institution   Franklin CI          Employee Distribution:      White—Personnel File
                                                                Canary—Employee Copy
                                                                Pink—DESTROY

DC4-701C (Revised 10/07)

This form is not to be amended, revised, or altered without approval of the Office of Health Services-Administration

Incorporated by Reference in Rule 33-602.210, F.A.C.

# EXHIBIT M

FL ˉIDA DEPARTMENT OF CORRE ˉIONS
OFFICE OF HEALTH SERVICES
DIAGRAM OF INJURY



EXHIBIT

**M**



Date of occurrence  9/19/10          Time of occurrence  1315

☐ No injury identified

Description of injury  motling  Noted  on  upper  posterior
back.

_____
Staff Signature   M. Riley SLPN  FRANKLIN CI

Inmate Name  Jordan-Apara, Randall
DC# 137895          Race/Sex W/M
Date of Birth  ▬▬▬▬▬▬▬▬▬
Institution  Franklin CI

This form is not to be amended, revised, or altered without approval
of the Deputy Assistant Secretary of Health Services Administration

DC4-708 (Revised 1/05)

# EXHIBIT N

EXHIBIT

**N**

FLORIDA DEPARTMENT OF CORRECTIONS
**EMERGENCY ROOM RECORD**

Check one:  ☒ **Inmate/Post-Use-of-Force Exam**
☐ **Employee:**  ☐ Post-Use-of-Force Exam  OR  ☐ Injury  OR  ☐ Physical Altercation
☐ **Visitor/Injury**

All inmates must receive a complete assessment following a use of force. This includes a visual inspection of the entire body to identify any sign of injury. This exam shall be performed in the medical unit except under unusual circumstance. Injuries shall be documented on the DC4-708, *Diagram of Injury*. If a physician/CA is not present at the time of the exam, a physician/CA **must** review this form and sign it on the next working day.

Time of occurrence: _approx 1300_       Time of exam: _1515_

Description of occurrence: _Use of Chemical agents_

Inmate showered without soap (if post-use of chemical agent)?  ☒ Yes  ☐ Refused  ☐ N/A

Vital Signs:  Temperature _98¹_  Pulse _109_  Respiration _20_  Blood Pressure ___/___

Arrived via:  ☒ Ambulatory  ☐ Stretcher  ☐ Wheelchair  ☐ Other: _____

Condition on arrival (check all that apply): ☒ Alert  ☒ Oriented x 4 (person, place, time, situation)  ☒ Responding to questions verbally
☐ Other (requires description in assessment summary)
☒ C/O pain? If checked, where? _Back pain "_

Assessment summary:
_C/o Back pain from previous injury. unable to
get BP reading with manual + Automatic cuffs
Right lower lobe = wheezing. motling noted upper
left posterior Back. Skin intack. Bruising noted
Hx of Osler Webber Rendo Syndrome. Lt. top of foot white
in color._

Physician notified?  ☐ No  ☒ Yes  Name: _Dr Choudray, Retake_  Time: _14ᵁᴺ_
                                          _BP_

Treatment provided?  ☐ No  ☒ Yes  If yes, describe: _____

Response to Treatment:
_Refused BP re-check @ 1525. Cooperative during post use of
force assessment. unable to get BP reading._

Disposition:  ☐ Population  ☒ Confinement  ☐ Infirmary  ☐ Hospital  ☐ Rescue  ☐ Other (explain):

Discharge Instructions and Education:
_Notify medical of needs_

Health Care Provider's Signature and Stamp: _M. Riley SP_  M. RILEY SP N FRANKLIN CI  Date/Time: _9/19/10_

Reviewing Physician's Signature and Stamp: _____  Date/Time: _____

| | |
|---|---|
| Name _Jordan-Apara, Randall_ | **Inmate Distribution:** White—Health Record |
| DC# _T3 1895_  Race/Sex _W/M_ | Canary—Inspector General |
| Date of Birth ▬▬▬▬ | Pink—Local Requirements |
| Institution _Franklin CI_ | **Employee Distribution:** White—Personnel File |
| | Canary—Employee Copy |
| | Pink—DESTROY |

DC4-701C (Revised 10/07)

This form is not to be amended, revised, or altered without approval of the Office of Health Services-Administration.

DOC Med Recs from ME-07

# EXHIBIT O



**FLORIDA DEPARTMENT OF CORRECTIONS**
**OFFICE OF HEALTH SERVICES**
**DIAGRAM OF INJURY**



Date of occurrence ___9/19/10___     Time of occurrence ___1315___

☐ No injury identified

Description of injury ___Motling Noted on upper posterior___
___back. Skin intack. Breaths ten___

Staff Signature ___M. Riley S LPN___
M. RILEY
8LPN
FRANKLIN CI

Inmate Name ___Jordan-Apara, Randall___
DC# ___137895___   Race/Sex ___W/M___
Date of Birth ___█████████___
Institution ___Franklin CI___

This form is not to be amended, revised, or altered without approval
of the Deputy Assistant Secretary of Health Services Administration
DOC Med Recs from ME-09

# EXHIBIT P



EXHIBIT
P

## FLORIDA DEPARTMENT OF CORRECTIONS
## Chronological Record of Health Care

Allergies: NKDA, Citric acid, Bees

| DATE/TIME | |
|---|---|
| 9/19/10 1820 | Inc vent) Responded to call from Confinement to assess inmate in cell that he had fallen in cell. |
| 1/19/10 1830 | Inc. vent) Inmate laying on cell floor face down. Cold to touch. Rolled inmate over, face dark blue in color. Arms stiff. mouth fixed. Had CPR ma teeth closed, unresponsive. No pulse, stiff and difficult to move. |
| 1/19/10 1840 | Inc vent) Notified on call CHO & Nurse supervisor. |
| 9/19/10 1847 | Inc vent) EMT's called pronounced death |

A-T37895 TM 09 11/10/2009 _____

JORDAN-APARO, RANDALL _____

W/M DOB [redacted] DD _____

S- Subjective Data
O- Objective Data
A- Assessment of S and O Data
P- Plan
E-Education

DOC Med Recs from ME-04

# EXHIBIT Q

# *The Law Offices of*
# *Steven R. Andrews, P.A.*



**EXHIBIT**
**Q**

*Steven R. Andrews*
sandrews@andrewslawoffice.com
*Brian O. Finnerty*
bfinnerty@andrewslawoffice.com

*822 North Monroe Street*
*Tallahassee, Florida 32303*
*Telephone (850) 681-6416*
*Facsimile (850) 681-6984*

November 24, 2014

W. Peter Martin, Esq.
Dennis, Jackson, Martin & Fontela, P.A.
1591 Summit Lake Drive, Suite 200
Tallahassee, FL 32317

Re:     *Estate of Randall Jordan-Aparo*

Dear Peter:

I need a Certificate of Completeness for the medical records of Randall Jordan-Aparo produced on September 25, 2014.  Also, I would like to look at the original pen and ink medical records for Randall Jordan-Aparo.  I would like to get this done as soon as possible.

Sincerely,

*/s/ Steven R Andrews*

Steven R. Andrews

SRA/ns