## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**AMANDA CIMILLO**, et al.,

      Plaintiff,

**v.**                            **CASE NO. 4:16-cv-00584-RH-CAS**

**ROLLIN AUSTIN,** et al.,

      Defendants.

_____/        **DISPOSITIVE MOTION**

## DEFENDANT OLA MELISSA RILEY'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Defendant, OLA MELISSA RILEY, by and through her undersigned counsel and pursuant to Federal Rule of Civil Procedure 56, hereby moves this Court for an Order granting her summary judgment on Counts I, II, III, and IV, and states the following:

1.    Plaintiff's Substituted Third Amended Complaint asserts four (4) counts against Defendant, Ola Melissa Riley, L.P.N., in her individual capacity: (I) violation of the Wrongful Death Statute (murder and manslaughter); (II) common law civil conspiracy; (III) violation of 42 U.S.C. § 1983 (Eighth Amendment Claim); and (IV) conspiracy to violate 42 U.S.C. § 1983.

2.    This Motion for Summary Judgment seeks dismissal of all four (4) of these claims on the grounds that Defendant Ola Melissa Riley, L.P.N., is entitled to

1

qualified immunity.   Assuming, *arguendo*, Ola Melissa Riley is not entitled to qualified immunity, Plaintiff's claims against her nonetheless fail as a matter of law.

3.     This is a suit that alleges Ola Melissa Riley was deliberately indifferent to Randall Jordan-Aparo's serious medical needs while he was incarcerated at the Florida Department of Corrections, Franklin Correctional Institution, and subsequently attempted to cover up his death.

WHEREFORE, Defendant Ola Melissa Riley, L.P.N., respectfully requests that this Court enter an Order granting summary judgment in her favor on Counts I, II, III, and IV of Plaintiff's Substituted Third Amended Complaint.

## BACKGROUND AND STATEMENT OF UNDISPUTED FACTS RELEVANT TO THE CLAIMS AGAINST NURSE RILEY

On or about December 28, 2001, Defendant Ola Melissa Riley (hereinafter "Nurse Riley") was hired as a senior licensed practical nurse at Wakulla Correctional Institution.[1]   On or about October 2, 2009, Nurse Riley requested a reassignment to Franklin Correctional Institution.[2]   At all material times, Nurse Riley's scope of practice as a senior licensed practical nurse included: providing nursing care and administering treatment as directed by a professional nurse; assisting a professional nurse and/or physician in clinics with diagnostic tests and physical examinations by preparing clinic rooms for use; collecting routine specimens; taking and recording

---

[1] Ex. 1: Personnel Action Request – Riley's original appointment to Wakulla Correctional Institution.
[2] Ex. 2: Letter dated October 14, 2009 regarding Riley's reassignment request.

temperature, pulse, respiration, and blood pressure; administering simple medications to bedridden patients under specific orders; and assisting professional nurses in completing and maintaining records of patient progress.[3]

According to the allegations in the Substituted Third Amended Complaint, Randall Jordan-Aparo (hereinafter "Jordan-Aparo") was arrested and subsequently remanded to the custody of the Florida Department of Corrections (hereinafter "FDOC") on or about October 29, 2009.[4]  Jordan-Aparo suffered from Osler-Weber-Rendu disease, an autosomal dominant hereditary disorder that would often manifest itself via skin telangiectasias, which are small dilated blood vessels near the surface of the skin.[5]

## A.   Inmate Jordan-Aparo's Self-Reported Back Injury while Playing Basketball on September 15, 2010

On September 15, 2010, at approximately 9:35 a.m., Jordan-Aparo presented to Nurse Pamela Housholder (hereinafter "Nurse Housholder") in the medical unit, complaining that he had fallen while playing basketball and was now suffering from back pain and a headache.[6]  Nurse Housholder wrote verbatim in his medical records what Inmate Jordan-Aparo told her:

> "IM [inmate] STATES, 'I WAS PLAYING BASKETBALL AND FELL AND MY BACK HAS BEEN HURTING SINCE.'" [7]

---

[3] Ex. 3: Senior Licensed Practical Nurse – F/C, Position Classification.
[4] *See* Complaint ¶ 9.
[5] Ex. 4: Expert Report of Sandra Nichols Walker, PhD, ARNP, at p. 7-8.
[6] Ex. 5: SOAPE Note dated September 15, 2010, Bates No. 001229.
[7] *Id.*

Nurse Housholder conducted a urinalysis, which showed to be "negative on all accounts," issued Jordan-Aparo a one-day lay-in pass, and gave him Tylenol.[8] On September 17, 2010, at approximately 2:15 p.m., Jordan-Aparo presented to Nurse Amy Goodwin (hereinafter "Nurse Goodwin") in the medical unit complaining of his original back pain which he said now radiated down his left leg.[9] Nurse Goodwin treated his complaint by administering ibuprofen and advising him to drink more water.[10]

Later that day, at approximately 10:15 p.m., Nurse Martha Greene (hereinafter "Nurse Greene") conducted a back-pain assessment of Jordan-Aparo.[11]  Nurse Greene attempted to obtain a urine sample but Jordan-Aparo refused, stating it "hurt too bad." [12]  Therefore, she administered analgesic balm to alleviate Jordan-Aparo's back pain.[13]

**B.** **Evaluation and Treatment Given to Inmate Jordan-Aparo by Nursing Staff between September 17 – 19, 2010**

On September 18, at approximately 12:10 a.m., Jordan-Aparo again presented to Nurse Greene in the medical unit complaining that he could not breathe or sleep.[14] Nurse Greene assessed his complaints, took his vital signs, and then telephoned Dr.

---

[8] *Id.*
[9] Ex. 6: SOAPE Note dated September 17, 2010, Bates No. 001228.
[10] *Id.*
[11] Ex. 7: Back Pain Assessment dated September 17, 2010, Bates No. 001230.
[12] *Id.*
[13] *Id.*
[14] Ex. 8: Chronological Record of Health Care Form, Bates No. 001225.

