## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**AMANDA CIMILLO**, et al.,

      Plaintiff,

**v.**                           **CASE NO. 4:16-cv-00584-RH-CAS**

**ROLLIN AUSTIN,** et al.,

      Defendants**.**

_____/       **DISPOSITIVE MOTION**

### DEFENDANT A. JONES' (aka LUCY FRANKLIN) MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Defendant, A. JONES (aka LUCY FRANKLIN), by and through her undersigned counsel and pursuant to Federal Rule of Civil Procedure 56, hereby moves this Court for an Order granting her summary judgment on Counts I, II, III, and IV, and states the following:

1.    Plaintiff's Substituted Third Amended Complaint asserts four (4) counts against Defendant, A. Jones (aka Lucy Franklin), L.P.N., in her individual capacity: (I) violation of the Wrongful Death Statute (murder and manslaughter); (II) common law civil conspiracy; (III) violation of 42 U.S.C. § 1983 (Eighth Amendment Claim); and (IV) conspiracy to violate 42 U.S.C. § 1983.

2.      This Motion for Summary Judgment seeks dismissal of all four (4) of these claims on the grounds that Defendant Lucy Franklin, L.P.N., is entitled to qualified immunity. Assuming, *arguendo*, that Lucy Franklin is not entitled to qualified immunity, Plaintiff's claims against her nonetheless fail as a matter of law.

3.      This is a suit that alleges Lucy Franklin was deliberately indifferent to Randall Jordan-Aparo's serious medical needs while he was incarcerated at the Florida Department of Corrections, Franklin Correctional Institution, and subsequently attempted to cover up his death.

WHEREFORE, Defendant A. Jones (aka Lucy Franklin), L.P.N., respectfully requests that this Court enter an Order granting summary judgment in her favor on Counts I, II, III, and IV of Plaintiff's Substituted Third Amended Complaint.

## BACKGROUND AND STATEMENT OF UNDISPUTED FACTS RELEVANT TO THE CLAIMS AGAINST NURSE FRANKLIN

On or about September 9, 2005, Defendant A. Jones (aka Lucy Franklin) (hereinafter "Nurse Franklin") was hired as a senior licensed practical nurse at Franklin Correctional Institution.[1]  At all material times, Nurse Franklin's scope of practice as a senior licensed practical nurse included: providing nursing care and administering treatment as directed by a professional nurse; assisting a professional nurse and/or physician in clinics with diagnostic tests and physical examinations by

---

[1] Ex. 1: Personnel Action Request – Franklin's original appointment to Franklin Correctional Institution.

preparing clinic rooms for use; collecting routine specimens; taking and recording temperature, pulse, respiration, and blood pressure; administering simple medications to bedridden patients under specific orders; and assisting professional nurses in completing and maintaining records of patient progress.[2]

According to the allegations in the Substituted Third Amended Complaint, Randall Jordan-Aparo (hereinafter "Jordan-Aparo") was arrested and subsequently remanded to the custody of the Florida Department of Corrections (hereinafter "FDOC") on or about October 29, 2009.[3]  Jordan-Aparo suffered from Osler-Weber-Rendu disease, an autosomal dominant hereditary disorder that would often manifest itself via skin telangiectasias, which are small dilated blood vessels near the surface of the skin.[4]

## A.   Inmate Jordan-Aparo's Self-Reported Back Injury While Playing Basketball on September 15, 2010

On September 15, 2010, at approximately 9:35 a.m., Jordan-Aparo presented to Nurse Pamela Housholder (hereinafter "Nurse Housholder") in the medical unit, complaining that he had fallen while playing basketball and was now suffering from back pain and a headache.[5]  Nurse Housholder wrote verbatim in his medical records what Inmate Jordan-Aparo told her:

---

[2] Ex. 2: Senior Licensed Practical Nurse – F/C, Position Classification.
[3] *See* Complaint ¶ 9.
[4] Ex. 3: Expert Report of Sandra Nichols Walker, PhD, ARNP, at p. 7-8.
[5] Ex. 4: SOAPE Note dated September 15, 2010, Bates No. 001229.

"IM [inmate] STATES, 'I WAS PLAYING BASKETBALL AND FELL AND MY BACK HAS BEEN HURTING SINCE.'" [6]

Nurse Housholder then conducted a urinalysis, which showed to be "negative on all accounts," issued Jordan-Aparo a one-day lay-in pass, and gave him Tylenol.[7] On September 17, 2010, at approximately 2:15 p.m., Jordan-Aparo presented to Nurse Amy Goodwin (hereinafter "Nurse Goodwin") in the medical unit complaining of his original back pain which he said now radiated down his left leg.[8] Nurse Goodwin treated his complaint by administering ibuprofen and advising him to drink more water.[9]

Later that day, at approximately 10:15 p.m., Nurse Martha Greene (hereinafter "Nurse Greene") conducted a back-pain assessment of Jordan-Aparo.[10]   Nurse Greene attempted to obtain a urine sample but Jordan-Aparo refused, stating it "hurt too bad."[11]   Therefore, she administered analgesic balm to alleviate Jordan-Aparo's back pain.[12]

---

[6] *Id.*
[7] *Id.*
[8] Ex. 5: SOAPE Note dated September 17, 2010, Bates No. 001228.
[9] *Id.*
[10] Ex. 6: Back Pain Assessment dated September 17, 2010, Bates No. 001230.
[11] *Id.*
[12] *Id.*

4

**B.** **Evaluation and Treatment Given to Inmate Jordan-Aparo by Nursing Staff between September 17 – 19, 2010**

On September 18, at approximately 12:10 a.m., Jordan-Aparo again presented to Nurse Greene in the medical unit complaining that he could not breathe or sleep.[13] Nurse Greene assessed his complaints, took his vital signs, and then telephoned Dr. Nikron Arunakul.[14]   Dr. Arunakul ordered Nurse Greene to hold Jordan-Aparo in the infirmary for a twenty-three-hour observation period and administer an IV catheter containing lactated ringers.[15]   However, as she reported:

