# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**AMANDA CIMILLO**, et al.,

     Plaintiff,

**v.**                              **CASE NO. 4:16-cv-00584-RH-CAS**

**ROLLIN AUSTIN,** et al.,

     Defendants.

_____/        **DISPOSITIVE MOTION**

## DEFENDANT MARTHA GREENE'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Defendant, MARTHA GREENE, by and through her undersigned counsel and pursuant to Federal Rule of Civil Procedure 56, hereby moves this Court for an Order granting her summary judgment on Counts I, II, III, and IV, and states the following:

1.    Plaintiff's Substituted Third Amended Complaint asserts four (4) counts against Defendant, Martha Greene, L.P.N., in her individual capacity: (I) violation of the Wrongful Death Statute (murder and manslaughter); (II) common law civil conspiracy; (III) violation of 42 U.S.C. § 1983 (Eighth Amendment Claim); and (IV) conspiracy to violate 42 U.S.C. § 1983.

2.    This Motion for Summary Judgment seeks dismissal of all four (4) of these claims on the grounds that Defendant Martha Greene, L.P.N., is entitled to

qualified immunity.  Assuming, *arguendo*, Martha Greene is not entitled to qualified immunity, Plaintiff's claims against her nonetheless fail as a matter of law.

3.     This is a suit that alleges Martha Greene was deliberately indifferent to Randall Jordan-Aparo's serious medical needs while he was incarcerated at the Florida Department of Corrections, Franklin Correctional Institution, and subsequently attempted to cover up his death.

WHEREFORE, Defendant Martha Greene, L.P.N., respectfully requests that this Court enter an Order granting summary judgment in her favor on Counts I, II, III, and IV of Plaintiff's Substituted Third Amended Complaint.

## BACKGROUND AND STATEMENT OF UNDISPUTED FACTS RELEVANT TO THE CLAIMS AGAINST NURSE FRANKLIN

On or about September 23, 2005, Defendant Martha Greene (hereinafter "Nurse Greene") was hired as a senior licensed practical nurse at Franklin Correctional Institution.[1]  At all material times, Nurse Greene's scope of practice as a senior licensed practical nurse included: providing nursing care and administering treatment as directed by a professional nurse; assisting a professional nurse and/or physician in clinics with diagnostic tests and physical examinations by preparing clinic rooms for use; collecting routine specimens; taking and recording temperature, pulse, respiration, and blood pressure; administering simple medications to

---

[1] Ex. 1: Personnel Action Request – Greene's original appointment to Franklin Correctional Institution.

bedridden patients under specific orders; and assisting professional nurses in completing and maintaining records of patient progress.[2]

According to the allegations in the Substituted Third Amended Complaint, Randall Jordan-Aparo (hereinafter "Jordan-Aparo") was arrested and subsequently remanded to the custody of the Florida Department of Corrections (hereinafter "FDOC") on or about October 29, 2009.[3] Jordan-Aparo suffered from Osler-Weber-Rendu disease, an autosomal dominant hereditary disorder that would often manifest itself via skin telangiectasias, which are small dilated blood vessels near the surface of the skin.[4]

A.   **Inmate Jordan-Aparo's Self-Reported Back Injury while Playing Basketball on September 15, 2010**

On September 15, 2010, at approximately 9:35 a.m., Jordan-Aparo presented to Nurse Pamela Housholder (hereinafter "Nurse Housholder") in the medical unit, complaining that he had fallen while playing basketball and was now suffering from back pain and a headache.[5] Nurse Housholder wrote verbatim in his medical records what Inmate Jordan-Aparo told her:

> "IM [inmate] STATES, 'I WAS PLAYING BASKETBALL AND FELL AND MY BACK HAS BEEN HURTING SINCE.'" [6]

---

[2] Ex. 2: Senior Licensed Practical Nurse – F/C, Position Classification.
[3] *See* Complaint ¶ 9.
[4] Ex. 3: Expert Report of Sandra Nichols Walker, PhD, ARNP, at p. 7-8.
[5] Ex. 4: SOAPE Note dated September 15, 2010, Bates No. 001229.
[6] *Id.*

Nurse Housholder conducted a urinalysis, which showed to be "negative on all accounts," issued Jordan-Aparo a one-day lay-in pass, and gave him Tylenol.[7] On September 17, 2010, at approximately 2:15 p.m., Jordan-Aparo presented to Nurse Amy Goodwin (hereinafter "Nurse Goodwin") in the medical unit complaining of his original back pain which he said now radiated down his left leg.[8] Nurse Goodwin treated his complaint by administering ibuprofen and advising him to drink more water.[9]

Later that day, at approximately 10:15 p.m., Nurse Martha Greene (hereinafter "Nurse Greene") conducted a back-pain assessment of Jordan-Aparo.[10]   Nurse Greene attempted to obtain a urine sample but Jordan-Aparo refused, stating it "hurt too bad." [11]   Therefore, she administered analgesic balm to alleviate Jordan-Aparo's back pain.[12]

**B.**   **Evaluation and Treatment Given to Inmate Jordan-Aparo by Nursing Staff between September 17 – 19, 2010**

On September 18, at approximately 12:10 a.m., Jordan-Aparo again presented to Nurse Greene in the medical unit complaining that he could not breathe or sleep.[13] Nurse Greene assessed his complaints, took his vital signs, and then telephoned Dr.

