UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

AMANDA CIMILLO, et al.,

      Plaintiffs,

vs.                                        CASE NO.: 4:16-cv-00584-RH-CAS

ROLLIN AUSTIN, et al.,

      Defendants.
_____/

## DEFENDANT FLORIDA DEPARTMENT OF CORRECTIONS' REPLY MEMORANDUM TO PLAINTIFF'S RESPONSE TO ITS MOTION FOR SUMMARY JUDGMENT

Defendant Florida Department of Corrections ("FDC"), through counsel and pursuant to Northern District of Florida Rule 56.1(D), replies to Plaintiff's Response [ECF No. 192] to its Motion for Summary Judgment [ECF No. 180] ["Response"], and states as follows:

### I. REPLY TO PLAINTIFF'S RESPONSE

#### A. HEMOPHILIA and VON WILLEBRANDS DISEASE

Plaintiff claims in her Response that Aparo had hemophilia or was perceived to have hemophilia during his 2007 and 2009-2010 FDC incarcerations. *See* Response, at 5-6, 8, and 40. A review of Aparo's medical records for 2007 and

2009-2010 shows that the only occurrence of the word "hemophilia" is a handwritten entry found in a "Refusal of Health Care Services Affidavit" dated May 14, 2007, when he refused a transfer to the FDC Reception Medical Center "for eval[uation] of laceration [with] complications of hemophilia." *See* Composite Exhibit 1, Bates 002463. Otherwise, hemophilia is not listed or referenced in the 2007 "Initial Physical Exam," or on a "Health Problem List" where his Osler Weber Rendu (OWR) and Von Willebrands are both listed. *Id*, at 002451 (OWR), and 002457 (OWR and Von Willebrands).

## B. APARO'S WORK GRADE

It is undisputed fact that Aparo's "Work Grade" during his entire 2009-2010 incarceration was "W:2" except for a brief period in June 2010 when ARNP Lemon changed his work grade to "W:1" and then back to W:2. *See e.g.*, Composite Exhibit 2, Bates Nos. 00022-00023, 00026, 00030, 00081, 00103, 00120, 00128, and 00162; *see also* Exhibit 3, Deposition of ARNP Lemon, Vol. 2, at 224-225.

Plaintiff's characterizations of the W:2 work grade grossly overstate its restrictions on an inmate's ability to work. According to FDC's Technical Instruction of Health Classification Grades to Inmates, a W 2 grade is assigned to an inmate, "Who has minimal to moderate restrictions that are defined by passes

that describe the limitation/s…" *See* ECF No. 204-32.  ARNP Lemon also explained that the work grades are based on the passes issued to the inmates (e.g., shaving; low bunk)—and can change during an inmate's incarceration.  *See* Exhibit 3, Vol. I, at 99-100; Vol. II, 149-150; 224-225.

The undisputed and unrebutted facts show that Aparo worked on a Public Work Squad from December 2009 to May 21, 2010, and was then assigned to the Bay City Work Camp.  ARNP Lemon had him transferred from the work camp after suffering a cut and bleeding because there was no medical staff at the work camp, and it was a 30 minute drive to Franklin CI.

### C. APARO'S REQUEST For a "SHOT"

Plaintiff asserts that Aparo requested a "shot" and cites to Bate No. 00076, a "Back Pain Assessment" form dated September 17, 2010, when Aparo presented to medical complaining of pain in his lower extremities, and that his head hurt.  At the bottom of the form he is quoted as saying, "Somebody told me about a shot you could give me." *See* ECF No. 204-76.  He was not "requesting" a shot but asking about one, and whatever "shot" Aparo may have been referring to, it was clearly related to the pain in his lower extremities, and to his OWR.  Plaintiff also references a "DDAVP" shot and cites an exhibit (ECF No. 204-20) which appears

to be a medical record (not Aparo's), and gives no explanation for its relevance here. *See* ECF No. 204-20.

