IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

AMANDA CIMILLO,

    Plaintiff,

v.                                 CASE NO. 4:16cv584-RH/CAS

ROLLIN AUSTIN et al.,

    Defendants.

_____/

## ORDER DENYING THE DEPARTMENT'S
## SUMMARY-JUDGMENT MOTION

    This case presents the question whether it violates the Americans with Disabilities Act and Rehabilitation Act of 1973 to gas a prisoner who, partly because of a disability, cannot safely be gassed.

    Employees of the Florida Department of Corrections repeatedly gassed a 27-year-old prisoner who had complained of breathing difficulties for three days. Several hours later the prisoner was dead. The officers say the prisoner was being disruptive, but other witnesses have sworn the prisoner was not being disruptive at all—that he was sprayed for no reason.

The personal representative of the prisoner's estate asserts claims against the Department of Corrections, against individual officers who were involved with the gassing, and against nurses who responded to the breathing complaints and cleared the prisoner for gassing. A summary-judgment hearing addressed five separate summary-judgment motions—one by the Department, one by individual officers involved with the gassing, and three by individual nurses. This order addresses the Department's motion. Separate rulings will be entered on the other motions.

On a summary-judgment motion, disputes in the evidence must be resolved, and all reasonable inferences from the evidence must be drawn, in favor of the nonmoving party. The moving party must show that, when the facts are so viewed, the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A summary-judgment motion cannot be used to resolve in the moving party's favor a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).

The personal representative asserts claims against the Department only under the ADA and Rehabilitation Act. As relevant to the current motion, the standards under each act are the same. For ease of reference, this order often refers only to the ADA, without mentioning the identical standards under the Rehabilitation Act.

The ADA provides that a "qualified individual with a disability" must not, "by reason of such disability," be excluded from participating in or be denied the benefits of a public entity's activities, "or be subjected to discrimination" by a public entity. The prisoner was a qualified individual, which for a prisoner means only the ability to be a prisoner and to participate in whatever prison activity might be at issue. The Department of Corrections is a public entity. Gassing an individual who, because of a disability, cannot safely be gassed—who, because of a disability, might die if gassed—is discrimination within the meaning of the statute. And a person who is killed loses the ability to participate in activities.

A person has a disability if, among other things, the person has an impairment "that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A).

As Department employees knew, this prisoner had Osler-Weber-Rendu syndrome. The syndrome is characterized by abnormal blood vessels, not only internally but visibly on the lips, tongue, ears, and fingers. When visible, the abnormalities are referred to as telangiectasias. The prisoner had visible telangiectasias. Other symptoms of the syndrome include shortness of breath, enlarged liver, heart failure, anemia, bleeding in the gastrointestinal tract, seizures, and small strokes from bleeding in the brain. ECF No. 204-6 at 1. The autopsy showed that the prisoner had several of these symptoms, including an enlarged

heart and liver. This record is not well developed on what this prisoner's limitations were, but the record would support a finding that the prisoner had a disability. *See Lapier v. Prince Georges Cty., Md.*, No. 10-CV-251 AW, 2013 WL 497971 (D. Md. 2013) (concluding that Osler-Weber-Rendu syndrome is a disability and that it prevented the plaintiff from performing the essential functions of the job of police officer).

In asserting the contrary, the Department emphasizes activities the plaintiff participated in. He played basketball and did other things. When he suffered cuts, he bled almost uncontrollably, but play basketball he did. Still, the Department's argument stands the ADA on its head. The founding premise of the ADA is that persons with disabilities also have abilities—that they can do many things despite their disabilities. A person who bleeds uncontrollably may be substantially limited but still can do many things, including, if he chooses, play basketball. So also a person with breathing difficulties and an enlarged heart and liver. Indeed, there was a time when the world's best basketball player was a person with a disability.

The Department asserts that the prisoner died from natural causes wholly unrelated to the gassing. It is possible, of course, that the 27-year-old prisoner had no disability and that he nonetheless died from natural causes. But a jury might conclude that the abscesses on which the medical examiner blamed the death arose partly from Osler-Weber-Rendu syndrome and that the gassing contributed to the

outcome. In any event, a jury could conclude that the prisoner was substantially limited in major life activities, just as the court concluded in *Lapier*.

The Department also says the correctional officers who did the gassing did not know the prisoner had Osler-Weber-Rendu syndrome. But under the ADA, unlike under 42 U.S.C. § 1983, an entity can be held liable under ordinary principles of respondeat superior. The Department is responsible for acts of its employees within the scope of their employment. It is undisputed that Department medical employees knew of this prisoner's condition. And Department medical employees said the prisoner could be gassed. On this record a jury could find that the prisoner had a disability that made it unsafe to gas him, that the Department knew it, and that the Department nonetheless gassed him.

For these reasons,

IT IS ORDERED:

The Department's summary-judgment motion, ECF No. 180, is denied.

SO ORDERED on August 10, 2018.

                              s/Robert L. Hinkle
                              United States District Judge