Nikron Arunakul.[15]   Dr. Arunakul ordered Nurse Greene to hold Jordan-Aparo in the infirmary for a twenty-three-hour observation period and administer an IV catheter containing lactated ringers.[16]   However, as she reported:

> I made two attempts to administer the IV catheter containing lactated ringers but was unsuccessful **because inmate Randall Jordan-Aparo refused to cooperate, continually moving so I could not insert the IV catheter**.[17]

At approximately 4:00 a.m., Jordan-Aparo remained under observation in the infirmary.[18]   He complained of pain, used profanity, demanded to go to the hospital, and threatened to sue the medical staff.[19]   Nurse A. Jones (aka Lucy Franklin) (hereinafter "Nurse Franklin"), continued to monitor his status and told Jordan-Aparo she could not send him to the hospital unless the doctor ordered it.[20]

Nurse Franklin wrote in Jordan-Aparo's medical chart that he was being non-compliant during the early hours of September 18, 2010:

> **I/M [inmate] VERY NONCOMPLIAN[T]** SAYS HE NEEDS TO GO TO THE HOSPITAL AND WE [WILL NOT] SEND HIM[,] USING PROFANITY[.] I INSTRUCTED THAT THIS NURSE [Franklin] WILL NOT BE TALKED TO THIS WAY. CAPT[A]IN CALL[ED] BY C.O. TO SPEAK WITH THIS I/M AND **HE GOT DISRESPECTFUL TO THE CAPT[A]IN**.[21]

---

[15] There was not a physician present at the institution so Nurse Greene had to telephone the on-call physician for treatment instructions. *See* Ex. 9: Affidavit of Martha Greene, L.P.N., dated December 22, 2017, Paragraph 10.
[16] Ex. 10: Physician's Order Sheet, Bates No. 001284.
[17] Ex. 9: Affidavit of Martha Greene, L.P.N., dated December 22, 2017, Paragraph 11 (emphasis added).
[18] Ex. 8: Chronological Record of Health Care Form, Bates No. 001225.
[19] *Id.*
[20] *Id.*
[21] Ex. 11: SOAPE Note dated September 18, 2010, Bates No. 001226 (emphasis added).

Correctional Officer Sergeant Dave Wallace was working in Franklin Correctional Institution's infirmary and saw Jordan-Aparo's refusal to cooperate with Nurse Greene's attempts to insert the IV catheter and his belligerence and profanity toward the nursing staff.[22]

As a result of Jordan-Aparo's continued uncooperative, belligerent behavior and his profanity, security staff transferred him to a disciplinary dorm cell at approximately 4:36 a.m.[23]   Jordan-Aparo's adamant refusal to stop his hostile behavior necessitated correctional officers to use pepper spray ["CS gas"][24] three times between 11:35 a.m. and 12:35 p.m. on September 19, 2010.[25]

At approximately 1:15 p.m., after the required post-use-of-force shower[26], Jordan-Aparo was escorted to the medical unit for a post-use-of-force assessment.[27] During Nurse Riley's assessment, Jordan-Aparo complained again of back pain from his previous fall.[28]  Nurse Riley also wrote that he had right lower lobe wheezing in his lungs, mottling on his left posterior back, bruising, and a history of Osler-Weber-

---

[22] *See* Ex. 12: Affidavit of Dave Wallace dated May 16, 2018.
[23] *Id*. at Paragraph 9.
[24] Throughout the Substituted Third Amended Complaint Plaintiff uses the term "CS gas" to refer to the pepper spray or tear gas used by FDOC security staff.
[25] *See* Complaint ¶ 29.
[26] Pursuant to FDOC policy, inmates who are exposed to chemical restraint agents are subsequently placed in a cold shower to decontaminate them and relieve them of the symptoms of the administration of such chemical agents. *See* Ex. 13: Section 33-602.210, Florida Administrative Code.
[27] Ex. 14: Chronological Record of Health Care, Bates No. 0011222.
[28] Ex. 15: Emergency Room Record, Bates Nos. 001155-001157.

Rendu disease.[29]  However, because Jordan-Aparo was still damp and cold from his shower, Nurse Riley could not obtain his blood pressure reading.[30]

> Q:   The fact that you were unable to get a blood pressure reading -- did that mean he had no blood pressure?

> A:   **No**. He had been brought from a shower cell. His **body was still damp** and I -- it was -- **an air conditioner vent was blowing right on where we were doing the exam**, it- -- it's about the size of these lights. And I just -- because he was moving, I -- I thought it was from his movement that the machines -- I couldn't listen to it or pick it up, or the machine wouldn't pick it up.
>
>        I wasn't concerned that he -- I never though he -- his health was in danger at the time of not being able to get the blood pressure.[31] [32]

## C.   Inmate Jordan-Aparo was Disruptive and Non-Compliant with Nurse Riley's Instructions

The record is replete with evidence that Jordan-Aparo refused to cooperate with the nursing staff's efforts to examine him and evaluate his condition.  Nurse Riley testified during her deposition:

> Q:   And it says Dr. Choudhary stated, if any outbursts or continued behavior, may place on SHOS [Self-Harm Observation Status] until seen by medical provider in the morning. In this chart entry, are you saying that Dr. Choudhary told you that?

> A:   Yes.

> Q:   And what did he tell you? What do you recall?

---

[29] *Id.*
[30] Ex. 16: Affidavit of Ola Melissa Riley, L.P.N., dated December 18, 2017, Paragraph 4.
[31] Citations to deposition transcripts are as follows:  deponent, volume number (if applicable), page number, colon, line number, through page number, colon, line number.  For example: "I 33:13-34:6" refers to volume I, page 33, line 13, through page 34, line 6.
[32] Ex. 17: Excerpts from Deposition of Ola Melissa Riley, L.P.N., I 75:17-76:5 (emphasis added).

A:   **That if he continued to have behavioral outbursts, problems, I could have put him in sight, in the SHOS cell**[33], and held him there until seen by the provider and the next -- the following morning.[34]

At approximately 2:00 p.m. on September 19, 2010, Nurse Riley telephoned Dr. Mohammad Choudhary to tell him she could not take a blood pressure reading because of Jordan-Aparo's uncooperativeness.[35]   Nurse Riley then returned to confinement to see if Jordan-Aparo would cooperate.[36]   However, he refused to allow security staff to handcuff him and he could not leave his cell uncuffed for Nurse Riley to evaluate him properly.[37]

Q:   Okay. So -- so, there were two COs with you and Franklin. And you were asking that the door be opened, and they refused to open it because he wouldn't cuff up.