> I made two attempts to administer the IV catheter containing lactated ringers but was unsuccessful **because inmate Randall Jordan-Aparo refused to cooperate, continually moving so I could not insert the IV catheter**.[16]

At approximately 4:00 a.m., Jordan-Aparo remained under observation in the infirmary.[17]   He complained of pain, used profanity, demanded to go to the hospital, and threatened to sue the medical staff.[18]   Nurse Franklin continued to monitor his status and informed Jordan-Aparo that she could only send him to the hospital if the doctor ordered hospitalization.[19]

---

[13] Ex. 7: Chronological Record of Health Care Form, Bates No. 001225.
[14] There was not a physician present at the institution so Nurse Greene had to telephone the on-call physician for treatment instructions. *See* Ex. 8: Affidavit of Martha Greene, L.P.N., dated December 22, 2017, Paragraph 10.
[15] Ex. 9: Physician's Order Sheet, Bates No. 001284.
[16] Ex. 8: Affidavit of Martha Greene, L.P.N., dated December 22, 2017, Paragraph 11 (emphasis added).
[17] Ex. 7: Chronological Record of Health Care Form, Bates No. 001225.
[18] *Id*.
[19] *Id*.

Nurse Franklin later charted that Jordan-Aparo was being non-compliant during the early hours of September 18, 2010:

> **I/M [inmate] VERY NONCOMPLIAN[T]** SAYS HE NEEDS TO GO TO THE HOSPITAL AND WE [WILL NOT] SEND HIM[,] USING PROFANITY[.] I INSTRUCTED THAT THIS NURSE [Franklin] WILL NOT BE TALKED TO THIS WAY. CAPT[A]IN CALL[ED] BY C.O. TO SPEAK WITH THIS I/M AND **HE GOT DISRESPECTFUL TO THE CAPT[A]IN**.[20]

Nurse Franklin described her encounter with Jordan-Aparo as follows:

Q:   When you were there with Mr. Aparo -- and there are notes here, if you need to refer to them, but if you can -- I mean, as you sit here today, can you remember what Mr. Aparo was saying and -- and how he was saying them when he was -- when he was using profanity and -- whatever else he did?

A:   Okay. When I -- when I entered the infirmary I said: Good morning. I'm Nurse Franklin. I'll be your nurse today. And I'm going to check on everybody individually, so -- and I asked Mr. Aparo -- I said, well, how are you doing. And he immediately said, I need to go to the hospital. And he was very, very adamant, you know, very loud about it. And I was like, okay. I'll need to do an assessment and see how you are because I'll need to make a report for the doctor to be able to tell him what's going on with you.
…

A:   I said, I can't send you [to the hospital], but I can assess you and tell the doctor. He said, you're not going to ever touch me. I'm not -- I'm not -- you're not going to touch me. And I said, well, I can't assess you -- I can't assess you if you don't let me touch you. I'm not letting you touch me -- and he just started using a lot of profanity…[21][22]

---

[20] Ex. 10: SOAPE Note dated September 18, 2010, Bates No. 001226 (emphasis added).

[21] Citations to deposition transcripts are as follows: deponent, volume number (if applicable), page number, colon, line number, through page number, colon, line number. For example: "I 33:13-34:6" refers to volume I, page 33, line 13, through page 34, line 6.

[22] Ex. 11: Excerpts from Deposition of Lucy Franklin, L.P.N., II 169:2-170:7.

Correctional Officer Sergeant Dave Wallace was working in Franklin Correctional Institution's infirmary and  saw witnessed Jordan-Aparo's refusal to cooperate with Nurse Greene's attempts to insert the IV catheter and his belligerence and profanity toward the nursing staff.[23]   Nurse Franklin further explained specifically how Jordan-Aparo's behavior was belligerent:

> Q:    What is your -- what is your training when you're dealing with what I'll describe as a hostile, threatening inmate in medical?
>
> …
>
> A:    He was belligerent. He was belligerent. We call it belligerent because, you know, he was throwing his arms around -- and talking about what he was going to do if he didn't get to go to the hospital because he knew his health. I -- I'm not saying you don't know your health; I'm just saying I can't send you to the hospital.[24]

Jordan-Aparo was also lobbing obscenities and threatening Nurse Franklin while she was attempting to treat him:

> Q:    Well, I -- let me just stop you. I -- I hate to ask you to do this, but for the record, what -- what words did he actually use?
>
> A:    He said: I'm not going to let you fucking touch me. I want to go to a hospital. You need to take me right now. I know what -- so-and-so -- the hell is going wrong with me. I know when I'm sick and I know that I need to go to the hospital. Send me -- send me, now, dammit. Send me to the hospital.
>
> Q:    Did he -- did he make -- did he say anything that you felt was threatening?

---

[23] Ex. 12: Affidavit of Dave Wallace dated May 16, 2018.
[24] Ex. 11: Excerpts from Deposition of Lucy Franklin, L.P.N., II 170:24-171:11.