---

[7] *Id.*
[8] Ex. 5: SOAPE Note dated September 17, 2010, Bates No. 001228.
[9] *Id.*
[10] Ex. 6: Back Pain Assessment dated September 17, 2010, Bates No. 001230.
[11] *Id.*
[12] *Id.*
[13] Ex. 7: Chronological Record of Health Care Form, Bates No. 001225.

Nikron Arunakul.[14]   Dr. Arunakul ordered Nurse Greene to hold Jordan-Aparo in the infirmary for a twenty-three-hour observation period and administer an IV catheter containing lactated ringers.[15]   However, as she reported:

> I made two attempts to administer the IV catheter containing lactated ringers but was unsuccessful **because inmate Randall Jordan-Aparo refused to cooperate, continually moving so I could not insert the IV catheter**.[16]

At approximately 4:00 a.m., Jordan-Aparo remained under observation in the infirmary.[17]   He complained of pain, used profanity, demanded to go to the hospital, and threatened to sue the medical staff.[18]   Nurse A. Jones (aka Lucy Franklin) (hereinafter "Nurse Franklin"), continued to monitor his status and told Jordan-Aparo she could not send him to the hospital unless the doctor ordered it.[19]

Nurse Franklin wrote in Jordan-Aparo's medical chart that he was being non-compliant during the early hours of September 18, 2010:

> **I/M [inmate] VERY NONCOMPLIAN[T]** SAYS HE NEEDS TO GO TO THE HOSPITAL AND WE [WILL NOT] SEND HIM[,] USING PROFANITY[.] I INSTRUCTED THAT THIS NURSE [Franklin] WILL NOT BE TALKED TO THIS WAY. CAPT[A]IN CALL[ED] BY C.O. TO SPEAK WITH THIS I/M AND **HE GOT DISRESPECTFUL TO THE CAPT[A]IN**.[20]

---

[14] There was not a physician present at the institution so Nurse Greene had to telephone the on-call physician for treatment instructions. *See* Ex. 8: Affidavit of Martha Greene, L.P.N., dated December 22, 2017, Paragraph 10.
[15] Ex. 9: Physician's Order Sheet, Bates No. 001284.
[16] Ex. 8: Affidavit of Martha Greene, L.P.N., dated December 22, 2017, Paragraph 11 (emphasis added).
[17] Ex. 7: Chronological Record of Health Care Form, Bates No. 001225.
[18] *Id*.
[19] *Id*.
[20] Ex. 10: SOAPE Note dated September 18, 2010, Bates No. 001226 (emphasis added).

Correctional Officer Sergeant Dave Wallace was working in Franklin Correctional Institution's infirmary and saw Jordan-Aparo's refusal to cooperate with Nurse Greene's attempts to insert the IV catheter and his belligerence and profanity toward the nursing staff.[21]

As a result of Jordan-Aparo's continued uncooperative, belligerent behavior and his profanity, security staff transferred him to a disciplinary dorm cell at approximately 4:36 a.m.[22]   Jordan-Aparo's adamant refusal to stop his hostile behavior necessitated correctional officers to use pepper spray ["CS gas"][23] three times between 11:35 a.m. and 12:35 p.m. on September 19, 2010.[24]

At approximately 5:30 p.m., Officer George Foxworth walked by Jordan-Aparo's confinement cell, looked in and saw him lying on the floor.[25]   Officer Foxworth told Jordan-Aparo to get off the floor, but he said it was "cool down there."[26]  Officer Foxworth asked Jordan-Aparo if he was "OK," and Jordan-Aparo responded with a "thumbs up" with his left hand.[27]

At approximately 6:30 p.m., on September 19, 2010, security staff notified Nurse Ola Melissa Riley (hereinafter "Nurse Riley") and Nurse Franklin to come to

---

[21] *See* Ex. 11: Affidavit of Dave Wallace dated May 16, 2018.
[22] *Id*. at Paragraph 9.
[23] Throughout the Substituted Third Amended Complaint Plaintiff uses the term "CS gas" to refer to the pepper spray or tear gas used by FDOC security staff.
[24] *See* Complaint ¶ 29.
[25] Ex. 12: FDLE Investigative Report # TL-37-0003, Serial #8, Bates No. 002117.
[26] *Id*.
[27] *Id*.

confinement where they had just discovered Jordan-Aparo lying face down on the floor of his cell, unresponsive.[28]   Nurse Riley wrote in Jordan-Aparo's medical record that he was cold to the touch, stiff, with teeth clenched, adding that he appeared to be dead.[29]

## D.   Randall Jordan-Aparo's Cause of Death

At approximately 10:30 a.m., on September 20, 2010, Dr. Lisa M. Flannagan of the Office of the Medical Examiner, District Two, conducted an autopsy of Jordan-Aparo.  Dr. Flannagan wrote in her autopsy report:

> CAUSE OF DEATH:   Complications of multiple cardiac and pulmonary bacterial abscesses.[30]

## E.   Nurse Greene's Prior Encounters with Jordan-Aparo

Other than her interaction with and treatment of Jordan-Aparo on September 17 and 18, 2010, Nurse Greene saw Jordan-Aparo only a handful of times.