### APARO DID NOT HAVE ASTHMA AND DID NOT COMPLAIN OF BREATHING PROBLEMS UNTIL SEPTEMBER 18, 2010

There is nothing in Aparo's medical records showing that he claimed to have asthma, and he expressly denied having asthma on two separate "Health Appraisal" forms dated November 17, 2009, and February 21, 2007. *See* Composite Exhibit 2 (Bates Nos. 00031and 00167); *see also* Bates No. 00155 (asthma is also not listed on a "Problem List" dated February 19, 2007). Plaintiff cites the sworn statement of inmate Samuel Wooden given to FDLE during its investigation of Aparo's death where he expressed his belief that "Inmate [Aparo] did not wish to be gassed since he was also aware that Inmate [Aparo] had an asthma problem." *See* Exhibit 4, Serial 52. Another inmate, James Edward Angel, stated he "could hear a CO indicate that Inmate Jordan has asthma…[and] that the Guards told [Aparo] that they would gas him, and [Aparo] told the Guards that they couldn't because he was asthmatic and he couldn't breathe." *Id*, at Serial 44. Inmate Angel also reported that Aparo told the Guards after the gassing that he needed his inhaler. *Id.*[1]

---

[1] Aparo's medical records show that he was never prescribed an "inhaler" (or other similar device) during his 2009-2010 incarceration. ARNP Lemon testified that if he had an inhaler, then he must have gotten one from another inmate as it was not

4

These purported statements by Aparo recounted by other inmates are hearsay and do not fall within any of the hearsay exceptions—that is they are not statements "against interest," but are being offered to support Plaintiff's claims. *See* Federal Rule of Evidence 804(b)(3)(A). Nor do they fall within the exception regarding the unavailability of a witness in Rule 804(b)(6) which states that, "A statement offered against a party that wrongfully caused—or acquiesced in wrongfully causing—the declarant's unavailability as a witness, *and did so intending that result.*" (Emphasis added). This exception applies where a witness is prevented from testifying and is thus deemed to unavailable. *See e.g., U.S. v. Battle*, 473 F.Supp.2d 1185, 1195 (S.D. Fla. 2006).[2]

Even if inmate statements were admissible, Aparo's statement that he had asthma (or the inmates' belief that he did), or that he was using an inhaler, do not override Aparo's denials that he had asthma—especially when viewed in combination with the complete absence of any references of asthma or shortness of

---

uncommon for inmates to sell or give medications to other inmates. *See* Exhibit 3, Vol. II, at 230.

[2] This testimony is also not admissible under Rule 804(b)(2), "Statement Under the Belief of Imminent Death" as they were not "spoken without hope of recovery and in the shadow of impending death…"; and "general fears for one's life are not sufficient." *See Shepard v. United States,* 290 U.S. 96, 99 (1933); *see also United States v. Mobley,* 421 F.2d 345, 357 (5th Cir.1970) ( "[A]dmission of utterances of a dying person should be received with great caution.").

5

breath in the medical records—other than on September 18, 2010 when he told the nurse, "I can't breathe"—less than 24 hours before he died.

Similarly, Aparo did not complain of shortness of breath (other than on September 18, 2010) during his 2009-2010 FDC incarceration, and specifically checked "No" for "shortness of breath" on two questionnaires. *See* Composite Exhibit 2 (Aparo's medical records), Bate Nos. 00020 (February 24, 2010) and 00021 (November 10, 2009).

### D. ACCESS TO THE FDC MINS SYSTEM

Plaintiff asserts that numerous FDC employees had access to the MINS System, and specifically employees at Franklin CI who could have learned that Aparo had given information regarding drug activity on May 21, 2010 at Jefferson CI which made him a "snitch", and provided the motive for "killing" him at Franklin CI. Plaintiff cites the testimony of an inmate who stated that Defendant Hampton "was alleging that Aparo was a snitch, and inmates knew there was going to be a hit put out on Aparo…", and that Plaintiff asserts that this "snitch MINS was accessible by the wardens, inspectors, majors, captains, and lieutenants at each of the prisons at any time prior to Aparo's death." *See* ECF No. 204, at 25.