A:   Correct.[38]

At approximately 3:25 p.m., Nurse Riley returned to confinement to take Jordan-Aparo's blood pressure.[39]   He refused to be evaluated or treated by Nurse

---

[33] The inmate would be placed in the SHOS cell in the medical unit and continuously monitored and evaluated. *See* Ex. 17: Excerpts from Deposition of Ola Melissa Riley, L.P.N., I 63:15-23.
[34] Ex. 17: Excerpts from Deposition of Ola Melissa Riley, L.P.N., I 64:4-13 (emphasis added).
[35] Ex. 14: Chronological Record of Health Care, Bates No. 0011222. *See also* Ex. 17: Excerpts from Deposition of Ola Melissa Riley, L.P.N., I 32:4-13.
[36] *Id*.
[37] *Id*.
[38] Ex. 17: Excerpts from Deposition of Ola Melissa Riley, L.P.N., I 28:13-17.
[39] Ex. 14: Chronological Record of Health Care, Bates No. 0011222.

Riley, who completed a Refusal of Health Care Services form witnessed by Officers Joshua Martina and Chad Gillikin.[40]

> Q:   And what did you write?
>
> A:   He refused to retake the blood pressure while in confinement and refused to sign the refusal.
>
> Q:   So, he refused to sign the refusal form. Is that what you mean?
>
> A:   Correct.[41]

At approximately 4:00 p.m., Nurse Riley wrote in Jordan-Aparo's medical record that she would refer him to the A.R.N.P., who would be reporting to work on the next day, September 20, 2010, for an evaluation and treatment of his back pain.[42]

> Q:   And then at 16:00 [*sic*] on September 19, 2010, did you make another entry? And what does it say there?
>
> A:   I pla- -- yes, I made another entry and referred him to the ARNP on 9/20, due to back pain, refusing to walk and comply with staff.
>
> ….
>
> Q:   If it said, at 1600 hours, refer to ARNP, does that mean you spoke with the ARNP or you entered a request or what?
>
> A:   I entered a request, myself, to refer him to be seen by an ARNP the next day.[43]

---

[40] Ex. 18: Refusal of Health Care Services, Bates No. 001158.
[41] Ex. 17: Excerpts from Deposition of Ola Melissa Riley, L.P.N., I 64:19-24.
[42] Ex. 14: Chronological Record of Health Care, Bates No. 0011222.
[43] Ex. 17: Excerpts from Deposition of Ola Melissa Riley, L.P.N., I 64:25-65:14.

At approximately 5:30 p.m., Officer George Foxworth walked by Jordan-Aparo's confinement cell, looked in and saw him lying on the floor.[44]   Officer Foxworth told Jordan-Aparo to get off the floor, but he said it was "cool down there."[45]   Officer Foxworth asked Jordan-Aparo if he was "OK," and Jordan-Aparo responded with a "thumbs up" with his left hand.[46]

At approximately 6:30 p.m., on September 19, 2010, security staff notified Nurse Riley and Nurse Franklin to come to confinement where they had just discovered Jordan-Aparo lying face down on the floor of his cell, unresponsive.[47] Nurse Riley wrote in Jordan-Aparo's medical record that he was cold to the touch, stiff, with teeth clenched, adding that he appeared to be dead.[48]

## D.   Randall Jordan-Aparo's Cause of Death

At approximately 10:30 a.m., on September 20, 2010, Dr. Lisa M. Flannagan of the Office of the Medical Examiner, District Two, conducted an autopsy of Jordan-Aparo.  Dr. Flannagan wrote in her autopsy report:

CAUSE OF DEATH:     Complications of multiple cardiac and pulmonary bacterial abscesses.[49]

---

[44] Ex. 19: FDLE Investigative Report # TL-37-0003, Serial #8, Bates No. 002117.
[45] *Id.*
[46] *Id.*
[47] Ex. 15: Emergency Room Record, Bates Nos. 001155-001157. *See also* Ex. 17: Excerpts from Deposition of Ola Melissa Riley, L.P.N., I 38:19-40:21.
[48]*Id. See also* Ex. 17: Excerpts from Deposition of Ola Melissa Riley, L.P.N., I 40:22-42:15.
[49] Ex. 20: Medical Examiner's Autopsy of Randall Jordan-Aparo, Bates Nos. 001124-001130.

**E.**   **Nurse Riley's Prior Encounters with Jordan-Aparo**

Other than her interaction with and attempted treatment and evaluation of Jordan-Aparo on September 19, 2010, from 1:15 p.m. until the time he was found dead his cell around 6:30 p.m., Nurse Riley saw Jordan-Aparo only twice.

On July 21, 2010, Nurse Riley conducted a Risk Assessment for the Use of Chemical Restraints and Electronic Immobilization Devices on Jordan-Aparo.[50]   On July 24, 2010, at 5:00 p.m., she administered 500mg of Cipro to him for a urinary tract infection.[51]   These two encounters, together with the four to five hours on September 19, 2010, constitutes the entirety of her interaction with the Jordan-Aparo.[52]

## MEMORANDUM OF LAW

## I.   THE SUMMARY JUDGMENT STANDARD

A court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

---

[50] Ex. 21: Risk Assessment for Use of Chemical Restraint Agents, Bates No. 001167.
[51] Ex. 22: Medication and Treatment Record, Bates No. 00134.
[52] *See* Ex. 16: Affidavit of Ola Melissa Riley, L.P.N., dated December 18, 2017, Paragraph 10.

## II.   NURSE RILEY IS ENTITLED TO QUALIFIED IMMUNITY

Nurse Riley is entitled to qualified immunity because her actions were discretionary and did not violate clearly established law.

The qualified immunity defense "protect[s] government officials from liability for civil damages… ." *Youmans v. Gagnon*, 626 F.3d 557, 562 (11th Cir. 2010) (citations omitted).  Nurse Riley retains her entitlement to qualified immunity "unless the law preexisting [her] supposedly wrongful act was already established to such a high degree that every objectively reasonable official standing in [her] place would be on notice that what [she] was doing would be clearly unlawful given the circumstances." *Pace v. Capobianco*, 283 F.3d 1275, 1282 (11th Cir. 2002).

The Eleventh Circuit utilizes a burden-shifting framework to analyze a defendant's qualified immunity defense.  First, "a defendant official must … show that his allegedly wrongful act or omission occurred while he was engaged in a discretionary duty." *Goebert v. Lee County*, 510 F.3d 1312, 1329 (11th Cir. 2007) (citation omitted).  Assuming the defendant was engaged in a discretionary duty, the plaintiff must then establish "both that the defendant committed a constitutional violation and that the law governing the circumstances was already clearly established at the time of the violation." *Youmans*, 626 F.3d at 562 (citation omitted).