A:      Yes, he said, because I'm going to sue y'all fucking asses if y'all don't send me to the hospital. I need to go to the hospital. I said: I can't send you. I have to talk to the doctor.[25]

As a result of Jordan-Aparo's continued uncooperative, belligerent behavior and his profanity, security staff transferred him to a disciplinary dorm cell at approximately 4:36 a.m.[26]   Nurse Franklin completed his Pre-Special Housing Health Assessment at that time and noted that Jordan-Aparo was still threatening to sue the nursing staff.[27]   Jordan-Aparo's adamant refusal to stop his hostile behavior necessitated correctional officers to use pepper spray ["CS gas"][28] three times between 11:35 a.m. and 12:35 p.m., on September 19, 2010.[29]

At approximately 5:30 p.m., Officer George Foxworth walked by Jordan-Aparo's confinement cell, looked in and saw him lying on the floor.[30]   Officer Foxworth told Jordan-Aparo to get off the floor, but he said it was "cool down there."[31]   Officer Foxworth asked Jordan-Aparo if he was "OK," and Jordan-Aparo responded with a "thumbs up" with his left hand.[32]

---

[25] Ex. 11: Excerpts Deposition of Lucy Franklin, L.P.N., II 170:8-23.
[26] Ex. 13: Chronological Record of Health Care, Bates No. 001222; *See also* Ex. 12: Affidavit of Dave Wallace dated May 16, 2018, Paragraph 9.
[27] Ex. 14: Pre-Special Housing Health Assessment dated September 18, 2010, Bates Nos. 001165, 001223-001124.
[28] Throughout the Substituted Third Amended Complaint Plaintiff uses the term "CS gas" to refer to the pepper spray or tear gas used by FDOC security staff.
[29] *See* Complaint ¶ 29.
[30] Ex. 15: FDLE Investigative Report # TL-37-0003, Serial #8, Bates No. 002117.
[31] *Id*.
[32] *Id*.

8

At approximately 6:30 p.m., on September 19, 2010, security staff notified Nurse Ola Melissa Riley (hereinafter "Nurse Riley") and Nurse Franklin to respond to the confinement dorm where they had just discovered Jordan-Aparo lying face down on the floor of his cell, unresponsive.[33]  Nurse Riley wrote in Jordan-Aparo's medical record that he was cold to the touch, stiff, with teeth clenched, adding that he appeared to be dead.[34]

**C.**    **Randall Jordan-Aparo's Cause of Death**

At approximately 10:30 a.m., on September 20, 2010, Dr. Lisa M. Flannagan of the Office of the Medical Examiner, District Two, conducted an autopsy of Jordan-Aparo.  Dr. Flannagan wrote in her autopsy report:

> CAUSE OF DEATH:    Complications of multiple cardiac and pulmonary bacterial abscesses.[35]

**D.**    **Nurse Franklin Had No Other Encounters with Jordan-Aparo**

Apart from the patient encounters described above, Nurse Franklin had no other interactions with Jordan-Aparo during his incarceration at Franklin Correctional Institution.[36]

---

[33] Ex. 16: Emergency Room Record, Bates Nos. 001155-001157.
[34] Ex. 16: Emergency Room Record, Bates Nos. 001155-001157.
[35] Ex. 17: Medical Examiner's Autopsy of Randall Jordan-Aparo, Bates Nos. 001124-001130.
[36] Ex. 18: Affidavit of A. Jones (aka Lucy Franklin), L.P.N., dated June 19, 2018, Paragraph 9.

<u>MEMORANDUM OF LAW</u>

## I.      THE SUMMARY JUDGMENT STANDARD

A court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

## II.     NURSE FRANKLIN IS ENTITLED TO QUALIFIED IMMUNITY

Nurse Franklin is entitled to qualified immunity because her actions were discretionary and did not violate clearly established law.

The qualified immunity defense "protect[s] government officials from liability for civil damages… ." *Youmans v. Gagnon*, 626 F.3d 557, 562 (11th Cir. 2010) (internal citations omitted).  Nurse Riley retains her entitlement to qualified immunity "unless the law preexisting [her] supposedly wrongful act was already established to such a high degree that every objectively reasonable official standing in [her] place would be on notice that what [she] was doing would be clearly unlawful given the circumstances." *Pace v. Capobianco*, 283 F.3d 1275, 1282 (11th Cir. 2002).

The Eleventh Circuit utilizes a burden-shifting framework to analyze a defendant's qualified immunity defense.  First, "a defendant official must … show that his allegedly wrongful act or omission occurred while he was engaged in a

discretionary duty." *Goebert v. Lee County*, 510 F.3d 1312, 1329 (11th Cir. 2007) (citation omitted).  Assuming the defendant was engaged in a discretionary duty, the plaintiff must then establish "both that the defendant committed a constitutional violation and that the law governing the circumstances was already clearly established at the time of the violation." *Youmans*, 626 F.3d at 562 (citation omitted).

## A.    Nurse Franklin's Alleged Wrongful Acts or Omissions Occurred while She was Engaged in a Discretionary Duty.

To determine whether a defendant is engaged in a discretionary duty, the court considers whether the government employee was (1) performing a legitimate job-related function (i.e., pursuing a job-related goal), (2) through means that were within her power to utilize. *Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).

The entirety of Nurse Franklin's relevant conduct occurred within the scope of her duties as a senior licensed practical nurse at FDOC's Franklin Correctional Institution.[37]   Nurse Franklin was performing legitimate job-related functions because she was assessing and responding to Jordan-Aparo's complaints and providing medical treatment within her scope of practice.

After determining that a government employee is engaged in a legitimate job-related function, the next step is to determine whether the employee is executing that

---

[37] Ex. 19: Senior Licensed Practical Nurse – F/C, Position Description.

job-related function in an authorized manner. *Holloman*, 370 F.3d at 1266.  Nothing

in Plaintiff's Complaint suggests that Nurse Franklin was not authorized to treat

Jordan-Aparo.    Rather, Plaintiff alleges that her treatment or conduct was

inadequate.  Nurse Franklin was performing a job-related function through means

that were within her power to utilize; therefore, she has met her burden to "show that

[her] allegedly wrongful act or omission occurred while [she was] engaged in a

discretionary duty." *Goebert*, 510 F.3d at 1329.