On June 24, 2010, at approximately 7:00 p.m., Nurse Greene conducted a Risk Assessment for the Use of Chemical Restraints and Electronic Immobilization Devices on Jordan-Aparo as part of a pre-special housing assessment.[31]   On July 21, 2010, at approximately 4:00 p.m., Nurse Greene charted that Jordan-Aparo had been seen by Advanced Nurse Practitioner Patricia Lemon, who ordered her to release

---

[28] Ex. 13: Emergency Room Record, Bates Nos. 001155-001157.
[29] Id.
[30] Ex. 14: Medical Examiner's Autopsy of Randall Jordan-Aparo, Bates Nos. 001124-001130.
[31] Ex. 15: Risk Assessment for Use of Chemical Restraint Agents, Bates No. 001168; See also Ex. 8: Affidavit of Martha Greene, L.P.N., dated December 22, 2017, Paragraph 4.

him to security.[32]  On July 21 and 22, 2010, Nurse Greene administered 500mg of Cipro to Jordan-Aparo prescribed by ARNP Lemon-Watson for his urinary tract infection.[33]  On September 10, 2010, at approximately 8:00 p.m., Jordan-Aparo came to the medical unit because he had lost his health passes and Nurse Greene made him another set.[34]  These encounters, together with the treatment of Jordan-Aparo on September 17 through September 18, 2010, constitutes the entirety of Nurse Greene's interaction with the decedent.[35]

## MEMORANDUM OF LAW

### I.    THE SUMMARY JUDGMENT STANDARD

A court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

### II.    NURSE GREENE IS ENTITLED TO QUALIFIED IMMUNITY

Nurse Greene is entitled to qualified immunity because her actions were discretionary and did not violate clearly established law.

---

[32] Ex. 8: Affidavit of Martha Greene, L.P.N., dated December 22, 2017, Paragraph 5.
[33] Ex. 16: Medication and Treatment Record, Bates No. 00134.
[34] Ex. 8: Affidavit of Martha Greene, L.P.N., dated December 22, 2017, Paragraph 6.
[35] *Id*. at ¶ 13.

The qualified immunity defense "protect[s] government officials from liability for civil damages… ." *Youmans v. Gagnon*, 626 F.3d 557, 562 (11th Cir. 2010) (internal citations omitted).  Nurse Riley retains her entitlement to qualified immunity "unless the law preexisting [her] supposedly wrongful act was already established to such a high degree that every objectively reasonable official standing in [her] place would be on notice that what [she] was doing would be clearly unlawful given the circumstances." *Pace v. Capobianco*, 283 F.3d 1275, 1282 (11th Cir. 2002).

The Eleventh Circuit utilizes a burden-shifting framework to analyze a defendant's qualified immunity defense.  First, "a defendant official must … show that his allegedly wrongful act or omission occurred while he was engaged in a discretionary duty." *Goebert v. Lee County*, 510 F.3d 1312, 1329 (11th Cir. 2007) (citation omitted).  Assuming the defendant was engaged in a discretionary duty, the plaintiff must then establish "both that the defendant committed a constitutional violation and that the law governing the circumstances was already clearly established at the time of the violation." *Youmans*, 626 F.3d at 562 (citation omitted).

A.     **Nurse Greene's Alleged Wrongful Acts or Omissions Occurred while She was Engaged in a Discretionary Duty.**

To determine whether a defendant is engaged in a discretionary duty, the court considers whether the government employee was (1) performing a legitimate job-

related function (i.e., pursuing a job-related goal), (2) through means within her power to utilize. *Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).

The entirety of Nurse Greene's relevant conduct occurred within the scope of her duties as a senior licensed practical nurse at FDOC's Franklin Correctional Institution.[36] Nurse Greene was performing legitimate job-related functions because she was assessing and responding to Jordan-Aparo's complaints and providing medical treatment within her scope of practice.

After determining that a government employee is engaged in a legitimate job-related function, the next step is to determine whether the employee is executing that job-related function in an authorized manner. *Holloman*, 370 F.3d at 1266.  Nothing in Plaintiff's Complaint suggests that Nurse Greene was not authorized to treat Jordan-Aparo.  Rather, Plaintiff alleges that her treatment or conduct was inadequate.  Nurse Greene performed a job-related function through means that were within her power to utilize; therefore, she has met her burden to "show that [her] allegedly wrongful act or omission occurred while [she was] engaged in a discretionary duty." *Goebert*, 510 F.3d at 1329.

---

[36] Ex. 17: Senior Licensed Practical Nurse – F/C, Position Description.

**B.**   **Nurse Greene Did Not Violate Clearly Established Statutory or Constitutional Rights.**

Plaintiff cannot show that Nurse Greene's conduct violated Jordan-Aparo's clearly established statutory or constitutional rights at the time. Therefore, Nurse Greene is entitled to qualified immunity.

**1.**   **There is No Evidence of Murder, Manslaughter, or Conspiracy**

Plaintiff has yet to produce a scintilla of evidence that would implicate Nurse Greene for intentional murder, manslaughter, or conspiracy.   Senior Florida Department of Law Enforcement Agent Michael DeVaney testified as follows:

> Q:    And with respect to Nurse Martha Green [*sic*], during your investigation, or anyone at FDLE for that matter, **did you ever determine that there was probable cause to believe that Nurse Martha Green [*sic*] committed a violation of the criminal law?**
>
> A.    **No, sir**.[37]

Regarding the conspiracy charges, Agent DeVaney said:

> Q:    And you were asked by Mr. Keri did you see any evidence of a conspiracy, I believe, amongst the correction guards or the DOC staff, and would that answer -- you said no, and would that be the same answer with regard to the nurses? **Did you see any evidence that the nurses were engaged in a conspiracy**?
>
> A:    **No, sir**.[38]

…

---

[37] Ex. 18: Excerpts from Deposition of FDLE Agent Michael DeVaney II, 197:2-7 (emphasis added).
[38] Ex. 18: Excerpts from Deposition of FDLE Agent Michael DeVaney, II 258:23-259:4 (emphasis added).