Plaintiff is mistaken as to who had access to the MINS database. Walt Edwards at FDC works in IT and participated in 2000 participated with two others

in writing the application for FDC's MINS database. *See* Exhibit 5, Deposition of Walt Edwards, at 4, 14. Mr. Edwards explained the difference between access to *enter* or *input* a report into MINS, and access to *review* MINS reports entered by other FDC employees in 2010. *See* Exhibit 5, at 7-8, 11-13. In sum, Mr. Edwards testified that the FDC employee who entered or created a MINS report could access that report, and the *only* other FDC employees who could access it were those who worked in the Inspector General's Office, and Inspectors assigned to correctional institutions. *Id.*

### E. PLAINTIFF MISSTATES THE TESTIMONY OF DR. LISA FLANNAGAN, ASSOCIATE MEDICAL EXAMINER

Plaintiff asserts that Dr. Flannagan "was clear in her testimony that Aparo was 'compromised as far as his respiratory status and [the gassings] would be just another insult where he would not be getting oxygen, so, yes, I think it would contribute.'" *See* Response at 26 (citing Plaintiff's Exhibit 61, L. Flanagan Dep. 46: 1-17; 74:1-25; 85:9-25; 86:1-13). Plaintiff's counsel began this line of questioning by asking Dr. Flannagan, "*If* you had evidence of gassing, and by that I mean pepper spray or CNS, in his trachea or his lungs, which would have overlaid the infection, do you believe the gassing would have contributed to his death?" *See* Exhibit 6, at 46 (emphasis added). Dr. Flannagan had testified earlier in her deposition that she did *not* find any evidence of chemical agents in Aparo's

7

respiratory system. *Id*, at 18; *see also id*, at 59-60. Dr. Flannagan further testified, consistent with her Autopsy Report, that Aparo died from complications of multiple cardiac and pulmonary bacterial abscesses, and that neither chemical agents nor OWR caused or contributed to Aparo's death. *Id*, 58-60.

### F. ADA/RA: PLAINTIFF HAS NOT REBUTTED THE UNDISPUTED FACT THAT APARO NEVER SUBMITTED A REQUEST FOR AN ACCOMMODATION

Rather, Plaintiff's argument here is that Aparo's OWR was effectively a *per se* disability which made his requests for medical care equivalent to requests for an accommodation. The undisputed facts show that he never submitted a request for an accommodation, and further that he received care for his OWR on each occasion when care was needed (i.e., bleeding episodes from cuts; low iron). The only times he was allegedly denied access to medical care occurred on September 18, 2010 when he was not taken to a hospital while in the infirmary, and on September 19, 2010 when he purportedly declared medical emergencies and was not taken to medical, and/or medical staff were not brought to cell front. As to the latter, the only evidence offered to support the claim that he declared medical emergencies while in confinement on September 19, 2010 is found in the sworn statement of inmates and inmate depositions which, as addressed above, is inadmissible hearsay (i.e., they were not statements "against interest"). More

importantly, even assuming Aparo had declared medical emergencies which went unheeded, any failure by security officers to contact medical staff in response could not have been *because* of his OWR as they had no knowledge of his medical condition or history, including the fact that he had OWR. Plaintiff cites inmate testimony that security officers were aware of his medical condition based on them calling him "crippled", or asking him if he needed a "wheelchair." Again, even assuming these words were uttered by security officers, they do not establish that the officers had knowledge of his OWR, or that he was disabled, such that their failure to act was based on his OWR. The law is clear that to state and prove a claim for violation of Title II of the ADA (and Rehab Act), a plaintiff must show that the reason for the denial of access to medical care by the employees or agents of the employer, was because of the medical or physical condition at issue.

Plaintiff further asserts that "a jury could conclude based on this record that Aparo had a disability...", and states in a footnote that, "Although not required, the disability was documented with FDC." *See* Response, at 51 n. 22. However, Plaintiff provides no citations to Aparo's medical records or other records to support the assertion that Aparo had a disability, or that it was "documented with FDC." The facts are undisputed that there is *no* documentation showing that Aparo ever claimed to have a disability, or that he ever requested an accommoda-

tion. *See* Exhibit 7, Affidavit of Evelyn Garst (FDC's ADA Coordinator), at Paragraph 4.