**A.      Nurse Riley's Alleged Wrongful Acts or Omissions Occurred while She was Engaged in a Discretionary Duty.**

To determine whether a defendant is engaged in a discretionary duty, the court considers whether the government employee was (1) performing a legitimate job-related function (i.e., pursuing a job-related goal), (2) through means within her power to utilize. *Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).

The entirety of Nurse Riley's relevant conduct occurred within the scope of her duties as a senior licensed practical nurse at FDOC's Franklin Correctional Institution.[53]  Nurse Riley was performing legitimate job-related functions because she was assessing and responding to Jordan-Aparo's complaints and providing medical treatment within her scope of practice.

After determining that a government employee is engaged in a legitimate job-related function, the next step is to determine whether the employee is executing that job-related function in an authorized manner. *Holloman*, 370 F.3d at 1266.  Nothing in Plaintiff's Complaint suggests that Nurse Riley was not authorized to treat Jordan-Aparo.  Rather, Plaintiff alleges that her treatment or conduct was inadequate.  Nurse Riley performed a job-related function through means that were within her power to utilize; therefore, she has met her burden to "show that [her] allegedly wrongful act

---

[53] Ex. 23: Senior Licensed Practical Nurse – F/C, Position Description.

or omission occurred while [she was] engaged in a discretionary duty." *Goebert*, 510 F.3d at 1329.

**B.** **Nurse Riley Did Not Violate Clearly Established Statutory or Constitutional Rights.**

Plaintiff cannot show that Nurse Riley's conduct violated Jordan-Aparo's clearly established statutory or constitutional rights at the time. Therefore, Nurse Riley is entitled to qualified immunity.

**1.** **There is No Evidence of Murder, Manslaughter, or Conspiracy**

Plaintiff has yet to produce a scintilla of evidence that would implicate Nurse Riley for intentional murder, manslaughter, or conspiracy.   Senior Florida Department of Law Enforcement Agent Michael DeVaney testified as follows:

> Q:    Mr. DeVaney, did you ever come to the conclusion that Nurse Ola Melissa Riley violated any criminal laws?
>
> A.    No, sir.[54]

Regarding the conspiracy charges, Agent DeVaney said:

> Q:    And you were asked by Mr. Keri did you see any evidence of a conspiracy, I believe, amongst the correction guards or the DOC staff, and would that answer -- you said no, and would that be the same answer with regard to the nurses? **Did you see any evidence that the nurses were engaged in a conspiracy**?
>
> A:    **No, sir**.[55]

…

---

[54] Ex. 24: Excerpts from Deposition of FDLE Agent Michael DeVaney II, 190:10-12.
[55] Ex. 24: Excerpts from Deposition of FDLE Agent Michael DeVaney, II 258:23-259:4 (emphasis added).

Q:    I want to make sure that your testimony is precise, not to put too fine a point on it, then I'm done. Mr. DeVaney, **with respect to Pamela Housholder, Ola Melissa Riley, Lucy Franklin, Martha Green[e], is it fair to say that your testimony here today [is that] FDLE never found any reason to believe that any crimes had been committed by any of these nurses**?

A.    **Correct**.[56]

Therefore, Plaintiff can only reasonably claim that Nurse Riley was deliberately indifferent to Jordan-Aparo's alleged serious medical needs prior to his death.

## 2.    Nurse Riley Was Not Deliberately Indifferent to Inmate Jordan-Aparo's Medical Needs

### a.    *Legal Standard for Deliberate Indifference*

To prove deliberate indifference, a plaintiff must show three things: (1) that the inmate had an objectively serious medical need; (2) that the defendant acted with deliberate indifference; and (3) that the defendant's wrongful conduct caused the detainee's injury. *Goebert*, 510 F.3d at 1326 (citations omitted).

### i.    Objectively Serious Medical Need

First, a plaintiff must show that the detainee had an objectively serious medical need.  "A medical need that is serious enough to satisfy the objective component 'is one that has been diagnosed by a physician as mandating treatment

---

[56] Ex. 24: Excerpts from Deposition of FDLE Agent Michael DeVaney, II 211:2-9 (emphasis added).

or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id*. (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)).

ii.    <u>Acted with Deliberate Indifference</u>

Second, a plaintiff must show that each defendant acted with deliberate indifference to the detainee's medical need.  This requires proof of three things: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Id*. at 1327 (citation omitted) (alteration in original).

Subjective knowledge of the risk requires that the defendant be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists… ." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  It also requires the defendant to "draw the inference." *Id*.  Crucially, the inquiry does not focus on serious medical needs "that [a defendant] should have perceived but did not." *Presley v. City of Blackshear*, 650 F.Supp.2d 1307, 1315 (S.D.Ga. 2008), aff'd, 340 Fed.Appx. 567 (11th Cir. 2009) (citation omitted).  Rather, the official must have actually perceived the medical need.  *See id*.

After showing the defendant's subjective awareness of the substantial risk of harm, the plaintiff must show that the defendant "disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

16

The Eleventh Circuit has held that for medical treatment to rise to the level of a constitutional violation, the care must be so "'grossly incompetent, inadequate, or excessive as to shock the conscience or be intolerable to fundamental fairness.'" *Jackson v. Jackson*, 456 Fed. Appx. 813, 814 (11th Cir. 2012) (quoting *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991)).

### iii.   Causation

Finally, a plaintiff must show that "the constitutional violation caused the injury." *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003); *Goebert*, 510 F.3d at 1327.

### b.   *Nurse Riley's Conduct Does Not Constitute Deliberate Indifference*

Plaintiff alleges in her complaint that Nurse Riley acted with deliberate indifference by failing to advise correctional staff that Jordan-Aparo had been suffering from shortness of breath in the hours prior to his gassing on September 19, 2010.[57]   Plaintiff's allegation is incorrect.   Jordan-Aparo complained of breathing problems twice on September 19, 2010, once at 12:10 a.m., and again at 2:20 a.m.[58] He made both complaints **before** Nurse Riley reported for her shift at 7:00 a.m. on September 19, 2010.[59]

---

[57] *See* Complaint ¶ 61.
[58] Ex. 8: Chronological Record of Health Care Form, Bates No. 001225.
[59] Ex. 25: Affidavit of Ola Melissa Riley, L.P.N., dated April 19, 2018, Paragraph 3.