**B.**     **Nurse Franklin Did Not Violate Clearly Established Statutory or Constitutional Rights.**

Plaintiff cannot show that Nurse Franklin's conduct violated Inmate Jordan-

Aparo's clearly established statutory or constitutional rights at the time.  Therefore,

Nurse Franklin is entitled to qualified immunity.

**1.     There is No Evidence of Murder, Manslaughter, or Conspiracy**

Plaintiff has yet to produce a scintilla of evidence that would implicate Nurse

Franklin for intentional murder, manslaughter, or conspiracy.   Senior Florida

Department of Law Enforcement Agent Michael DeVaney testified as follows:

> Q:     Let me just ask you in summation of this one: **Did you have any evidence whatsoever that Licensed Practical Nurse Lucy Franklin committed any criminal acts**?
>
> A.     No, sir.[38]

---

[38] Ex. 20: Excerpts from Deposition of FDLE Agent Michael DeVaney, II 192:1-4.

Regarding the conspiracy charges, FDLE Agent DeVaney affirmed:

Q:     And you were asked by Mr. Keri did you see any evidence of a conspiracy, I believe, amongst the correction guards or the DOC staff, and would that answer -- you said no, and would that be the same answer with regard to the nurses? **Did you see any evidence that the nurses were engaged in a conspiracy**?

A:     **No, sir**.[39]

…

Q:     I want to make sure that your testimony is precise, not to put too fine a point on it, then I'm done. Mr. DeVaney, **with respect to Pamela Housholder, Ola Melissa Riley, Lucy Franklin, Martha Green[e], is it fair to say that your testimony here today [is that] FDLE never found any reason to believe that any crimes had been committed by any of these nurses**?

A.     **Correct**.[40]

Therefore, Plaintiff can only reasonably claim that Nurse Franklin was deliberately indifferent to Jordan-Aparo's alleged serious medical needs prior to his death.

### 2.     Nurse Franklin Was Not Deliberately Indifferent to Inmate Jordan-Aparo's Medical Needs

#### a.     *Legal Standard for Deliberate Indifference*

To prove deliberate indifference, a plaintiff must show three things: (1) that the inmate had an objectively serious medical need; (2) that the defendant acted with

---

[39] Ex. 20: Excerpts from Deposition of FDLE Agent Michael DeVaney, II 258:23-259:4 (emphasis added).
[40] Ex. 20: Excerpts from Deposition of FDLE Agent Michael DeVaney, II 211:2-9 (emphasis added).

deliberate indifference; and (3) that the defendant's wrongful conduct caused the detainee's injury. *Goebert*, 510 F.3d at 1326 (internal citations omitted).

### i.   Objectively Serious Medical Need

First, a plaintiff must show that the detainee had an objectively serious medical need.  "A medical need that is serious enough to satisfy the objective component 'is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id*. (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)).

### ii.   Acted with Deliberate Indifference

Second, a plaintiff must show that each defendant acted with deliberate indifference to the detainee's medical need.  This requires proof of three things: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Id*. at 1327 (citation omitted) (alteration in original).

Subjective knowledge of the risk requires that the defendant be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists… ." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  It also requires the defendant to "draw the inference." *Id*.  Crucially, the inquiry does not focus on serious medical needs "that [a defendant] should have perceived but did not."

14

*Presley v. City of Blackshear*, 650 F.Supp.2d 1307, 1315 (S.D.Ga. 2008), aff'd, 340 Fed.Appx. 567 (11th Cir. 2009) (citation omitted) (emphasis added). Rather, the official must have actually perceived the medical need. *See id*.

After showing the defendant's subjective awareness of the substantial risk of harm, the plaintiff must show that the defendant "disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

The Eleventh Circuit has held that for medical treatment to rise to the level of a constitutional violation, the care must be so "'grossly incompetent, inadequate, or excessive as to shock the conscience or be intolerable to fundamental fairness.'" *Jackson v. Jackson*, 456 Fed. Appx. 813, 814 (11th Cir. 2012) (quoting *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991)).

### iii.   Causation

Finally, a plaintiff must show that "the constitutional violation caused the injury." *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003); *Goebert*, 510 F.3d at 1327.

### b.   *Nurse Franklin's Conduct Does Not Constitute Deliberate Indifference*

Plaintiff has alleged that Nurse Franklin was deliberately indifferent to Jordan-Aparo's medical needs because she "knew that Aparo was not in any physical condition [to be subjected to chemical agents] on September 19, 2010, but falsely

charted that Aparo could be subject to CS gas after inquiry."[41]   It has also been implicitly alleged throughout the course of discovery that Nurse Franklin should have independently transferred Jordan-Aparo to the hospital based on her own assessment of his medical condition.

> Q:    …You have the authority under DOC rules, as well as under the Board of Nursing rules, to declare an emergency and call an ambulance and send an inmate to the hospital, don't you, ma'am?
>
> A:    No.
>
> …
> Q:    Okay. And what -- what makes you think that you don't have that authority?
>
> A:    You can't do anything without a doctor.[42]

Plaintiff alleges that despite knowing Jordan-Aparo was not in any physical condition to be gassed, Nurse Franklin nonetheless completed the required Risk Assessment for the Use of Chemical Restraint Agents and Immobilization Devices Form [DC4-650B] on September 18, 2010,[43] thereby "causing and directing the unauthorized and illegal use of CS gas against Aparo…" [44]

Nurse Franklin's conduct does not approach deliberate indifference. Plaintiff's claim against Nurse Franklin fails at the first step of the standard because

---

[41] *See* Complaint ¶ 53.
[42] Ex. 11: Excerpts from Deposition of Lucy Franklin, L.P.N., I 39:14-23.
[43] *See* Ex. 14: Pre-Special Housing Health Assessment dated September 18, 2010, Bates Nos. 001165, 001223-001124.
[44] *See* Complaint ¶ 53.