Q:    I want to make sure that your testimony is precise, not to put too fine a point on it, then I'm done. Mr. DeVaney, **with respect to Pamela Housholder, Ola Melissa Riley, Lucy Franklin, Martha Green [*sic*], is it fair to say that your testimony here today [is that] FDLE never found any reason to believe that any crimes had been committed by any of these nurses**?

A:    **Correct**.[39]

Therefore, Plaintiff can only reasonably claim that Nurse Greene was deliberately indifferent to Jordan-Aparo's alleged serious medical needs prior to his death.

**2.     Nurse Greene Was Not Deliberately Indifferent to Inmate Jordan-Aparo's Medical Needs**

**a.     *Legal Standard for Deliberate Indifference***

To prove deliberate indifference, a plaintiff must show three things: (1) that the inmate had an objectively serious medical need; (2) that the defendant acted with deliberate indifference; and (3) that the defendant's wrongful conduct caused the detainee's injury. *Goebert*, 510 F.3d at 1326 (internal citations omitted).

i.    Objectively Serious Medical Need

First, a plaintiff must show that the detainee had an objectively serious medical need.  "A medical need that is serious enough to satisfy the objective component 'is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity

---

[39] Ex. 18: Excerpts from Deposition of FDLE Agent Michael DeVaney, II 211:2-9 (emphasis added).

for a doctor's attention.'" *Id*. (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)).

ii.    Acted with Deliberate Indifference

Second, a plaintiff must show that each defendant acted with deliberate indifference to the detainee's medical need.  This requires proof of three things: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Id*. at 1327 (citation omitted) (alteration in original).

Subjective knowledge of the risk requires that the defendant be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists… ." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  It also requires the defendant to "draw the inference." *Id*.  Crucially, the inquiry does not focus on serious medical needs "that [a defendant] should have perceived but did not." *Presley v. City of Blackshear*, 650 F.Supp.2d 1307, 1315 (S.D.Ga. 2008), aff'd, 340 Fed.Appx. 567 (11th Cir. 2009) (citation omitted).  Rather, the official must have actually perceived the medical need.  *See id*.

After showing the defendant's subjective awareness of the substantial risk of harm, the plaintiff must show that the defendant "disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

13

The Eleventh Circuit has held that for medical treatment to rise to the level of a constitutional violation, the care must be so "'grossly incompetent, inadequate, or excessive as to shock the conscience or be intolerable to fundamental fairness.'" *Jackson v. Jackson*, 456 Fed. Appx. 813, 814 (11th Cir. 2012) (quoting *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991)).

iii.   <u>Causation</u>

Finally, a plaintiff must show that "the constitutional violation caused the injury." *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003); *Goebert*, 510 F.3d at 1327.

### b.   *Nurse Greene's Conduct Does Not Constitute Deliberate Indifference*

Plaintiff vaguely implies that Nurse Greene acted with deliberate indifference by "causing and directing the unauthorized and illegal use of CS gas against Aparo on September 19, 2010."[40]  It has also been implicitly alleged throughout the course of discovery that Nurse Greene should have independently transferred Jordan-Aparo to the hospital based on her own assessment of his medical condition.  One could only reasonably presume that Plaintiff's deliberate indifference claim is based on either (1) Nurse Greene's failure to have Jordan-Aparo transferred after she

---

[40] *See* Complaint ¶ 56.

14

evaluated him on September 17, 2010; and/or (2) Nurse Greene's failure to successfully implement the IV catheter on September 18, 2010.

Nurse Greene's conduct does not approach deliberate indifference.  Plaintiff's claim against Nurse Greene fails at the first step of the standard because (1) Jordan-Aparo had not been diagnosed by a physician as having a serious medical need (for example, bacterial abscesses) which required treatment, and (2) Jordan-Aparo did not exhibit any symptoms that were "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Goebert*, 510 F.3d at 1326.

The first material encounter Nurse Greene had with Jordan-Aparo was when she conducted a back pain assessment for him on September 17, 2010.[41]  Jordan-Aparo was complaining of back pain that radiated down his leg, which Nurse Greene attributed to the injury he sustained while playing basketball a couple of days prior.[42] Jordan-Aparo refused to give Nurse Greene a urine sample because it allegedly "hurt too bad," which deterred Nurse Greene's ability to fully evaluate Jordan-Aparo at that point.[43]  Therefore, the only thing Nurse Greene could do was give Jordan-Aparo analgesic balm to alleviate his pain.[44]

---

[41] *See* Ex. 6: Back Pain Assessment dated September 17, 2010, Bates No. 001230.
[42] *Id*.
[43] *Id*.
[44] *Id*.