### G. APARO WAS NOT SUBSTANTIALLY LIMITED IN ANY MAJOR LIFE ACTIVITY

Plaintiff asserts that Aparo was substantially limited in one or more major life activities. *See* Response, at 7, and 39-41. FDC relies on its motion for summary judgment and the evidence cited therein showing that Aparo was not limited, substantially or otherwise, in any major life activity.

FDC will address Plaintiff's citation to, and reliance on *Lonergan v. FDC*, 2017 WL 1197869 (N.D. Fla. 2017), and observe that unlike Aparo, the plaintiff in *Longergan* did "submit[] a request for accommodation with [FDC] . . . describing his disability." *Id*, at *4. In addition, the Court found that there was "evidence that [plaintiff] ha[d] missed meals, foregone daily activities such as recreation, chapel, and AA meetings because of his medical condition and the need to limit sun exposure." *Id*, at *9. There is no such similar evidence in the instant action showing that Aparo was unable to participate in activities or services, or that he was denied access to medical care for his OWR during his 2009-2010 FDC incarceration.

H. <u>Plaintiff Has Failed to Rebut FDC's Statute of Limitations Argument</u>

Plaintiff asserts that the earliest she could have learned that she had a potential claim against FDC was August 30, 2014 when she read a Miami Herald article. It is difficult to reconcile this assertion with the fact that three days later her attorney was able to identify more than 40 individual FDC employees in the Notice of Claim letter dated September 2, 2014.

Plaintiff does not explain or address why after learning of Aparo's death shortly after he died, she took no further steps to learn the circumstances of Aparo's death before August 30, 2014. The law is clear that a plaintiff is not required to have all the facts to "know that she has a legally cognizable claim for the action to accrue...[which is] when the plaintiff knows, *or exercising reasonable diligence* should know, both of the decedent's death and its causal connection with the government." *Diaz v. United States*, 165 F.3d 1337, 1339-1340 (11th Cir.1999) (emphasis added).

Plaintiff argues that section 95.11(10), Florida Statutes includes actions against a "disabled adult", and applies here because she contends that Aparo was disabled. But Plaintiff does not address or rebut FDC's argument and showing that there are no cases or statutes which support the conclusion that the term "disabled adult" in this context (i.e., as used in the murder and manslaughter statutes),

11

applies to claims brought pursuant to the ADA/RA which requires that the person request an accommodation and show that they are disabled.

Plaintiff also argues that FDC is a "natural person" for purposes of section 95.11(10), Florida Statutes based on the fact that she is "seeking the damages authorized in Florida Statutes § 768.21..." *See* Response, at 52.  Plaintiff appears to argue that because she can only bring ADA/RA claims against FDC, and not the individual Defendants, that somehow her state-law wrongful death claim makes FDC a "natural person" for purposes of section 95.11(10), Florida Statutes. Yet, Plaintiff offers no legal support for this otherwise leap of logic, and it should be rejected accordingly as it provides no basis for her argument that FDC is a "natural person."

## THE ACCRUAL ISSUE

Plaintiff cites *Jones v. Childers*, 18 F.3d 899 (11th Cir.1994) to argue that "[W]hen a Plaintiff should have discovered the cause of action is a question of fact for a jury." *Jones*, 18 F.3d at 907.  Plaintiff's reliance on *Jones* is misplaced as the Court there was addressing a Florida state-law claim and not a federal claim.  The question of accrual for Plaintiff's ADA/RA claim is a matter of federal law.  *See Mullinax v. McElhenney*, 817 F.2d. 711, 716 (11th Cir.1987).[3]  FDC otherwise

---

[3] The date a cause of action accrues can be a question of fact if there is a genuine dispute on the date an action or event occurred, but when the date of injury is

12

relies on its motion for summary judgment and the cases cited therein in which the courts have analyzed and decided the accrual issue on motions to dismiss and motions for summary judgment.