Plaintiff's allegations against Nurse Riley fail at the first step of the deliberate indifference standard because (1) Jordan-Aparo had not been diagnosed by a physician as having a serious medical need (for example, bacterial abscesses) which needed treatment, and (2) Jordan-Aparo did not exhibit such signs that were "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Goebert*, 510 F.3d at 1326.  Nurse Riley's first encounter with Jordan-Aparo was at approximately 1:15 p.m. on September 19, 2010 in her post use-of-force evaluation that he had when she noted bruising and some wheezing in the lungs.[60]  Further, Nurse Riley could never get Jordan-Aparo to cooperate enough so she could get a proper, accurate blood pressure.[61]  Jordan-Aparo's complaints and affect when Nurse Riley evaluated him were consistent with the normal symptoms exhibited by any inmate following the use of chemical restraint agents.  Further, Jordan-Aparo's repeated failure to cooperate with security staff and nursing staff only confounded Nurse Riley's ability to assess and treat him on that day.

Second, there is no record evidence that Nurse Riley was subjectively aware of a serious medical need such as the multiple cardiac and pulmonary bacterial abscesses that Dr. Flannagan stated was the cause of death.[62]  Rather, the evidence shows that on September 19, Nurse Riley was not "aware of facts from which the

---

[60] *See* Ex. 16: Affidavit of Ola Melissa Riley, L.P.N., dated December 18, 2017.
[61] *See* discussion *Supra*, Statement of Facts, Parts B. and C.
[62] Ex. 20: Medical Examiner's Autopsy of Randall Jordan-Aparo, Bates Nos. 001124-001130.

inference could be drawn that a substantial risk of serious harm exist[ed]," *Farmer*, 511 U.S. at 837.  The only subjectively abnormal circumstance was the notation in his medical records that Jordan-Aparo had Osler-Weber-Rendu syndrome, the symptoms of which were not present or obvious on September 19, 2010.  The other "abnormal" circumstance was Nurse Riley's inability to take Jordan-Aparo's blood pressure reading not for any medical reason but solely because Jordan-Aparo was consistently belligerent, defiant, and uncooperative.  While Nurse Riley knew from his medical chart that Jordan-Aparo had Osler-Weber-Rendu syndrome and had noted it in his post-use-of-force assessment, she did not subjectively perceive it as either a potentially serious medical need or one that could allegedly be fatal.

> Q:   So, did you know that he had a blood disease called Osler Weber Rendu? Did you know that at the time that you were providing care to him?
>
> A:   It was mentioned in the chart.
>
> Q:   Did – did you ever, in connection with your duties -- as an LPN, to pro- -- to ensure an inmate's safety, did you ever Google it or look at it to find out what the symptoms were or anything like that, prior to death?
>
> A:   No, I was told it was a -- more of -- it was just mentioned in the chart. I didn't know anything about it.[63]

---

[63] Ex. 17: Excerpts from Deposition of Ola Melissa Riley, L.P.N., I 13:23-14:9.

Further, as Nurse Riley testified in her deposition, she did not think Jordan-Aparo's health was in danger based on the fact she was unable to obtain his blood pressure reading.[64]

For Plaintiff to establish a claim of deliberate indifference against Nurse Riley, she must set forth evidence that Nurse Riley **actually perceived** a serious medical need. *Presley*, 650 F.Supp.2d at 1315.  Because Plaintiff has not and cannot meet her burden of proof, the deliberate indifference claim against Nurse Riley fails.

Third, Plaintiff cannot set forth any evidence that Nurse Riley disregarded her subjective knowledge of the risk of serious harm by failing to take reasonable measures to abate it by conduct that constituted "more than gross negligence." *Goebert*, 510 F.3d at 1327.  There is no evidence in the record that would establish that Nurse Riley's conduct on September 19, 2010, was "'so grossly incompetent, inadequate, or excessive as to shock the conscience or be intolerable to fundamental fairness.'" *Jackson*, 456 Fed.Appx. at 814 (quoting *Harris*, 941 F.2d at 1505).

The only alleged factually plausible conduct is that Nurse Riley failed to safeguard Jordan-Aparo by not transferring him to a hospital following her encounter with him for the post-use-of-force evaluation.   Jordan-Aparo had complained of back pain from a fall four days previously, exhibited normal symptoms following use of chemical agents, and refused to cooperate with

---

[64] *See* Ex. 17: Excerpts from Deposition of Ola Melissa Riley, L.P.N., I 75:4-13.

correctional and medical staff.[65]   Nurse Riley noted in Jordan-Aparo's medical records that she  would refer him to the A.R.N.P. to be treated for his persistent back pain on September 20, 2010.[66]   However, some wheezing or trouble breathing is consistent with chemical agents, and Nurse Riley conducted a full evaluation of Jordan-Aparo and immediately contacted the supervising physician for further instructions.[67]   Neither Dr. Choudhary or Advanced Registered Nurse Practitioner Lemon-Watson, ordered Jordan-Aparo to be transferred to a hospital, and Nurse Riley could not independently order such as transfer because it is not within her scope of practice or employment.

> Q:   That's it. Or you could send them to the hospital. I mean - -
>
> A:   I can't send them - -
>
> Q:   No, you can't send them to the hospital, but you could have gone up the chain of command and requested that someone send him to the hospital, right?
>
> A:   I could - - I referred him to Ms. Watson Lemon [*sic*] for her to evaluate him to decide whether or not to send him to the hospital.[68]

Nurse Riley's failure, through no fault of her own, to ascertain a blood pressure reading after several attempts certainly cannot be considered so grossly

---

[65] *See* Ex. 14: Chronological Record of Health Care, Bates No. 0011222; Ex. 15: Emergency Room Record, Bates No. 001155-001157.
[66] Ex. 14: Chronological Record of Health Care, Bates No. 0011222.
[67] Ex. 15: Emergency Room Record, Bates Nos. 001155-001157.
[68] Ex. 17: Excerpts from Deposition of Ola Melissa Riley, L.P.N., I 52:24-53:7.

incompetent or inadequate so as to "shock the conscience."  If anything, the record reflects that Nurse Riley was concerned about the well-being of Jordan-Aparo and did everything within her scope of practice to treat him.  Additionally, she expressed concern that his uncooperative behavior might lead to discipline.

A:   I asked them to open the cell door and he - - the guard, you know, would not open the door. And he - - if I had continued asking to open the door, they probably would have gassed him again for failing to follow a direct order, so. . .