(1) Jordan-Aparo had not been diagnosed by a physician as having a serious medical need (for example, bacterial abscesses) which required treatment, and (2) Jordan-Aparo did not exhibit any symptoms that were "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Goebert*, 510 F.3d at 1326.

In Nurse Franklin's Response to Plaintiff's Interrogatories dated April 2, 2018, she noted that in completing the DC4-650B Form on September 18, 2010, she relied on the Health Problem List, previously executed DC4-650B forms, and Health Services Profile sheets.[45]  Nothing in any of these forms indicated that Jordan-Aparo could not be gassed.  No nurse or medical provider ever wrote that Jordan-Aparo could not be gassed or that chemical agents might somehow exacerbate his Osler-Weber-Rendu syndrome.

The DC4-650B form lists the specific medical conditions that use of chemical restraint agents may exacerbate: asthma, chronic obstructive pulmonary disease, emphysema, congestive heart failure, angina, pregnancy, and unstable hypertension.[46]  Jordan-Aparo never claimed to have any of these conditions nor did any medical provider ever diagnose him with any of these conditions according to his medical records.

---

[45] *See* Ex. 21: Defendant Lucy Franklin's Responses to Plaintiff's Interrogatories dated April 2, 2018.
[46] *See* Ex. 14: Pre-Special Housing Health Assessment dated September 18, 2010, Bates Nos. 001165, 001223-001124.

Therefore, Nurse Franklin was not deliberately indifferent to Jordan-Aparo's medical needs when she completed a DC4-650B form stating that Jordan-Aparo had none of the medical conditions which would exempt him from chemical restraint agents.

There is also no record evidence that Nurse Franklin was subjectively aware of any serious medical need such as the multiple cardiac and pulmonary bacterial abscesses that Dr. Lisa Flannagan specifically cited as the cause of Jordan-Aparo's death.[47]   Rather, the evidence shows that on September 18, Nurse Franklin was not "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]," *Farmer*, 511 U.S. at 837.  Nurse Franklin testified in her deposition that due to her limited interaction with Jordan-Aparo that she could not recall whether she ever knew that Jordan-Aparo had Osler-Weber-Rendu syndrome:

Q:   Okay. When did you first find out he had Osler Weber Rendu? Was it after he died?

A:   Correct. When this case started, that's when I found out.

Q:   So, you -- when he was in Franklin CI, you didn't know that he had Osler Weber Rendu.

A:   No, I did not.[48]

---

[47] Ex. 17: Medical Examiner's Autopsy of Randall Jordan-Aparo, Bates Nos. 001124-001130.
[48] Ex. 11: Excerpts from Deposition of Lucy Franklin, L.P.N., I 69:23-70:4.

For Plaintiff to establish a claim of deliberate indifference against Nurse Franklin, she must set forth evidence that Nurse Franklin **actually perceived** a serious medical need. *Presley*, 650 F.Supp.2d at 1315 (emphasis added).  Because Plaintiff has not and cannot meet her burden of proof, the deliberate indifference claim against Nurse Franklin fails.

Third, Plaintiff cannot set forth evidence that Nurse Franklin disregarded her subjective knowledge of the risk of serious harm by failing to take reasonable measures to abate it by conduct that constituted "more than gross negligence." *Goebert*, 510 F.3d at 1327.  There is no evidence in the record that would establish that Nurse Franklin's conduct on September 18, 2010, was "'so grossly incompetent, inadequate, or excessive as to shock the conscience or be intolerable to fundamental fairness.'" *Jackson*, 456 Fed.Appx. at 814 (quoting *Harris*, 941 F.2d at 1505).

The only factually plausible conduct alleged is that Nurse Franklin failed to safeguard Jordan-Aparo when she did not have him sent to a hospital following her approximately thirty-minute encounter with him in the infirmary.[49]  During that brief time, Jordan-Aparo used profanity, was belligerent, and refused to allow the medical staff to evaluate or even touch him.

---

[49] Nurse Franklin arrived for her shift sometime around 4:00 a.m., on September 18, 2010, and began charting her encounter with Jordan-Aparo. *See* Ex. 18:  Affidavit of A. Jones (aka Lucy Franklin), L.P.N., dated June 19, 2018.

19

Neither Dr. Choudhary or Advanced Registered Nurse Practitioner Lemon-Watson, ordered Jordan-Aparo to be transferred to a hospital, and Nurse Franklin could not independently order such as transfer because it is not within her scope of practice or employment.

Finally, Plaintiff fails to set forth evidence that Nurse Franklin's conduct was deliberately indifferent to a serious medical need, **and** that such conduct **actually caused** Jordan-Aparo's death.  Plaintiff is critical of Nurse Franklin for her failure to intervene and independently transfer Jordan-Aparo to the hospital.  However, it is not within the scope of nursing practice for a senior licensed practical nurse such as Nurse Franklin to independently transfer an inmate from the correctional facility to an outside, higher level of care unless an imminently critical health crisis is apparent.[50]   A physician and four other nurses were involved in the treatment of Jordan-Aparo from September 15 to September 19, 2010, and none of them identified an imminently critical situation requiring his transfer to a hospital.  Thus, Plaintiff cannot show that Nurse Franklin's conduct caused Jordan-Aparo's death, and Plaintiff's deliberate indifference claim must fail.

---

[50] *See* Ex. 3: Expert Report of Sandra Walker Nichols, PhD, ARNP, at pg. 5.

c.   *Eleventh Circuit Precedent Establishes that Nurse Franklin's Conduct was not Deliberate Indifference*

There are two factually-similar Eleventh Circuit cases which establish the precedent that Nurse Franklin's conduct does not rise to the federal deliberate indifference standard.