15

About two hours later, Jordan-Aparo again presented to the infirmary now complaining that he could not sleep and was having trouble breathing.[45]   Nurse Greene made called the on-call physician, who recommended she keep Jordan-Aparo in the infirmary for a twenty-three-hour observation period and administer an IV with lactated ringers.[46]   However, as Nurse Greene testified to in her affidavit, she was unable to implement the IV catheter because Jordan-Aparo refused to cooperate and kept moving his arm.[47]   Thus, all Nurse Greene could do was continue to monitor Jordan-Aparo in the infirmary and encourage him to drink water until she ended her shift at 3:00 a.m.[48]

Therefore, Nurse Greene was not deliberately indifferent to Jordan-Aparo's needs on September 17 and 18, 2010.  Nurse Greene did everything she could within her scope of practice as a senior licensed practical nurse to treat and attend to Jordan-Aparo's complaints, but his repeated failure to cooperate significantly impeded Nurse Greene's ability to assess and treat him.

There is also no record evidence that Nurse Greene was subjectively aware of a serious medical need such as the multiple cardiac and pulmonary bacterial abscesses that Dr. Flannagan stated was the cause of death.[49]   Rather, the evidence

---

[45] Ex. 7: Chronological Record of Health Care Form, Bates No. 001225.
[46] Ex. 8: Affidavit of Martha Greene, L.P.N., dated December 22, 2017, Paragraph 10.
[47] *Id*. at ¶ 11.
[48] *Id*. at ¶ 12.
[49] Ex. 14: Medical Examiner's Autopsy of Randall Jordan-Aparo, Bates Nos. 001124-001130.

shows that on September 17 and 18, Nurse Greene was not "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]," *Farmer*, 511 U.S. at 837.

For Plaintiff to establish a claim of deliberate indifference against Nurse Greene, she must set forth evidence that Nurse Greene **actually perceived** a serious medical need. *Presley*, 650 F.Supp.2d at 1315.  Because Plaintiff has not and cannot meet her burden of proof, the deliberate indifference claim against Nurse Greene fails.

Third, Plaintiff cannot set forth any evidence that Nurse Greene disregarded her subjective knowledge of the risk of serious harm by failing to take reasonable measures to abate it by conduct that constituted "more than gross negligence." *Goebert*, 510 F.3d at 1327.  There is no evidence in the record that would establish that Nurse Greene's conduct on September 17 and 18, 2010, was "'so grossly incompetent, inadequate, or excessive as to shock the conscience or be intolerable to fundamental fairness.'" *Jackson*, 456 Fed.Appx. at 814 (quoting *Harris*, 941 F.2d at 1505).

The only alleged factually plausible conduct is that Nurse Greene failed to safeguard Jordan-Aparo by not transferring him to a hospital following her encounters with him in the infirmary.  Jordan-Aparo had complained of back pain

17

from a fall two days previously, exhibited normal symptoms of a back strain or dehydration, and refused to cooperate with correctional and medical staff.[50]

Neither Dr. Choudhary or ARNP Lemon-Watson ordered Jordan-Aparo to be transferred to a hospital, and Nurse Greene could not independently order such as transfer because it was not within either her scope of practice or employment.

Nurse Greene's failure, through no fault of her own, to insert an IV catheter after two attempts or transfer Jordan-Aparo to the hospital certainly cannot be considered so grossly incompetent or inadequate so as to "shock the conscience."

Finally, Plaintiff fails to set forth any evidence that Nurse Greene's conduct was deliberately indifferent to a serious medical need, **and** that such conduct **actually caused** Jordan-Aparo's death.  Plaintiff is critical of Nurse Greene for her failure to intervene and independently transfer Jordan-Aparo to the hospital. However, it is not within the scope of nursing practice for **any** senior licensed practical nurse to independently transfer an inmate from his correctional facility to an outside, higher level of care unless an imminently critical health crisis is apparent.[51]  A physician and four other nurses were involved in the treatment of Jordan-Aparo from September 15 to September 19, 2010, and none of them identified an imminently critical situation requiring his transfer to a hospital.  Thus,

---

[50] *See* Ex. 6: Back Pain Assessment dated September 17, 2010, Bates No. 001230; Ex. 7: Chronological Record of Health Care Form, Bates No. 001225.
[51] *See* Ex. 3: Expert Report of Sandra Walker Nichols, PhD, ARNP, at pg. 5.

Plaintiff cannot show that Nurse Greene's conduct caused Jordan-Aparo's death, and Plaintiff's deliberate indifference claim must fail.

      **c.**    ***Eleventh Circuit Precedent Establishes that Nurse Greene's Conduct was not Deliberate Indifference***

There are two factually-similar Eleventh Circuit cases which establish the precedent that Nurse Greene's conduct does not rise to the federal deliberate indifference standard.

In *Kruse v. Williams*, 592 Fed.Appx. 848 (11th Cir. 2014), the Eleventh Circuit addressed a deliberate indifference claim against a nurse, and affirmed the district court's granting of summary judgment in favor of the nurse.  In that case, the court found that the nurse did not act with deliberate indifference to the medical needs of a pretrial detainee with Addison's disease by failing to send the detainee to the hospital in response to his complaints, and thus did not violate the Fourteenth Amendment. *Id*. at 856-859.  The nurse promptly treated all the detainee's symptoms of which she was made aware, consulted with a doctor and implemented the recommended course of treatment, and continued to check on the detainee's condition. *Id*.  The court importantly concluded its opinion as follows:

> Even if grossly negligent, [Nurse] William's failure to detect that [detainee] Jordan's condition necessitated an emergency trip to the hospital is not sufficient to establish a claim of deliberate indifference in violation of the Fourteenth Amendment.[52]

---

[52] A claim of deliberate indifference against a pre-trial detainee is brought under the Fourteenth Amendment's Due Process Clause while a claim of deliberate indifference against a prisoner, such Jordan-Aparo, is brought under the

*Id*. at 859.