## THE DELAYED DISCOVERY AND EQUITABLE TOLLING ARUGMENTS

Plaintiff argues that the delayed discovery doctrine and/or equitable estoppel apply in this case based on her inability to obtain records or information because of the ongoing investigations. *See* Response, 57-60. However, Plaintiff has provided no evidence of the steps or actions she took or attempted to take, if any, to learn the circumstances of Aparo's death. Moreover, there was ample evidence which would or should have informed her of a potential claim, or prompted a reasonably diligent person to obtain information, or find someone to help her if she did not know how. Plaintiff also does not explain why after sending a notice of claim letter to FDC and DFS on September 2, 2014, expressly stating that a complaint would be filed before expiration of the four-year statute of limitations expired, the complaint was not filed until September 2016.

---

known, as in the instant action (i.e., the death of Aparo), then the accrual date is not in dispute and the issue becomes a question of law to be decided by the Court. *See Baker v. City of Hollywood*, 391 Fed. Appx. 819, 821 (11th Cir.2010) (a claim premised on excessive use of force accrues at the time the alleged force was used). FDC denies that excessive force was used on Aparo but this is Plaintiff's claim against the individual Defendants here—whose actions are attributable to FDC for purposes of her claim for compensatory damages under the ADA/RA.

## WALTON V. FLORIDA DEPARTMENT OF CORRECTIONS

Plaintiff correctly argues that *Walton v. Florida Department of Corrections*, 2018 WL 19393520 (M.D. Fla. 2018 March 20, 2018) is not binding authority on this court, however it may be persuasive. FDC can inform the Court that there is no longer a motion for reconsideration pending in *Walton*.[4]

FDC otherwise relies on the record evidence and legal authority cited in its motion for summary judgment as to any issues not expressly addressed in this Reply, and reasserts that it is entitled to summary judgment on Plaintiff's ADA/RA claim.

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 7.1(F) of the N.D. Fla. Loc. R., I certify that this memorandum complies with the length limitation set forth in Rule 7.1(F) because it contains 3,148 words, as counted by Microsoft Word, excluding the items that may be excluded under Rule 7.1(F), the font used in this motion is Times New Roman 14-point font.

---

[4] In *Walton*, the Court's dismissal of plaintiff's ADA/RA claims was *with prejudice. See id*, at \*\*2, 9. Also, the plaintiff in *Walton* filed a Third Amended Complaint again pleading an ADA/RA claim even though the Court had previously dismissed it with prejudice. *See* Case 3:16-cv-01130-BJD-JRK, ECF No. 43. FDC in that case has again moved to dismiss the ADA/RA claim in the new complaint on the ground that it was previously dismissed with prejudice. *See* Case 3:16-cv-01130-BJD-JRK, ECF No.49.

DENNIS, JACKSON, MARTIN & FONTELA, P.A.

By: *William Peter Martin*
Peter@djmf-law.com
FL Bar ID No. 0843024
1591 Summit Lake Drive, Suite 200
Tallahassee, FL 32317
(850) 422-3345
(850) 422-1325 (Fax)
Attorney for Defendant FDC

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the above and foregoing has been furnished via electronic mail on this 31st day of July, 2018, to:

Steven R. Andrews, Esquire
The Law Offices of Steven R. Andrews
822 North Monroe Street
Tallahassee, Florida 32303
steve@andrewslaw.com
ryan@andrewslaw.com
natalie@andrewslaw.com
lisa@andrewslaw.com
Attorney for Plaintiff

Jeff Howell, Esquire
Phipps & Howell
P.O. Box 1351
Tallahassee, Florida 32302
jeff@phipps-howell.com
margaret@phipps-howell.com
Attorney for Defendants Franklin, Goodwin, Greene, Housholder and Riley

Brian C. Keri, Esquire
3375-H Capital Circle NE, Suite 4
Tallahassee, Florida 32308
brianckeri@earthlink.net
Attorney for Defendants Austin, Burch, Brown, Gillikin, Hamm, Hampton, Martina and Spangler

15

DENNIS, JACKSON, MARTIN
& FONTELA, P.A.

By: *William Peter Martin*
Peter@djmf-law.com
FL Bar ID No. 0843024
1591 Summit Lake Drive, Suite 200
Tallahassee, FL 32317
(850) 422-3345
(850) 422-1325 (Fax)
Attorney for Defendant FDC