Q:   So, you're saying - -

A:   And I was saying - - and he said no - - the inmate was saying no and I said no.

Q:   All right. So, your - - your fear was that - - that, if you continued to ask the COs to unlock the door, he continued to refuse - - your fear was they would gas him again?

…

A:   Correct.[69]

Nurse Riley was caught in a difficult position.  She needed to obtain Jordan-Aparo's blood pressure to evaluate his medical condition, but if Jordan-Aparo continued to resist her efforts, security staff might subject him to another chemical use of force.  Thus, instead of deliberate indifference, Nurse Riley showed remarkable perseverance in her attempts to treat Jordan-Aparo while at the same time sparing him any further discipline.

---

[69] Ex. 17: Excerpts from Deposition of Ola Melissa Riley, L.P.N., I 24:23-25:16.

Finally, Plaintiff fails to set forth any evidence that Nurse Riley's conduct was deliberately indifferent to a serious medical need, **and** that such conduct **actually caused** Jordan-Aparo's death.  Plaintiff is critical of Nurse Riley for her failure to intervene and independently transfer Jordan-Aparo to the hospital.  However, it is not within the scope of nursing practice for any senior licensed practical nurse such as Nurse Riley to independently transfer an inmate from his correctional facility to an outside, higher level of care unless an imminently critical health crisis is apparent.[70]  A physician and four other nurses were involved in the treatment of Jordan-Aparo from September 15 to September 19, 2010, and none of them identified an imminently critical situation requiring his transfer to a hospital.  Thus, Plaintiff cannot show that Nurse Riley's conduct caused Jordan-Aparo's death, and Plaintiff's deliberate indifference claim must fail.

> **c.** ***Eleventh Circuit Precedent Establishes that Nurse Riley's Conduct was not Deliberate Indifference***

There are two factually-similar Eleventh Circuit cases which establish the precedent that Nurse Riley's conduct does not rise to the federal deliberate indifference standard.

In *Kruse v. Williams*, 592 Fed.Appx. 848 (11th Cir. 2014), the Eleventh Circuit addressed a deliberate indifference claim against a nurse, and affirmed the

---

[70] *See* Ex. 4: Expert Report of Sandra Walker Nichols, PhD, ARNP, at pg. 5.

district court's granting of summary judgment in favor of the nurse.  In that case, the court found that the nurse did not act with deliberate indifference to the medical needs of a pretrial detainee with Addison's disease by failing to send the detainee to the hospital in response to his complaints, and thus did not violate the Fourteenth Amendment. *Id*. at 856-859.  The nurse promptly treated all the detainee's symptoms of which she was made aware, consulted with a doctor and implemented the recommended course of treatment, and continued to check on the detainee's condition. *Id*.  The court importantly concluded its opinion as follows:

> Even if grossly negligent, [Nurse] William's failure to detect that [detainee] Jordan's condition necessitated an emergency trip to the hospital is not sufficient to establish a claim of deliberate indifference in violation of the Fourteenth Amendment.[71]

*Id*. at 859.

In *Nam Dang v. Sheriff, Seminole Cty. Fla.*, 871 F.3d 1272 (11th Cir. 2017), the Eleventh Circuit again affirmed a motion for summary judgment in favor of the medical staff on claims of deliberate indifference.  In that case, the detainee's treatment was confounded because during his initial arrest, officers had to use force to detain him and slammed him into the ground causing the detainee to experience headaches and neck pain. *Id*. at 1276.  During the detainee's incarceration, his health

---

[71] A claim of deliberate indifference against a pre-trial detainee is brought under the Fourteenth Amendment's Due Process Clause while a claim of deliberate indifference against a prisoner, such Jordan-Aparo, is brought under the Eighth Amendment. *See Kruse*, 592 Fed.Appx. at 856 (citing *Goebert*, 510 F.3d at 1326).  However, the standards under the Fourteenth Amendment are identical to those under the Eighth. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County. Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005).

began deteriorating because, unbeknownst to the medical staff, he was suffering from meningitis. *Id*. The Eleventh Circuit found that all six (6) members of the medical staff were not deliberately indifferent to the medical treatment of the detainee. *Id*. at 1281-83. The nurses were constantly monitoring the detainee and reporting up the chain of command to the attending physician. *Id*. One nurse was alleged to have acted deliberately indifferent by not taking the vital signs of the detainee. *Id*. at 1281. In exonerating her, the Court noted that "the [nurse's] failure to take Dang's vitals under these circumstances cannot be said to be grossly incompetent or inadequate as to 'shock the conscience.'" *Id*. at 1281 (citing *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)).

Similar to the circumstances in *Kruse*, Nurse Riley's conduct and her decision not to transfer Inmate Jordan-Aparo to the hospital, assuming *arguendo* that this decision was within her scope of practice and proper for her to make, is not in and of itself sufficient to establish a claim of deliberate indifference in violation of the Eighth Amendment. Further, as demonstrated in *Nam Dang*, Nurse Riley's inability to obtain a blood pressure reading after several attempts does not constitute deliberate indifference. Nurse Riley attended to each and every one of Jordan-Aparo's complaints, reported up her chain of command, and provided the treatment ordered by Dr. Choudhary.

Eleventh Circuit precedent dictates that Nurse Riley's conduct "cannot be said to be grossly incompetent or inadequate as to 'shock the conscience.'" *Nam Dang*, 871 F.3d at 1281 (citing *Rogers*, 792 F.2d at 1058).

### 3.    Nurse Riley's Conduct was Squarely Within Her Scope of Practice

At all times material, Nurse Riley was directly within her scope of practice as a senior licensed practical nurse.   Chapter 464, Florida Statutes, constitutes the Florida Nurse Practice Act.[72]   The practice of practical nursing includes "the administration of treatments and medications, in the care of the ill, injured, or infirm" and "the promotion of wellness, maintenance of health, and prevention of illness of others **under the direction of a registered nurse** [or] **a licensed physician** …".[73] Further, Nurse Riley's position description stipulates that she "provides treatments and administers medication **per physician orders**."[74]

Nurse Riley provided Jordan-Aparo competent and adequate treatment within her scope of practice and the specific parameters of her position description.   During each of Nurse Riley's encounters with Jordan-Aparo she kept meticulous notes, evaluated and treated each of his complaints, and was in communication with the supervisory physician.   Nurse Riley did not – and still does not – have the authority

---

[72] *See* Ex. 26: The Florida Nurse Practice Act, Chapter 464, Fla. Stat.
[73] Ex. 26: The Florida Nurse Practice Act, Section 464.003(19), Fla. Stat. (emphasis added).
[74] Ex. 23: Senior Licensed Practical Nurse – F/C, Position Description (emphasis added).

to independently order a patient to be admitted to the hospital unless an imminently critical situation is apparent.[75]

## III.   PLAINTIFF'S DELIBERATE INDIFFERENCE CLAIM (COUNT III) IS BARRED BY THE STATUTE OF LIMITATIONS

Plaintiff's deliberate indifference claim is time-barred by the applicable statute of limitations; therefore, Count III of Plaintiff's Complaint must be dismissed.