In *Kruse v. Williams*, 592 Fed.Appx. 848 (11th Cir. 2014), the Eleventh Circuit addressed a deliberate indifference claim against a nurse, and affirmed the district court's granting of summary judgment in favor of the nurse.  In that case, the court found that the nurse did not act with deliberate indifference to the medical needs of a pretrial detainee with Addison's disease by failing to send the detainee to the hospital in response to his complaints, and thus did not violate the Fourteenth Amendment. *Id*. at 856-859.  The nurse promptly treated all the detainee's symptoms of which she was made aware, consulted with a doctor and implemented the recommended course of treatment, and continued to check on the detainee's condition. *Id*.  The court importantly concluded its opinion as follows:

> Even if grossly negligent, [Nurse] William's failure to detect that [detainee] Jordan's condition necessitated an emergency trip to the hospital is not sufficient to establish a claim of deliberate indifference in violation of the Fourteenth Amendment.[51]

*Id*. at 859.

---

[51] A claim of deliberate indifference against a pre-trial detainee is brought under the Fourteenth Amendment's Due Process Clause while a claim of deliberate indifference against a prisoner, such Jordan-Aparo, is brought under the Eighth Amendment. *See Kruse*, 592 Fed.Appx. at 856 (citing *Goebert*, 510 F.3d at 1326).  However, the standards under the Fourteenth Amendment are identical to those under the Eighth. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County. Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005).

In *Nam Dang v. Sheriff, Seminole Cty. Fla.*, 871 F.3d 1272 (11th Cir. 2017), the Eleventh Circuit again affirmed a motion for summary judgment in favor of the medical staff on claims of deliberate indifference.   In that case, the detainee's treatment was confounded because during his initial arrest, officers had to use force to detain him and slammed him into the ground causing the detainee to experience headaches and neck pain. *Id*. at 1276.   During the detainee's incarceration, his health began deteriorating because, unbeknownst to the medical staff, he was suffering from meningitis. *Id*.   The Eleventh Circuit found that all six (6) members of the medical staff were not deliberately indifferent to the medical treatment of the detainee. *Id*. at 1281-83.   The nurses were constantly monitoring the detainee and reporting up the chain of command to the attending physician.   *Id*.   One nurse was alleged to have acted deliberately indifferent by not taking the vital signs of the detainee.   *Id*. at 1281.   In exonerating her, the Court noted that "the [nurse's] failure to take Dang's vitals under these circumstances cannot be said to be grossly incompetent or inadequate as to 'shock the conscience.'" *Id*. at 1281 (citing *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)).

Similar to the circumstances in *Kruse*, Nurse Franklin's conduct and her decision not to transfer Inmate Jordan-Aparo to the hospital, assuming *arguendo* that this decision was within her scope of practice and proper for her to make, is not in

and of itself sufficient to establish a claim of deliberate indifference in violation of the Eighth Amendment. Nurse Franklin attended to each and every one of Jordan-Aparo's complaints, reported up her chain of command, and rendered the treatment ordered.

Eleventh Circuit precedent dictates that Nurse Franklin's conduct "cannot be said to be grossly incompetent or inadequate as to 'shock the conscience.'" *Nam Dang*, 871 F.3d at 1281 (citing *Rogers*, 792 F.2d at 1058).

### 3. Nurse Franklin's Conduct was Squarely Within Her Scope of Practice

At all times material, Nurse Franklin was directly within her scope of practice as a senior licensed practical nurse. Chapter 464, Florida Statutes, constitutes the Florida Nurse Practice Act.[52] The practice of practical nursing includes "the administration of treatments and medications, in the care of the ill, injured, or infirm" and "the promotion of wellness, maintenance of health, and prevention of illness of others **under the direction of a registered nurse** [or] **a licensed physician** …".[53] Further, Nurse Franklin's position description stipulates that she "provides treatments and administers medication **per physician orders**."[54]

---

[52] *See* Ex. 22: The Florida Nurse Practice Act, Chapter 464, Fla. Stat.
[53] Ex. 22: The Florida Nurse Practice Act, Section 464.003(19), Fla. Stat. (emphasis added).
[54] Ex. 19: Senior Licensed Practical Nurse – F/C, Position Description (emphasis added).

Nurse Franklin provided Jordan-Aparo competent and adequate treatment within her scope of practice and the specific parameters of her position description. During each of Nurse Franklin's encounters with Jordan-Aparo she kept meticulous notes, evaluated and treated each of his complaints, and was in communication with the supervisory physician.  Nurse Franklin did not – and still does not – have the authority to independently order a patient to be admitted to the hospital unless an imminently critical situation is apparent.[55]

## III.   PLAINTIFF'S DELIBERATE INDIFFERENCE CLAIM (COUNT III) IS BARRED BY THE STATUTE OF LIMITATIONS

Plaintiff's deliberate indifference claim is time-barred by the applicable statute of limitations; therefore, Count III of Plaintiff's Complaint must be dismissed.

The statute of limitations for Plaintiff's Eighth Amendment claim under § 1983 is four years. *Owens v. Okure*, 488 U.S. 235, 236 (1989); *Wallace v. Kato*, 549 U.S. 384, 387 (2000); *see, e.g., Omar v. Lindsey*, 334 F.3d 1246, 1251 (11th Cir. 2003) (per curiam); *Walton v. Florida Department of Corrections*, 2018 WL 1393520 *3 (M.D. Fla. Mar. 20, 2018).  "While the forum state's law controls with respect to the length of a limitations period, the same is not true with respect to the accrual of a cause of action. Accrual of federal actions is governed solely by

---

[55] Ex. 3: Expert Report of Sandra Walker Nichols, PhD, ARNP, at pg. 5.

reference to federal law." *Walton*, 2018 WL 1393520 at *12 (citing *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987)).