In *Nam Dang v. Sheriff, Seminole Cty. Fla.*, 871 F.3d 1272 (11th Cir. 2017), the Eleventh Circuit again affirmed a motion for summary judgment in favor of the medical staff on claims of deliberate indifference.   In that case, the detainee's treatment was confounded because during his initial arrest, officers had to use force to detain him and slammed him into the ground causing the detainee to experience headaches and neck pain. *Id*. at 1276.   During the detainee's incarceration, his health began deteriorating because, unbeknownst to the medical staff, he was suffering from meningitis. *Id*.   The Eleventh Circuit found that all six (6) members of the medical staff were not deliberately indifferent to the medical treatment of the detainee. *Id*. at 1281-83.   The nurses were constantly monitoring the detainee and reporting up the chain of command to the attending physician.   *Id*.   One nurse was alleged to have acted deliberately indifferent by not taking the vital signs of the detainee.   *Id*. at 1281.   In exonerating her, the Court noted that "the [nurse's] failure to take Dang's vitals under these circumstances cannot be said to be grossly incompetent or inadequate as to 'shock the conscience.'" *Id*. at 1281 (citing *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)).

---

Eighth Amendment. *See Kruse*, 592 Fed.Appx. at 856 (citing *Goebert*, 510 F.3d at 1326).   However, the standards under the Fourteenth Amendment are identical to those under the Eighth. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County. Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005).

Similar to the circumstances in *Kruse*, Nurse Greene's conduct and her decision not to transfer Inmate Jordan-Aparo to the hospital, assuming *arguendo* that this decision was within her scope of practice and proper for her to make, is not in and of itself sufficient to establish a claim of deliberate indifference in violation of the Eighth Amendment.  Further, as illustrated by similar circumstances in *Nam Dang*, Nurse Greene's inability to implement a IV catheter after two attempts does not constitute deliberate indifference.  Nurse Greene attended to each and every one of Jordan-Aparo's complaints, reported up her chain of command, and provided the treatment ordered by the medical providers.

Eleventh Circuit precedent dictates that Nurse Greene's conduct "cannot be said to be grossly incompetent or inadequate as to 'shock the conscience.'" *Nam Dang*, 871 F.3d at 1281 (citing *Rogers*, 792 F.2d at 1058).

### 3. Nurse Greene's Conduct was Squarely Within Her Scope of Practice

At all times material, Nurse Greene acted directly within her scope of practice as a senior licensed practical nurse.  Chapter 464, Florida Statutes, constitutes the Florida Nurse Practice Act.[53]   The practice of practical nursing includes "the administration of treatments and medications, in the care of the ill, injured, or infirm" and "the promotion of wellness, maintenance of health, and prevention of illness of

---

[53] *See* Ex. 19: The Florida Nurse Practice Act, Chapter 464, Fla. Stat.

others **under the direction of a registered nurse** [or] **a licensed physician** …".[54]

Further, Nurse Greene's position description stipulates that she "provides treatments and administers medication **per physician orders**."[55]

Nurse Greene provided Jordan-Aparo competent and adequate treatment within her scope of practice and the specific parameters of her position description. During each of Nurse Greene's encounters with Jordan-Aparo she kept meticulous notes, evaluated and treated each of his complaints, and was in communication with the supervisory physician.  Nurse Greene did not – and still does not – have the authority to independently order a patient to be admitted to the hospital unless an imminently critical situation is apparent.[56]

## III.   PLAINTIFF'S DELIBERATE INDIFFERENCE CLAIM (COUNT III) IS BARRED BY THE STATUTE OF LIMITATIONS

Plaintiff's deliberate indifference claim is time-barred by the applicable statute of limitations; therefore, Count III of Plaintiff's Complaint must be dismissed.

The statute of limitations for Plaintiff's Eighth Amendment claim under § 1983 is four years. *Owens v. Okure*, 488 U.S. 235, 236 (1989); *Wallace v. Kato*, 549 U.S. 384, 387 (2000); *see, e.g., Omar v. Lindsey*, 334 F.3d 1246, 1251 (11th Cir.

---

[54] Ex. 19: The Florida Nurse Practice Act, Section 464.003(19), Fla. Stat. (emphasis added).
[55] Ex. 17: Senior Licensed Practical Nurse – F/C, Position Description (emphasis added).
[56] Ex. 3: Expert Report of Sandra Walker Nichols, PhD, ARNP, at pg. 5.

2003) (per curiam); *Walton v. Florida Department of Corrections*, 2018 WL 1393520 *3 (M.D. Fla. Mar. 20, 2018). "While the forum state's law controls with respect to the length of a limitations period, the same is not true with respect to the accrual of a cause of action. Accrual of federal actions is governed solely by reference to federal law." *Walton*, 2018 WL 1393520 at *12 (citing *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987)).

The acts on which Plaintiff bases the deliberate indifference claim against Nurse Greene began on September 17[57] and ended on September 19, 2010, when Jordan-Aparo was found dead in his cell.[58]  Therefore, Plaintiff's § 1983 claim against Nurse Greene accrued **at the latest** on September 19, 2010. *Walton*, 2018 WL 1393520 at * 5 (finding complaint untimely where it was filed more than four years after occurrence of use of force and deliberate indifference).