The statute of limitations for Plaintiff's Eighth Amendment claim under § 1983 is four years. *Owens v. Okure*, 488 U.S. 235, 236 (1989); *Wallace v. Kato*, 549 U.S. 384, 387 (2000); *see, e.g., Omar v. Lindsey*, 334 F.3d 1246, 1251 (11th Cir. 2003) (per curiam); *Walton v. Florida Department of Corrections*, 2018 WL 1393520 *3 (M.D. Fla. Mar. 20, 2018). "While the forum state's law controls with respect to the length of a limitations period, the same is not true with respect to the accrual of a cause of action. Accrual of federal actions is governed solely by reference to federal law." *Walton*, 2018 WL 1393520 at *12 (citing *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987)).

The acts on which Plaintiff bases the deliberate indifference claim against Nurse Riley began on September 15[76] and ended on September 19, 2010, when

---

[75] Ex. 4: Expert Report of Sandra Walker Nichols, PhD, ARNP, at pg. 5.
[76] *See* discussion *supra*, Statement of Facts.

27

Jordan-Aparo was found dead in his cell.[77]   Therefore, Plaintiff's § 1983 claim against Nurse Riley accrued **at the latest** on September 19, 2010. *Walton*, 2018 WL 1393520 at * 5 (finding complaint untimely where it was filed more than four years after occurrence of use of force and deliberate indifference).

The applicable four-year statute of limitations began to accrue on the date of Jordan-Aparo's death, September 19, 2010.  The accrual date is not affected by the fact that a personal representative has stepped into the shoes of the decedent; the accrual date remains as if Jordan-Aparo himself filed the action. *Walton*, 2018 WL 1393520 at *5-6.[78]   Additionally, there are no tolling provisions that apply to the four-year statute of limitations for Plaintiff's deliberate indifference claim. *Walton*, 2018 WL 1393520 at *7-8 (citing *Davis v. Monahan*, 832 So.2d 708, 710-11 (Fla. 2002) (holding Florida's delayed discovery rule is narrowly construed and applies only to claims specifically enumerated by the legislature)).

Plaintiff's claim of deliberate indifference against Nurse Riley should have been filed no later than September 19, 2014.  Therefore, because Plaintiff filed her first Complaint on September 19, 2016[79], more than two years after the statute of

---

[77] *See* Complaint ¶ 35.

[78] In *Walton*, the court conducted this analysis based on an Eighth Amendment claim of excessive force. However, the court noted that the analysis is the same for a deliberate indifference claim. *See Walton v. Florida Department of Corrections*, 2018 WL 1393520 at *5 (citing *Lawson v. Okmulgee Cty. Crim. Justice Auth.*, 2018 WL 1104553 *4-5 (10th Cir, Feb. 28, 2018)).

[79] *See* Doc. 1.

limitations expired, Plaintiff's deliberate indifference claim (Count III) must be dismissed as time barred by the applicable statute of limitations.

## IV.   PLAINTIFF'S CONSPIRACY CLAIMS (COUNTS II AND IV) ARE BARRED BY THE INTRA-CORPORATE CONSPIRACY DOCTRINE

Both of Plaintiff's conspiracy claims fail as a matter of law based on the intra-corporate conspiracy doctrine.

Count II of Plaintiff's Complaint alleges that Nurse Riley acted as a conspirator with the other defendants to cause and then conceal the circumstances of Jordan-Aparo's death, and that she is therefore liable for the tort of civil conspiracy actionable under *Margolin v. Morton F. Plant Hosp. Ass'n, Inc.*, 342 So. 2d 1090 (Fla. 2d DCA 1977) and *Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1542 (11th Cir. 1990) based upon "the reason of the coercive force of numbers and the exceptional circumstances" surrounding Jordan-Aparo's murder or manslaughter.[80]

Count IV of Plaintiff's Complaint alleges that Nurse Riley and the other individually named defendants conspired together to conceal acts which constituted violations of Jordan-Aparo's Eighth Amendment rights.[81]

The intra-corporate conspiracy doctrine holds that acts of corporate agents or employees are attributed to the corporation itself, thereby invalidating the

---

[80] *See* Complaint ¶¶ 71-72.
[81] *See* Complaint ¶¶ 84-89.

multiplicity of actors necessary for the formation of a conspiracy. *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000).[82]

> Simply put, under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves. The doctrine is based on the nature of a conspiracy and the legal conception of a corporation. . . . [J]ust as it is not legally possible for an individual person to conspire with himself, it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself.

*McAndrew*, 206 F.3d at 1036.

The intra-corporate conspiracy doctrine applies equally to "government actors accused of conspiring together within an organization . . ." *Rehberg v. Paulk*, 611 F.3d 828, 854 (11th Cir. 2010).[83]

In *Kornagay v. Burt*, an inmate sued Florida Department of Corrections employees for conspiring to retaliate against him for filing grievances. 2011 U.S. Dist. LEXIS 23522, at *59 (N.D. Fla. 2011).  The court held that the defendants were entitled to summary judgment on the inmate's conspiracy claim, citing the intra-corporate conspiracy doctrine:

---

[82] *See also Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1261-63 (11th Cir. 2010); *Claudio v. Crews*, 2014 WL 1758106 *6 (N.D. Fla. 2014); *Dimanche v. Brown*, 2016 WL 5867057 *11 (N.D. Fla. 2016).