The acts on which Plaintiff bases the deliberate indifference claim against Nurse Franklin began on September 18[56] and ended on September 19, 2010, when Jordan-Aparo was found dead in his cell.[57]   Therefore, Plaintiff's § 1983 claim against Nurse Franklin accrued **at the latest** on September 19, 2010. *Walton*, 2018 WL 1393520 at * 5 (finding complaint untimely where it was filed more than four years after occurrence of use of force and deliberate indifference).

The applicable four-year statute of limitations began to accrue on the date of Jordan-Aparo's death, September 19, 2010.  The accrual date is not affected by the fact that a personal representative has stepped into the shoes of the decedent; the accrual date remains as if Jordan-Aparo himself filed the action. *Walton*, 2018 WL 1393520 at *5-6.[58]   Additionally, there are no tolling provisions that apply to the four-year statute of limitations for Plaintiff's deliberate indifference claim. *Walton*, 2018 WL 1393520 at *7-8 (citing *Davis v. Monahan*, 832 So.2d 708, 710-11 (Fla. 2002) (holding Florida's delayed discovery rule is narrowly construed and applies only to claims specifically enumerated by the legislature)).

---

[56] *See* discussion *supra*, Statement of Facts.

[57] *See* Complaint ¶ 35.

[58] In *Walton*, the court conducted this analysis based on an Eighth Amendment claim of excessive force. However, the court noted that the analysis is the same for a deliberate indifference claim. *See Walton v. Florida Department of Corrections*, 2018 WL 1393520 at *5 (citing *Lawson v. Okmulgee Cty. Crim. Justice Auth.*, 2018 WL 1104553 *4-5 (10th Cir, Feb. 28, 2018)).

Plaintiff's claim of deliberate indifference against Nurse Franklin should have been filed no later than September 19, 2014.  Therefore, because Plaintiff filed her first Complaint on September 19, 2016[59], more than two years after the statute of limitations expired, Plaintiff's deliberate indifference claim (Count III) must be dismissed as time barred by the applicable statute of limitations.

### IV.   PLAINTIFF'S CONSPIRACY CLAIMS (COUNTS II AND IV) ARE BARRED BY THE INTRA-CORPORATE CONSPIRACY DOCTRINE

Both of Plaintiff's conspiracy claims fail as a matter of law based on the intra-corporate conspiracy doctrine.

Count II of Plaintiff's Complaint alleges that Nurse Franklin acted as a conspirator with the other defendants to cause and conceal the death of Jordan-Aparo and that she is thereby liable for the tort of civil conspiracy actionable under *Margolin v. Morton F. Plant Hosp. Ass'n, Inc.*, 342 So. 2d 1090 (Fla. 2d DCA 1977) and *Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1542 (11th Cir. 1990) based upon "the reason of the coercive force of numbers and the exceptional circumstances" surrounding Jordan-Aparo's murder or manslaughter.[60]

---

[59] *See* Doc. 1.
[60] *See* Complaint ¶¶ 71-72.

Count IV of Plaintiff's Complaint alleges that Nurse Franklin and the other individually named defendants conspired together to conceal acts which constituted violations of Jordan-Aparo's Eighth Amendment rights.[61]

The intra-corporate conspiracy doctrine holds that acts of corporate agents or employees are attributed to the corporation itself, thereby invalidating the multiplicity of actors necessary for the formation of a conspiracy. *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000).[62]

> Simply put, under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves. The doctrine is based on the nature of a conspiracy and the legal conception of a corporation. . . . [J]ust as it is not legally possible for an individual person to conspire with himself, it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself.

*McAndrew*, 206 F.3d at 1036.

The intra-corporate conspiracy doctrine applies equally to "government actors accused of conspiring together within an organization . . ." *Rehberg v. Paulk*, 611 F.3d 828, 854 (11th Cir. 2010).[63]

---

[61] *See* Complaint ¶¶ 84-89.

[62] *See also Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1261-63 (11th Cir. 2010); *Claudio v. Crews*, 2014 WL 1758106 *6 (N.D. Fla. 2014); *Dimanche v. Brown*, 2016 WL 5867057 *11 (N.D. Fla. 2016).

[63] *See also Grider*, 618 F.3d 1240 (11th Cir. 2010) (intracorporate conspiracy doctrine barred plaintiff's § 1983 conspiracy claims against police officers); *Denney v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir. 2001) (intracorporate conspiracy doctrine applied to city and its personnel); *Rehberg*, 611 F.3d at 854 (11th Cir. 2010) (concluding intracorporate conspiracy doctrine barred § 1983 conspiracy claim against a county employee); *Dickerson v. Alachua Cnty. Comm'n*, 200 F.3d 761, 767-68 (11th Cir. 2000) (concluding intracorporate conspiracy doctrine barred plaintiff's § 1995(3) conspiracy claim for interference with his civil rights); *Chambliss v. Foote*, 562 F.2d 1015 (5th Cir. 1977) (affirming district court's summary judgment opinion applying the intracorporate conspiracy doctrine to bar a § 1985(3) claim against a public university and its officials); *Taylor v. Alabama*, 95 F. Supp. 2d 1297, 1317-18 (M.D. Ala. 2000) (doctrine of intracorporate conspiracy barred plaintiff's conspiracy claim against employees of state agency).

In *Kornagay v. Burt*, an inmate sued Florida Department of Corrections employees for conspiring to retaliate against him for filing grievances. 2011 U.S. Dist. LEXIS 23522, at *59 (N.D. Fla. 2011).  The court held that the defendants were entitled to summary judgment on the inmate's conspiracy claim, citing the intra-corporate conspiracy doctrine:

> In the instant case, all Defendants are employees of the FDOC. No outsiders are involved. The subject of their alleged conspiracy – interfering with [the inmate's] mail, giving him unsatisfactory notations in his daily housing record, issuing disciplinary reports, and applying force – involved job-related functions well within Defendants' scope of employment as FDOC employees.