The applicable four-year statute of limitations began to accrue on the date of Jordan-Aparo's death, September 19, 2010.  The accrual date is not affected by the fact that a personal representative has stepped into the shoes of the decedent; the accrual date remains as if Jordan-Aparo himself filed the action. *Walton*, 2018 WL 1393520 at *5-6.[59]  Additionally, there are no tolling provisions that apply to the

---

[57] *See* discussion *supra*, Statement of Facts.

[58] *See* Complaint ¶ 35.

[59] In *Walton*, the court conducted this analysis based on an Eighth Amendment claim of excessive force. However, the court noted that the analysis is the same for a deliberate indifference claim. *See Walton v. Florida Department of Corrections*, 2018 WL 1393520 at *5 (citing *Lawson v. Okmulgee Cty. Crim. Justice Auth.*, 2018 WL 1104553 *4-5 (10th Cir, Feb. 28, 2018)).

four-year statute of limitations for Plaintiff's deliberate indifference claim. *Walton*, 2018 WL 1393520 at *7-8 (citing *Davis v. Monahan*, 832 So.2d 708, 710-11 (Fla. 2002) (holding Florida's delayed discovery rule is narrowly construed and applies only to claims specifically enumerated by the legislature)).

Plaintiff's claim of deliberate indifference against Nurse Greene should have been filed no later than September 19, 2014. Therefore, because Plaintiff filed her first Complaint on September 19, 2016[60], more than two years after the statute of limitations expired, Plaintiff's deliberate indifference claim (Count III) must be dismissed as time barred by the applicable statute of limitations.

## IV.  PLAINTIFF'S CONSPIRACY CLAIMS (COUNTS II AND IV) ARE BARRED BY THE INTRA-CORPORATE CONSPIRACY DOCTRINE

Both of Plaintiff's conspiracy claims fail as a matter of law based on the intra-corporate conspiracy doctrine.

Count II of Plaintiff's Complaint alleges that Nurse Greene acted as a conspirator with the other defendants to cause and then conceal the circumstances of Jordan-Aparo's death, and that she is therefore liable for the tort of civil conspiracy actionable under *Margolin v. Morton F. Plant Hosp. Ass'n, Inc.*, 342 So. 2d 1090 (Fla. 2d DCA 1977) and *Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1542 (11th Cir. 1990) based upon "the reason of the coercive force of numbers and

---

[60] *See* Doc. 1.

the exceptional circumstances" surrounding Jordan-Aparo's murder or manslaughter.[61]

Count IV of Plaintiff's Complaint alleges that Nurse Greene and the other individually named defendants conspired together to conceal acts which constituted violations of Jordan-Aparo's Eighth Amendment rights.[62]

The intra-corporate conspiracy doctrine holds that acts of corporate agents or employees are attributed to the corporation itself, thereby invalidating the multiplicity of actors necessary for the formation of a conspiracy. *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000).[63]

> Simply put, under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves. The doctrine is based on the nature of a conspiracy and the legal conception of a corporation. . . . [J]ust as it is not legally possible for an individual person to conspire with himself, it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself.

*McAndrew*, 206 F.3d at 1036.

The intra-corporate conspiracy doctrine applies equally to "government actors accused of conspiring together within an organization . . ." *Rehberg v. Paulk*, 611 F.3d 828, 854 (11th Cir. 2010).[64]

---

[61] *See* Complaint ¶¶ 71-72.
[62] *See* Complaint ¶¶ 84-89.
[63] *See also Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1261-63 (11th Cir. 2010); *Claudio v. Crews*, 2014 WL 1758106 *6 (N.D. Fla. 2014); *Dimanche v. Brown*, 2016 WL 5867057 *11 (N.D. Fla. 2016).
[64] *See also Grider*, 618 F.3d 1240 (11th Cir. 2010) (intracorporate conspiracy doctrine barred plaintiff's § 1983 conspiracy claims against police officers); *Denney v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir. 2001)

In *Kornagay v. Burt*, an inmate sued Florida Department of Corrections employees for conspiring to retaliate against him for filing grievances. 2011 U.S. Dist. LEXIS 23522, at *59 (N.D. Fla. 2011).  The court held that the defendants were entitled to summary judgment on the inmate's conspiracy claim, citing the intra-corporate conspiracy doctrine:

> In the instant case, all Defendants are employees of the FDOC. No outsiders are involved. The subject of their alleged conspiracy – interfering with [the inmate's] mail, giving him unsatisfactory notations in his daily housing record, issuing disciplinary reports, and applying force – involved job-related functions well within Defendants' scope of employment as FDOC employees.

*Id*. at *61-62.

## A.   Plaintiff's Claim of Common Law Civil Conspiracy (Count II) is Precluded by the Intra-Corporate Conspiracy Doctrine

Ordinarily, there can be no independent tort for conspiracy.  However, under the force of numbers exception, if the plaintiff can "show some peculiar power of coercion possessed by the conspirators by virtue of their combination, which power an individual would not possess, then conspiracy itself becomes an independent tort." *Churruca v. Miami Jai-Alai, Inc.*, 353 So.2d 547, 550 (Fla. 1977).  The

---

(intracorporate conspiracy doctrine applied to city and its personnel); *Rehberg*, 611 F.3d at 854 (11th Cir. 2010) (concluding intracorporate conspiracy doctrine barred § 1983 conspiracy claim against a county employee); *Dickerson v. Alachua Cnty. Comm'n*, 200 F.3d 761, 767-68 (11th Cir. 2000) (concluding intracorporate conspiracy doctrine barred plaintiff's § 1995(3) conspiracy claim for interference with his civil rights); *Chambliss v. Foote*, 562 F.2d 1015 (5th Cir. 1977) (affirming district court's summary judgment opinion applying the intracorporate conspiracy doctrine to bar a § 1985(3) claim against a public university and its officials); *Taylor v. Alabama*, 95 F. Supp. 2d 1297, 1317-18 (M.D. Ala. 2000) (doctrine of intracorporate conspiracy barred plaintiff's conspiracy claim against employees of state agency).

essential elements of this force of numbers claim are a malicious motive and coercion through numbers or economic influence. *Id*.