[83] *See also Grider*, 618 F.3d 1240 (11th Cir. 2010) (intracorporate conspiracy doctrine barred plaintiff's § 1983 conspiracy claims against police officers); *Denney v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir. 2001) (intracorporate conspiracy doctrine applied to city and its personnel); *Rehberg*, 611 F.3d at 854 (11th Cir. 2010) (concluding intracorporate conspiracy doctrine barred § 1983 conspiracy claim against a county employee); *Dickerson v. Alachua Cnty. Comm'n*, 200 F.3d 761, 767-68 (11th Cir. 2000) (concluding intracorporate conspiracy doctrine barred plaintiff's § 1995(3) conspiracy claim for interference with his civil rights); *Chambliss v. Foote*, 562 F.2d 1015 (5th Cir. 1977) (affirming district court's summary judgment opinion applying the intracorporate conspiracy doctrine to bar a § 1985(3) claim against a public university and its officials); *Taylor v. Alabama*, 95 F. Supp. 2d 1297, 1317-18 (M.D. Ala. 2000) (doctrine of intracorporate conspiracy barred plaintiff's conspiracy claim against employees of state agency).

In the instant case, all Defendants are employees of the FDOC. No outsiders are involved. The subject of their alleged conspiracy – interfering with [the inmate's] mail, giving him unsatisfactory notations in his daily housing record, issuing disciplinary reports, and applying force – involved job-related functions well within Defendants' scope of employment as FDOC employees.

*Id*. at \*61-62.

## A.   Plaintiff's Claim of Common Law Civil Conspiracy (Count II) is Precluded by the Intra-Corporate Conspiracy Doctrine

Ordinarily, there can be no independent tort for conspiracy.  However, under the force of numbers exception, if the plaintiff can "show some peculiar power of coercion possessed by the conspirators by virtue of their combination, which power an individual would not possess, then conspiracy itself becomes an independent tort." *Churruca v. Miami Jai-Alai, Inc.*, 353 So.2d 547, 550 (Fla. 1977).  The essential elements of this force of numbers claim are a malicious motive and coercion through numbers or economic influence. *Id*.

Essentially, Plaintiff is attempting to hold Nurse Riley and the other defendants liable for the independent tort of civil conspiracy, a tort rooted in business dealings[84], to allege the officers, nurses, and FDOC conspired together to cause and then cover up the circumstances of Jordan-Aparo's death.

---

[84] *See generally, American Diversified*, 439 So.2d at 906 (The independent tort of civil conspiracy is often referred to as an "economic boycott."); *Snipes v. West Flagler Kennel Club, Inc.*, 105 So.2d 164 (Fla. 1958) (track owners boycott a particular owner of greyhounds and forced other owners to do the same); *Margolin v. Morton F. Plant Hosp. Ass'n, Inc.*, 342 So. 2d 1090 (Fla. 2d DCA 1977) (anesthesiologists refuse to do business with a particular physician); *Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1542 (11th Cir. 1990) (insurance companies act in concert to interfere with an insurance agent's profession).

In *Buckner v. Lower Fla. Keys Hosp. Dist.*, 403 So.2d 1025, 1026-27 (Fla. 3d DCA 1981), the plaintiff, a licensed physician, was appealing the trial court's dismissal of his third amended complaint wherein he attempted to allege a common law civil conspiracy against a hospital, its administrators, and its board of trustees. As here, the plaintiff also sought to hold the defendants liable under the "force of numbers" exception, based on their concerted refusal to renew the plaintiff's hospital staff privileges. *Id.* at 1029.  The court dismissed the plaintiff's civil conspiracy claim and distinguished from *Margolin*, reasoning "the decision to terminate or not to renew [the plaintiff's] staff privileges necessarily had to be made by the defendants as a group and did not constitute a concerted effort by separate entities but simply came about as a result of the hospital acting through its respective components." *Id*.

Here, Plaintiff's common law civil conspiracy claim fails because any decision regarding the treatment or confinement of Jordan-Aparo was made by and through Nurse Riley, together with the other nursing and security staff defendants, acting as a single entity – the Florida Department of Corrections.  Therefore, as in *Kornagay* and *Buckner*, there is no combination of separate economic groups or forces.  Plaintiff's Complaint only implicates employees of FDOC.  Further, there is no evidence that the named defendants acted on personal motivation or played an

active role in the death of Jordan-Aparo outside of their activities in the administration of the correctional institution.[85]

The intra-corporate conspiracy doctrine precludes Plaintiff's civil conspiracy claim; therefore, Count II of Plaintiff's Complaint must be dismissed.

**B.**   **Plaintiff's Claim of Conspiracy to Violate 42 U.S.C. § 1983 (Count IV) is Precluded by the Intra-Corporate Conspiracy Doctrine**

Similarly, Count IV of Plaintiff's Complaint fails as a matter of law because it is precluded by the intra-corporate conspiracy doctrine.  All the defendants alleged to have conspired to violate Jordan-Aparo's Eighth Amendment rights were FDOC employees.  Further, as in *Kornagay*, the subject matter of their alleged conspiracy – gassing Jordan-Aparo, creation of false incident reports and false statements, preparation of false medical records, and inadequate medical treatment – involved job-related functions well within the named defendants' scope of employment. Plaintiff's conspiracy to violate 42 U.S.C. § 1983 claim must be dismissed because it fails as a matter of law.

---

[85] *See also Lake Hosp. & Clinic, Inc. v. Silversmith*, 551 So.2d 538, 545 (Fla. 4th DCA 1989) (the trial court erred in submitting the common law civil conspiracy issue to the jury for determination because there was not any evidence that the named defendants acted on personal motivation or played an active role in the termination of the plaintiff…)

## IV.   CONCLUSION

Defendant Ola Melissa Riley, L.P.N., respectfully requests this Court enter an

order granting her final summary judgment on all counts.

Respectfully submitted this 29th day of June, 2018.

/s/ **Jeffrey S. Howell**

JEFFREY S. HOWELL
Florida Bar No. 0793840
Phipps & Howell
Post Office Box 1351
Tallahassee Florida 32302-1351
(850) 222-7000
jeff@phipps-howell.com
Attorney for Defendants
*JONES, RILEY* and *GREENE*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

Undersigned counsel for Defendant OLA MELISSA RILEY hereby certifies that this motion and incorporated memorandum of law contains 7,881 words, excluding the case style, signature block, and certificate of service, in compliance with N.D. Fla. Loc. R. 7.1(F). The foregoing word count has been calculated utilizing Microsoft Word, the word processing software used to prepare this motion and incorporated memorandum of law.

/s/ *Jeffrey S. Howell*
JEFFREY S. HOWELL

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served on all counsel of record by CM/ECF this 29th day of June, 2018.

/s/ *Jeffrey S. Howell*
JEFFREY S. HOWELL