*Id.* at *61-62.

## A.   Plaintiff's Claim of Common Law Civil Conspiracy (Count II) is Precluded by the Intra-Corporate Conspiracy Doctrine

Ordinarily, there can be no independent tort for conspiracy.  However, under the force of numbers exception, if the plaintiff can "show some peculiar power of coercion possessed by the conspirators by virtue of their combination, which power an individual would not possess, then conspiracy itself becomes an independent tort." *Churruca v. Miami Jai-Alai, Inc.*, 353 So.2d 547, 550 (Fla. 1977).  The essential elements of this force of numbers claim are a malicious motive and coercion through numbers or economic influence. *Id.*

Essentially, Plaintiff is attempting to hold Nurse Franklin and the other defendants liable for the independent tort of civil conspiracy, a tort rooted in business

dealings[64], to allege the officers, nurses, and FDOC conspired together to cause and then cover up the circumstances of Jordan-Aparo's death.

In *Buckner v. Lower Fla. Keys Hosp. Dist.*, 403 So.2d 1025, 1026-27 (Fla. 3d DCA 1981), the plaintiff, a licensed physician, was appealing the trial court's dismissal of his third amended complaint wherein he attempted to allege a common law civil conspiracy against a hospital, its administrators, and its board of trustees. As here, the plaintiff also sought to hold the defendants liable under the "force of numbers" exception, based on their concerted refusal to renew the plaintiff's hospital staff privileges. *Id*. at 1029.  The court dismissed the plaintiff's civil conspiracy claim and distinguished from *Margolin*, reasoning "the decision to terminate or not to renew [the plaintiff's] staff privileges necessarily had to be made by the defendants as a group and did not constitute a concerted effort by separate entities but simply came about as a result of the hospital acting through its respective components." *Id*.

Here, Plaintiff's common law civil conspiracy claim fails because any decision regarding the treatment or confinement of Jordan-Aparo was made by and through Nurse Franklin, together with the other nursing and security staff

---

[64] *See generally, American Diversified*, 439 So.2d at 906 (The independent tort of civil conspiracy is often referred to as an "economic boycott."); *Snipes v. West Flagler Kennel Club, Inc.*, 105 So.2d 164 (Fla. 1958) (track owners boycott a particular owner of greyhounds and forced other owners to do the same); *Margolin v. Morton F. Plant Hosp. Ass'n, Inc.*, 342 So. 2d 1090 (Fla. 2d DCA 1977) (anesthesiologists refuse to do business with a particular physician); *Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1542 (11th Cir. 1990) (insurance companies act in concert to interfere with an insurance agent's profession).

defendants, acting as a single entity – the Florida Department of Corrections. Therefore, as in *Kornagay* and *Buckner*, there is no combination of separate economic groups or forces. Plaintiff's Complaint only implicates employees of FDOC. Further, there is no evidence that the named defendants acted on personal motivation or played an active role in the death of Jordan-Aparo outside of their activities in the administration of the correctional institution.[65]

The intra-corporate conspiracy doctrine precludes Plaintiff's civil conspiracy claim; therefore, Count II of Plaintiff's Complaint must be dismissed.

## B.   Plaintiff's Claim of Conspiracy to Violate 42 U.S.C. § 1983 (Count IV) is Precluded by the Intra-Corporate Conspiracy Doctrine

Similarly, Count IV of Plaintiff's Complaint fails as a matter of law because it is precluded by the intra-corporate conspiracy doctrine. All the defendants alleged to have conspired to violate Jordan-Aparo's Eighth Amendment rights were FDOC employees. Further, as in *Kornagay*, the subject matter of their alleged conspiracy – gassing Jordan-Aparo, creation of false incident reports and false statements, preparation of false medical records, and inadequate medical treatment – involved job-related functions well within the named defendants' scope of employment.

---

[65] *See also Lake Hosp. & Clinic, Inc. v. Silversmith*, 551 So.2d 538, 545 (Fla. 4th DCA 1989) (the trial court erred in submitting the common law civil conspiracy issue to the jury for determination because there was not any evidence that the named defendants acted on personal motivation or played an active role in the termination of the plaintiff…)

Plaintiff's conspiracy to violate 42 U.S.C. § 1983 claim must be dismissed because it fails as a matter of law.

## IV.   CONCLUSION

Defendant A. Jones (aka Lucy Franklin), L.P.N., respectfully requests this Court enter an order granting her final summary judgment on all counts.

Respectfully submitted this 29th day of June, 2018.

/s/ *Jeffrey S. Howell*
JEFFREY S. HOWELL
Florida Bar No. 0793840
Phipps & Howell
Post Office Box 1351
Tallahassee Florida 32302-1351
(850) 222-7000
jeff@phipps-howell.com
Attorney for Defendants
*JONES, RILEY* and *GREENE*

31

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)</u>

Undersigned counsel for Defendant A. JONES (aka LUCY FRANKLIN) hereby certifies that this motion and incorporated memorandum of law contains 7,065 words, excluding the case style, signature block, and certificate of service, in compliance with N.D. Fla. Loc. R. 7.1(F). The foregoing word count has been calculated utilizing Microsoft Word, the word processing software used to prepare this motion and incorporated memorandum of law.

/s/ ***Jeffrey S. Howell***
JEFFREY S. HOWELL

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served on all counsel of record by CM/ECF this 29th day of June, 2018.

/s/ ***Jeffrey S. Howell***
JEFFREY S. HOWELL