Essentially, Plaintiff is attempting to hold Nurse Greene and the other defendants liable for the independent tort of civil conspiracy, a tort rooted in business dealings[65], to allege the officers, nurses, and FDOC conspired together to cause and then cover up the circumstances of Jordan-Aparo's death.

In *Buckner v. Lower Fla. Keys Hosp. Dist.*, 403 So.2d 1025, 1026-27 (Fla. 3d DCA 1981), the plaintiff, a licensed physician, was appealing the trial court's dismissal of his third amended complaint wherein he attempted to allege a common law civil conspiracy against a hospital, its administrators, and its board of trustees. As here, the plaintiff also sought to hold the defendants liable under the "force of numbers" exception, based on their concerted refusal to renew the plaintiff's hospital staff privileges. *Id*. at 1029.   The court dismissed the plaintiff's civil conspiracy claim and distinguished from *Margolin*, reasoning "the decision to terminate or not to renew [the plaintiff's] staff privileges necessarily had to be made by the defendants as a group and did not constitute a concerted effort by separate entities

---

[65] *See generally, American Diversified*, 439 So.2d at 906 (The independent tort of civil conspiracy is often referred to as an "economic boycott."); *Snipes v. West Flagler Kennel Club, Inc.*, 105 So.2d 164 (Fla. 1958) (track owners boycott a particular owner of greyhounds and forced other owners to do the same); *Margolin v. Morton F. Plant Hosp. Ass'n, Inc.*, 342 So. 2d 1090 (Fla. 2d DCA 1977) (anesthesiologists refuse to do business with a particular physician); *Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1542 (11th Cir. 1990) (insurance companies act in concert to interfere with an insurance agent's profession).

but simply came about as a result of the hospital acting through its respective components." *Id*.

Here, Plaintiff's common law civil conspiracy claim fails because any decision regarding the treatment or confinement of Jordan-Aparo was made by and through Nurse Greene, together with the other nursing and security staff defendants, acting as a single entity – the Florida Department of Corrections.  Therefore, as in *Kornagay* and *Buckner*, there is no combination of separate economic groups or forces.  Plaintiff's Complaint only implicates employees of FDOC.  Further, there is no evidence that the named defendants acted on personal motivation or played an active role in the death of Jordan-Aparo outside of their activities in the administration of the correctional institution.[66]

The intra-corporate conspiracy doctrine precludes Plaintiff's civil conspiracy claim; therefore, Count II of Plaintiff's Complaint must be dismissed.

**B.**     **Plaintiff's Claim of Conspiracy to Violate 42 U.S.C. § 1983 (Count IV) is Precluded by the Intra-Corporate Conspiracy Doctrine**

Similarly, Count IV of Plaintiff's Complaint fails as a matter of law because it is precluded by the intra-corporate conspiracy doctrine.  All the defendants alleged to have conspired to violate Jordan-Aparo's Eighth Amendment rights were FDOC

---

[66] *See also Lake Hosp. & Clinic, Inc. v. Silversmith*, 551 So.2d 538, 545 (Fla. 4th DCA 1989) (the trial court erred in submitting the common law civil conspiracy issue to the jury for determination because there was not any evidence that the named defendants acted on personal motivation or played an active role in the termination of the plaintiff…)

employees.  Further, as in *Kornagay*, the subject matter of their alleged conspiracy – gassing Jordan-Aparo, creation of false incident reports and false statements, preparation of false medical records, and inadequate medical treatment – involved job-related functions well within the named defendants' scope of employment. Plaintiff's conspiracy to violate 42 U.S.C. § 1983 claim must be dismissed because it fails as a matter of law.

## IV.   CONCLUSION

Defendant Martha Greene, L.P.N., respectfully requests this Court enter an order granting her final summary judgment on all counts.

Respectfully submitted this 29th day of June, 2018.

/s/ ***Jeffrey S. Howell***
JEFFREY S. HOWELL
Florida Bar No. 0793840
Phipps & Howell
Post Office Box 1351
Tallahassee Florida 32302-1351
(850) 222-7000
jeff@phipps-howell.com
Attorney for Defendants
*JONES, RILEY* and *GREENE*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

Undersigned counsel for Defendant MARTHA GREENE hereby certifies that this motion and incorporated memorandum of law contains 6,546 words, excluding the case style, signature block, and certificate of service, in compliance with N.D. Fla. Loc. R. 7.1(F). The foregoing word count has been calculated utilizing Microsoft Word, the word processing software used to prepare this motion and incorporated memorandum of law.

/s/ *Jeffrey S. Howell*
JEFFREY S. HOWELL

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served on all counsel of record by CM/ECF this 29th day of June, 2018.

/s/ *Jeffrey S. Howell*
JEFFREY S. HOWELL